UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EXECUTIVE AIRLINES | : | CIVIL ACTION NO. |
| | : | 02-CV-194 (GLG) |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| ELECTRIC BOAT CORPORATION | : | |
| | : | |
| Defendants. | : | APRIL 21, 2004 |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS

Pursuant to Rules 26, 34, and 37 of the Federal Rules of Civil Procedure and Rules 7(a) and 37 of Local Civil Rules of the United States District Court for the District of Connecticut (the "Local Rules"), the defendant Electric Boat Corporation ("Electric Boat") respectfully submits this memorandum in support of its motion to compel the plaintiff Executive Airlines ("Plaintiff") to produce documents relevant to this case that Plaintiff has failed to produce despite repeated requests by Electric Boat.

### I.   BACKGROUND

The dispute in this case arises from Electric Boat's termination of a contract between Plaintiff and Electric Boat pursuant to which Plaintiff agreed to provide air charter services to Electric Boat between its facilities in Groton, Connecticut and Newport News, Virginia. In its Amended Complaint dated August 28, 2002, Plaintiff asserts claims of breach of contract, accounts stated, liquidated damages, and actual damages. On September 13, 2002, Electric Boat filed its Answer, Affirmative Defenses and Counterclaim. On July 17, 2003, this Court granted in part Electric Boat's motion for summary judgment finding that Electric Boat's "early

termination of the Agreement did not constitute a breach of contract and that [Plaintiff] is not entitled to an award of six months' income as liquidated damages." (Opinion dated July 17, 2003, docket entry #50 (the "Opinion"), at 17.)  The Court continued that, "[A]ccordingly, we grant summary judgment in favor of Defendant, Electric Boat, on Count Three of the Amended Complaint." (Opinion, at 17.)  The Court left unresolved the following issues: "whether there was a default by Executive Airlines or to what damages Executive Airlines may be entitled as a result of this early termination." (Opinion, at 17.)

On December 16, 2003, and again on March 20, 2004, counsel for Electric Boat began but did not finish the deposition of Mr. Michael Peragine, president of Plaintiff.  During that deposition, Mr. Peragine testified regarding a number of categories of documents and Electric Boat's counsel requested that such documents be produced.  Specifically, Mr. Peragine identified the following documents at his deposition:

1. Documents evidencing the leases of the airplanes that Mr. Peragine testified were used to service the Electric Boat contract.  Mr. Peragine testified that Plaintiff leased these aircraft from certain related holding companies.  (Deposition transcript of Michael Peragine (the "Peragine Tr.") at 18-20);[1]

2. Documents evidencing the "joint venture" created in January of 2000 between or among Mr. Peragine, Executive Airlines, and Michael Leeds which was to own all of the equipment and the operating certificate for the various Executive Airlines aircraft (Peragine Tr., at 22, 269-279); and

3. Documents regarding litigation between Executive Airlines and Mr. Michael Leeds involving this "joint venture" (Peragine Tr., at 40–44; 269-279);

---

[1] Copies of the pages of Mr. Peragine's deposition transcript cited to herein are attached to the Affidavit of William H. Erickson, being submitted together with this memorandum, Exhibit A.

As discussed below, despite repeated efforts to obtain these documents, and despite representations by Mr. Peragine and his counsel that the documents would be produced, Mr. Peragine and his counsel now refuse to produce these documents.

On March 26, 2004, Electric Boat's counsel sent a letter to Executive Airlines' counsel, Attorney Feigenbaum, setting forth the specific categories of documents identified during Mr. Peragine's deposition which Electric Boat sought to be produced from Executive Airlines. (Affidavit of William H. Erickson (the "Erickson Aff."), ¶ 9.)[2]  In particular, Electric Boat's counsel requested that Plaintiff produce the documents regarding certain litigation that took place between Executive Airlines and Mr. Michael Leeds (the "Leeds Litigation Documents") involving a joint venture between those two parties concerning, among other things, the business of Executive Airlines and in particular the Electric Boat contract. (Erickson Aff., at ¶ 10.) Electric Boat's counsel had requested during both days of Mr. Peragine's deposition that Plaintiff produce these documents.

On April 12, 2004, counsel for Electric Boat spoke with Attorney Feigenbaum, counsel for Plaintiff, regarding the March 26, 2004 letter and, in particular, the Leeds Litigation Documents. (Erickson Aff., ¶ 11.)  During this telephone conversation, Attorney Feigenbaum represented that there was a confidentiality order in the Leeds litigation that covered only the settlement agreement of that litigation.  Attorney Feigenbaum represented that the confidentiality order did not cover any of the other pleadings in the case nor did it cover the transcript of the deposition that Mr. Peragine gave during that litigation.  (Erickson Aff., at ¶ 12.)

