# EXHIBIT A

Page 188

1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF CONNECTICUT
2

3

4                                        COPY
                                  )
5    EXECUTIVE AIRLINES,           )
                Plaintiff,         )
6                                  )        Civil Action No.
     VS                            )        20-CV-194(GLG)
7                                  )
     ELECTRIC BOAT CORPORATION,    )
8           Defendant.             )
                                   )        Volume 2
9

10

11

12

13

14          DEPOSITION OF: MICHAEL S. PERAGINE

15          DATE:          MARCH 20, 2004

16          HELD AT:       DAY, BERRY & HOWARD, LLP
                          ONE CANTERBURY GREEN
17                        STAMFORD, CONNECTICUT

18

19

20

21

22

23      Reporter:  JAMES A. SCALLY, RPR, CRR, LSR #80
                  BRANDON SMITH REPORTING SERVICE
24                    44 Capitol Avenue
                  Hartford, Connecticut 06106
25                    (860) 549-1850

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

3/20/2004

Michael S. Peragine

Page 269

```
 1       Q    All right.  Let's just -- so I've got these
 2   right, okay, because we went into this because we were
 3   talking about the acquisition issues --
 4       A    Yes.
 5       Q    -- for Golf Juliet.  The acquisition of Golf
 6   Juliet is page 3 through page 15, right?
 7       A    Yes.
 8       Q    Okay.
 9            MR. FEIGENBAUM:  Is that it over there?
10            THE WITNESS:  No.
11            MR. MORRISON:  That's it.
12       Q    And then the sale is --
13            MR. FEIGENBAUM:  Page 27.
14       Q    -- 27 to 31; is that right?
15       A    Yes.
16       Q    Okay.  One other question about pages 3
17   through 15, there's a Bates number down in the lower
18   right-hand corner, MSP 0113, and it goes through to
19   whatever the -- whatever the last one is, MSP 0125.
20   Has this document been involved in production in
21   litigation somewhere?
22       A    Yes.
23       Q    Okay.  And was the litigation about the
24   airplane or about something else?
25       A    About something else.  Well, the airplane
```

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

3/20/2004                                                    Michael S. Peragine

Page 270

```
 1    obviously was involved, but it was about something
 2    else.
 3         Q    What was the subject matter of the
 4    litigation?
 5         A    A partnership dispute.
 6         Q    Okay.  This is the one with your joint
 7    venture you told me about?
 8         A    Yes.
 9         Q    And how was this aircraft involved in a
10    partnership dispute?
11         A    It was one of the assets.
12         Q    And this is an aircraft that you told me you
13    bought to do the EB contract?
14         A    Yes.
15         Q    Was your contract with Electric Boat produced
16    in the partnership dispute?
17         A    I don't know.
18         Q    Okay.
19         A    It wasn't an issue that I can remember.
20         Q    Well, I understand that.  That wasn't exactly
21    my question.  My question was was it produced.
22         A    I don't remember.
23         Q    And the partnership dispute is something --
24    this is with a joint venturer I think you told me?
25         A    Yes.
```

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

Page 271

1        Q     And you gave me the fellow's name. I don't

2     remember.

3        A     A potential joint venturer, I told you, yes.

4        Q     And the joint venture discussions took place

5     in '99 or 2000; is that right?

6        A     One of the subjects of argument, of

7     contention.  Where are we going?

8        Q     Well, I'm going with this.  I want to know,

9     you made some claims about some losses and

10    difficulties.  I want to know what else is out there

11    that could be responsible for them.  Maybe somebody

12    else has got some ideas about that who sued you, you

13    know.  That's where I'm going with it.  I know you

14    refused to answer the questions the last time or you

15    declined.  You declined.

16       A     Yes.

17       Q     Are you refusing to answer them today also?

18       A     You haven't asked a question that I've

19    refused yet.

20       Q     Okay.  Was the joint venture or the proposed

21    or the discussed joint venture, let's put it that way,

22    so you are not assuming that it existed, okay, did

23    those discussions go on in late 1999?

24       A     The argument that we had was whether -- was

25    when they took place and what they were about, and it

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

3/20/2004                                                    Michael S. Peragine

Page 272

1    was eventually resolved that the joint venture --

2                   MR. FEIGENBAUM:  Would you try answering

3    the question?

4                   THE WITNESS:  I don't -- ask it again.

5                   MR. MORRISON:  Okay.

6                   THE WITNESS:  I'm having difficulty --

7                   MR. FEIGENBAUM:  Read the question back.

8                   MR. MORRISON:  Read the question back.

9    That's fine.

10                   (Question read.)

11       A    There were discussions in late 1999, yes.

12                   MR. FEIGENBAUM:  Is your answer yes?

13                   THE WITNESS:  Yes.

14                   MR. FEIGENBAUM:  Try using that word in

15    the future.

16       Q    Mr. Peragine, did the discussions, whether

17    they were about a joint venture or not, did they deal

18    with the subject of you trying to grow your business,

19    Executive Airlines?

20       A    Yes.

21       Q    And were there -- were there -- withdrawn.

22            Were there discussions about how that

23    investor would participate in your plans to grow your

24    business?

