# EXHIBIT D

[Page 343]

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
------------------------------------------X
IN RE: AIR ACCIDENT AT BEAR CREEK,            3:02-CV-5000
PENNSYLVANIA ON MAY 21, 2000,                 Caputo, D.J.
------------------------------------------X

                              November 12, 2002
                              8:45 a.m.

CONTINUED VIDEOTAPED DEPOSITION of EXECUTIVE AIRLINES, a Defendant herein, by MICHAEL SIMONE PERAGINE, taken by All Parties, pursuant to Notice, held at the Huntington Hilton Hotel, 598 Broadhollow Road, Melville, New York  11747, before Theresa Winter, Shorthand Reporter and Notary Public for and within the State of New York.

[Page

A

[Page 578]

CONTINUED - M. PERAGINE

Farmingdale before takeoff; is that correct?

A. Yes.

Q. And we also know that there was no additional fuel added for the rest of the day?

In other words, there was no fuel added at Atlantic City; is that correct?

A. We don't have any record of that, yes.

Q. Are you under some belief that they got fuel in Atlantic City?

A. There is nothing in the record to indicate that they are, other than Heather Brown's statement that she had fuel slips or fuel truck slip that we read. Other than that, there is nothing to show that they got fuel there.

Q. I just need to put to rest the "other than that".

You have no information whatsoever that any fuel was put on that aircraft in Atlantic City prior to departing for the final fatal segment of flight; is that correct?

A. That's correct.

Q. Are you familiar with an interview that the NTSB conducted with the First Officer's fiancee; Ms. Kisby, I believe her name is?

TES***

```
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA
------------------------------------X
IN RE:  AIR ACCIDENT AT BEAR CREEK,        3:02-CV-5000
PENNSYLVANIA ON MAY 21, 2000,              Caputo, D.J.
------------------------------------X
```

December 18, 2002
9:45 a.m.

CONTINUED VIDEOTAPED DEPOSITION of EXECUTIVE AIRLINES, a Defendant herein, by MICHAEL SIMONE PERAGINE, taken by All Parties, pursuant to Notice, held at the Offices of Kreindler & Kreindler, P.C., 100 Park Avenue, New York, New York 10017, before Theresa Winter, Shorthand Reporter and Notary Public for and within the State of New York.

Con(

[Page 695]

CONTINUED - M. PERAGINE

came for.

"Mr. Peragine requested that he obtain the fueling records from Million Air and informed him that the crew had ordered 90 gallons of fuel per side for the airplane."

I'm not sure who that means. So, I was under the impression that Dave Tew had collected that information. Investigator Cox obtained the original fuel truck meter slip. It read 901, which indicated the airplane fueling. That I don't know -- he's writing that as part of my interview. I don't know that he, he is putting information in. I don't know whether it's inaccurate --

Q. I understand.

A. -- but I don't think that I gave him that information.

Q. Let me ask you this, sir: Did you tell the NTSB that the accident crew, during a conversation with you, had said they were going to order approximately 90 gallons of fuel per side, for a total of 180 gallons?

MR. HAYES: Object to the form of the question.

[Page 696]

CONTINUED - M. PERAGINE

You man answer it.

A. Him being?

Q. Either of the two pilots.

A. Dave Tew.

Q. Did you say this, did you tell this to the NTSB? Did you tell the NTSB that one of the two pilots from the accident flight crew advised you at some point that they had intended to put on approximately 180 gallons of fuel?

MR. HAYES: Object to the form of the question.

You may answer.

A. I believe so. Not in those words, but.

Q. Well, I'm trying to get as close to the actual words as you can recall, sir.

A. I think I told him that it was my impression they were going to put 90 gallons per side. So, I mean, it equates to 180, but I think my words 90 a side.

Q. Okay. And that's based on your recollection of a conversation that you had with one of the two pilots?

A. Yes.

Q. And which of those two pilots do you

[Page 697]

CONTINUED - M. PERAGINE

recall that being?

A. I think it was the first officer, but I'm --

Q. In fact, I think on the page before there's a quote that's attributed to that the first officer informed you that 90 gallons of fuel would added to each of the two fuel tanks.

A. Yes.

MR. BARKS: The question is?

Q. Is that accurate?

A. Yes.

Q. And as it turns out, they only took on 90 gallons of fuel total, 45 gallons per side; is that your understanding of what the fuel slips show?

A. It's my understanding they changed the fuel order after we had that conversation, yes. Either changed it or I got it wrong; one of the two.

Q. And that comes out to about a 600 pound difference in fuel; is that right?

MR. HAYES: Object to the form of the question.

A. What do you mean? 600 pound difference

***NOT

CONTINUED - M. PERAGINE

from between what?

Q. Well, between getting 90 gallons of fuel and 180 gallons?

A. Yes. Well, your calculation is correct.

Q. That's all I'm asking.

A. Okay.

Q. There's a statement here, third to last paragraph -- withdrawn.

Is there anything else in your interview statement, as provided by the NTSB, that you feel you were misquoted on?

A. Other than it talks about things I don't really have a recollection of at this time, but. To be really persnickety about it I mean you want to go into every old detail.

Q. I do want every detail that comes to your mind. I don't -- it's a 2-1/2 page document. You've read it now?

A. Yep.

Q. Is there anything else, as you sit here today, that you recall is a misquote of the interview that you gave to the NTSB? That's all.

A. I think I went over all the things that

ES***

CERTIFICATE

STATE OF NEW YORK

COUNTY OF KINGS

    I, Theresa Winter, a Notary Public within and for the State of New York, do hereby certify:

    That the witness whose examination is hereinbefore set forth was duly sworn and that such an examination is a true record of the testimony given by such a witness.

    I further certify that I am not related to any of these parties to this action by blood or marriage, and that I am not in any way interested in the outcome of this matter.

    IN WITNESS WHEREOF, I have hereunto set my hand this 16 day of February, 2002

_____
THERESA WINTER

TC REPORTING
(516)795-7444