# EXHIBIT N

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EXECUTIVE AIRLINES | : CIVIL ACTION NO. |
|  | : 02-CV-194 (JCH) |
| Plaintiff, | : |
| VS. | : |
|  | : |
| ELECTRIC BOAT CORPORATION | : |
|  | : |
| Defendant | : OCTOBER 28, 2004 |

**AFFIDAVIT IN SUPPORT OF**
**ELECTRIC BOAT'S MOTION FOR SUMMARY JUDGMENT**

I, Aaron Goodwin Olmsted, Jr., depose and say as follows:

1. I am over the age of eighteen years old and believe in the obligation of an oath.

2. I make this affidavit on personal knowledge.

3. I have been retained as a testifying expert by Electric Boat Corporation ("Electric Boat") in this litigation.

4. I am currently employed by the Transportation Security Administration - United States Department of Homeland Security as the Assistant Federal Security Director for Screening for the Connecticut and western Massachusetts region. I have held that position continuously since July, 2002.

5. From 1985 to 1986 and from 1989 through 1994, I was employed by the Federal Aviation Administration (the "FAA") as an air carrier and general aviation principal operations inspector.

6. I have completed formal FAA courses on the following subjects at the Mike Maroney Aeronautical Center in Oklahoma City, Oklahoma: FAA Air Carrier; General Aviation Operations Inspector; Compliance and Enforcement of the FAA Regulations; the FAA's Transportation Safety Institute Introduction to Aircraft Accident Investigation; Advanced Aircraft Accident Investigation; and Rotorcraft Accident Investigation. I attended these courses from 1986 through 1993.

7. As an FAA inspector, I have served as the inspector in charge on approximately 40 aircraft related accidents.

8. I hold the following certificates: FAA Airman Certificate; Airline Transport Pilot Certificate; Aircraft Dispatcher Certificate; Flight Instructor Certificate; and Ground Instructor Certificate.

9. I attach a copy of my current résumé to this affidavit as Exhibit A.

10. I set forth my expert opinions in this case in a letter to Electric Boat's counsel dated June 11, 2004. A copy of my June 11, 2004 letter was marked as Exhibit 1 at the deposition I gave in this case on October 14, 2004.

11. As I stated in my June 11, 2004 letter, and at my deposition in this case, it is my expert opinion that when the plaintiff in this litigation, Executive Airlines, operated the BAE Systems Jet Stream 3101, registration number N16EJ (the "Aircraft"), on May 21, 2000, it was not in compliance with the FAA regulations in that the Aircraft failed to reach its intended destination due to fuel starvation as a result of an insufficient fuel quantity onboard the Aircraft.

12. Part 91 and Part 135 of the FAA regulations were applicable to Executive Airlines in its operation of the Aircraft on May 21, 2000.

13. Part 91 and Part 135 require that an aircraft that operates under each of these parts must depart its point of origin with sufficient onboard fuel and reserves to arrive at its destination, proceed to the designated alternative, and maintain minimum reserve fuel.

14. Specifically, § 91.167 of the FAA regulations (which is contained in Part 91) in effect in May, 2000, provides, with certain exception, that an operator may not operate an aircraft in instrument flight rules ("IFR") conditions unless it carries enough fuel (considering weather reports and forecasts and weather conditions) to "complete the flight to the first airport of intended landing," "fly from that airport to the alternate airport," and "fly after that for 45 minutes at normal cruise speed." A true copy of § 91.167 in effect in May, 2000, is attached to this affidavit as Exhibit B.

15. Similarly, § 135.223 of the FAA regulations (which is contained in Part 135) in effect in May, 2000, provides, with certain exception, that an operator may not operate an aircraft in IFR conditions unless it carries enough fuel (considering weather reports and forecasts and weather conditions) to "complete the flight to the first airport of intended landing," "fly from that airport to the alternate airport," and "fly after that for 45 minutes at normal cruise speed." A true copy of § 135.223 in effect in May, 2000, is attached to this affidavit as Exhibit C.

16. The fatal flight of the Aircraft that took place on May 21, 2000 was an IFR flight.

17. It is my expert opinion that Executive Airlines did not comply with § 91.167 and § 135.223 on May 21, 2000 because the Aircraft did not have a sufficient quantity of fuel on board as required under these regulations.

18. As I stated in my June 11, 2004, letter, and at my deposition in this case, in connection with arriving at this and my other expert opinions in this case, I have reviewed: the applicable FAA regulation; deposition testimony of various persons including the president of

Executive Airlines, a former pilot of Executive Airlines, and the former fiancé of the first officer of the Aircraft during its fatal flight; the Aircraft Accident Brief adopted by the National Transportation Safety Board (the "NTSB") on August 26, 2002; and the NTSB's file regarding its investigation of the crash, including summaries of interviews conducted by the NTSB, and documents concerning the fueling of the Aircraft on May 21, 2000.

