UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EXECUTIVE AIRLINES,

          Plaintiff,

— against —

ELECTRIC BOAT CORPORATION,

          Defendant.

CIVIL ACTION NO.
02-CV-194 (JCH)

18 November 2004

## PLAINTIFF EXECUTIVE AIRLINES' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTORY STATEMENT

Plaintiff sued defendant seeking the six month contractual payments due to plaintiff based on the one-year agreement (the "Contract"[1]) pursuant to which plaintiff was to provide air charter services to defendant between defendant's facilities in Groton, Connecticut and Newport News, Virginia. The Contract granted to defendant the unqualified right to terminate the Contract on six months' notice as well as the right to terminate for plaintiff's default on ten days' notice. By letter sent to plaintiff, defendant claimed it was immediately terminating the Contract. Defendant counterclaimed against plaintiff for breach of the Contract and now moves for summary judgment on its counterclaim and to dismiss plaintiff's claims. Plaintiff has also moved for summary judgment and respectfully incorporates its prior Memorandum of Law herein by reference.

Both plaintiff's action and defendant's counterclaim are predicated on interpretation of the three documents comprising the Contract and two subsequent letters comprising the termination by

---

[1] Defendant's Local Rule 56(a)1 Statement, ¶ 4.

1

defendant. Plaintiff's position is based solely on analysis and interpretation of those documents while defendant relies almost entirely on extrinsic events to make its claim. In support of its motion, defendant has submitted the affidavit of Dorothy Stillman, its Local Rule 56(a)1 Statement (defendant's "Statement") and its Memorandum of Law ("defendant's Memorandum").

Defendant's house of cards is based on the claim that plaintiff violated FAA regulations, as if that *per se* constituted a termination of the Contract. That approach tries to avoid the Contract requirement of notice of default which encompasses both an identification of the specific default (which was not done) and time to cure (which was also not done). The counterclaim must fail since defendant did not comply with the provisions of its own "boilerplate" Terms and Conditions.

Since defendant's termination must be deemed for other than default, the six month termination provision[2] controls, the Terms and Conditions do not apply to a termination other than for default and defendant's motion to dismiss plaintiff's claims must fail.

## HISTORY OF THE MATTER

There is virtually no dispute as to the <u>basic relevant operative</u> facts of this matter. Plaintiff acknowledges defendant issued its Request for Quotations, plaintiff responded, the parties negotiated and finally agreed to enter into the Contract.

On 21 May 2000, a little more than one month after plaintiff commenced its shuttle service for defendant, plaintiff suffered a fatal crash of one of the Jetstream aircraft which it had been using for defendant's flights. Despite the crash, plaintiff remained capable of performing its obligations under the Contract (Peragine Aff., ¶ 8, defendant's Exhibit H.). Mr. Peragine also met with

---

[2] Paragraph 2(A) of Purchase Order Supplement No. 1, defendant's Local Rule 56(a)1 Statement, ¶ 2.

defendant's personnel to update them on the crash investigation and plaintiff's continuing capabilities. (Defendant's Exhibit H.) Nevertheless, on 7 June 2000, defendant sent its letter (defendant's Exhibit K) terminating the Contract (the "Termination Letter"). Everything that occurred since the Termination Letter is irrelevant to defendant's motion.

## DEFENDANT'S MEMORANDUM

After a brief introduction in its Memorandum, defendant tries to compensate for the irrelevancy of the crash in Pennsylvania by recounting in morbid detail the circumstances of the crash and the discussions about it. The theory seems to be that if something is totally irrelevant, belaboring it may make it seem relevant[3]. Defendant devoted pages 3 through 10 of its Memorandum to a discussion of the crash and the subsequent talks and meetings between Michael S. Peragine, plaintiff's president, and several Electric Boat people. In the process, defendant liberally sprinkles its Memorandum with references to hearsay statements, speculative comments, unsupported conclusions, disputed issues and a great deal of other self-serving and inadmissible information, while treating them as if they were facts.

As if that exposition was not enough, defendant then devotes pages 15 through 22 to a further highly slanted examination of the same matters through the testimony of Kevin Hanrahan, its chief pilot, and Aaron Goodwin Olmsted, Jr., its paid expert witness. In all, over half of defendant's Memorandum is devoted to matters having no bearing on the Contract, its terms or its termination.

Aside from the irrelevancy of the factual matters defendant emphasizes, the most significant aspect of defendant's submission is that it is overwhelmingly based, not on documents or

---

[3] To paraphrase an old legalism: "If you are weak on the facts, pound on the law — if you are weak on the law, pound on the facts — and if you are weak on both, pound on the crash."

3

uncontroverted testimony, but on its own self-serving statements, unsupported conclusions and distorted excerpts of Mr. Peragine's comments, all of which have been controverted in Mr. Peragine's affidavits. The net result is that defendant has <u>proven</u> the existence of a multitude of issues of fact based on their own recitation of "facts", thereby precluding entitlement to summary judgment. Defendant's motion should be contrasted to plaintiff's motion for summary judgment. Plaintiff's motion relied solely on the Contract and the Termination Letter to establish its case without the need for any significant testimony. In contrast, defendant ignores the Contract provisions and relies totally on extraneous and after-the-fact events, testimony and conclusions.

