UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EXECUTIVE AIRLINES | : | CIVIL ACTION NO. |
| | : | 02-CV-194 (JCH) |
| Plaintiff, | : | |
| VS. | : | |
| | : | |
| ELECTRIC BOAT CORPORATION, | : | |
| | : | |
| Defendants. | : | DECEMBER 6, 2004 |

**<u>DEFENDANT ELECTRIC BOAT CORPORATION'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiff and Electric Boat Corporation ("EB") do not dispute a number of material facts. First, the Contract consists of the March Purchase Order, the February Purchase Order, and the Terms and Conditions. (Local Rule 56(a)1 Statement and Local Rule 56(a)2 Statement, ¶ 4.) The parties agree that pursuant to the Contract EB could terminate the Contract for convenience or for default pursuant to paragraphs 14 and 12, respectively, of the Terms and Conditions. (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Brief"), at 1, 4-5). The parties also agree that pursuant to the Contract, Plaintiff, its aircraft, and its pilots were required to meet all FAA regulations and each assigned aircraft and pilot was subject to EB's chief pilot's approval. (March Purchase Order, at 2.) The parties disagree on the following issues presented in EB's summary judgment motion: (i) whether EB, even if it did not provide a proper notice of default, is entitled to pursue its breach of contract counterclaim (Plaintiff's Brief, at 2, 7); and (ii) what compensation, if any, Plaintiff is entitled to if it is determined that EB's termination of the Contract was a termination for convenience.

(Plaintiff's Brief, at 6 (by referencing its memorandum in support of Plaintiff's summary judgment motion, at 9).)

Rather than focusing its discussion on these two fairly discrete disputes, Plaintiff, in its brief, and Mr. Peragine, in his affidavit dated November 18, 2004 (the "November 18 Affidavit"), provide their opinions, unsupported by any factual or legal analysis, regarding what facts are relevant, what evidence is admissible, and what statements are hearsay. (Plaintiff's Brief, at 3; November 18 Affidavit, at ¶¶ 2, 5, 7.)  In this reply brief, EB will explain why each of the three points in Plaintiff's Brief is inaccurate and in particular will provide factual and legal argument to show that Plaintiff is wrong to claim that the facts presented in EB's Local Rule 56(a)1 Statement are not relevant and admissible, and, while doing so, will address briefly a number of the more egregious statements in Mr. Peragine's affidavit and the unsupported, and unsupportable, comments in Plaintiff's brief.

    1.    <u>EB Can and Has Established a Basis For Summary Judgment.</u>

Plaintiff argues that compliance with the termination for cause notice provision was a "condition precedent to any claim under the Contract" and EB's "silence" in its Local Rule 56(a)1 Statement regarding compliance with this provision "constitutes a tacit acknowledgement that its counterclaim cannot qualify for summary judgment." (Plaintiff's Brief, Point I, at 6-7.) Plaintiff cites no authority to support these positions.  As EB pointed out in its Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("EB's Opposition Brief"), the parties specifically agreed that "the rights and remedies of [EB] provided in this paragraph [paragraph 12] shall not be exclusive and are in addition to any other rights and remedies provided by law or under this order." (Terms and Conditions, ¶ 12(f).)  EB, therefore, retained the right to sue for breach of contract if Plaintiff failed to perform its obligations under the Contract, regardless of

whether it exercised its termination rights.  As the Connecticut Supreme Court has stated, "It is axiomatic that a party is entitled to rely upon its written contract as the final integration of its rights and duties." Zullo v. Smith, 179 Conn. 596, 601 (1980).

The clear language in paragraph 12(f) of the Terms and Conditions disposes of Plaintiff's argument.  In addition, even though Plaintiff failed to cite any legal authority for its position, EB brings to this Court's attention two cases, albeit not from this District or the State of Connecticut, that further support EB's position.  In Accent Builders Company, Inc. v. Southwest Concrete Systems, Inc., 679 S.W.2d 106 (Tex. App. 1984)[1] the plaintiff terminated its contract with a subcontractor relying on a termination for convenience clause similar to the one present in the Contract here. Id, at 108.  The general contractor later asserted that the subcontractor had failed to perform certain work in a workmanlike manner and that its termination of the subcontract was for cause rather than for convenience. Id. The trial court submitted the case to the jury but did not submit the issue concerning the costs associated with completing the project, costs that the general contractor would have been able to recover had there been a finding of termination for cause. Id. at 109.  The Court of Appeals reversed, holding that the case was erroneously submitted to the jury. Id. The Court of Appeals noted, "[I]t appears to be well settled that upon breach of a contract a party may pursue any remedy which the law affords in addition to the remedy provided in the contract.  The fact that the contract provides a particular remedy does not mean that remedy is exclusive unless it is declared to be or it is clearly indicated." Id. The Court noted that there was no indication in the contract that the termination for convenience provision "was intended to be the exclusive remedy." Id

---

[1] Copies of unreported decisions and decisions from other jurisdictions cited in this brief are attached hereto in Exhibit A.

