# EXHIBIT D

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EXECUTIVE AIRLINES | : | CIVIL ACTION NO. 3:02cv194 (JCH) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ELECTRIC BOAT CORPORATION, | : | |
| | : | |
| Defendant. | : | DECEMBER 23, 2005 |

**<u>DEFENDANT'S MOTION IN LIMINE</u>**

The defendant, Electric Boat Corporation, hereby respectfully requests the preclusion of certain evidence and testimony by the plaintiff. The plaintiff in this case alleges that the defendant owes it damages as a result of the defendant's termination of the contract. In pretrial conferences and discussions, the plaintiff's president has repeatedly argued that his company is entitled to damages because of (a) the expenses that it incurred in equipping itself to provide services as required by the parties' contract and (b) the plaintiff company's economic difficulties subsequent to the defendant's termination of the contract.

The defendant now moves to preclude plaintiff from presenting testimony or evidence at trial as to either the plaintiff's expenses in gearing up to provide the contract services or as to its financial difficulties after the termination. The plaintiff has not actually claimed these classes of damages in its Second Amended Complaint and is not entitled to damages for either of these losses under contract law. Therefore, the presentation of this evidence is irrelevant and would be highly confusing to the jury and prejudicial to the defendant.

A supporting memorandum of law is attached herewith.

DEFENDANT, ELECTRIC BOAT
CORPORATION


By _____

Francis H. Morrison III (ct04200)
fhmorrison@dbh.com
Michelle I. Turner (ct24012)
miturner@dbh.com
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)
Its Attorneys


## CERTIFICATION

This is to certify that on this date a copy of the foregoing was mailed, first class postage prepaid, to:


I. Leonard Feigenbaum, Esq.
1670 Old County Road, .Suite 224
Plainview, NY  11803


_____
Michelle I. Turner

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EXECUTIVE AIRLINES | : | CIVIL ACTION NO. 3:02cv194 (JCH) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ELECTRIC BOAT CORPORATION, | : | |
| | : | |
| Defendant. | : | DECEMBER 23, 2005 |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION IN LIMINE

Defendant, Electric Boat Corporation ("Electric Boat"), hereby respectfully requests the preclusion of certain evidence and testimony by the plaintiff. The plaintiff, Executive Airlines, alleges that the defendant owes it damages as a result of the defendant's termination of the contract. In pretrial conferences and discussions, the plaintiff's president, Michael Peragine, has repeatedly argued that his company is entitled to damages because of (a) the expenses that it incurred in equipping itself to provide services as required by the parties' contract and (b) the plaintiff's company's economic difficulties subsequent to the defendant's termination of the contract.

However, the plaintiff is not entitled to damages for either of these losses under contract law. Indeed, plaintiff's Second Amended Complaint is quite clear that plaintiff *does not seek* those kinds of damages. Nonetheless, defendant anticipates that the plaintiff's president, Michael Peragine, is likely to make reference to both of those classes of damages during the course of his testimony. The presentation of such evidence is completely irrelevant to the plaintiff's claims as framed in its pleadings, and would be highly confusing to the jury and prejudicial to the defendant. Because the probative value of this evidence is greatly outweighed

by its prejudicial effect, the defendant respectfully requests an order that the plaintiff may not present testimony on the referenced damages.

**I.    Factual Background**

It is undisputed that Executive Airlines and Electric Boat entered into a contract for charter flight services in early 2000. Executive Airlines responded to a request for quotations issued by the defendant, which sought to arrange such transportation for its employees traveling between its facilities in Groton, Connecticut and Newport News, Virginia. Executive Airlines by its response represented that it would have airplanes and other resources to meet the needs of Electric Boat. Electric Boat ultimately entered into a contract with Executive Airlines.

The contract between the parties consisted of three documents: a document entitled "Purchase Order Terms and Conditions" known as GDC 410 (REV. 3/87) (the "Terms and Conditions"); a February 9, 2000 purchase order, number SNL022-096 (the "February Purchase Order"); and a March 14, 2000 purchase order number SNL022-096, along with a "purchase order supplement number 1" (collectively, the "March Purchase Order."). The March Purchase Order modified, in certain respects, the February Purchase Order. Both the February Purchase Order and the March Purchase Order incorporated the conditions set forth in the Terms and Conditions. This contract (the "Agreement") is the only contract that existed between the parties. The Agreement includes no references to any expenses incurred by the plaintiff incurred in preparation for carrying out the contracted services for Electric Boat. Nor does it include any liquidated damages provision or any other provision providing for payment of a party's consequential damages in case of a breach or termination.

