# EXHIBIT H

## EXHIBIT H

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

1. Every contract contains an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other party to receive benefits of the contract. The concept is essentially a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended. It is not a separate contractual claim and the covenant cannot be applied to achieve a result contrary to the clearly expressed terms of the contract between the parties. Here, Electric Boat had an obligation to exercise good faith when negotiating the termination provisions of the Contract and in terminating the Contract.

You must decide whether Electric Boat fulfilled that obligation to exercise good faith. Good faith negotiation or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party. Good faith and fair dealing mean an attitude or state of mind denoting honesty of purpose and freedom from intention to defraud. It means being faithful to one's duty and obligation under the contract. Good faith is defined as the opposite of bad faith. If Electric Boat engaged in bad faith you must find that it did not fulfill the covenant. Bad faith generally implies a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties. Bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose. Bad faith contemplates a state of mind affirmatively operating with furtive design or ill will.

2. You must determine what was the intent of the parties in negotiating the termination provisions in Paragraph 2 of Supplement No. 1, contained in the March Purchase Order, and specifically as to whether the intent of Paragraph 2(A) was to provide a six month stream of income to Executive Airlines in the event of termination by Electric Boat for its convenience or whether the intent was to have the consequences of Electric Boat's termination for convenience controlled by Paragraph 14 of the Terms and Conditions.

The first place to look to find the parties' intent is the wording that was used in the contract. Words in a contract are to be given their ordinary meaning. If you cannot determine what was intended from the language you may consider the circumstances surrounding the entering into the contract or other legal doctrines that I will provide to you in these instructions.

In determining the intent of the parties, you should chose that intent which most clearly comports with the covenant of good faith and fair dealing.

3. If you are unable to determine the intent of the parties from the language and the surrounding circumstances, you may construe that language against Electric Boat, the party who wrote the contract. However, you should not construe the contract against Electric Boat if it leads you to a result that was not intended by the parties or if it leads you to a result that is not a reasonable meaning of the contract

4. Since the parties have stipulated to the existence of the Contract in this action and that it was terminated by Electric Boat on 7 June 2000, you must determine whether that termination was for Electric Boat's convenience pursuant to Paragraph 2(A) of Supplement No. 1, or due to the default of Executive Airlines pursuant to Paragraph 2(B) of Supplement No. 1. You

2

must further determine whether Paragraph 2(A) was intended to supersede the provisions of the Terms and Conditions as opposed to Paragraph 2(B) which specifically made refence to the Terms and Conditions.

5. In determining whether Electric Boat terminated the Contract for convenience or default, the fact that a crash occurred does not in and of itself constitute a default by Executive Airlines under the Contract.

6. Your determination as to termination of the Contract for convenience or default must be based on the facts as they existed on 7 June 2000, the date of termination, not as they may have existed at a later date. You cannot consider any events, facts or conclusions which occurred after the date of termination since those events, facts or conclusions could not have been part of Electric Boat's reason for termination on 7 June 2000.

7. In attempting to prove a default by Executive Airlines under the Contract, one of the burdens of proof on Electric Boat is to establish that Executive Airlines was incapable of performing its obligations under the Contract, either directly or by subcontract, at the time of termination.

8. In considering the facts of this case, you must take into account that the Court has already determined that Electric Boat did not send Executive Airlines a written notice of default conforming to the requirements of paragraph 12(a) of the Terms and Conditions.

9. You must determine if Paragraph 14 of the Terms and Conditions is inconsistent with the intent of Paragraph 2(A) of Supplement No. 1. In determining whether or not Paragraph 14 is inconsistent, you must consider whether the terms of Paragraph 14 would provide any real or significant compensation to Executive Airlines in the event of a termination for Electric

Boat's convenience. If you determine paragraph 14 is inconsistent with the intent of Paragraph 2(A), you must find that Paragraph 2(A) of Supplement No. 1 takes precedence over Paragraph 14 of the Terms and Conditions.

10. If you find that Electric Boat terminated the Contract for convenience and further find that Paragraph 2(A) of Supplement No. 1 takes precedence over Paragraph 14 of the Terms and Conditions or that Paragraph 14 does not apply, you must then find that Electric Boat was required to pay to Executive Airlines the monthly minimum payment for the following six months.