UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EXECUTIVE AIRLINES | : CIVIL ACTION NO. 3:02cv194 (JCH) |
| Plaintiff, | : |
| v. | : |
| GENERAL DYNAMICS CO., ET AL. | : |
| Defendants. | : DECEMBER 23, 2005 |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT'S MOTION IN LIMINE TO EXCLUDE PAROL EVIDENCE**

Defendant, Electric Boat Corporation ("Electric Boat"), hereby respectfully requests the preclusion of certain evidence and testimony by the plaintiff. The plaintiff, Executive Airlines, has alleged that the defendant owes it damages as a result of the defendant's termination of the contract between the parties. In pretrial conferences and discussions, the plaintiff's president, Michael Peragine, has repeatedly made statements about the parties' intent in negotiating the contract and, specifically, has argued that the six month notice provision was intended to give his company six months' worth of payments in the event of termination. However, this Court has already held that the terms of the contract are not ambiguous, that the contract does not provide for liquidated damages and that it is an integrated contract whose terms must be interpreted without regard to parol evidence. *Exec. Airlines v. Elec. Boat Corp.*, 271 F. Supp. 2d 392, 399 (D. Conn. 2003).

The defendant hereby moves for an order precluding the plaintiff from presenting testimony or evidence about the parties' intent in negotiating the contract or its termination provisions. Because the contract is unambiguous and is an integrated contract, any testimony regarding the parties' intent in the negotiation process is impermissible parol evidence and must be precluded.

I.  **FACTUAL BACKGROUND**

It is undisputed that Executive Airlines and Electric Boat entered into a contract for charter flight services in early 2000. Executive Airlines responded to a request for quotations issued by the defendant, which sought to arrange transportation for its employees traveling between its facilities in Groton, Connecticut and Newport News, Virginia. Electric Boat ultimately entered into a contract with Executive Airlines.

On April 10, 2000, Plaintiff commenced its flights for Electric Boat using a BAE Systems Jet Stream 3101, registration number N16EJ (the "Aircraft"). On May 21, 2000, six weeks after its first flight for Electric Boat, Executive Airlines was operating the Aircraft on a charter flight from Atlantic City, New Jersey to Wilkes-Barre/Scranton International Airport when the Aircraft crashed, killing all passengers and crew on board.

On the day of that crash, Electric Boat's chief pilot, Mr. Kevin Hanrahan, spoke with Executive Airlines' president, Mr. Peragine, concerning the crash of the Aircraft. Mr. Hanrahan informed Mr. Peragine at that time that Electric Boat was suspending service with Executive Airlines. Despite Electric Boat's efforts over the next few weeks, in Kevin Hanrahan's words, to "get information that would exonerate Mike Peragine's company Executive Airlines and allow me to feel comfortable starting to utilize their service", Mr. Peragine was never able to provide an explanation of the cause of the crash. In a letter dated June 7, 2000, Electric Boat notified Executive Airlines that because the safety of its employees "is of paramount importance" and because the findings of the FAA and the NTSB likely would not be available for some time, Electric Boat terminated the Contract.

On August 26, 2002, the NTSB finalized its Aircraft Accident Brief regarding the crash of the Aircraft. The NTSB stated that the probable cause of the accident was fuel starvation due

to the crew's failure to ensure an adequate fuel supply. Pursuant to the Terms and Conditions, Plaintiff had agreed that the "charter aircraft, charter operator and charter pilots must meet all FAA regulations" and that "each assigned aircraft and pilot is subject to Electric Boat (EB) management and chief pilot approval." The NTSB's report suggests that Electric Boat's chief pilot was correct in believing that the Plaintiff's operation did not meet with all FAA regulations. Electric Boat's expert witness has opined that the Plaintiff was not in compliance with many FAA regulations at the time of the termination. Electric Boat will present such expert testimony at trial to support its claim that it properly terminated the Agreement for cause.

## II. ARGUMENT

### A. Evidence or Testimony Regarding the Parties' Intent in Negotiating the Contract Must be Precluded as Impermissible Parol Evidence.

Throughout the pretrial litigation of this case, including his deposition and even recent pretrial conferences, the plaintiff's president, Michael Peragine, has repeatedly made reference to the parties' intent in negotiating the termination provisions of the Agreement.

Plaintiff has previously put this issue directly before the Court, asking the Court "to look beyond the four corners of the Agreement to consider the parties' intent, which, it claims, was to provide for six months of income as liquidated damages." *Exec. Airlines*, 271 F. Supp. at 398. In response, the Court stated,

> Were the terms of the Agreement ambiguous, we would do so, but they are not. A contract is interpreted by the intent of the parties expressed in the language of the agreement. If the language of the contract is ambiguous, the Court must defer to a jury to determine the intent of the parties. However, where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law for the Court to decide. When the terms of an agreement are clear, there is no room for construction of the language. Ambiguity must arise from the language of the contract, not from the subjective interpretations of the parties. Here, we find that the Agreement is clear with respect to the consequences of termination. Moreover, the Agreement contains an integration clause, which evidences the parties' intent to create a fully integrated contract.

