# EXHIBIT B

LEXSEE 1989 US DIST LEXIS 14645

**THOMAS J. RATTIGAN, Plaintiff, v. COMMODORE INTERNATIONAL LIMITED, Defendant. COMMODORE INTERNATIONAL LIMITED, Plaintiff, v. THOMAS J. RATTIGAN, Defendant**

No. 87 Civ. 2729 (MBM)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1989 U.S. Dist. LEXIS 14645*

**December 8, 1989, Decided and Filed**

COUNSEL: [*1]

JONATHAN L. ROSNER, Rosner & Goodman, Attorneys for Plaintiff, New York, New York.

MICHELE M. OVESEY, Proskauer Rose Goetz & Mendelsohn, Attorneys for Defendant, New York, New York.

OPINIONBY:

MUKASEY

OPINION:

OPINION AND ORDER

MICHAEL B. MUKASEY, UNITED STATES DISTRICT JUDGE

Plaintiff Thomas J. Rattigan moves to preclude certain evidence that defendant Commodore International Limited intends to offer at trial. For the reasons set forth below, plaintiff's motion is denied.

The basic facts and contentions in this case have been set forth previously in the opinion and order denying summary judgment, issued on May 5, 1988. Familiarity with such facts and contentions is assumed.

Plaintiff requests preclusion of:

1) drafts and final versions of memoranda, correspondence and testimony about the employment agreement and defendant's employment agreements with other executives, because this evidence allegedly violates the parol evidence rule;

2) documents defendant failed to disclose during discovery and testimony on the subject of these documents, because defendant cannot offer into evidence what it failed to disclose during discovery; and

3) evidence of plaintiff's alleged breaches of his employment agreement, [*2] damages allegedly caused by the breaches and evaluation of plaintiff's performance at Commodore, because Commodore allegedly failed to satisfy conditions precedent to asserting breach of the employment agreement.

I.

The documents and testimony that defendant plans to offer to shed light on the terms of the employment contract constitute extrinsic evidence, which, under New York's parol evidence rule, cannot be offered to interpret, vary or contradict the meaning of the agreement if the agreement is clear on its face. *Leumi-Financial Corp. v. Richter*, 17 N.Y.2d 166, 269 N.Y.S.2d 409 (1966); *General Phoenix Corp. v. Cabot*, 300 N.Y. 87, 92 (1949). Such evidence may be admissible, however, if the court determines that on the face of the contract certain terms are ambiguous, and the evidence is offered to clarify the ambiguity. *Proteus Books, Ltd. v. Cherry Lane Music*, 873 F.2d 502 (2d Cir. 1989); *U.S. Naval Institute v. Charter Communications*, 875 F.2d 1044, 1048 (2d Cir. 1989); *Schluter v. Wolfson*, 34 A.D.2d 772 (1st Dep't 1970).

Plaintiff argues that the contract, which contains a merger clause, is not ambiguous, and that defendant is offering [*3] its evidence in order to contravene the plain meaning of the document. Defendant argues that the evidence must be introduced because it sheds light on three ambiguous provisions (specifically the underlined words) in the agreement:

a) Section 1, which states that Rattigan "shall report to the Chairman of CIL and perform such duties and responsibilities of a senior executive nature consistent with such positions and as may be from time to time prescribed by the Chairman of the Board of directors of CIL."

b) Section 9(b), which states that Rattigan will be terminated only upon his commission of a crime, his competition with the company in breach of the agreement, or his "gross disregard of his duties under Sections 1 and 2 of this Agreement and such event continues uncured for ten days after notice thereof given by determination of the Board of Directors of CIL."

c) Section 9(c)(i), which provides that Rattigan's resignation will be deemed involuntary for the purposes of the severance clause of the agreement if, inter alia, there has been a "material diminution or material change in the character of Rattigan's duties and responsibilities as described in Section 1 of [*4] this Agreement."

Although defendant argues that all three provisions are ambiguous in and of themselves, the testimony it wishes to offer relates mainly to the reporting provision. That provision, however, affects the other two provisions, which both refer to the reporting provision for the scope of plaintiff's duties. Because the reporting provision -- and thus the other provisions -- is ambiguous, defendant's evidence is not precluded by the parol evidence rule.

A merger or integration clause usually weighs in favor of precluding parol evidence. See *Barclays Bank of New York v. Goldman, 517 F. Supp. 403 (S.D.N.Y. 1981)*. Nevertheless, when there are ambiguities in the contract, parol evidence is admissible to resolve the ambiguities even when the contract contains an integration clause. See *Baldt Corp. v. Tabet Mfg., 412 F. Supp. 249, 254 (S.D.N.Y. 1974)*, aff'd mem., *517 F.2d 1395*.

