UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EXECUTIVE AIRLINES,

Plaintiff,

CIVIL ACTION NO.
02-CV-1 94 (WWE)

— against —

ELECTRIC BOAT CORPORATION,

17 January 2006

Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION IN LIMINE

### PRELIMINARY STATEMENT

Defendant has moved to preclude Plaintiff from presenting at trial parol evidence as to the parties' intent in entering into the Contract and this curious separate motion to preclude Plaintiff from presenting evidence *as to damages it is not seeking*.  It is submitted this motion borders on the frivolous and has no merit other than as a smokescreen to compensate for the enormous deficiencies of Defendant's other motion *in limine*.

### FACTS

Contrary to the impression given in Defendant's Memorandum of Law, this is a contract action not an aircraft accident investigation.  Defendant's Memorandum contains a disputed narrative having little to do with the contract issues and seeks to insinuate into fact, issues which are greatly in dispute.  It also resurrects a false claim which was consistently asserted by Defendant until finally conceded less than a month ago in the Joint Pretrial Memorandum. Defendant again asserts that Plaintiff commenced its service for Defendant with only one airplane

1

when paragraph 8 of the Stipulation of Uncontroverted Facts in the Joint Pretrial Memorandum says: "On April 10, 2000, Executive Airlines commenced its flights for Electric Boat using several BAE Systems Jet Stream aircraft.". The point is significant since Electric Boat raised the issue as to whether Executive Airlines was capable of continuing its services after one of the airplanes crashed.

The undisputed facts are simple. Electric Boat issued a Request for Quotations for air charter services in November 1999, a draft Purchase Order was issued in February 2000 and, after further negotiations between the parties, the March Purchase Order was signed by the parties on 14 March 2000. The Contract consists of the March Purchase Order which incorporated the terms of the February Draft Purchase Order and included Purchase Order Supplement No. 1 and Paragraph 2 thereof entitled "Termination", in which Subparagraph 2(B) referenced Electric Boat form GDC-410 entitled Purchase Order Terms and Conditions (the "Terms and Conditions"). Paragraph 2 states (plaintiff is Seller and defendant is Buyer throughout the Contract) as follows:

> "TERMINATION:    (A) BUYER RESERVES THE RIGHT TO TERMINATE THIS SERVICE WITHOUT PENALTY UPON SIX (6) MONTHS WRITTEN NOTICE TO SELLER.
> (B) BUYER RESERVES THE RIGHT TO TERMINATE THIS SERVICE WITHOUT PENALTY UPON TEN (10) DAYS WRITTEN NOTICE TO SELLER DUE TO DEFAULT BY SELLER PER ELECTRIC BOAT TERMS AND CONDITIONS, GDC 410, 03/87."

The Contract was terminated by Electric Boat by its letter to Executive Airlines dated 7 June 2000. Both sides intend to introduce all of the foregoing documents.

In its "Factual Background" Defendant tries to pass off as fact, in a casual footnote, what is the essence of the dispute between the parties, which is the significance of Paragraph 14 of the Terms and Conditions.

2

Paragraph 14 states, in full:

14. TERMINATION FOR CONVENIENCE: Buyer may at any time by written notice terminate all or any part of this order for Buyer's convenience. If this order is terminated, in whole or in part, for Buyer's convenience, Seller shall be paid an amount, to be mutually agreed upon, which shall be adequate to cover the reasonable cost of Seller's actual performance of work under this order to the effective date of termination, plus a reasonable profit thereon provided that no amount shall be paid to Seller for (i) any anticipatory profits related to work under this order not yet performed, or (ii) costs incurred due to Seller's failure to terminate work as ordered on the effective date of termination. In no event shall the total amount paid under this provisions exceed the prices set forth in this order for the work terminated. If a Government contract number is cited on the face hereof, a termination for Buyer's convenience shall be accomplished in accordance with DAR 8-706 or FAR52-249, as in effect on the date of this order, which shall be controlling over any conflicting provisions hereof.

The intention of Subparagraph 2(A) was clearly to provide a six-month stream of income to plaintiff even in the event of an early termination. Any other interpretation would render the clause ineffectual. Examination of the boilerplate Terms and Conditions will show they were intended to apply to all vendors dealing with Defendant and were oriented toward suppliers of goods, rather than services. Since all of Plaintiff's services were prospective and could only be performed in the future in accordance with a schedule totally controlled by Defendant, application of Paragraph 14, which provides for compensation only to the date of termination and only for work actually done, would have the effect of rendering Subparagraph 2(A) meaningless and of no effect. Application of Paragraph 14 to a termination for convenience under Subparagraph 2(A) would amount to giving Defendant the ability to terminate immediately with no financial liability, rather than on six month's notice, which is clearly not the expressed intent of the Contract.

It is also possible Defendant might argue that Paragraph 14 was a "gotcha" and Defendant never had any intention of paying Plaintiff in the event of a termination for convenience (which

3

seems implicit in Defendant's footnote 1), but that would run afoul of Connecticut's covenant of good faith and fair dealing and would allow Defendant to do indirectly that which it had specifically bargained not to do directly.