---

[2] A copy of the March 26, 2004 letter is attached to the Erickson Affidavit as Exhibit B.

On April 15, 2004, Electric Boat's counsel again spoke with Attorney Feigenbaum on the telephone and he reported that the Leeds Litigation Documents were available for review and inspection. (Erickson Aff., at ¶ 13) Later that same day, Electric Boat's counsel sent a fax to Attorney Feigenbaum indicating that he was available to come to Attorney Feigenbaum's office in New York to review the Leeds Litigation Documents. (Erickson Aff., at ¶ 14.)[3]

Not having received a definite answer regarding Plaintiff's position with respect to the other documents identified in the March 26, 2004 letter, counsel for Electric Boat on April 16, 2004, sent another letter to Attorney Feigenbaum again requesting that Plaintiff produce the documents Mr. Peragine identified during his deposition. (Erickson Aff., at ¶ 15.)[4]  On Monday, April 19, 2004, Attorney Feigenbaum sent a letter to Electric Boat's counsel indicating that he would produce none of the documents identified in the March 26, 2004 letter.(Erickson Aff., ¶ 16.)[5]  In particular, Attorney Feigenbaum reversed his position regarding the Leeds Litigation Documents and asserted, for the first time, that such litigation "is irrelevant and immaterial to this action and has no bearing on it." (April 19, 2004 letter, item 3.)

## II.   ARGUMENT

Rule 26 of the Federal Rules of Civil Procedure provides that parties "may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . ." Fed. R. Civ. P. 26(b)(1). Civil discovery under Rule 26 exists "to avoid surprise and possible miscarriage of justice, to disclose fully the nature and scope of the controversy, to narrow, simplify, and frame the issues involved, and to enable a party to obtain information

---

[3] A copy of the April 15, 2004 fax is attached to the Erickson Affidavit as Exhibit C.

[4] A copy of the April 16, 2004 letter is attached to the Erickson Affidavit as Exhibit D.

[5] A copy of the April 19, 2004 letter is attached to the Erickson Affidavit as Exhibit E.

needed to prepare for trial." 8 Charles Alan Wright et al., Federal Practice and Procedure, § 2001, (2d ed. 1994 & Supp. 1997).

    1.    Documents concerning the leases of Executive Airlines' Aircraft

During his deposition, Mr. Peragine agreed to produce documents evidencing leases between Executive Airlines and the entities from which Executive Airlines leased its aircraft. At no time did he suggest that such written leases did not exist nor did Mr. Peragine take the position that such documents are not relevant to the issues in this case. (Peragine Tr., at 18-20.) Such leases are clearly relevant here. Plaintiff continues to claims that a component of its damages is the "start up" costs it incurred in order to be in a position to perform the services required under the Electric Boat contract. Without conceding that this is a valid component of Plaintiff's damages, Electric Boat is entitled, and Plaintiff is required, to produce any and all documents upon which its damage calculation is based. See Fed. R. Civ. Pro. 26(a)(1)(B) and (C).

The plaintiff in this action is Executive Airlines. A component of Plaintiff's alleged start-up and operational costs is the cost of acquiring or, in this case, the cost of leasing the aircraft Mr. Peragine alleges he acquired to service the Electric Boat contract. These documents are beyond doubt discoverable. Plaintiff does not argue otherwise but simply asserts that "there were no written leases." (See Attorney Feigenbaum's April 19, 2004 letter, item 1.) With all due respect to Attorney Feigenbaum, it is difficult to believe that such lease documents, essential to Plaintiff's claim of acquisition costs incurred by Plaintiff, simply do not exist, especially in light of Mr. Peragine's sworn deposition testimony which unequivocally suggests that such written leases exist and that he would produce them. (Peragine Tr., at 18-20)

Plaintiff is obligated to produce these written leases. Plaintiff should have produced these documents in connection with its initial disclosures which are required pursuant to Rule 26(a) of the Federal Rules of Civil Procedure. Mr. Peragine testified that such documents exist and that they would be produced. Plaintiff cannot now avoid production of these documents by claiming, through its attorney, that such documents do not exist.