25                   MR. FEIGENBAUM:  I object to the term

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

3/20/2004                                                                Michael S. Peragine

Page 273

1     "investor."  There was only a reference to a joint

2     venturer.

3                  MR. MORRISON:  I'm not trying to use a

4     term of art.  I'm not trying to characterize it.

5                  MR. FEIGENBAUM:  Okay.

6                  MR. MORRISON:  In fact, I don't know

7     what it's about, so I'm in the dark a little bit.

8     Let's say joint venturer or investor.  How's that?

9                  MR. FEIGENBAUM:  Okay.

10                 MR. MORRISON:  I'm not particularly

11    interested in the label, all right?

12                 MR. FEIGENBAUM:  Yes.

13    BY MR. MORRISON:

14        Q     Let me ask the question.  Were there

15    discussions with this joint venturer about how you

16    planned to grow your business?

17        A     No.

18        Q     Were there any written plans in the fall of

19    1999 about growing your business?

20        A     What business are you talking about?

21        Q     Your charter business, your aviation

22    business.  Is that what the joint venture was about?

23    Did it concern this business, the business that Golf

24    Juliet, the airplane, was going to be involved in?

25        A     Yes.

Brandon Smith Reporting

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

3/20/2004                                    Michael S. Peragine

Page 274

1        Q    Did you provide this joint venturer, this

2    potential joint venturer, with your plans to grow your

3    business?

4                MR. FEIGENBAUM:  Are you talking about

5    documents or are you -- what are you referring to?

6        Q    Documents.  Start with documents.  Go ahead.

7                (Discussion off the record.)

8        Q    Did you discuss with your potential joint

9    venturer Electric Boat and your planned contract with

10   them?

11       A    Yes.

12       Q    Did you discuss with your joint venturer

13   other plans for expansion other than Electric Boat?

14       A    Other plans for the joint venture?

15       Q    Yes.

16       A    You used words that, you know, other plans

17   for the joint venture.  We discussed the joint venture.

18       Q    You had something other than Electric Boat, I

19   take it?

20       A    Other plans?

21       Q    Yes.  To grow your business.

22       A    Yes, to grow the joint venture, yes.

23       Q    And the joint venture dealt with the air

24   charter business we're talking about?

25       A    Yes.

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

3/20/2004                                                    Michael S. Peragine

Page 275

1          Q     Did you -- withdrawn.

2                What were some of the other considerations,

3     other things, other courses, that were considered to

4     grow your business, grow the joint venture, other than

5     Electric Boat?

6                     MR. FEIGENBAUM:    I'm having difficulty

7     seeing the relevance of that.

8                     MR. MORRISON:    We won't know.    This is

9     discovery.    I don't have to show relevance, you know.

10    This is pretty closely related to Electric Boat, and

11    it's pretty closely related to what he says about his

12    business.    And I think we're getting pretty close to

13    the point where I'm going to ask you, and maybe I'll

14    have to ask the court, to order the production of a

15    complaint and the documents so I can see what they are.

16    I understand there's a protective order, obviously,

17    I've been told that.    Is that true?

18                    MR. FEIGENBAUM:    I'm not aware, but then

19    again, I'm not aware of the -- I haven't seen the

20    transcript of the previous deposition.

21                    MR. MORRISON:    I understand.    I

22    understand.    But I --

23    BY MR. MORRISON:

24         Q     Is there a protective order?

25                    MR. FEIGENBAUM:    Do you mean in the

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

3/20/2004                                    Michael S. Peragine

Page 276

1    other --

2                    MR. MORRISON:  Yes, in the joint venture

3    lawsuit.  There is a lawsuit out there.

4                    MR. FEIGENBAUM:  A confidentiality

5    order, yes.  That is correct.

6                    MR. MORRISON:  What does it cover?  Does

7    it cover the complaint, the answer -- what does it

8    cover?

9                    MR. FEIGENBAUM:  My recollection is it

10   covers the whole thing.  I couldn't swear to it.  But

11   my recollection is certainly the settlement, and I

12   don't remember what else about the litigation.  I'd

13   have to check it myself.

14                   MR. MORRISON:  I'd like to make a

15   request that you do that, Lee, and I will tell you that

16   it's my view, given the claims here, the various claims

17   that are being made, that the claims in connection with

18   that joint venture may lead to the discovery of

19   relevant and admissible evidence.

20                   MR. FEIGENBAUM:  With regard to what?

21                   MR. MORRISON:  With regard to this

22   lawsuit.

23                   MR. FEIGENBAUM:  With regard to what in

24   this lawsuit?

25                   MR. MORRISON:  With regard to Electric

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

Page 277

1    Boat, with regard to the reasons that this business

2    didn't do well, and --

3                    MR. FEIGENBAUM:  Talking in regard to

4    damages?

5                    MR. MORRISON:  Yes.

6                    MR. FEIGENBAUM:  Okay.

7                    MR. MORRISON:  I'm talking about

8    damages.

9                    MR. FEIGENBAUM:  Okay.

10                   MR. MORRISON:  I'm talking about

11   damages.