                                            Aaron Goodwin Olmsted, Jr.

Subscribed and sworn to before me this
__28 th__ day of October, 2004.

Notary Public Brian T. Smith
My commission expires: 9/30/05

# Aaron G. "Tim" Olmsted, Jr.
91 Hopkins Road
Ellington, CT 06029-2201
(H) 860-871-8915 (O) 860-871-8001 (F) 860-966-8455 (C) timolmsted@aol.com (E)

**Professional Experience and Education:**

### Commercial Aviation / Aerospace Industry:

MAY 2000 to July 2002    BOMBARDIER AEROSPACE
Demonstration Pilot / Captain CL604, CL65 Regional Jet/SE, and BBD-700 Global Express aircraft. Conduct pilot orientation flights and provide customer support operational training to new operators of the Canadair Challenger and Global Express series of aircraft. Safety and Security Officer, liaison with FAA, Transport Canada, and Bombardier customers on various safety and aircraft security related issues to specifics on Bombardier aircraft and corporate aviation as an industry. Member NBAA Safety Committee.

MAR 1999 to MAY 2000  SHORELINE AVIATION, INC.
Director of Operations / Captain DA50, CE550, and CE208 Amphibian. Maintain crew records and conduct initial, recurrent, and upgrade training to include PIC, SIC, and international crew qualifications. Revised General Operations Manual for expanding company operations. Conducted pre-buy aircraft inspections for clients. Captain for international and domestic operations on the DA50, domestic CE550 operations, and CE208 amphibian operations in the greater New York City area. Assist the company President with FAA regulatory issues, safety audits, aircraft planning and budgetary matters. Represented company at FAA Tiltrotor Planning and Certification Conference/committee.

OCT 1994 to FEB 1999    Ætna, Inc. / AMR COMBS
Chief Pilot responsible for the supervision of both fixed and rotary wing flight crew scheduling, standardization, training, and daily operations through August 1996. From August 1996 to Feb 1999, managed turbojet fleet assets due to rapid expansion of fleet and staff. Duties include; generate monthly staff reports tracking productivity, preparing and managing an annual operating budget, negotiating contracts and services with outside vendors, advise senior management on aircraft replacement, develop and implement acceptance plans for new aircraft (SK76 C+, CE560, CE560-XL, Falcon 50, and Falcon 2000), developed new MEL's, SOP's, RVSM, RNP-5/10, and NAT/MNPS FAA approvals, author and maintain the Facility Operation Manual and International Procedures Manual, manage crew selection process. Department's fleet comprised of DA2000, CE-500 and SK76 C/C+ aircraft. Previous fleet included DA50, HS125, and SK76 A+ aircraft.  Member NBAA Operations Committee, past Vice President New England Helicopter Pilot's Association, Member FAA Rotorcraft Task Force. FAA Accident Prevention Counselor at NE FSDO-03

OCT 1994 to Present      AVIATION CONSULTANT
Expert witness testimony and consulting to law offices, private individuals, and corporations in the following areas; aircraft accident investigation and reconstruction, airman certification, NTAP interpretation, ATC procedures/operations, aircraft maintenance status/compliance, aircraft airworthiness status, FAR compliance, aircraft operations, airport certification, obstacle lighting/marking, FAR 119, 121, and 135 certification, air carrier operations and training manuals, and aircraft purchase/operating cost analysis. Expert testimony and depositions given before Attorneys, NTSB, and courts in New York, New Jersey, Connecticut, and Massachusetts.

OCT 1980 to JUN 1985    HAMILTON STANDARD DIVISION / United Technologies Corporation
Marketing Engineer, conducted the sales and marketing efforts of an engineering group tasked with developing aircraft maintenance facilities, aircraft overhaul and repair equipment, and aircraft ground support equipment for military and commercial aircraft. Developed engineering studies, wrote technical reports, coordinated financial presentations for the customer and senior corporate staff. Public speaking ability required giving technical presentations to groups ranging from 5 to 250 people.

1972 to 1980                CHIEF PILOT / CHECK AIRMAN / AVIATION LAW ENFORCEMENT / LINE CAPTAIN
FAR 121 and 135 management experience with Commuter and Regional Air Carriers operating large piston and turboprop aircraft. Wrote FAA approved Operations Manual, Training Manuals, and Aircraft Checklists. FAA approved Check Airman for Line, Equipment, and IFR check rides. Supervised flight crews and operational staffs. Served as an Aeronautics Inspector for the State of Rhode Island. VIP transportation and support, aircraft accident investigation, airport inspections, and supported state agencies.