## THE CONTRACT PROVISIONS

Although the applicable Contract provisions were set forth in plaintiff's prior Memorandum of Law, for the Court's convenience, they are repeated here. Paragraph 2 of Supplement No. 1, in the March Purchase Order contained the termination provisions specifically negotiated by the parties and states (plaintiff is Seller and defendant is Buyer throughout the Contract) as follows:

> "TERMINATION: (A) BUYER RESERVES THE RIGHT TO TERMINATE THIS SERVICE WITHOUT PENALTY UPON SIX (6) MONTHS WRITTEN NOTICE TO SELLER.
> (B) BUYER RESERVES THE RIGHT TO TERMINATE THIS SERVICE WITHOUT PENALTY UPON TEN (10) DAYS WRITTEN NOTICE TO SELLER DUE TO DEFAULT BY SELLER PER ELECTRIC BOAT TERMS AND CONDITIONS, GDC 410, 03/87."

The Terms and Conditions contained two separate paragraphs dealing with termination of the Contract, paragraph 12 entitled "Termination for Default" and paragraph 14 entitled "Termination for Convenience". Relevant parts of paragraph 12 are subparagraphs (a) and (b) which state in full:

12. TERMINATION FOR DEFAULT (a) Buyer may, subject to the provisions of subparagraph (c) below, by written notice of default to Seller, terminate the whole or any part of this order in any one of the following circumstances: (i) If Seller fails to make delivery of the goods or to perform this order within the time specified herein or any extension thereof, or (ii) if Seller fails to perform any of the other provisions of this order, or so fails to make progress as to endanger performance of this order in accordance with its terms and does not cure such failure within a period of ten (10) days (or longer period as Buyer may authorize in writing) after receipt of notice from Buyer specifying such failure.
(b) In the event Buyer terminates this order in whole or in part as provided In subparagraph (a) above, Buyer may procure, upon such terms and in such manner as Buyer may deem appropriate, supplies or services similar to those so terminated, and Seller shall be liable to Buyer for any excess casts for the same; provided, that Seller shall continue the performance of this order to the extent not terminated hereunder.

Paragraph 14 states, in full:

14. TERMINATION FOR CONVENIENCE: Buyer may at any time by written notice terminate all or any part of this order for Buyer's convenience. If this order is terminated, in whole or in part, for Buyer's convenience, Seller shall be paid an amount, to be mutually agreed upon, which shall be adequate to cover the reasonable cost of Seller's actual performance of work under this order to the effective date of termination, plus a reasonable profit thereon provided that no amount shall be paid to Seller for (i) any anticipatory profits related to work under this order not yet performed, or (ii) costs incurred due to Seller's failure to terminate work as ordered on the effective date of termination. In no event shall the total amount paid under this provisions exceed the prices set forth in this order for the work terminated. If a Government contract number is cited on the face hereof, a termination for Buyer's convenience shall be accomplished in accordance with DAR 8-706 or FAR52-249, as in effect on the date of this order, which shall be controlling over any conflicting provisions hereof.

In addition to the termination provisions, the Purchase Order Terms and Conditions contained one other relevant paragraph, paragraph 23, which states, in its entirety:

23. ORDER OF PRECEDENCE: this letter and all documents incorporated by reference constitute the entire agreement of the parties as to the subject matter hereof. In the event of any inconsistency among the foregoing the inconsistency shall be resolved by getting precedence in the following order: (i) the purchase order to which these terms and conditions are attached; (ii) these terms and conditions; (iii) the specifications; (iv) the drawings; and (v) the other documents incorporated by reference.

It is plaintiff's position that, as a matter of fact, plaintiff did not default under the Contract and, as a matter of law, defendant failed to comply with the boilerplate provisions of the Terms and Conditions it had written, thereby disqualifying it from establishing even a *prima facie* showing of entitlement to summary judgment. Plaintiff's entitlement to summary judgment on its claims has been demonstrated in its prior Memorandum of Law.

## POINT 1

### DEFENDANT CANNOT ESTABLISH A BASIS FOR SUMMARY JUDGMENT

Federal Rules of Civil Procedure §56(c) provides for summary judgment "... if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". Defendant has submitted its Statement consisting of thirty-five paragraphs, of which fourteen have been denied by plaintiff[4] based on factual disputes, and a total of twenty-four have been noted as irrelevant and immaterial. "On a motion for summary judgment, all factual inferences must be drawn in favor of the non-moving party." *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292 (2d Cir. 2003). Based on that principle alone, defendant's motion must be denied.

Local Rule 56(a)1 requires that the moving party set forth "... a concise statement of each material fact as to which the moving party contends theere is no genuine issue to be tried". Despite the abundance of "factual" claims, defendant's Statement is silent on defendant's compliance (actually, non-compliance) with the termination provisions contained in its Terms and Conditions.