Similarly, in New England Structures, Inc. v. Loranger, 354 Mass. 62, 234 N.E.2d 888 (1968), a case cited by the Accent Builders court, a general contractor and one of its subcontractors filed competing lawsuits alleging breach of the parties' subcontract. New England Structures, Inc., 354 Mass. at 63. The cases were then consolidated. The court noted that the general contractor had sent a termination letter to the subcontractor which stated, in part, that the contract was being terminated because of the subcontractor's "repeated refusal . . . or inability to provide enough properly skilled workmen to maintain satisfactory progress." Id. at 63. The court also noted that the subcontract provided the general contractor with the right to terminate the contract if the subcontractor "should persistently . . . fail to supply enough properly skilled workmen . . ." Id. at 63 n.1. The trial judge ruled, as a matter of law, that the general contractor, "by its termination telegram, confined the justification for its notice of termination to [subcontractor's] 'repeated refusal. . . or inability to provide enough properly skilled workmen'" and instructed the jury that the termination "cannot, as . . . [a] matter of law, be justified for any . . . reason not stated" in the termination telegram. Id. at 64-65. The appellate court did not agree and held that the general contractor "is not barred from asserting grounds not mentioned in its telegram unless [the subcontractor] establishes that, in some manner, it relied to its detriment upon the circumstance that only one ground was asserted." Id. at 66-67.

Both of these cases have been cited with approval by at least one court in this Circuit (The Millgard Corporation v. E. E. Cruz/NAB/Frontier –Kemper, 2004 U.S. LEXIS 12401 (July 2, 2004 S.D.N.Y.)) and they are both instructive here. As these cases demonstrate, EB is not barred from pursuing its breach of contract claim, even if its termination is ultimately deemed to be for convenience. This is especially so given the specific language in the Contract by which EB retained its right to pursue such a claim. Accordingly, even if EB failed to fully comply with

the notice provision regarding termination for default, the parties agreed that EB was entitled to pursue all of its other rights and remedies under law or under the Contract – including a breach of contract claim.  That is precisely what EB has done in its counterclaim.

      2.      <u>EB Has Established That Plaintiff Breached The Contract.</u>

Plaintiff makes the bald conclusion that EB "has failed to establish that Plaintiff violated any FAA regulations prior to the 7 June 2000 Termination Letter or that it had failed to meet defendant's Chief Pilot's approval by that date." (Plaintiff's Brief, Point II, at 7-8.)  Plaintiff supports this view by stating its opinion that: (i) the sworn deposition testimony of Mr. Hanrahan, EB's chief pilot, amounted to mere "subsequent musings" (<u>Id.</u> at 7); (ii) the testimony of EB's disclosed expert was simply "biased nit-picking" and "worthless"  (<u>Id.</u> at 7 and 8); and (iii) the facts regarding what Mr. Peragine told Mr. Hanrahan regarding the crash and the possible cause of the crash are irrelevant and have "no bearing on the Contract, its terms or its termination." (Plaintiff's Brief, at 3.)  Plaintiff provides no other support for its position.

Plaintiff's arguments are truly incredible.  EB has consistently held the position –as if it needed to be explicitly stated – <u>that the safety of its employees is of paramount importance</u>.  EB reminded Plaintiff of this position at every opportunity.  (<u>See</u>  May 24, 2000 Letter ("EB is deeply concerned over the possible cause(s) of the crash. . . The safety of our employees who travel via the Groton/Newport News charter is naturally of paramount importance to us."); June 7, 2000 Letter ("the safety of our employees who travel via the charter service is of paramount importance to us.  As the findings of the FAA and NTSB will likely not be available in the near future, we feel we must proceed in other directions."); August 1, 2000 ("As you know, EB reserved its right in our agreement to approve aircraft and pilots in advance and [Plaintiff] and its

pilots and aircraft were required to comply with all FAA regulations.")[2]  Given the importance EB placed on the safety of its employees, it is no coincidence that two material provisions of the Contract were for Plaintiff, its aircraft, and its pilots to meet all FAA regulations and for EB's chief pilot to retain the right to approval each assigned aircraft and pilot.  (March Purchase Order, at 2.)