On April 10, 2000, Plaintiff commenced its flights for Electric Boat using a BAE Systems Jet Stream 3101, registration number N16EJ (the "Aircraft"). On May 21, 2000, six

-2-

weeks after its first flight for Electric Boat, Executive Airlines was operating the Aircraft on a charter flight from Atlantic City, New Jersey to Wilkes-Barre/Scranton International Airport when the Aircraft crashed, killing all passengers and crew on board.

On the day of that crash, Electric Boat's chief pilot, Mr. Kevin Hanrahan, spoke with Executive Airlines' president, Mr. Peragine, concerning the crash of the Aircraft. Mr. Hanrahan informed Mr. Peragine at that time that Electric Boat was suspending service with Executive Airlines. Despite Electric Boat's efforts over the next few weeks, in Kevin Hanrahan's words, to "get information that would exonerate Mike Peragine's company Executive Airlines and allow me to feel comfortable starting to utilize their service", Mr. Peragine was never able to provide an explanation of the cause of the crash. In a letter dated June 7, 2000, Electric Boat notified Executive Airlines that because the safety of its employees "is of paramount importance" and because the findings of the FAA and the NTSB likely would not be available for some time, Electric Boat terminated the Contract.

On August 26, 2002, the NTSB finalized its Aircraft Accident Brief regarding the crash of the Aircraft. The NTSB stated that the probable cause of the accident was fuel starvation due to the crew's failure to ensure an adequate fuel supply. Pursuant to the Terms and Conditions, Plaintiff had agreed that the "charter aircraft, charter operator and charter pilots must meet all FAA regulations" and that "each assigned aircraft and pilot is subject to Electric Boat (EB) management and chief pilot approval." The NTSB's report suggests that Electric Boat's chief pilot was correct in believing that the Plaintiff's operation did not meet with all FAA regulations. Electric Boat's expert witness has opined that the Plaintiff was not in compliance with many FAA regulations at the time of the termination. Electric Boat will present such expert testimony at trial to support its claim that it properly terminated the Agreement for cause.

-3-

The plaintiff's operative Second Amended Complaint contains two counts. In the first cause of action, Plaintiff alleges that Electric Boat breached the Contract by "virtue of its failure to fulfill its obligations under the purchase order agreement for a period of six months after written notice of its decision to terminate the services provided for thereunder." (Second Am. Compl., first cause of action, ¶ 19.) As a result of such failure, Plaintiff continues, "Plaintiff has been damaged in the amount of $494,395.00." (Second Am. Compl., first cause of action, ¶ 20.)[1] In its second cause of action, Plaintiff similarly alleges that it sent invoices to Electric Boat "detailing defendant's obligation for the six months following" termination of the Contract and that such "invoices demonstrate that the amount of $494,395.00 remains unpaid." (Second Am. Compl., second count, ¶¶ 22-23.) Nowhere in the Second Amended Complaint does plaintiff make any allegations or seek any damages relating either to its expenses in equipping itself to provide the contract flights for Electric Boat or to its economic difficulties after Electric Boat terminated the contract. Rather, the plaintiff simply claims that it is due $494,395 in damages for the flights it would have made if Electric Boat had not terminated.[2]

---

[1] In fact, the Agreement does not support Plaintiff's position as to the measure of damages. At best, if Electric Boat does not succeed in proving termination for cause, the Agreement clearly allowed Electric Boat to terminate for convenience, in which case Electric Boat is obligated to pay only the amount set forth in Paragraph 14 of the terms and conditions. Because Plaintiff did not provide any "actual performance of work", it is not entitled to any compensation under Paragraph 14.

[2] Electric Boat has also interposed a counterclaim for breach of contract, alleging that "[A]s a result of [Plaintiff's] inability to provide the services it agreed to provide under the [Contract], Electric Boat, for approximately seven months, was forced to use commercial air carriers to provide for its travel needs between Groton and Newport News" and "incurred significant travel-related expenses associated with traveling on such commercial carriers, expense it would not have incurred if [Plaintiff] had been able to provide the contracted for charter services." (Counterclaim, ¶ 30.) The costs associated with Plaintiff's breach are approximately $300,000.