-3-

*Id.* at 399 (D. Conn. 2003) (internal citations and quotation marks omitted).

Despite this clear ruling that parol evidence will not be considered in this matter, the plaintiff has continued, in pretrial conferences and discussions, to make references to the negotiation history and the parties' intent in establishing the termination provisions of the Agreement.

Connecticut law is clear that "where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law . . . ." *Tallmadge Bros. v. Iroquois Gas Transmission Sys., L.P.*, 252 Conn. 479, 495, 746 A.2d 1277 (2000) (citations and internal quotation marks omitted). The Court's inquiry into the parties' "intent" in an agreement "must focus on the intent of the parties <u>as they expressed it in the agreement</u>." *Pesino v. Atlantic Bank*, 244 Conn. 85, 94, 709 A.2d 540 (1998) (emphasis added). "The question is not what intention existed in the <u>minds</u> of the parties but what intention is expressed in the <u>language</u> used" in the written agreement. *Ryan v. Fire Prot. Sprinkler Sys. Bd.*, 10 F. Supp. 2d 135, 136 (D. Conn. 1998) (citation and internal quotation marks omitted) (emphases added), *aff'd mem.*, 172 F.3d 38 (2d Cir. 1999).

Thus, "[w]here the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." *Tallmadge*, 252 Conn. at 498 (citations and internal quotation marks omitted). "[A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." *Id.* (citations and internal quotation marks omitted); *Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 584, 573 A.2d 699 (1990) (noting that "words do not become ambiguous simply because lawyers or laymen contend for different meanings"); *see also Ranger Ins. v.*

*Kovach*, 63 F. Supp. 2d 174, 181 (D. Conn. 1999) (noting that under Connecticut rules of contract interpretation, the intention of the parties is to be deduced from plain, unambiguous contract language, contract language must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction that ignores the contract provisions).

Moreover, "'[a] court cannot import into [an] agreement a different provision nor can the construction of the agreement be changed to vary the express limitations of its terms.'" *Bank of Boston v. Scott Real Estate, Inc.*, 40 Conn. App. 616, 621-22, 673 A.2d 558 (1996) (quoting *Hatcho Corp. v. Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985)). Perhaps most importantly, the unexpressed motives or desires of a contracting party cannot be offered to prove an intent that varies or contradicts the terms expressed in the writing. *See Lee v. BSB Greenwich Mort. LP*, 267 F.3d 172, 178 (2d Cir. 2001); *Dubinsky v. Citicorp Mort., Inc.*, 708 A.2d 226, 229-30 (Conn. App. Ct. 1998) (same). "In the absence of ambiguity, the effect of admitting extrinsic evidence would be to allow one party 'to substitute his view of his obligations for those clearly stated,'" and thus, provide an opportunity for that party to perpetrate a fraud upon the other contracting party. *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26-27 (2d Cir. 1988) (citation omitted). "Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant." *Heyman Assocs. No. 1 v. Ins. Co. of Pa.*, 231 Conn. 756, 780, 653 A.2d 122 (1995).

In this case, as Judge Goettel has previously held, the simple language of the Agreement leaves no room for ambiguity. *Exec. Airlines*, 271 F. Supp. 2d at 399. Any private understanding the plaintiff may have had about the termination clauses of the Agreement has no legal effect. "[I]n situations in which the parties have their agreement in writing, "'their intention is to be determined from its language and not on the basis of any intention either may

have secretly entertained.'" *Thompson & Peck, Inc. v. Harbor Marine Contracting Corp.*, 203 Conn. 123, 130-31, 523 A.2d 1266, 1270 (1987) (quoting, *Sturman v. Socha*, 191 Conn. 1, 10, 463 A.2d 527 (1983)). "[T]he inquiry must focus on the intention expressed in the lease and not on what intention existed in the minds of the parties." *Hatcho Corp. v. Della Pietra*, 195 Conn. 18, 21, 485 A.2d 1285 (1985).

Additionally, any extrinsic evidence concerning the parties' understanding of the termination provision is excluded from consideration by the integration clause. (*See* Terms and Conditions ¶ 23, attached hereto as Exhibit 1.)

Connecticut law is clear that, where there is no ambiguity in a contract, especially an integrated contract, parol evidence is irrelevant and inadmissible. That is also the clear law of the case under Judge Goettel's decision. Thus, any testimony about the negotiation process is irrelevant and inadmissible parol evidence.

## III.   CONCLUSION

For all the foregoing reasons, the defendant respects that the Court enter an order precluding the plaintiff from presenting evidence or testimony as the parties' intent in negotiating the agreement.

DEFENDANT, ELECTRIC BOAT
CORPORATION

By /s/ Michelle I. Turner
Francis H. Morrison III (ct04200)
fhmorrison@dbh.com
Michelle I. Turner (ct24012)
miturner@dbh.com
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
Its Attorneys

## **CERTIFICATION**

      This is to certify that on this date a copy of the foregoing was mailed, first class postage prepaid, to:

I. Leonard Feigenbaum, Esq.
1670 Old County Road, .Suite 224
Plainview, NY 11803

_____
Michelle I. Turner