A contract term is ambiguous not merely when the parties themselves ascribe different meanings to the term, but rather when the term is "susceptible to at least two reasonable meanings." *Kemelhor v. Penthouse, 689 F. Supp. 205, 212 (S.D.N.Y. 1988)*, aff'd mem., *873 F.2d 1435* [*5] *(1989)*. See also *Charter Communications, 875 F.2d 1044*.

Rattigan argues that the Board's directives to him usurped his authority as President and CEO, which resulted in a material diminution of his duties under Section 9(c)(i). He claims that the one outside document which should be used to interpret the reporting provision, which defines the authority and duties of the CEO in relation to the Chairman, is Commodore's Articles of Association. n1 Commodore, on the other hand, wants to show at trial that the reporting provision governs the balance of power in the company and reflects an intention that the Chairman have a dominant role, and therefore that the directives to Rattigan were consistent with the contract. Further, Commodore asserts that Rattigan's disobedience of the reporting provisions constituted gross disregard of his duties.

> n1 The Articles of Association provide that the President shall have such powers and duties as the Board assigns to him, and that the CEO "shall have such powers and duties as chief executive officers of corporations usually have." The Chairman of the Board shall preside at all meetings and "shall have such powers and duties as the Board assigns to him."

[*6]

On its face, the reporting provision is ambiguous. The term "report to the Chairman" could indicate either that Rattigan was supposed to inform the Chairman consistently of his activities, or that in the event of conflicting views, the Chairman's would prevail, or that Rattigan was to receive all orders from the Chairman, or that the Chairman was, in the vernacular, his boss, or any or all of these. "Duties and responsibilities of a senior executive nature" is equally vague, especially when such duties must be consistent with "such positions and as may be from time to time prescribed by the Chairman." Because there is no evidence that terms used in this provision are terms of art with broadly acknowledged meanings, it is quite possible for two reasonable people to interpret the terms differently.

The "gross disregard" and "material diminution" provisions of the contract also are ambiguous, both because they themselves contain ambiguous terms and because they refer to the ambiguous reporting provision. Rattigan contends that "gross disregard" is a common phrase which must be accorded its customary meaning, and that "material diminution" was used in case law that existed at the time [*7] the contract was drafted. The objective meanings of these terms, however, are unclear. "Gross disregard" and "material diminution" are not terms of art used so frequently as to have easily definable meanings. n2 Further, even if they were commonly used phrases, their reference to Rattigan's duties under Section 1 of the agreement, which itself is ambiguous, renders these provisions ambiguous as well for the purposes of the parol evidence rule.

These drafts and final versions of memoranda, correspondence and testimony about the employment agreement and defendant's employment agreements with other executives therefore will not be precluded on the basis of the parol evidence rule. This holding, however, is not to be interpreted as a ruling that all or any part of

Case 3:02-cv-00194-WWE    Document 125-4    Filed 01/13/2006    Page 4 of 11

Page 3
1989 U.S. Dist. LEXIS 14645, *

such evidence is admissible at trial. All such evidence is still subject to preclusion at trial based on considerations of relevance, materiality, competence, prejudice and any other policies reflected in the Federal Rules of Evidence.

> n2 Plaintiff cites, among other cases, *Rudman v. Cowles Communications, Inc.*, 30 N.Y.2d 7, 330 N.Y.S.2d 33, for the proposition that there was "substantial decisional law extant when the phrase ["material diminution"] was included in the Agreement." (Pl. Reply Mem. at 3) Indeed, the Court in Rudman explained that if an executive employee "is engaged to fill a particular position, any material change in his duties, or significant reduction in rank, may constitute a breach of his employment agreement." *Rudman*, 30 N.Y.2d at 10. Rudman, however, did not define the phrase "material diminution" outside the specific facts of that case.
>
> In fact, the court determined that there had been a material change in Rudman's duties only after examining extrinsic evidence -- including prior negotiations, parties' expressed expectations, press releases and deposition testimony. The court justified the use of this evidence on the fact that "the broad language in the agreement was patently ambiguous in referring, without other specification, to executive and administrative responsibilities." *Rudman*, 30 N.Y.2d at 11.

[*8]

II.

Rattigan has requested the preclusion of all documents that Commodore did not produce during discovery. Specifically, Rattigan refers to his earlier requests for: 1) employment agreements and files for all senior management personnel who were hired and terminated between January 1987 and April 20, 1987; and (2) documents relating to Commodore's agreement with the advertising agency Griffin, Bacal in and after January 1987. Rattigan wants to preclude testimony of employees hired during that period and testimony relating to a contract between Commodore and Griffin, Bacal (entered into by Rattigan) concerning promotion of the Amiga computer, because Commodore allegedly never responded to document requests concerning these matters.

Commodore claims "that Rattigan either failed to request in the first instance, or failed to pursue production of, following Commodore's timely objection, the very documents upon which he now bases his motion to preclude." (Def. Mem. at 15) It also claims that it has produced most of these documents.