Obviously, Paragraph 14 is inconsistent with Subparagraph 2(A). Fortunately, the Terms and Conditions specifically deal with inconsistencies in Paragraph 23 and resolve this inconsistency by giving precedence to the specifically negotiated Purchase Order over the boilerplate Terms and Conditions. Accordingly, Paragraph 14 cannot apply to Defendant's voluntary termination under Subparagraph 2(A).

Similarly, Defendant footnoted its counterclaim (footnote 2) but failed to mention the 12 July 2005 ruling of Hon. Janet C. Hall (the "Ruling") on page 3 of which she said: "At no point did Electric Boat send Executive Airlines a written notice of default conforming to the requirements of paragraph 12(a) of the Term and Conditions.". On the basis of that finding, Plaintiff has moved to preclude Defendant from introducing evidence as to Defendant's counterclaim and as to Defendant's claim that Plaintiff was unable to perform under the terms of the Contract.

<u>ARGUMENT</u>

Defendant's motion is puzzling. It seems to be based on the assumption that the Court will not be able to recognize irrelevant testimony or documents in the course of the trial. Plaintiff's claim is simple. Prior to execution of the Contract, Plaintiff and Defendant negotiated its terms. Electric Boat started the process with its Request for Proposals, seeking to obtain services to satisfy its specific needs. As part of the negotiating process and as noted on page 5 of the Ruling regarding the Purchase Order's Termination Clause contained in Paragraph 2: "This clause was

4

changed from the original contract draft, which provided Electric Boat the right to terminate without penalty upon just seven days notice".

At the time of execution of the Contract, Defendant knew it had obligated itself to pay at least the monthly minimum of $73,425.00 for each of the six months after a termination for Defendant's convenience regardless of how much (if any) of Plaintiff's services it used. Plaintiff's current claim is for exactly that obligation, not liquidated damages and not actual damages —just what Defendant contracted to pay. This situation is analogous to a landlord who has rented a store to a tenant who decides to vacate early. Absent a further agreement, what the landlord will seek and what the tenant is obliged to pay is the monthly rent for which he contracted, not the mortgage or consequential damages.

It is amusing that Defendant cites a line of cases back to *Hadley v. Baxendale* holding that special damages are not recoverable unless the party was on notice of those special damages at the time of contracting. The other side of that coin is that Defendant was fully on notice of its obligation to pay at least $73,425.00 per month for six months if it chose to terminate the Contract for its convenience and, with that knowledge, it deliberately and knowingly chose to terminate and not utilize the services for which it must pay.

There are two possible scenarios to support Defendant's motion. One is the possibility of a sudden emotional outburst by Mr. Peragine claiming: "Electric Boat cost me two million dollars!", which a preclusion order will not prevent. The other is a line of questioning as to startup costs, expenses, losses, etc., which on the first objection, if not relevant, the Court would literally shoot down before it got off the ground. Neither situation warrants the waste of time and effort for consideration of this wasteful motion.

5

Despite Defendant's rhetoric about Mr. Peragine's claim for damages, Defendant knows Plaintiff has no intention of introducing evidence of actual damages, nor would the Court allow it since it is not in the complaint. It seems the real purpose of Defendant's exercise is a back door approach to prevent the introduction of any evidence or testimony relating to the intent of the parties regarding the Termination Clause of the Contract, contrary to the determination on page 7 of the Ruling, where Judge Hall said:

> The contract language in this case is not definitive. The language of the Purchase Order and Terms and Conditions is potentially contradictory and must be reasonably resolved. The court cannot do so, however, as a matter of law. It is for the finder of fact to decipher the parties' intent in entering into the Contract.

As argued in response to Defendant's other motion *in limine,* the intent of the parties regarding the Termination Provisions is very much in issue and parol evidence is clearly admissible to establish that intent. This motion is another attempt by Defendant to accomplish indirectly what cannot be accomplished directly through the other motion.

There is one other situation in which the information sought to be precluded by Defendant might be relevant and that would be as to Plaintiff's mitigation of damages if that issue is raised by defendant (and if such a duty exists). Of course, that would also involve the intent of the parties since, if such a provision had been desired by Defendant, it certainly could have been negotiated by it.

<u>CONCLUSION</u>

There is no justification for this motion other than to circumvent Judge Hall's Ruling. At best, this motion is unnecessary and wasteful. It is respectfully requested that it be summarily denied.

PLAINTIFF EXECUTIVE AIRLINES

By: _____
I. Leonard Feigenbaum (ct25807)
Visiting Attorney for Plaintiff
1670 Old Country Road - Ste 224
Plainview, New York 11803
Tel. (516) 420-6900
Fax (516) 420-8444
**leefeig@aol.com**

## CERTIFICATE OF SERVICE

This is to certify that the foregoing was mailed on 17 January 2006 to the following:

Day, Berry & Howard LLP
CityPlace I
Hartford CT 06103-3499

_____
I. Leonard Feigenbaum