2. <u>Documents evidencing a "joint venture" created in January of 2000 which was to own all of the equipment and the operating certificate for the various Executive Airlines aircraft</u>

Based on Mr. Peragine's deposition testimony, these documents are clearly relevant to this litigation. Mr. Peragine testified that "Executive Airlines was the operating company of the joint venture that owned all of the equipment and the operating certificate." (Peragine Tr., at 22.) Mr. Peragine further testified that Mr. Michael Leeds was "one of the people contemplating an investment in" this joint venture. (Peragine Tr., at 40.) This "joint venture" comprised all of the related Millennium companies, one of which is the plaintiff in this case, Executive Airlines. (<u>Id.</u>, at 40.) Mr. Peragine also stated that Mr. Leeds invested in this "joint venture." (<u>Id.</u>, at 41.)

During the second day of his deposition, Mr. Peragine testified that one of the aircraft he alleges Executive Airlines acquired in order to perform the Electric Boat contract was an asset of this joint venture or partnership. (Peragine Tr., at 270.) Mr. Peragine also testified that: (1) he had discussions regarding this potential joint venture during the same time period when he was entering into the Electric Boat contract; (2) such discussions dealt with the subject of Mr. Peragine trying to grow his air charter business; (3) there were written plans as to how Mr. Peragine intended to grow this business; and (4) Mr. Peragine had discussions with this joint venturer concerning Electric Boat and Executive Airlines' planned contract with Electric Boat. (Peragine Tr., at 272-274.) In addition, discussions with certain Electric Boat employees have

revealed that Mr. Leeds was involved in the negotiations with Electric Boat before the contract between these parties was finalized.

The joint venture documents are discoverable because they are reasonably calculated to lead to the discovery of admissible evidence. Here, Executive Airlines continues to assert that part of its damages include start-up costs and actual damages it incurred as a result of the termination of the Electric Boat contract. The documents concerning this joint venture may well show how those costs were incurred and by what entity. It is possible, for instance, that certain of the costs that Plaintiff alleges it incurred, such as hangar costs, costs associated with acquiring aircraft, maintenance costs, inspection costs, insurance, staffing, and debt service, (see Amended Complaint, ¶ 34), were in fact incurred, if at all, by a separate entity of the joint venture or were costs shared by a number of entities other than the plaintiff in this action. Electric Boat must be given an opportunity to inspect such documents to determine the true nature of these alleged costs. Also, it is likely that by an examining these documents counsel for Electric Boat will discover the identity of individuals, such as other joint venturers, who may have discoverable information.

    3.    <u>Documents regarding litigation between Executive Airlines and Mr. Michael Leeds involving this "joint venture"</u>

The documents regarding the litigation between Executive Airlines and Mr. Leeds is similarly discoverable. As stated above, such documents may lead to the discovery of information regarding the costs incurred by Plaintiff that it alleges it should recover in this case. More importantly, however, such documents may contain admissions by Mr. Peragine which are contrary to the positions he asserts here. For instance, Mr. Peragine has already testified that the Leeds litigation involved, among other things, the aircraft that Mr. Peragine alleges he acquired

in order to perform the Electric Boat contract. (Peragine Tr., at 270.) Attorney Feigenbaum informed counsel for Electric Boat that Mr. Peragine was deposed during the Leeds litigation. Such sworn deposition testimony and pleadings filed by Executive Airlines in that case may contradict Plaintiffs claims in this litigation.

### III.     CONCLUSION

For all of these reasons, Electric Boat respectfully requests that the Court make the following order:

1.     That Executive Airlines produce immediately to Electric Boat: (a) the leases concerning the aircraft Mr. Peragine alleges were acquired to perform the Electric Boat contract; (b) all documents concerning the joint venture concerning Executive Airlines; and (c) all documents concerning the litigation between Executive Airlines and Mr. Michael Leeds;

2.     That Executive Airlines incur the cost of copying and shipping such documents to Electric Boat's counsel; and

3.     That Executive Airlines pay to Electric Boat the reasonable expenses, including attorneys' fees, caused by Executive Airlines failure to produce the requested documents.

>DEFENDANT,
>ELECTRIC BOAT CORPORATION
>
>By_____
>     Francis H. Morrison (ct04200)
>     William H. Erickson (ct18117)
>     Day, Berry & Howard LLP
>     CityPlace I
>     Hartford, Connecticut 06103-3499
>     Tel. (860) 275-0100
>     Fax (860) 275-0343
>     fhmorrison@dbh.com
>     wherickson@dbh.com
>     Its Attorneys

-9-

## **CERTIFICATION**

      THIS IS TO CERTIFY that a copy of the foregoing was mailed this 21st day of April, 2004, postage prepaid, to:

Leonard Feigenbaum, Esq.
1670 Old County Road
Suite 224
Plainview, NY  11803

                                                                                                              _____
                                                                                                               William H. Erickson