12                   MR. FEIGENBAUM:  Okay.

13                   MR. MORRISON:  So I'm a little bit at a

14   loss about what -- what to ask you for because I --

15   because I don't know, other than what he's told me on

16   the record, about what the claims are in the lawsuit.

17   I'm not so interested -- I'm not so interested in the

18   settlement.  I'm interested in the claims that

19   someone's made.

20   BY MR. MORRISON:

21        Q    I understand, Mr. Peragine, that the -- the

22   alleged joint venturer is the one who sued you; is that

23   right?

24                   MR. FEIGENBAUM:  That's correct.

25        Q    I take it that you can't tell me the nature

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

3/20/2004                                              Michael S. Peragine

Page 278

1    of the claims today because of the confidentiality

2    order; is that right?

3              MR. FEIGENBAUM:  I'm not positive of

4    that.  I know the settlement definitely is a matter or

5    subject to the confidentiality agreement and order.  As

6    to the claims, I'm not sure whether that's the case or

7    not.  I will say for whatever it's worth, my

8    recollection of the case is that I don't see any

9    relevance whatsoever here.

10             MR. MORRISON:  But that's not, you know,

11   that's not the question.

12             MR. FEIGENBAUM:  I understand.

13             MR. MORRISON:  So I take it that you

14   would advise him not to answer questions today about

15   the nature of the claims and what happened in

16   litigation other than settlement?

17             MR. FEIGENBAUM:  Until I have checked

18   the confidentiality documents, yes, I would do that.

19             MR. MORRISON:  I think that's a

20   reasonable thing, but I'm going to obviously reserve my

21   right to come back and assert that and question about

22   it, okay?

23             MR. FEIGENBAUM:  All right.

24             MR. MORRISON:  But I would like you to

25   advise me about what the confidentiality issues are

2c43a241-4a96-4b63-9642-78ce0486c0ab

Executive Airlines vs Electric Boat Corp.

3/20/2004                                                            Michael S. Peragine

Page 279

1    first, and I would, of course, would be perfectly happy

2    to execute any confidentiality agreement I had to

3    execute, obviously subject to using this at trial or

4    with an expert who might also sign a confidentiality

5    agreement.  So I wanted you to know that I'm willing to

6    do that, okay?

7                    MR. FEIGENBAUM:  All right.

8    BY MR. MORRISON:

9        Q    Mr. Peragine, the losses that are reflected

10   here, the 545,000 and the 339,312 for a total of

11   $884,000, have they been reported on the corporation's

12   tax returns?

13       A    Not yet.

14       Q    And is that because they've just recently

15   been sold?

16       A    They wouldn't be recorded on the tax return

17   until next year, next return.

18       Q    So what you're saying to me is that in -- as

19   of March 31, 2001, those losses in value had not been

20   realized, realized meaning --

21       A    Taxwise you mean?

22       Q    Yes.  There hadn't been a transaction that

23   set them in stone.

24       A    That's correct.

25       Q    Okay.  Who does your taxes now?

2c43a241-4a96-4b63-9642-78ce0486c0ab

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT



_____X

EXECUTIVE AIRLINES          :     DOCKET NUMBER

VS.                         :     02-CV-194

ELECTRIC BOAT CORPORATION   :     (GLG)

_____X

VOLUME I, PAGES 1 - 187


DEPOSITION OF:  MICHAEL PERAGINE

DATE:  DECEMBER 16, 2003

HELD AT:  DAY, BERRY & HOWARD

ONE CANTERBURY GREEN

STAMFORD, CONNECTICUT



Reporter:  Margaret A. Sharpe, LSR 00023

BRANDON SMITH REPORTING SERVICE

44 Capitol Avenue

Hartford, CT  06106

(860) 549-1850

john@brandonreporting.com



BRANDON SMITH REPORTING SERVICES

66b0f946-51f5-424e-a10c-f1b507aa276f

Executive Airlines vs Electric Boat

12/16/2003                                                           Michael Peragine

Page 18

 1    to each of the airplanes.

 2            Q       Some of them were owned and some of them

 3    were leased?

 4            A       All of them were leased to Executive

 5    Airlines.  The Dauphin was operated by Executive Airlines.

 6            Q       Okay.  So what you are saying to me is that

 7    the entities that we've talked about own these aircraft and

 8    they were leased to Executive?

 9            A       Yes, correct.

10            Q       Okay.  So when I asked you earlier if

11    Executive held any leases, the answer is:  It did have

12    lease hold interests in aircrafts?

13            A       I thought you meant real property.  I'm

14    sorry.

15            Q       I just said "lease," Mr. Peragine.

16            A       I stand corrected.  Yes, it had leases.

17            Q       That's why I sort of went off on a tangent

18    the wrong way perhaps.

19            A       I'm sorry.

20            Q       And I want to make sure I have got it

21    straight because the plaintiff in this lawsuit is not any

22    of these other entities, is it?