### Civilian Education:

| | |
|---|---|
| Asnuntuck Community College | Associate of Arts Degree, Liberal Arts |
| Eastern Connecticut State University | Bachelor's Degree, Business Administration |
| Flight Safety International / Simuflight / Bombardier | BBD-700, CL604, CL65, DA2000, DA50, CE560, HS125, and SK76 |

## Military and Government Experience:

**JUL 2002 to PRESENT    TRANSPORTATION SECURITY ADMINISTRATION/ US DEPARTMENT OF HOMELAND SECURITY**
Assistant Federal Security Director for Screening, Pay Band K. Responsible for the daily security operations and personnel management at Bradley International Airport, Tweed-New Haven Airport, Groton-New London Airport, and Westover ARB. Manage a government work force of 375 employees screening passengers, baggage, and airport facilities providing the US airspace with a weapons free environment. Deploy security resources to commercial airports as required, review security data and directives for compliance by airlines and airport operators.

**JAN 1975 to PRESENT    US AIR FORCE**
Graduated Officer Candidate School 1976. Honor graduate Undergraduate Pilot Training Class 77-05. Aircraft assignments have included C-123, C-130, and C-5 as an Aircraft Commander, Instructor Pilot, and Flight Examiner. USAF Command Pilot Rating. Currently assigned at the rank of Lieutenant Colonel to the AF National Security Emergency Preparedness Agency. State Emergency Planning Liaison Officer for the State of Connecticut. Principle duties are to coordinate the airlift of USAF and other DOD resources during Presidential declared emergencies. Previous assignments have included 439th Airlift Wing, Westover ARB, MA as the Wing Flying Safety Officer reporting directly to the Wing Commander of the largest strategic airlift unit in the Air Force Reserve. Responsible for all phases of aircrew and aircraft safety. C-5 Air Refueling CAT II ILS qualified Aircraft Commander, Instructor Pilot, and Flight Examiner. Additional military staff assignments have included Air Force Academy Admissions Liaison Officer, Chief, Aircrew Training 439th MAW, Air Operations and Plans Officer 439th MAW, Chief; Quality Assurance 439th CAMS (Maintenance Officer), Drop Zone Control Officer, Flight Commander and Aircraft Operations Officer 337th ALS. Responsibilities in these positions included; VIP airlift, budget planning and execution, officer and enlisted supervision and evaluation, managing officer and enlisted crew assignments, conduct senior staff officer briefings, developed and implemented local and National Command Authority peace and wartime mission plans. Awarded forty-two different medals and decorations for meritorious service, Operation Enduring Freedom, and combat missions during Panama, Gulf War, and Somalia.

**APR 1989 to OCT 1994    FEDERAL AVIATION ADMINISTRATION/ Flight Standards Division**
**SEP 1985 to OCT 1986**
Air Carrier and General Aviation Operations Inspector. Certified FAR Part 121 and 135 operations, airman certification applying the Practical Test Standards on Private through Airline Transport Pilot ratings. Conducted annual and special inspection of Designated Pilot Examiners. Assigned duties as FAA Investigator-In-Charge working with NTSB and other federal agencies in aircraft accident investigation, helicopter certification test pilot, and enforcement of the Federal Aviation Regulations. Extensive experienced in reviewing, writing, and approving Air Carrier MEL's, Operations Manuals, Aircrew Training Manuals and programs (domestic and international). Conducted inspections of Part 121 and 135 Check Airman, approved aircraft checklists, and conducted all phases of aircraft check rides ranging from helicopters to large turbojet aircraft. Member of FAA certification Flight Operations and Evaluations Board (FOEB) for the Kaman K-1200 helicopter. Computer trained in FAA database in a lead office automation program. Extensive public speaking experience at seminars, with media, and in presenting formal classroom instruction at various government law enforcement-training agencies. Regional Check Airman SK76 A, A+, B, C model helicopters.

**JUN 1985 to SEP 1985    USAF/AIR RESERVE TECHNICIAN (GM-13).**
**OCT 1986 to APR 1989**
Aircrew Training Officer responsible for the conversion of the 337th Airlift Squadron and 439th Airlift Wing from C-130 to C-5 aircraft. Scheduled 250 Officers and Airman to advance training courses, planned and executed a $5.5m annual operational budget, evaluated and managed both civilian and military staffs, lead installation during the introduction of computer based programs in the Air Force. Instructor Pilot in C130 and C5 aircraft.