---

[4] In contrast, on its motion for summary judgment, plaintiff submitted its Statement containing twenty paragraphs, virtually none of which can be disputed by defendant.

6

In light of that mandate, defendant's silence under Local Rule 56(a)1 amounts to either: 1) admission that it did not comply with the termination provisions of the Contract; or 2) acknowledgement that there is genuine an issue of material fact as to whether or not it did comply. In either instance, since compliance with the Contract provisions is a condition precedent to any claim under the Contract, defendant's silence constitutes a tacit acknowledgement that its counterclaim cannot qualify for summary judgment.

## POINT II

### DEFENDANT HAS NOT ESTABLISHED EITHER A DEFAULT BY PLAINTIFF ON OR BEFORE 7 JUNE 2000 OR NOTICE OF SUCH A DEFAULT ON OR BEFORE 7 JUNE 2000

All of defendant's unsupported claims to the contrary notwithstanding, defendant has failed to establish that plaintiff violated any FAA regulations prior to the 7 June 2000 Termination Letter or that it had failed to meet defendant's Chief Pilot's approval by that date. None of defendant's documents created on or before 7 June 2000 support either claim and there is nothing in the record before this Court to establish that plaintiff had violated any FAA regulations or failed to meet the Chief Pilot's approval prior to termination of the Contract. Neither Mr. Hanrahan's subsequent musings nor Mr. Olmsted's biased nit-picking can create what does not exist in the record.

The Contract terms clearly required a termination for default to be accomplished by written notice of default. Since the Contract was terminated on 7 June 2000 by a letter which contained no notice of default, it cannot be created after the fact. Even though Mr. Hanrahan carefully hewed to the party line, even he did not claim he advised plaintiff prior to 7 June 2000 that it had violated FAA regulations or had lost his approval, let alone that such advice was in writing. Of course, if he had so advised plaintiff, it would still have had ten days to cure.

The testimony of Mr. Olmsted is totally worthless. Despite his one-sided nit-picking in trying to find any possible FAA violations by plaintiff, defendant wasted its money in hiring him since there is nothing in the Contract providing that an FAA violation constitutes a termination of the Contract. If such a violation did exist, it could be grounds for termination, provided notice was given and ten days to cure allowed. Defendant has conceded it gave no such notice or cure period by its failure to so state in its Statement. Since whatever Mr. Olmsted found in his "investigation" was three years after the fact, it could not possibly have provided the basis for defendant's termination of the Contract.

## POINT III

### OTHER CLAUSES ALLOWING TERMINATION FOR CONVENIENCE ARE IRRELEVANT TO THIS ACTION

On page 24 of defendant's Memorandum there is a flat, unsupported and inadmissible statement: "Every Federal Government procurement contract contains a termination for convenience clause". There is nothing in the record to support that statement and it is, in any event, irrelevant. It is undisputed that the parties specifically negotiated the termination provisions contained in paragraph 2 of Supplement No. 1 and they do not mention termination for convenience. They provide for termination for default and termination other than for default.

The cases cited by defendant on page 25 of its Memorandum are, at best, irrelevant, and, at worst, misleading. All of the cases cited deal with "termination for convenience". In *A.J. Temple Marble & Tile, Inc., v. Long Island Rail Road*, 172 Misc. 2d 422, 659 N.Y.S.2d 412 (New York Supreme Court, Queens County, 1997) the court said:

> "A standard "termination for convenience" clause in a government contract provides the government with broad rights to terminate a contract whenever the government

deems that termination is in its interest. (*See, Maxima Corp. v United States, 847 F2d 1549, 1552; Reiner & Co. v United States, 325 F2d 438, 442.*)"

Examination of the other cases will show that such clauses are strictly for the benefit of the government and arose out of wartime considerations. The citation of these cases borders on the frivolous since no government entity is involved here. It appears that they were submitted simply to bolster a lost cause. The termination provisions of Supplement No. 1, paragraph 2A provided for six month termination by defendant. It knew what the provision meant at the time of execution of the Contract and it should have understood the consequences at the time it elected to terminate immediately despite the six month provision.

Defendant has failed to establish any basis either in law or in fact for dismissal of plaintiff's claims.

## CONCLUSION

For the foregoing reasons, plaintiff Executive Airlines respectfully requests the Court deny defendant Electric Boat's counterclaim in its entirety.

PLAINTIFF, EXECUTIVE AIRLINES

By: /s/ I. Leonard Feigenbaum

I. Leonard Feigenbaum (ct25807)
Visiting Attorney for Plaintiff
1670 Old Country Road - Ste 224
Plainview, New York 11803
Tel. (516) 420-6900
Fax (516) 420-8444
leefeig@aol.com

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was mailed on 18 November 2004 to the following:

Day, Berry & Howard LLP
CityPlace I
Hartford CT 06103-3499

I. LEONARD FEIGENBAUM