In contrast to the unsupported opinions set forth by Mr. Peragine in his affidavit, EB has provided a detailed account of the information that went into Mr. Hanrahan's decision not to approve any further flights with Plaintiff after the fatal crash on May 21, 2000.  (See EB's Local Rule 56(a)1 Statement, at ¶¶ 15-31; EB's memorandum in support of its summary judgment motion, at 15-19.)  These facts are relevant, although Plaintiff is correct that some of them are morbid.  These facts demonstrate the reasonableness of Mr. Hanrahan's decision not to approve further flights with Plaintiff.  These facts demonstrate that Mr. Hanrahan had every right to be concerned about the safety of his fellow EB employees.  These facts demonstrate that, rather than making an uninformed, emotional decision to terminate the Contract immediately, EB took efforts to ascertain why the crash occurred and, in Mr. Hanrahan's words, to obtain "information that would exonerate Mike Peragine's company Executive Airlines and allow me to feel comfortable starting to utilize their service. . . . I was looking for something that was beyond the control of either his company or pilots or personnel that we could point to and easily say this is something that is not repeatable."  (Hanrahan Depo., at 38.)  Neither Mr. Hanrahan nor anyone else at EB ever received such information.  Mr. Hanrahan, accordingly, came to the conclusion that Plaintiff could not provide the services called for under the Contract because it could not

---

[2] The May 24 and June 7 Letters are attached to EB's Local Rule 56(a)1 Statement as Exhibits I and K respectively and the August 1, 2000 Letter is attached as Exhibit A to EB's Local Rule 56(a)2 Statement.

provide crew and aircraft that met with his approval. (Hanrahan Depo., at 145-146.) Mr. Hanrahan's decision factored into EB's decision to terminate the Contract on June 7, 2000. (Id.) These facts demonstrate, beyond any doubt, that Plaintiff breached the Contract by not providing aircraft and pilots that met with EB's chief pilot's approval.

These facts are also admissible. Each of Mr. Peragine's statements made to Mr. Hanrahan is admissible as a statement which are not hearsay pursuant to F.R.E. 801(d)(2). ("A statement is not hearsay if . . . the statement is offered against a party and is (A) the party's own statement, in either an individual or a representative capacity.") Such statements include Mr. Peragine's statements memorialized in the May 24 Memorandum and the May 29 Memorandum and those set forth in EB's Local Rule 56(a)1 Statements at ¶¶ 17, 18, 24, 25, 26 and 27. Similarly, Mr. Peragine's statements to the NTSB and his sworn deposition testimony are admissible under F.R.E. 801(d)(2) or F.R.Civ. P. 32(a)(2) or both. ("The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent . . . may be used by an adverse party for any purpose.") Such statements include those set forth in EB's Local Rule 56(a)1 Statement at ¶¶ 9, 10, 11,12, and 14. Also, the statements attributable to the Plaintiff's pilot, Mr. Can Basat, are also admissible pursuant to F.R.E 801(d)(2)(D), F.R.E. 804(b)(1), F.R.Civ. P. 32(a)(3)(b), and F.R.E. 805 because, at the time he made such statements, Mr. Basat was an employee of Plaintiff and the statements concerned a matter within the scope of his employment, and Ms. Suazo, who presently lives in Florida[3], recounted the statement while under oath at a deposition at which Plaintiff was represented by counsel with an opportunity and motive to develop her testimony. In fact, Plaintiff's counsel was conducting the

---

[3] Counsel for EB is prepared to submitted an affidavit to this effect if required by this Court.

examination when Ms. Suazo provided the testimony regarding Mr. Basat's statements. Accordingly, the statements set forth in EB's Local Rule 56(a)1 Statement at ¶ 13 are admissible as well.

Similarly, Plaintiff's argument that EB "failed to establish that plaintiff violate any FAA regulations prior to the 7 June 2000 Termination Letter" (Plaintiff's Brief, at 7) is simply wrong. EB supports this position through the expert opinion of Mr. Olmsted. Plaintiff has disclosed no expert to testify in this case (Plaintiff's Local Rule 56(a)2 Statement, at ¶ 35) and therefore there is no witness who will be competent to contradict Mr. Olmsted's testimony. Mr. Olmsted is qualified to testify regarding whether Plaintiff violated any applicable FAA regulations. (See Olmsted Aff., at ¶¶ 4-8.)[4] Mr. Olmsted has set forth his <u>uncontroverted</u> opinion that "when the plaintiff in this litigation, Executive Airlines, operated the BAE Systems Jet Stream 3101, registration number N16EJ (the "Aircraft"), on May 21, 2000, it was not in compliance with the FAA regulations in that the Aircraft failed to reach its intended destination due to fuel starvation as a result of an insufficient fuel quantity onboard the Aircraft." (Olmsted Aff., at ¶ 11.) Based on this record, there is no genuine issue as to any fact material to the claim that Plaintiff breach the Contract by not meeting all FAA regulations.