-4-

## II.    Argument

### A.    Plaintiff Should Be Precluded from Presenting Testimony or Making Reference to its Expenses in Preparing to Provide Services Under the Contract, Because Such References are Irrelevant and Prejudicial to the Defendant.

At his deposition and at multiple pretrial proceedings, Mr. Peragine has vehemently argued that his company is entitled to damages because of the expenses it expended on purchasing airplanes and training crew members in order to be able to supply the transportation needs of the contract with Electric Boat. (*See, e.g.,* Plaintiff's Damages Analysis of November 20, 2002, attached hereto as Exhibit 1; Peragine Dep. at 134-145, attached hereto as Exhibit 2.)

However, all of that is entirely irrelevant, because the plaintiff has not pled a claim for recovery of those expenses.[3] The plaintiff's Second Amended Complaint includes no allegations as to its pre-contract expenses, and the only basis stated in the Second Amended Complaint for plaintiff's damages claim is the minimum amount that it claims Electric Boat would have paid it if the contract had not been terminated.[4]

While it is undoubtedly the case that Executive Airlines had to expend funds to acquire additional airplanes and staff in order to carry out the terms of the Agreement, those expenditures were simply not a part of the contract. Rather, Executive Airlines represented in entering into the Agreement that it was ready, willing and able to provide charter air services. Nowhere does

---

[3] At Mr. Peragine's continued deposition of March 20, 2004, it became apparent that Mr. Peragine and his attorney were not entirely in agreement on this point. *See* Peragine Dep. at 193-94; 208-11, attached hereto as Exhibit 2. While a witness may testify as to irrelevant subjects during a deposition, the same testimony at trial could, as discussed below, be extremely prejudicial to the defendant.

[4] Of course, under no circumstances is the plaintiff entitled to the full payment for flights it never actually made. Even under plaintiff's distorted view of the contract, the most that it could ever be entitled to is the profit it would have made on those flights, because the full payment includes significant overhead that the plaintiff has not had to expend. Plaintiff's accountant has testified that its normal profit margin for its air charter business is less than 8%.

the Agreement mention the start-up costs that Mr. Peragine now points to as a basis for his

damages. The purchase order references the airplanes that Executive Airlines may use in

carrying out the contract, but there is no reference to the acquisition of those airplanes or to any

of Executive Airlines' costs in equipping itself. Indeed, the plaintiff's submission in response to

the request for quotation specifically states that plaintiff is already "[u]nder contract to purchase

two additional Jetstream 3101 Aircraft". (*See* plaintiff's response to Request for Quotation,

attached hereto as Exhibit 3.)

Early in this case, plaintiff made the claim that it was entitled to six months' worth of

payments because the parties intended to provide for liquidated damages in case the contract was

terminated. Specifically, plaintiff argued that "the termination provisions of the Purchase Order

were modified to provide six-months charter fees as liquidated damages in the event of

termination because of the enormous costs that Executive Airlines would incur in gearing up for

this project." *Executive Airlines v. Electric Boat,* 271 F. Supp. 2d 392, 397 (D. Conn. 2003).

That claim was found to be without merit by Judge Goettel, who held that there was neither a

liquidated damages clause nor any ambiguity that would justify looking outside the contract to

determine the parties' intentions during the contracting process. *Id.* at 397-99. The Court also

held that Electric Boat clearly did not breach the contract by terminating it. *Id.* at 397.

The Second Amended Complaint and the law of the case together make it clear that there

can be no claim here for damages arising out of the plaintiff's expenditures in equipping itself to

fulfill its duties under the Electric Boat contract. Thus, any testimony about those expenditures

is completely irrelevant to the plaintiff's claims.

On the other hand, such evidence could be severely prejudicial to the defendant and could

confuse or mislead the jury. The suggestion that Electric Boat should reimburse the plaintiff for

the funds that the plaintiff invested in buying new airplanes and training new crew members to carry out the contract is one that could easily appeal to jurors and that may be easier for jurors to grasp than the relatively complex termination provisions that are really at issue in this case. However, such an argument has no basis either in law or in the facts of this case. Under Rule 403, "trial judges have broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side or mislead the jury." *United States v. Romaszko*, No. 01-1606, 2002 U.S. App. LEXIS 18618, *8 (2d Cir. Sept. 6, 2002) (internal citations and quotation marks omitted).[5] Where such testimony is both irrelevant and poses a risk of jury confusion and prejudice to the defendant, it should be precluded.