Because of the harshness of a preclusion order, plaintiff's motion is denied. Nevertheless, defendant must turn over to plaintiff any documentary evidence [*9] it wishes to introduce at trial if it has not done so already.

Preclusion of evidence at trial is a proper remedy when the party offering the evidence has failed to obey an order regarding that evidence, or has failed to respond to a request for evidence. Fed. R. Civ. P. 37(d) and 37(b)(2), when read together, provide that when one party fails to respond to a request for inspection submitted under Rule 34, or fails to obey an order to provide or permit discovery, the court may issue an order "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(B).

In the case at bar, plaintiff has not shown that defendant failed to serve a written response to plaintiff's document requests. In fact, defendant did respond extensively to plaintiff's second request for documents, setting forth objections and responses to each request in an eleven-page document. (Def. Exh. 10) Plaintiff's failure to seek to compel production of the documents that allegedly were not produced, or to negotiate with his opponent for the production of such documents, militates against preclusion [*10] as a remedy at this point for defendant's alleged failure to produce.

Furthermore, even if defendant had not responded to plaintiff's document request, a preclusion order is a serious remedy that should not be imposed with regard to a necessary element of a claim unless "there is some showing of wilful disobedience or gross indifference to the rights of the adverse party, deliberate callousness or intended negligence." 4A *Moore's Federal Practice* § 37.03[2] at 37-78 - 37-79. See *Cine Forty-Second Street Theater Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979). Plaintiff has made no showing of such gross indifference here. Plaintiff's motion for preclusion of documents not produced in discovery therefore is denied. However, again, defendant must produce to plaintiff forthwith all documents it intends to introduce at trial.

III.

Section 9(b) of the Employment Agreement provides that plaintiff may be fired for gross disregard of his duties only if this gross disregard "continues uncured for ten (10) days after notice thereof given by determination of the Board of Directors of CIL. Such determination by the Board of Directors shall be made only at meetings [*11] of which plaintiff is given notice and at which he is, if present, given reasonable opportunity to present his position."

Case 3:02-cv-00194-WWE    Document 125-4    Filed 01/13/2006    Page 5 of 11

Page 4
1989 U.S. Dist. LEXIS 14645, *

Defendant has asserted counterclaims alleging that plaintiff breached the Employment Agreement and his fiduciary duties by disobeying the Chairman's instructions. Plaintiff now requests preclusion of evidence regarding his own purported misconduct, because defendant allegedly failed to satisfy conditions precedent to bringing a breach of contract claim. Plaintiff asserts that because defendant did not give him the notice, hearing and opportunity to cure provided by Section 9(b) of the contract, defendant cannot bring -- or at least support -- a claim based on plaintiff's breach of the contract. Plaintiff thus argues that the procedural provisions of Section 9(b) constitute conditions precedent to a claim of breach, and that because defendant has failed to comply with conditions precedent to a lawsuit, it cannot now introduce evidence of plaintiff's breach of contract.

Indeed, under New York law, a party's failure to comply with a condition precedent may bar that party from asserting breach of contract. *Hadden v. Consolidated Edison Co. of New York, 45 N.Y.2d* [*12] *466, 410 N.Y.S.2d 274 (1978); Holland Industries, Inc. v. Adamar of New Jersey, Inc., 550 F. Supp. 646, 647 (S.D.N.Y. 1982).* Yet, the part of the contract upon which defendant bases its counterclaim does not hinge upon the satisfaction of any conditions. The conditions precedent that defendant allegedly has failed to satisfy -- notice, a hearing and opportunity to cure -- relate only to the termination provision of the contract, and do not affect damage actions brought under the contract as a whole. Defendant is not suing for termination; n3 rather, it sues for damages allegedly caused by plaintiff's breach of duties under the contract.

---

n3 Plaintiff is the party who in effect is asserting that his employment was terminated. Defendant's counterclaim thus involves many of the same issues, and probably evidence, as its defense to plaintiff's claim that defendant breached the contract. As this court decided before, with regard to plaintiff's summary judgment motion, the parties' versions of the events leading up to the suspension and resignation differ substantially and thus present issues of material fact for trial.

---

Furthermore, plaintiff in essence has filed a summary judgment [*13] motion in the guise of a motion in limine by asking for preclusion of evidence based on defendant's failure to state a claim. Plaintiff has done so despite this court's previous denial of summary judgment motions to dismiss defendant's counterclaims. The counterclaims are to be decided by the jury in this case; thus, evidence that will help the jury decide whether defendant engaged in misconduct under the contract will not be excluded now based on arguments about the merits of the counterclaim itself.