23            A       It's -- the plaintiff in the lawsuit is

24    Executive Airlines.

25            Q       Right.  And that's Millenium D/B/A Executive

66b0f946-51f5-424e-a10c-f1b507aa276f

Executive Airlines vs Electric Boat

12/16/2003                                                            Michael Peragine

Page 19

1   Airlines?

2          A        That's correct.

3          Q        Okay.  So Millenium D/B/A Executive Airlines

4   didn't own any of these aircraft between April 2000 and

5   April 2001?

6          A        That's correct.

7          Q        It leased these aircraft between April 2000

8   and April of 2001?

9          A        That's correct; leased and operated them,

10  correct.

11         Q        Okay.  Right.  Okay.  And, therefore, there

12  were contracts between these entities that constituted

13  leases of the aircraft to Executive?

14         A        I owned all of the entities except Dauphin.

15  By the way, that is Millenium Dauphin Holdings.

16         Q        That's fine.

17         A        And I only owned a very small piece of that.

18  The rest I owned all of the entities, so yes, they were

19  operated -- the operating company was Executive Airlines.

20         Q        Okay.  I don't think I saw in the documents

21  you gave me copies of the leases between --

22         A        Myself and myself.

23         Q        Well, whatever they were, they are contracts

24  that specify the terms of the leases, right?

25         A        Yeah, I will provide them for you.

66b0f946-51f5-424e-a10c-f1b507aa276f

Executive Airlines vs Electric Boat

Page 20

1          Q       Okay.  I want you to give those to your

2     lawyer and have him give them to me.

3          A       Okay.

4          Q       You did provide to me some information about

5     the purchase price of some of those airplanes, right?

6          A       I did.

7          Q       Okay.  That purchase price of those

8     airplanes, the Jet Stream 3100s, including the accident

9     airplane, that purchase price was paid by, not by Millenium

10    D/B/A Executive Airlines, right?  It was paid by another

11    entity, the entity that owned the airplanes?

12         A       Yes.

13         Q       Okay.  So Executive's interest in the

14    airplanes was not by virtue of having paid the purchase

15    price.  It was by virtue of holding a lease?

16         A       Yeah, net-net-net lease, correct.

17         Q       And when you say to me, Mr. Peragine, a

18    "net-net-net lease," what are we talking about?

19         A       The operating company was responsible for

20    the entire financial dynamics of the aircraft.

21         Q       Okay.  And so the entire financial dynamics

22    of the aircraft meant operating costs, first, right?

23         A       Meant everything.

24         Q       Well, just to make sure I understand what

25    that means, okay, so bear with me.  Meant operating cost?

66b0f946-51f5-424e-a10c-f1b507aa276f

Executive Airlines vs Electric Boat

12/16/2003                                          Michael Peragine

Page 21

1        A       Um-huh.

2        Q       You have to say yes or no.

3        A       Yes.

4        Q       If we have um-huh, it's not going to help

5   us.

6        A       Yes.

7        Q       Operating costs, and it would include --

8   were there lease payments, as such?

9        A       It includes -- would include a total

10  reconciliation and all of the expenses, costs, and revenue

11  with what would be on the books of the operating company.

12       Q       Okay.  And that means the "lease payments"

13  would include what?

14       A       I don't believe there were -- I'm not sure

15  there were any lease payments.

16       Q       That's okay.  That's what I'm trying to find

17  out.  Maybe that will be clearer when I see the contracts.

18  Let me ask you another question.  Okay?

19       A       Um-huh.

20       Q       Were these airplanes, when they were

21  purchased, how were they financed?  How was the purchase

22  financed?

23       A       Which one?

24       Q       Okay.  Let's talk about them.  How about the

25  accident aircraft, how was the purchase financed?

66b0f946-51f5-424e-a10c-f1b507aa276f

Executive Airlines vs Electric Boat

12/16/2003                                              Michael Peragine

Page 22

1        A        I owned the accident aircraft prior to the

2    formation of Millenium Aviation and prior to formation --

3    all of the Millenium companies were formed at the

4    Millenium, January of 2000.  I transferred the aircraft

5    from corporations that owned them prior to then into the

6    Millenium companies, and it was to be considered a joint

7    venture.  Executive Airlines was the operating company of

8    the joint venture that owned all of the equipment and the

9    operating certificate.

10       Q        Is there a document that reflects the joint

11   venture?  The formation of the joint venture?  A piece of

12   paper?

13       A        There are documents that acknowledge it.

14   I'm not sure which document actually created it.

15       Q        Would you provide those to your lawyer for

16   me, please?

17       A        I think I provided them to you already, I

18   guess.

19       Q        I did not see anything that looked like

20   that.  When we get through the stuff, maybe, if you can,

21   point it out to me.