**OCT 1970 to APR 1972    US ARMY**
Attended Warrant Officer helicopter flight training.

## Government and Military Education:

| Federal Aviation Administration | U.S. Military |
|---|---|
| Air Carrier Operations Inspector Indoctrination | USAF Officer Candidate School |
| General Aviation Inspector Indoctrination | USAF Undergraduate Pilot Training |
| Aircraft Accident Investigation Courses | USAF Air Command & Staff College |
| Rotorcraft Accident Investigation Course | USMC Command & Staff College |
| SK76 / BH206 / BE90 Qualification Courses | Industrial College of the Armed Forces |
| | DOD/FEMA Emergency Planning Course |

## FAA Certificates & Ratings:

| | |
|---|---|
| Airline Transport Pilot | Airplane Multiengine Land; Single Engine Land & Sea; Rotorcraft-Helicopter; Glider<br>Type Rated: BBD-700, CL604, CL65, DA2000, DA50, SK76, CE500, HS125, L382, CV240, CV340, CV440, YC122, FA-C123 |
| Flight Instructor | Airplane Single & Multiengine; Rotorcraft-Helicopter; Glider, Instruments: Airplane and Helicopter |
| Ground Instructor | Basic, Advanced, and Instruments |
| Flight Engineer | Turbojet Aircraft |
| Aircraft Dispatcher | |

**Flight Experience:**

RVSM, NAT/MNPS, EFIS, FMS: qualified and current. Extensive 3 and 4-engine turbojet and turboprop flight time. Flown over 170 different makes and models of aircraft to include: military tactical and strategic transport operations, small general aviation aircraft, seaplanes, gliders, helicopters, corporate turbojet, turboprops, commercial airliners, experimental aircraft and supersonic trainers/fighters.

Extensive VIP, Domestic, and International flight experience. No accidents or violations. FAA Pilot Proficiency Award (Wings Program) Phase XVIII. Twelve thousand hours flight time.

Olmsted Affidavit – Exhibit B

§ 91.167 Fuel requirements for flight in IFR conditions.

(a) No person may operate a civil aircraft in IFR conditions unless it carries enough fuel (considering weather reports and forecasts and weather conditions) to--
(1) Complete the flight to the first airport of intended landing;
(2) Except as provided in paragraph (b) of this section, fly from that airport to the alternate airport; and
(3) (3) Fly after that for 45 minutes at normal cruising speed or, for helicopters, fly after that for 30 minutes at normal cruising speed.
(b) Paragraph (a)(2) of this section does not apply if:
(1) Part 97 of this chapter prescribes a standard instrument approach procedure to, or a special instrument approach procedure has been issued by the Administrator to the operator for, the first airport of intended landing; and
(2) Appropriate weather reports or weather forecasts, or a combination of them, indicate the following:
(i) For aircraft other than helicopters. For at least 1 hour before and for 1 hour after the estimated time of arrival, the ceiling will be at least 2,000 feet above the airport elevation and the visibility will be at least 3 statute miles.
(ii) For helicopters. At the estimated time of arrival and for 1 hour after the estimated time of arrival, the ceiling will be at least 1,000 feet above the airport elevation, or at least 400 feet above the lowest applicable approach minima, whichever is higher, and the visibility will be at least 2 statute miles.

[Amdt. 91-259, 65 FR 3539, January 21, 2000. Effective January 21, 2000]

Olmsted Affidavit – Exhibit C

§ 135.223 IFR: Alternate airport requirements.
(a) Except as provided in paragraph (b) of this section, no person may operate an aircraft in IFR conditions unless it carries enough fuel (considering weather reports or forecasts or any combination of them) to -
(1) Complete the flight to the first airport of intended landing;
(2) Fly from that airport to the alternate airport; and
(3) Fly after that for 45 minutes at normal cruising speed or, for helicopters, fly after that for 30 minutes at normal cruising speed.
(b) Paragraph (a)(2) of this section does not apply if Part 97 of this chapter prescribes a standard instrument approach procedure for the first airport of intended landing and, for at least one hour before and after the estimated time of arrival, the appropriate weather reports or forecasts, or any combination of them, indicate that -
(1) The ceiling will be at least 1,500 feet above the lowest circling approach MDA; or
(2) If a circling instrument approach is not authorized for the airport, the ceiling will be at least 1,500 feet above the lowest published minimum or 2,000 feet above the airport elevation, whichever is higher; and
(3) Visibility for that airport is forecast to be at least three miles, or two miles more than the lowest applicable visibility minimums, whichever is the greater, for the instrument approach procedure to be used at the destination airport.

    [Doc. No. 16097, 43 FR 46783, Oct. 10, 1978, as amended by Amdt. 135-20, 51 FR 40710, Nov. 7, 1986]