Nowhere in Plaintiff's Brief does it attempt to contradict or undermine this opinion. In the November 18 Affidavit, Mr. Peragine argues that Mr. Olmsted was simply paid to find "any possible violation of Federal Aviation Regulations, however miniscule." (November 18 Affidavit, at ¶ 16.) Plaintiff's view of a "miniscule" violation – the deaths of 19 people as a result of the failure of Plaintiff's aircraft to reach its intended destination due to fuel starvation –

---

[4] The Olmsted Affidavit was submitted to this Court as Exhibit N to EB's Local Rule 56(a)1 Statement.

is beyond troubling. In any event, Plaintiff does not back this statement up with any expert opinion, nor can it. Plaintiff then proceeds to take issue with perceived deficiencies regarding other issues discussed at Mr. Olmsted's deposition that have not been set forth as support for EB's motion here. Simply put, EB argued that the crash of Plaintiff's Aircraft on May 21, 2000 was caused by an insufficient fuel quantity on board the Aircraft. Such failure constituted a violation of the applicable FAA regulations. Such violation was a breach of the Contract. Plaintiff has presented no credible or admissible testimony or evidence to contradict this conclusion.

Lastly, Plaintiff seems to believe that because EB did not discover the true extent of the Plaintiff's FAA violation until after it terminated the Contract on June 7, 2000 (Plaintiff's Brief, at 7), such violation cannot form the basis of EB's breach of contract claim. Tellingly, Plaintiff cites no case law to support its claim.

Plaintiff is simply wrong. Although it is true that EB did not and could not -- given that it had no access to the NTSB investigation – determine the actual FAA violation at issue here before June 7, 2000, there is no doubt that the violation, Plaintiff's failure to properly comply with fueling regulations in connection with the May 21, 2000 crash, necessarily took place before June 7, 2000. Also, EB made it abundantly clear that it was concerned about the cause or causes of the crash. (<u>See</u> May 24, 2000 and June 7, 2000 Letters.) In particular, Mr. Hanrahan was concerned about whether the Aircraft was properly fueled on the morning of the crash. (Local Rule 56(a)1 Statement, ¶¶ 20, 28, and 29.) There is also no doubt that compliance with all FAA regulations was a material component of the Contract.

Despite a diligent search, counsel for EB found no case law directly addressing this issue. There are a number of cases in the employment context in which the courts have held that an

employer cannot escape liability for a discriminatory discharge by relying on evidence of the employee's misconduct, <u>acquired after the employee's termination,</u> that would have justified the employee's termination in any event.  See <u>Grant v. Wallingford Bd. of Educ.</u>, 195 F.3d 134, 137 & n. 17 (2d Cir. 1999)  Here, Plaintiff knew about the crash, EB notified Plaintiff repeatedly about its concerns involving the crash and the causes for it, Plaintiff and EB personnel discussed such issues on at least two occasions, and Plaintiff knew that EB was very much interested in finding out what the FAA's conclusion would be. (<u>Id</u>.)  The only missing piece that did not exist as of June 7, 2000 was a determination of whether Plaintiff had violated any FAA regulations.  That determination now exists in the form of Mr. Olmsted's expert opinion.

        3.      <u>The Parties Agreed That EB Could Terminate The Contract For Convenience.</u>

Plaintiff's argument in Point III of its brief (at 8-9) is nonsensical.  There is no doubt that the parties agreed that EB could terminate the Contract for convenience. (Terms and Conditions, ¶ 14.)  Plaintiff does not dispute that the Terms and Conditions are part of the Contract. (Plaintiff's Local Rule 56(a)2 Statement, ¶ 3-4.)  In fact, earlier in Plaintiff's Brief it acknowledges such right by quoting, *verbatim*, the termination for convenience clause. (Plaintiff's Brief, at 5.)  EB has set forth in its memorandum supporting its summary judgment motion the reasons why Plaintiff's claim for the full value of six month's worth of flights – even though it <u>never</u> provided these services and incurred <u>no</u> costs related to these services – fails as a matter of law.  Plaintiff simply fails to counter this argument.

-11-

                    DEFENDANT, ELECTRIC BOAT
                    CORPORATION


              By_____
                    Francis H. Morrison III (ct04200)
                    William H. Erickson (ct18117)
                    Day, Berry & Howard LLP
                    CityPlace I
                    Hartford, Connecticut 06103-3499
                    (860) 275-0100
                    Fax:  (860) 275-0343
                    Email:  fhmorrison@dbh.com
                              wherickson@dbh.com
                    Its Attorneys

## **CERTIFICATION**

     THIS IS TO CERTIFY that a copy of the foregoing was mailed this 6th day of December, 2004, postage prepaid, to:

Leonard Feigenbaum, Esq.
1670 Old County Road
Suite 224
Plainview, NY  11803


                _____
                    William H. Erickson