**B.    Plaintiff Should Be Precluded from Presenting Testimony or Making Reference the Plaintiff Company's Economic Difficulties Subsequent to the Defendant's Termination of the Contract, Because Such References are Irrelevant and Prejudicial to the Defendant.**

During pretrial proceedings, Mr. Peragine has also repeatedly made references to the economic difficulties that his company suffered after Electric Boat's termination of the Agreement. (*See, e.g.* Peragine Dep. at 149-165, attached as Exhibit 2.) However, the financial difficulties of the company after the termination are entirely irrelevant to this case and do not form the basis for any of the plaintiff's claims, as framed in the Second Amended Complaint.

First of all, it is clear that the Second Amended Complaint does not contain any allegations of such consequential damages. The damages sought by the plaintiff are based purely on the amount that Executive Airlines claims it would have been paid under the contract, based on the contract price per flight and the minimum monthly number of flights set forth in the

---

[5] Copies of all unreported cases are attached hereto as Exhibit 4.

contract, plus interest. There is no claim for other lost profits, injury to reputation, or business opportunity.

Moreover, the Court has already held that Electric Boat did not breach the contract when it terminated, because it had a right to terminate for convenience. *Executive Airlines,* 271 F. Supp. 2d at 397.   Thus, the plaintiff's only breach of contract claim relates to Electric Boat's nonpayment of plaintiff's invoices, not to its termination.  Even if plaintiff were to prove that Electric Boat's nonpayment is a breach of the contract, the plaintiff's subsequent financial difficulties cannot be said to flow from nonpayment of invoices.

Indeed, any such claim would also be entirely speculative.  Executive Airlines' other customers and potential customers, just like Electric Boat, may quite reasonably have been deterred from using the plaintiff's services simply as a result of the crash and the subsequent NTSB finding that the crash occurred as a result of fuel starvation.  The wrongful death lawsuits that the plaintiff faced after that crash could have been another factor.  Moreover, there were so many other factors at play in the aviation industry and the economy as a whole in that time period that the plaintiff cannot possibly prove any kind of causal relationship between Electric Boat's termination and the plaintiff's subsequent failure.

Finally, contract law simply will not support such a tenuous damages claim, even if the plaintiff could somehow prove that it went out of business or suffered damage to its reputation as a result of Electric Boat's alleged breach.  It is a fundamental tenet of contract law, since the days of *Hadley v. Baxendale*, that "special or consequential damages are not recoverable unless the party was on notice of those special damages at the time of contracting." *Jessica Howard Ltd. v. Norfolk S. Ry.*, 316 F.3d 165, 170 (2d Cir. 2003) (internal citations and quotation marks omitted); *see also Hafez v. Laticrete Int'l*, 2000 U.S. Dist. LEXIS 13372 (N.D.N.Y. 2000).

("Connecticut follows the venerable axiom set forth in *Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Enc. Rep. 145 (1854): 'The general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed.' Only if a plaintiff pleads special circumstances are extraordinary damages available"). Plaintiff has not pled anything in the Second Amended Complaint about its post-termination financial difficulties. Nor has it pled any factual basis to believe that those difficulties were foreseen or even foreseeable at the time of contracting.

Any testimony or evidence on this subject could be severely prejudicial to the defendant by its misleading effect on the jury. References to the plaintiff's difficult financial situation can only be intended to elicit sympathy for the plaintiff and confuse the jury about the magnitude of plaintiff's recoverable damages. Thus, where such testimony is utterly irrelevant to the plaintiff's claims, it should be precluded. Under Rule 403, "trial judges have broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger that it will unfairly prejudice the other side or mislead the jury." *Romaszko*, 2002 U.S. App. LEXIS at *8 (internal citations and quotation marks omitted).

## III.    Conclusion

For all the foregoing reasons, the defendant respects that the Court enter an order precluding the plaintiff from presenting evidence or testimony as to either the plaintiff's expenses in preparing to provide services as required by the contract or as to its economic difficulties after the defendant's contract termination.

DEFENDANT, ELECTRIC BOAT
CORPORATION

By _____
Francis H. Morrison III (ct04200)
fhmorrison@dbh.com
Michelle I. Turner (ct24012)
miturner@dbh.com
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 (fax)
Its Attorneys

## CERTIFICATION

This is to certify that on this date a copy of the foregoing was mailed, first class postage prepaid, to:

I. Leonard Feigenbaum, Esq.
1670 Old County Road, .Suite 224
Plainview, NY  11803

_____
Michelle I. Turner