Plaintiff also asserts that defendant has waived its right to seek damages for plaintiff's alleged breach of contract by not firing him immediately upon learning of the alleged breaches. Plaintiff claims the actions that allegedly constituted gross disregard of his duties occurred two to ten months before his resignation, but that at the Board's two formal meetings during that time period, the Board "took no action to invoke or comply with the Agreement's conditions precedent to termination and an action for breach." (Pl. Mem. at 11)

Under New York law, an employer may waive its right to dismiss an employee for breach of contract when it condones the employee's conduct and accepts the [*14] benefits of the employee's work after learning of the breach. *Hadden, 45 N.Y.2d at 470; Kemelhor, 689 F. Supp. at 213.* Of course, if the employee has concealed his wrongdoing from his employer through misrepresentation, there can be no waiver of the right to sue the employee for breach of contract. *Hadden, 45 N.Y.2d at 470.*

As this court has stated previously, the parties have offered widely divergent versions of what led to Rattigan's suspension and resignation, and there exist issues of material fact for trial. The question of whether or not defendant condoned plaintiff's actions and thereby waived its right to sue Rattigan for breach of his duties under the contract is a question of fact to be determined by the jury along with their determination of all of defendant's counterclaims. The evidence of Rattigan's alleged breaches of his employment agreement, damages allegedly caused by the breaches and evaluation of Rattigan's performance at Commodore therefore will not be precluded.

IV.

Finally, defendant has requested sanctions against plaintiff under *Fed. R. Civ. P. 11* for plaintiff's allegedly frivolous attempt to preclude evidence relating to defendant's counterclaims [*15] despite this court's denial of plaintiff's motion for summary judgment and his motion for reargument on that issue.

Under Rule 11, sanctions must be imposed when it appears that a competent attorney, after reasonable inquiry, could not form the reasonable belief that a pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law. *Eastway Constr. Corp. v. City of New York, 762 F.2d 243, 254 (2d Cir. 1985).* See Standards and Guidelines for Practice Under *Rule 11 of the Federal Rules of Civil Procedure*, reprinted in *121 F.R.D. 101, 113-120 (1988).* In other words, when it should be clear to an objective observer that there has

Case 3:02-cv-00194-WWE   Document 125-4   Filed 01/13/2006   Page 6 of 11

Page 5
1989 U.S. Dist. LEXIS 14645, *

been no reasonable inquiry into the basis for a pleading, that the claim has absolutely no chance of success under existing precedents, and that no objectively reasonable argument has been advanced to extend, modify, or reverse the law as it stands, Rule 11 has been violated. *Eastway Constr. Corp.*, 762 F.2d at 254; *Int'l Shipping Co. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989).

Plaintiff's attempt to achieve a dismissal of defendant's [*16] counterclaim through his motion in limine abuses the motion process in that this court twice has denied summary judgment, but it satisfies Rule 11's test of objective reasonableness in that it advances a reasonable -- albeit mistaken -- argument to preclude defendant's breach of contract claim based on New York law. n4 Furthermore, plaintiff's parol evidence claim was not unreasonable, because absent ambiguities in the contract parol evidence would not be admitted to help interpret the contract.

n4 Plaintiff should note, however, that although so far he has eluded Rule 11 sanctions, if he continues to disregard this court's decision to allow the jury to hear the claims in question, his conduct may reach the level of frivolousness at which sanctions are warranted.

Plaintiff's second claim, for preclusion of documents not produced in discovery, seems to reveal a late-in-the-game discovery dispute rather than a reasonable inquiry into the merits of an in limine motion. Nonetheless, "an argument or minor subclaim, though frivolous, may well not warrant sanctions if made as part of 'an otherwise well-and-independently grounded claim.'" *Cross & Cross Properties v. Everett Allied* [*17] *Co.*, 886 F.2d 497, 504 (2d Cir. 1989), quoting *Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1473 n. 9 (2d Cir. 1988), cert. granted sub nom. *Pavelic & Leflore v. Marvel Entertainment Group*, 109 S.Ct. 1116 (1988). Although the Court in Cross & Cross Properties emphasized that courts should not deny sanctions for a "significant and obviously meritless claim" just because the rest of the pleading is sound, 886 F.2d at 504, plaintiff's second claim was neither so egregious nor such a significant part of plaintiff's motion as to merit an imposition of sanctions.

\* \* \*

For the foregoing reason, plaintiff's motion to prelude defendant from offering certain evidence is denied. Evidentiary objections on grounds other than those presented in this motion are not precluded by this decision, and may be made at trial.