22       A        Okay.

23       Q        That will be fine.

24       A        Okay.

25       Q        If you can't, I would like you to give it to

66b0f946-51f5-424e-a10c-f1b507aa276f

Executive Airlines vs Electric Boat

12/16/2003                                                                Michael Peragine

Page 40

```
 1        Q       Who is Michael -- the jury will decide what
 2   is relevant.  Who is Michael Leads?
 3        A       Just giving my opinions.
 4        Q       Who is Michael Leads?
 5        A       Who was he?  He was one of the people
 6   contemplating an investment in the company.
 7        Q       When did you first talk with him about
 8   investment of the company?
 9        A       November.
10        Q       1999?
11        A       Yes, um-huh.
12        Q       You have to say yes or no.
13        A       November of 1999.
14        Q       You went um-huh.  And when you say
15   contemplating an investment in the company, are you talking
16   about the joint venture?
17        A       Yes.
18        Q       Okay.  And the joint venture was called
19   Millenium Aviation?
20        A       The Millenium companies were the joint
21   venture, yeah.
22        Q       Okay.  Have you and Mr. Leads had
23   litigation --
24        A       Yes.
25        Q       -- about the joint venture?
```

66b0f946-51f5-424e-a10c-f1b507aa276f

Executive Airlines vs Electric Boat

12/16/2003                                                    Michael Peragine

Page 41

1        A     Yes.

2        Q     Did Mr. Leads put money into the joint

3    venture?

4        A     Yes.

5        Q     How much?

6        A     Well, that depends, because he put money up

7    and then, you know, there was litigation and it was

8    eventually resolved.  I don't see that this has anything to

9    do with Electric Boat whatsoever.

10       Q     It might, Mr. Peragine.

11       A     There's a limit on how far I'm going to go.

12       Q     We will call the Judge.

13       A     Can you?

14             MR. MAHLER:  You can do that.  I'm just

15    letting you go.  I don't think most of this has much to do

16    with it.

17             MR. PERAGINE:  You can do that.  We have an

18    agreement that sealed the settlement discussions, and I

19    don't see a reason to unseal them, having anything to do

20    with what you're inquiring about.

21    BY MR. MORRISON:

22       Q     Did you sue him or did he sue you?

23       A     I think I'm going to stop here.  You get a

24    Judge and ask.

25       Q     You decline to answer that question?

Brandon Smith Reporting Service

66b0f946-51f5-424e-a10c-f1b507aa276f

Executive Airlines vs Electric Boat

12/16/2003                                              Michael Peragine

Page 42

1         A       Yes.

2         Q       Okay.  So you understand, Mr. Peragine, why

3    I am making these inquiries of you and why I intend to file

4    an appropriate motion, you made claims of damage to your

5    business in connection with the Electric Boat contract and

6    whatever happened with it.  At least that's the way I

7    understand the papers that you've given us.

8                And it's my position that other lawsuits

9    that you've got that relate to this business which you say

10   Electric Boat was an important part, may well provide

11   relevant information about what the problems were with the

12   business, about somebody else's position, and about

13   difficulties with the business.

14               MR. MAHLER:  How is that relevant --

15               MR. MORRISON:  Let me finish.  All right.

16   Just let me finish.  And it may well provide us with

17   relevant information.

18               MR. MAHLER:  Mr. Morrison, can I just say

19   something?  I sat here now for an hour.  I've let you,

20   without interruption, ask questions for almost an hour that

21   I think most of them were totally irrelevant to this

22   lawsuit.

23               MR. MORRISON:  You may.

24               MR. MAHLER:  If you want to go for rulings,

25   that is fine.

Brandon Smith Reporting Service

66b0f946-51f5-424e-a10c-f1b507aa276f

Executive Airlines vs Electric Boat

12/16/2003                                                    Michael Peragine

Page 43

1              MR. MORRISON:  You may but you know what,

2    I'm going to ask the questions because --

3              MR. MAHLER:  Fine.

4              MR. MORRISON:  -- he's making claims of

5    financial harm.

6              MR. MAHLER:  It is your right.

7              MR. MORRISON:  It is my right.

8              MR. MAHLER:  Ask them.

9              MR. MORRISON:  So, Mr. Peragine, that's

10   where I am coming from.  Okay.  Where I am coming from is

11   that I want to know if there are admissions, I want to know

12   if there are other claims about the reasons that your

13   business failed, and the reasons that you lost money, and

14   the significance or not of Electric Boat in connection with

15   those things.  So that's where I am going.

16             Do I understand that you are going to

17   instruct him not to answer any and you are going to decline

18   to answer any questions about the litigation with Mr.

19   Leads, who I understand was an investor in the Millenium

20   Companies, which was a joint venture which you've told me

21   relates to -- was part of the plan for Electric Boat?  If

22   that's your position, you tell me; and I will reserve my

23   rights to file a motion and move on.

24             MR. PERAGINE:  My position is the things

25   that happened in the years subsequent to your termination

66b0f946-51f5-424e-a10c-f1b507aa276f

Executive Airlines vs Electric Boat

12/16/2003                                                    Michael Peragine

Page 44

1     of a contract are totally irrelevant to the issue and they

2     were -- there were settlement discussions which are not

3     permissible for you to be used for you to be involved in.

4                     MR. MAHLER:  Why don't we just put it on the

5     record.

6                     MR. PERAGINE:  And the record was sealed.

7                     MR. MAHLER:  What year did that happened?

8     BY MR. MORRISON:

9          Q      Well, first of all, my understanding is

10    that these investors were involved in 1999, which is prior

11    to your contract with Electric Boat, number one.  And

12    during the period when you say you were talking to them --

13         A      You are incorrect.

14         Q      Not all subsequent events --

15         A      You are incorrect.

16         Q      Not all subsequent events, number one?

17         A      You are incorrect.

18         Q      Okay.  And, number two, the issue about

19    settlement documents is that sometimes they are shielded

20    and sometimes they are not.  The law does not provide a

21    blanket shield for settlement discussions or documents

22    because sometimes there are factual admissions in those

23    documents.