Dated: December 8, 1989

LEXSEE 2003 U.S. DIST. LEXIS 16273

**TORAH SOFT LTD., Plaintiff, - against - MICHAEL DROSNIN, Defendant.**

**00 Civ. 0676 (JCF)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2003 U.S. Dist. LEXIS 16273*

**August 28, 2003, Decided**

**SUBSEQUENT HISTORY:** Motion denied by *Torah Soft Ltd. v. Drosnin, 2003 U.S. Dist. LEXIS 15584 (S.D.N.Y., Sept. 8, 2003)*

**PRIOR HISTORY:** *Torah Soft Ltd. v. Drosnin, 224 F. Supp. 2d 704, 2002 U.S. Dist. LEXIS 17413 (S.D.N.Y., 2002)*

**DISPOSITION:** Plaintiff's motions in limine denied. Defendant's motions in limine granted in part and denied in part.

**COUNSEL:** [*1] For Torah Soft Ltd, PLAINTIFF: Andrea Rachel Fischer, Feder, Kaszovitz, Isaacson, Weber Skala & Bass LLP, New York, NY USA. Howard I Rhine, Coleman, Rhine & Goodwin, LLP, New York, NY USA.

For Michael Drosnin, DEFENDANT: Martin E Karlinsky, Rosenman & Colin, LLP, New York, NY USA. Steven Huff, Pryor Cashman Sherman & Flynn, LLP, New York, NY USA. Marcia B Paul, Kay, Collyer & Boose, LLP, New York, NY USA.

**JUDGES:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE.

**OPINIONBY:** JAMES C. FRANCIS IV

**OPINION:**

MEMORANDUM

AND ORDER

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Torah Soft Ltd. ("Torah Soft"), a computer software company, has asserted breach of contract and related claims against Michael Drosnin. Mr. Drosnin is the author of The Bible Code, a book describing how prophesies purportedly encrypted in the Hebrew Bible can be decoded using mathematical algorithms. Mr. Drosnin used a Torah Soft computer program in connection with creation of The Bible Code, and Torah Soft contends that he breached a commitment to provide an acknowledgment and contact information in the book. The defendant, in turn, asserts two claims against Torah Soft. First, Mr. Drosnin argues that [*2] by selling the software it had modified for Mr. Drosnin, Torah Soft and its principal, Dr. Yochanan Spielberg, breached an agreement that the software would be reserved for the author's exclusive use. Second, Mr. Drosnin asserts a claim of unfair competition based on the fact that Torah Soft and Dr. Spielberg marketed the modified software with the allegedly false representation that Mr. Drosnin had used it to write The Bible Code, when in fact he had relied on a different program for the bulk of his research. A complete discussion of the factual background of the case is set forth in a prior opinion, *Torah Soft Ltd. v. Drosnin, 224 F. Supp. 2d 704 (S.D.N.Y. 2002)*.

This case is before me for trial on consent of the parties pursuant to *28 U.S.C. § 636(c)*, and each side has now filed in limine motions. Torah Soft seeks, first, to preclude any reference to the decision in a related case in which the Court granted an award of attorneys' fees against Torah Soft after dismissing copyright claims that it had asserted against Mr. Drosnin and others. *Torah Soft Ltd. v. Drosnin, 2001 U.S. Dist. LEXIS 19217, No. 00 Civ. 5650, 2001 WL 1506013 (S.D.N.Y. Nov. 27, 2001)* [*3] (finding liability for fees); see also *Torah Soft Ltd. v. Drosnin, 136 F. Supp. 2d 276 (S.D.N.Y. 2001)* (dismissing copyright claims). Second, the plaintiff seeks an order that no evidence be introduced concerning Dr. Eliahu Rips, the mathematician that Mr. Drosnin says he relied on in writing the book. The defendant opposes these requests and moves on a variety of grounds to preclude the introduction of certain testimony

Case 3:02-cv-00194-WWE    Document 125-4    Filed 01/13/2006    Page 8 of 11

Page 2
2003 U.S. Dist. LEXIS 16273, *

and exhibits proffered by the plaintiff. I will address each of these applications in turn.

The Copyright Decision

As noted above, Torah Soft first moves for an order that no evidence be introduced or reference made to the decision assessing attorneys' fees against it on the copyright claims in the related action. The plaintiff argues that a judicial finding in one case is inadmissible hearsay when proffered as evidence in another action. See *Nipper v. Snipes*, 7 F.3d 415, 417-18 (4th Cir. 1993); *Blue Cross and Blue Shield of New Jersey, Inc. v. Phillip Morris, Inc.*, 141 F. Supp. 2d 320, 323 (E.D.N.Y. 2001).

That proposition is fine as far as it goes. However, the cases cited by Torah Soft do not address [*4] the possibility that judicial findings in the earlier case may have preclusive effects in the latter. In Blue Cross, for example, there was no issue of res judicata or collateral estoppel because the proffered judicial finding concerned the credibility of an expert witness in a prior, unrelated case, a finding that could not now bind parties who had played no role in the earlier litigation. *141 F. Supp. 2d at 322*. Similarly, in Nipper, although the parties were the same in both the first and second cases, the actions involved different transactions, and the court did not engage in an analysis of preclusion but simply found that the hearsay exception for public records does not apply to judicial findings of fact. *7 F.3d at 416-18*.