24         A      Well, there are none.  I will testify to

25    that.

66b0f946-51f5-424e-a10c-f1b507aa276f

# EXHIBIT B

# Day, Berry & Howard LLP

C O U N S E L L O R S   A T   L A W

Francis H. Morrison III
Direct Dial:  (860) 275-0231
E-mail:  fhmorrison@dbh.com

March 26, 2004

Leonard Feigenbaum, Esq.
1670 Old County Road
Suite 224
Plainview, NY  11803

Re:     Executive Airlines v. Electric Boat

Dear Lee:

It was good to speak with you on the phone last week.  As we discussed, and as I
mentioned during the deposition last Saturday and on December 16, 2003, there were certain
categories of documents that we had requested from your client that still have not been produced
to us.  We would very much appreciate it if you could produce these in the very near future.

- Documents evidencing the leases between Millennium Aviation Services d/b/a
  Executive Airlines, as lessee, and Peragine's operating entities (JCM
  Development Corp., Dauphin Holdings, LLC, Millennium Jet Stream Holdings,
  Partner Aviation, or any other holding entity, as lessor) (pages 18-20);

- Documents evidencing the "joint venture" created in January of 2000 which was
  to own all of the equipment and the operating certificate for the various Executive
  Airlines aircraft (page 22);

- Documents regarding the litigation between Mr. Peragine and Mr. Michael Leads
  involving the joint venture and the settlement of that litigation (pages 40 – 44);

- Contract between Executive Airlines and Caesar's Palace for the calendar year
  1999 (Peragine testified that there was no contract for the calendar year 2000 but
  Executive Airlines provided services to Caesar's in 2000 based on the same
  relationship evidenced by the 1999 contract) (pages 96-97);

- Written proposals made to other potential customers for charter services in the fall
  of 1999 and any correspondence related to such proposals (pages 98-99);

- Contract or proposal between Executive Airlines and Harrah's entered into after
  cancellation of the Caesar's contract (Peragine testified that Caesar's cancelled its

Day, Berry & Howard LLP

Leonard Feigenbaum, Esq.
March 26, 2004
Page 2

       arrangement with Executive Airlines shortly after the crash but that Harrah's soon thereafter entered into an arrangement with Executive Airlines so that the revenue from Harrah's essentially replaced the lost revenue from Caesar's cancellation) (pages 100-102);

- Listing agreements or other related documents or correspondence with Amstat or other brokers for the sale of Executive Airlines airplanes after the May 21, 2000 crash (pages 149-150).

       In addition, please provide us with Mr. Afeld's last known address. We want to depose him under circumstances where he has reasonable access during his deposition to the accounting materials to be able to respond to questions about the damages materials produced by plaintiff.

       It is my understanding that you will review the discovery that we have provided to you and you will let us know what additional discovery, if any, you require from my client. As you know, we have now agreed to an extension of the discovery deadline until May 31, 2004. Please produce these documents to us as soon as possible so that if additional discovery is necessary as a result of our review of those documents, we will have sufficient time to complete such discovery before the May 31, 2004 deadline.

       Please call me with any questions or concerns.

                          Very truly yours,

                          Francis H. Morrison III

FHM:gz
cc:    William H. Erickson, Esq.

**EXHIBIT C**

FaxID: 42276

Time In                                                                                          Time Delivered

# FAX TRANSMISSION

## Day, Berry & Howard LLP

CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
Fax: (860) 275-0343

**From:** William H. Erickson                **Phone #:**  860-275-0688
**Date:** April 15, 2004                        **Pages:**  _1_  page(s), including cover page
**Subject:** Executive Airlines v. Electric Boat

| NAME | COMPANY | FAX NO. | PHONE NO. |
|------|---------|---------|-----------|
| Leonard Feigenbaum Esq. | | (516) 420-8444 | (516) 420-6900 |

## MEMO

Lee:

As we discussed on the phone today, I am available to come to your office to review the documents related to the litigation between Mr. Peragine and Mr. Michael Leeds.  As I understand it, those documents are in your office.  I am available on Monday and Wednesday morning.  Please let me know which day is better for you.

Billy

---

**If there is any problem during transmission
please call
(860) 275-0344**

*This Facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the addressee(s) named above.  If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited.  If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service.  Thank you.