Here, the defendant has disclaimed any intention to introduce any findings of fact from the copyright fee decision. (Memorandum in Opposition to Plaintiff's In Limine Motions at 2). And, I am doubtful that any legal determination in that case would be relevant to the narrow issues that remain in this action. However, to the extent that they may be, their admissibility will be determined when and if the defendant proposes [*5] to introduce them. Until then, the plaintiff's motion is premature and, as such, is denied.

Testimony of Dr. Eliahu Rips

Dr. Eliahu Rips is an Israeli mathematician whom Mr. Drosnin consulted in writing The Bible Code. According to the defendant, it was Dr. Rips' software, not that created by Torah Soft, that was critical in conducting the text searches that form the core of the book. The parties deposed Dr. Rips in January 2000. At that time, he declined to answer a number of questions upon advice of counsel. In December 2001, after the deadline for fact discovery had passed, plaintiffs' counsel sought an order compelling Dr. Rips to appear for a continuation of his deposition and to answer the questions previously objected to. Chief among counsel's concerns was the fact that Dr. Rips declined to answer when asked who was paying the fee of the attorney representing him at the deposition. (Letter of Howard I. Rhine dated Dec. 18, 2001, attached as Exh. 1 to Plaintiff's Notice of Motion in Limine). I denied the application, noting that "the marginal value of a further deposition of this witness does not warrant reopening fact discovery." (Memorandum Endorsement dated [*6] Dec. 26, 2001). Nevertheless, the plaintiff now argues that:

> Rips has been playing the role of strawman for Drosnin. Drosnin pays the legal fees for a lawyer to represent Rips. That lawyer (retained by Drosnin) instructs Rips not to answer plaintiff's legitimate questions, and then Drosnin expects to be allowed to offer testimony from Rips. That kind of gamesmanship should not be countenanced by this Court.

(Memorandum of Law in Support of Plaintiff's Motion in Limine at 3).

Yet the same factors that led me to deny the application to reopen Dr. Rips' deposition militate against precluding his testimony at trial. The questions that he declined to answer were of limited import. This is illustrated by the fact that plaintiffs' counsel waited almost two years to seek to compel answers. In any event, if Dr. Rips testifies in person at trial, counsel can ask him who has paid his attorneys' fees in this litigation. If he does not, the parties can stipulate to that fact to the extent it is relevant. Certainly, there is no basis for barring his testimony, and the plaintiff's application is therefore denied.

Use of the Printouts

It is undisputed that in writing [*7] The Bible Code Mr. Drosnin used the Torah Soft computer program to generate printouts illustrating the alleged biblical prophesies. The defendant now moves to preclude Torah Soft from offering evidence that the use of the printouts constituted a breach of contract or unjust enrichment.

Israeli law governs the plaintiff's claim of unjust enrichment in this case. See *Torah Soft*, 224 F. Supp. 2d at 715. Pursuant to that law, the plaintiff must prove that (1) the defendant was enriched, (2) at the expense of the plaintiff, (3) contrary to the parties' legal rights. See 371/89 *Leibovitz v. Eliahu Ltd.*, P.D. 44(2) 309, 321. (Affidavit of Joel Singer dated Jan. 30, 2002, P 35). In this case, the relevant sections of the complaint allege the following:

Case 3:02-cv-00194-WWE    Document 125-4    Filed 01/13/2006    Page 9 of 11

Page 3
2003 U.S. Dist. LEXIS 16273, *

> 53. The opening screen of the revised version stated "Copyright 1992 Torah Soft . . . SPECIAL VERSION FOR THE USE OF MICHAEL DROSNIN ONLY," and a label on the disk containing the revised version of the Software states "For the use of Michael Drosnin."
>
> 98. The Bible Code includes no fewer than ninetynine (99) print-outs from the Software. The defendants merely copied, without permission, directly from [*8] the Software in placing those print-outs in The Bible Code.
>
> 99. Of those ninety-nine printouts, nine comprise a full page of The Bible Code, and forty-two comprise at least one-half a page of the book.

(First Amended Complaint). Similarly, in opposing the defendant's motion for summary judgment, Dr. Spielberg asserted:

> 23. The opening screen of the revised version of the Software stated "Copyright 1992 Torah Soft . . . SPECIAL VERSION FOR THE USE OF MICHAEL DROSNIN ONLY." A label on the disk containing the revised Software also includes a Torah Soft's copyright notice and states "For the use of Michael Drosnin."
>
> 24. Every subsequent version of the Software that I sent Drosnin (from the Fall of 1992 through early 1997) contained similar copyright notices, both on the disk and on-screen. I never agreed -- implicitly or explicitly -- that Drosnin could print-out Bible code finds from the Software and then reproduce them in any book.

(Declaration of Yochanan Spielberg dated March 25, 2002).