Rev. 9/10/01
TimeKeeper No.    1991                              Client/Matter No.    028040-00140
Fax Dept: Domestic (15) #pgs. ___; Inter. (16) ___; Service (18) ___      Return To:    Gail Zahner

```
        ***********************
        ***   TX REPORT   ***
        ***********************


   TRANSMISSION OK

   TX/RX NO              2157
   CONNECTION TEL                   915164208444
   CONNECTION ID
   ST. TIME              04/15 16:51
   USAGE T               00'42
   PGS. SENT                1
   RESULT                OK
```

FaxID: 42276

Time In                                                    Time Delivered

# FAX TRANSMISSION

## Day, Berry & Howard LLP

CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
Fax: (860) 275-0343

**From:**  William H. Erickson          **Phone #:**  860-275-0688
**Date:**  April 15, 2004               **Pages:**  _1_  page(s), including cover page
**Subject:**  Executive Airlines v. Electric Boat

| NAME | COMPANY | FAX NO. | PHONE NO. |
|------|---------|---------|-----------|
| Leonard Feigenbaum Esq. | | (516) 420-8444 | (516) 420-6900 |

**MEMO**

Lee:

As we discussed on the phone today, I am available to come to your office to review the documents related to the litigation between Mr. Peragine and Mr. Michael Leeds. As I understand it, those documents are in your office. I am available on Monday and Wednesday morning. Please let me know which day is better for you.

Billy

---

**If there is any problem during transmission
please call
(860) 275-0344**

*This Facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent

**EXHIBIT D**

# Day, Berry & Howard LLP

### COUNSELLORS AT LAW

William H. Erickson
Direct Dial: (860) 275-0688
E-mail: wherickson@dbh.com

April 16, 2004

**VIA FACSIMILE**

Leonard Feigenbaum, Esq.
1670 Old County Road
Suite 224
Plainview, NY 11803

Re:     Executive Airlines v. Electric Boat
          Civil Action No. 02-CV-194 (GLG)

Dear Lee:

I have confirmed with my client that Electric Boat Corporation has produced all documents concerning the negotiation and formation of the contract between Electric Boat and Executive Airlines other than documents that are protected by the attorney-client privilege, the work product doctrine, or both. Despite the fact that we objected to the production of these types of documents on the basis that they are not relevant to any claim or defense of any party due to the fact that the contract contains an integration clause, these documents were produced to Attorney Mahler on or about October 2, 2003.

Shortly, I will be producing to you additional documentation regarding Electric Boat's damages claim. I expect to be able to produce these documents to you in the next week. If there are any other categories of documents which you believe Electric Boat has not provided to you in response to your document requests, please let me know immediately so that we can resolve any such dispute.

As we discussed yesterday, you will make available to us for inspection and copying all of the documents related to the litigation between Mr. Peragine and Mr. Michael Leeds other than the settlement agreement in that litigation which, as you reported to us, is covered by a confidentiality order. As you know, I am available on Monday and Wednesday next week to inspect those documents at your office. Please let me know which date is best for you.

Lastly, we have still not received a definitive answer from you regarding your client's position concerning the various documents (other than the Leeds litigation documents) we requested during Mr. Peragine's deposition which we highlighted for you in our letter dated March 26, 2004. If we do not hear from you by the end of business today regarding your

Day, Berry & Howard LLP

Leonard Feigenbaum, Esq.
April 16, 2004
Page 2

position on each of these categories of documents, we will file a motion to compel the production of them.  (I attach a copy of our March 26, 2004 letter for your convenience.)

     We look forward to your response.

                           Very truly yours,

                           William H. Erickson

WHE:gz
Enclosure
cc:    Francis H. Morrison III, Esq.

# Day, Berry & Howard LLP

COUNSELLORS AT LAW

Francis H. Morrison III
Direct Dial: (860) 275-0231
E-mail: fhmorrison@dbh.com

March 26, 2004

Leonard Feigenbaum, Esq.
1670 Old County Road
Suite 224
Plainview, NY 11803

Re:    Executive Airlines v. Electric Boat

Dear Lee:

It was good to speak with you on the phone last week. As we discussed, and as I mentioned during the deposition last Saturday and on December 16, 2003, there were certain categories of documents that we had requested from your client that still have not been produced to us. We would very much appreciate it if you could produce these in the very near future.

- Documents evidencing the leases between Millennium Aviation Services d/b/a Executive Airlines, as lessee, and Peragine's operating entities (JCM Development Corp., Dauphin Holdings, LLC, Millennium Jet Stream Holdings, Partner Aviation, or any other holding entity, as lessor) (pages 18-20);

- Documents evidencing the "joint venture" created in January of 2000 which was to own all of the equipment and the operating certificate for the various Executive Airlines aircraft (page 22);

- Documents regarding the litigation between Mr. Peragine and Mr. Michael Leads involving the joint venture and the settlement of that litigation (pages 40 – 44);

- Contract between Executive Airlines and Caesar's Palace for the calendar year 1999 (Peragine testified that there was no contract for the calendar year 2000 but Executive Airlines provided services to Caesar's in 2000 based on the same relationship evidenced by the 1999 contract) (pages 96-97);

- Written proposals made to other potential customers for charter services in the fall of 1999 and any correspondence related to such proposals (pages 98-99);

- Contract or proposal between Executive Airlines and Harrah's entered into after cancellation of the Caesar's contract (Peragine testified that Caesar's cancelled its

Day, Berry & Howard LLP

Leonard Feigenbaum, Esq.
March 26, 2004
Page 2

arrangement with Executive Airlines shortly after the crash but that Harrah's soon thereafter entered into an arrangement with Executive Airlines so that the revenue from Harrah's essentially replaced the lost revenue from Caesar's cancellation) (pages 100-102);

- Listing agreements or other related documents or correspondence with Amstat or other brokers for the sale of Executive Airlines airplanes after the May 21, 2000 crash (pages 149-150).