Thus, Torah Soft appears to have claimed that Mr. Drosnin was unjustly enriched because he published the printouts in violation of the plaintiff's intellectual property [*9] rights. Such a claim, however, is no longer viable. In the related copyright action, the Honorable Shira A. Scheindlin, U.S.D.J., determined that Torah Soft's display of Bible code discoveries is not protectable under the copyright laws of the United States. *Torah Soft, 136 F. Supp. 2d at 290-91*. Of course, it is conceivable that the printouts might be protected by copyright somewhere else in the world where The Bible Code has been published. But the plaintiff, whose burden it is to prove foreign law, has proffered no evidence to that effect. Accordingly, Torah Soft's unjust enrichment claim cannot be premised on any copyright interest in the printouts.

Nevertheless, the parties could have entered into an agreement by which Mr. Drosnin stipulated not to utilize printouts from Torah Soft's program. In that respect, Torah Soft's rights would extend beyond the scope of copyright protection and could form the basis both for an unjust enrichment claim and an independent breach of contract claim. But the plaintiff has never asserted that there was any such agreement. While Dr. Spielberg complains that he did not give "permission" for use of the printouts, that agreement [*10] relates only to the "permission" that would be necessary to use copyrighted material. It would be anomalous to refer to receiving "permission" to breach a contractual obligation. Similarly, the legend on the software, that it was "for the use of Michael Drosnin only," reflects a claim of copyright protection; it does not suggest an independent bargained-for agreement. Thus, nothing in Torah Soft's pleadings or in its subsequent submissions states a claim for limiting Mr. Drosnin's use of the printouts on a basis other than copyright law. Torah Soft is therefore precluded from introducing evidence that by including the printouts in the book, the defendant breached any contract or was unjustly enriched. n1

> n1 This ruling does not bar general background evidence concerning use of the printouts, provided there is no implication that such use was wrongful.

Sales After 1997

The defendant next contends that the plaintiff should be precluded from offering evidence of damages that accrued after July 1, 1997. [*11] The Bible Code had been published in May 1997, and on June 16, Dr. Spielberg wrote to Mr. Drosnin and to his United States publishers, Simon & Schuster, objecting to the fact that Torah Soft had not been credited. One June 12, Mr. Drosnin's attorney responded, rejecting Dr. Spielberg's contentions, but offering to provide credit in future editions:

> Nevertheless, Mr. Drosnin has no objection whatsoever to acknowledging your contribution to his research. He did not do so in the initial edition because he was under the impression that you might not

Case 3:02-cv-00194-WWE    Document 125-4    Filed 01/13/2006    Page 10 of 11

Page 4
2003 U.S. Dist. LEXIS 16273, *

wish to be identified publicly with his work. If you wish him to do so, however, he would be happy to acknowledge your efforts in subsequent printings. Please let me know.

(Letter of Kenneth David Burrows dated June 23, 1997, attached as Exh. N to Affidavit of Lacy H. Koonce, III, dated March 3, 2003 ("Koonce Aff."), attached to Defendant's Notice of Motion). The defendant now argues that by rejecting this offer, the plaintiff failed to mitigate and should be precluded from relying on subsequent sales of the book in calculating his damages.

While the defendant's legal theory is sound, the factual predicate is open to dispute. [*12] If the parties agreed to the scope of the "credit" that Dr. Spielberg demanded, and if they also agreed that Mr. Drosnin had communicated a willingness to provide credit at least to that extent, then the plaintiff could be found to have failed to mitigate. But these facts have not been established, and it is inappropriate for Mr. Drosnin to seek what is effectively partial summary judgment in the guise of a motion in limine. It is the defendant's burden to demonstrate a failure to mitigate, see *Greenway v. Buffalo Hilton Hotel, 143 F.3d 47, 53 (2d Cir. 1998)*, and Mr. Drosnin has not carried that burden on the basis of undisputed facts. Accordingly, this aspect of his motion is denied.

Joint Marketing Evidence

The defendant further seeks to exclude evidence relating to the plaintiff's claim, previously dismissed, that the parties had agreed to market the plaintiff's software together with the book. Mr. Drosnin identifies the evidence in question as the deposition testimony of Gurujeet Khalsa and Gurujot Khalsa, former employees of a company known as Kriya Systems, Inc. ("Kriya"), as well as the plaintiff's trial exhibits 51, 53, 54, 55, and 56.

In the [*13] mid-1990's, Mr. Drosnin had negotiated with Kriya concerning the possibility of marketing Bible code software together with the book. No agreement was ever reached. Thereafter, Mr. Drosnin established his relationship with Torah Soft. Upon the commencement of this action, the plaintiff claimed, in part, that Mr. Drosnin had breached an agreement to market the Torah Soft computer program jointly with The Bible Code. I held, however, that any such agreement was at best a conditional one, and the necessary condition had not been satisfied. *Torah Soft, 224 F. Supp. 2d at 714-15*. Therefore, to the extent that the testimony of the Kriya employees is relevant at all, it cannot be offered in support of any joint marketing claim.