In addition, please provide us with Mr. Afeld's last known address. We want to depose him under circumstances where he has reasonable access during his deposition to the accounting materials to be able to respond to questions about the damages materials produced by plaintiff.

It is my understanding that you will review the discovery that we have provided to you and you will let us know what additional discovery, if any, you require from my client. As you know, we have now agreed to an extension of the discovery deadline until May 31, 2004. Please produce these documents to us as soon as possible so that if additional discovery is necessary as a result of our review of those documents, we will have sufficient time to complete such discovery before the May 31, 2004 deadline.

Please call me with any questions or concerns.

Very truly yours,

Francis H. Morrison III

FHM:gz
cc:    William H. Erickson, Esq.

FaxID: 43016

Time In

Time Delivered

# FAX TRANSMISSION

## Day, Berry & Howard LLP

CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
Fax: (860) 275-0343

**From:**    William H. Erickson          **Phone #:**    860-275-0688
**Date:**    April 16, 2004               **Pages:**    5      page(s), including cover page
**Subject:**    Executive Airlines v. Electric Boat

| NAME | COMPANY | FAX NO. | PHONE NO. |
|------|---------|---------|-----------|
| Leonard Feigenbaum Esq. | | (516) 420-8444 | (516) 420-6900 |

## MEMO

---

**If there is any problem during transmission**
**please call**
**(860) 275-0344**

*This Facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the addressee(s) named above.  If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited.  If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service.  Thank you.

Rev.  9/10/01
TimeKeeper No.    1991                    Client/Matter No.    028040-00140
Fax Dept:  Domestic (15) #pgs. ___; Inter. (16) ___; Service (18) ___    Return To:    Gail Zahner

41490266_1.DOC 028040-00140
April 16, 2004 11:48 AM

```
********************
***   TX REPORT   ***
********************

TRANSMISSION OK

TX/RX NO                1137
CONNECTION TEL                      915164208444
CONNECTION ID
ST. TIME                04/16 13:30
USAGE T                 01'32
PGS. SENT               5
RESULT                  OK
```

FaxID: 43016

Time In                                                    Time Delivered

# FAX TRANSMISSION

## Day, Berry & Howard LLP

CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
Fax: (860) 275-0343

**From:**    William H. Erickson            **Phone #:**    860-275-0688
**Date:**    April 16, 2004                  **Pages:**    5      page(s), including cover page
**Subject:** Executive Airlines v. Electric Boat

| NAME | COMPANY | FAX NO. | PHONE NO. |
|------|---------|---------|-----------|
| Leonard Feigenbaum Esq. | | (516) 420-8444 | (516) 420-6900 |

**MEMO**

**If there is any problem during transmission
please call
(860) 275-0344**

*This Facsimile contains PRIVILEGED AND CONFIDENTIAL INFORMATION intended only for the use of the addressee(s) named above. If you are not the intended recipient of this facsimile, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please immediately notify us by telephone and return the original facsimile to us at the above address via the U.S. Postal Service. Thank you.

Rev. 9/10/01
TimeKeeper No.    1991                    Client/Matter No.    028040-00140
Fax Dept: Domestic (15) #pgs. ___; Inter. (16) ___; Service (18) ___        Return To:    Gail Zahner

**EXHIBIT E**

# I. LEONARD FEIGENBAUM
*Attorney at Law*

1670 Old Country Road — Suite 224
Plainview, New York 11803
(516) 420-6900  Fax: 420-8444

19 April 2004

Francis H. Morrison III, Esq.
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499

By Fax: (860) 275-0343

Re: Executive Airlines v. Electric Boat

I finally met with Michael Peragine on Friday evening and reviewed with him the documents you requested in the seven bulleted paragraphs in your 26 March 2004 letter. The following is plaintiff's response. For convenience, I will refer to the paragraphs by number in their listed order:

1. There were no written leases between Mr. Peragine's companies, and neither JCM Development Corp. (which was not Mr. Peragine's company) nor Partner Aviation were in existence in 2000. There was some confusion during Mr. Peragine's deposition as to the question on page 16, line 12. His answer of "JCM Development Corp." was to the question "To whom did you sell -- "?

2. The joint venture was never consummated and the documents drafted for it are therefore irrelevant and immaterial.

3. The litigation between Mr. Peragine and Mr. Leeds is irrelevant and immaterial to this action and has no bearing on it.

4. There may have been a letter agreement in 1998 but it has not yet been located.

5. No such document has been found.

6. Mr. Peragine specifically testified there was no such contract. No proposal was found.

7. There were no formal listing agreements with aircraft brokers but aircraft specifications were sent to them.

Please advise me of your discussions with your client regarding the stipulation we discussed as to Executive's loss in excess of $500,000, since Mr. Peragine is willing to withdraw plaintiff's Fourth Cause of Action for actual damages.

Yours,

I. LEONARD FEIGENBAUM