Nevertheless, the plaintiff argues that the deposition testimony is pertinent to a number of other issues. For example, the plaintiff contends that the estimate that "at least ten percent of the people that bought the book would want to buy the software" should be admissible. But the Kriya employees have certainly not been qualified as marketing experts, and their prognostication, standing alone, cannot be considered reliable.

Similarly, Gurujot [*14] Khalsa's testimony that Mr. Drosnin believed that the sale of software together with the book would be an "amazing success" is not admissible. While it may represent an admission by the defendant, it is not relevant. The actual sales of the book can be objectively determined, and only an expert can estimate what the sales of the software might have been had it been credited in the book. Mr. Drosnin's hopeful speculation has no probative value.

However, the deposition testimony can be offered to show that because Mr. Drosnin discussed particular terms with Kriya, he is likely to have agreed to similar terms with Torah Soft. Pursuant to *Rule 406 of the Federal Rules of Evidence*,

> Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

It is true that "the conduct at issue must constitute a 'regular response to a repeated specific situation.'" *McCarrick v. New York City Off-Track Betting Corp., 1995 U.S. Dist. LEXIS 5849, No. 91 Civ. 5626, 1995 WL 261516,* [*15] *at *5 (S.D.N.Y. May 3, 1995)* (quoting *Thompson v. Boggs, 33 F.3d 847, 854 (7th Cir. 1994)*; see also *Constitution Reinsurance Corp. v. Stonewall Insurance Co., 1998 U.S. Dist. LEXIS 13520, No. 94 Civ. 1888, 1998 WL 556164, at *2 (S.D.N.Y. Sept. 1, 1998)*. Nevertheless, such rulings "are not inconsistent with the trend towards admitting evidence of business transactions between one of the parties and a third person as tending to prove that he made the same bargain or proposal in the litigated situation." *Fed. R. Evid. 406* advisory committee's note (citation omitted). Thus, to the extent that the negotiations with Kriya involved the same elements as are at issue in the plaintiff's currently viable claim, that evidence will be admitted. This does not include, however, claims such as breach of fiduciary duty which have long since been dropped from this case.

Case 3:02-cv-00194-WWE    Document 125-4    Filed 01/13/2006    Page 11 of 11

Page 5
2003 U.S. Dist. LEXIS 16273, *

The parties may designate those portions of the deposition testimony of Gurujeet Khalsa and Gurujot Khalsa that they wish to proffer at trial in light of these rulings. Likewise, the plaintiff shall be permitted to introduce exhibits insofar as they are consistent with the discussion above.

Summary Exhibits

The defendants [*16] objects to the plaintiff's trial exhibits 1, 2, 74, 75, 76, and 111 on the ground that they do not satisfy the requirements of *Rule 1006 of the Federal Rules of Evidence* for the admission of summaries. That is certainly the case with respect to exhibits 1 and 2, which are simply compendia of many individual documents. Those documents may or may not be separately admissible, and they must therefore be individually identified. However, to the extent that the parties agree to their admission, they may be offered in evidence collectively.

Exhibits 74, 75, and 111 are summaries, and their admissibility will depend on the adequacy of the foundation laid at trial. If the underlying information is found admissible, then the summaries may also be introduced. By contrast, Exhibit 76 is apparently a digest of information gleaned from court proceedings in Israel. This is akin to a condensation of a trial witness' anticipated testimony, not the type of "summary" anticipated by *Rule 1006*, and is therefore inadmissible.

The Defendant's Subsequent Projects

Mr. Drosnin contends that evidence concerning his plans to market the movie rights to The Bible Code and to write a sequel is irrelevant [*17] and should be precluded. He is correct. Accordingly, plaintiff's trial exhibits 38, 48, 49, 53, 54, 59, and 82 are inadmissible to the extent they address these issues. The plaintiff is free, however, to proffer the balance of these exhibits for any appropriate purpose.

Miscellaneous Exhibits

Finally, a number of the plaintiff's trial exhibits are inadmissible because they are simply the legal arguments or discovery instruments of counsel. Accordingly, exhibits 70, 71, 83, 97, 100, and 116 shall be precluded. Likewise, Exhibit 112, which is a summons for Mr. Drosnin to appear in a rabbinical court in Israel to answer the plaintiff's charges, is both irrelevant and potentially prejudicial. Exhibits 98 and 99 are different versions of the Torah Soft software and are admissible in light of the fact that they have been made available to defendant's counsel. (Affirmation of Howard I. Rhine dated March 25, 2003, P 19).

Conclusion

The parties' respective motions in limine are resolved in accordance with the terms of this Memorandum and Order.

SO ORDERED.

JAMES C. FRANCIS IV

UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
August 28, 2003