UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EXECUTIVE AIRLINES | : | CIVIL ACTION NO. 3:02cv194 (WWE) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| GENERAL DYNAMICS CO., ET AL. | : | |
| | : | |
| Defendants. | : | MARCH 6, 2006 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S RENEWED MOTION
FOR JUDGMENT AS A MATTER OF LAW
OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**

**I.     INTRODUCTION**

Pursuant to Fed. R. Civ. P. 50 & 59, the defendant, Electric Boat Corporation ("Electric Boat") hereby renews its motion for judgment as a matter of law as to all of plaintiff's claims and, in the alternative, moves for a new trial.  The jury awarded the plaintiff liquidated damages, and yet it has been law of the case for almost three years that the plaintiff may not recover liquidated damages under the contract between the parties.  In addition, the plaintiff offered no competent evidence of any actual damages This Court, therefore, should enter judgment as a matter of law in favor of Electric Boat.  Alternatively, this Court should order a new trial.

**II.     BACKGROUND**

A.     The Law of the Case

Prior to the trial in this case, this Court issued two rulings on summary judgment motions. The relevant aspects of each of these rulings are summarized below.

On July 17, 2003, this Court (Goettel, J.) issued a ruling ("Judge Goettel's Ruling") granting in part and denying in part Electric Boat's Motion for Summary Judgment.  Electric Boat's motion was based on the "grounds that there is no genuine issue of material fact

concerning its right to terminate the contract and there is nothing in the contract that would

entitle Executive Airlines to liquidated damages." *Executive Airlines v. Electric Boat Corp.*, 271

F. Supp.2d 392, 394 (D. Conn. 2003). For purposes of the motion, Electric Boat asked the Court

to "assume that it[s] termination was for convenience"; Judge Goettel's ruling thus left

unresolved the question whether the termination was for Electric Boat's convenience or for any

default by the plaintiff. *Id.* at 397, 399.

 The Court found that "the 'Agreement' between the parties consists of the February

Purchase Order, the March Purchase Order, and the Purchase Order Terms and Conditions." *Id.*

at 396. Construing the Agreement as a whole, the Court made the following legal rulings:

- "We agree with Electric Boat that regardless of the reason that it terminated the Agreement, it had the right to do so, even if only for its own convenience. The Agreement specifically allowed for termination for convenience. Electric Boat did not breach the Agreement by invoking its right of early termination. However, that does not absolve Electric Boat from the consequences associated therewith, which is the more difficult issue in this case." *Id.* at 397 (footnote omitted). In the conclusion of the opinion, the Court reiterated that "Electric Boat's early termination of the Agreement did not constitute a breach of contract ...." *Id.* at 399.
- "[Section] 14 of the Terms and Conditions describes how damages were to be calculated in the event of a termination for convenience." The Court quoted Section 14 in its entirety, including the language providing that, "'[i]f this order is terminated, in whole or in part, for Buyer's convenience, Seller shall be paid an amount, to be mutually agreed upon which shall be adequate to cover the reasonable cost of Seller's actual performance of work under this order to the effective date of termination, plus a reasonable profit thereon provided that no amount shall be paid to Seller for (i) any anticipatory profits related to work under this order not yet performed or (ii) costs incurred due to Seller's failure to terminate work as ordered on the effective date of termination.'" *Id.* at 396.
- The Court found that Section 14 was a "formula for the calculation of damages in the event of termination by Electric Boat for convenience" and "sets forth the manner in which damages are to be calculated." *Id.* at 398.
- The existence of the damages formula in Section 14, the Court held, "further defeats" any notion that the parties agreed to liquidated damages. *Id.* The Court

concluded that "Executive Airlines is not entitled to an award of six months' income as liquidated damages." *Id.* at 399.[1]

- Finally, the Court held that the language of the agreement was clear and unambiguous "with respect to the consequences of termination." *Id.* at 399. This meant that "the determination of what the parties intended by their contractual commitments [was] a question of law for the Court to decide." *Id.* (internal quotation marks and citations omitted).

Thus, following Judge Goettel's Ruling, the only issues that remained were "whether there was a default by Executive Airlines," the amount of damages "Executive Airlines may be entitled to as a result of this early termination," and Electric Boat's counterclaim. *Id.* at 399.

On July 12, 2005, this Court (Hall, J.) issued another summary judgment ruling ("Judge Hall's Ruling"), this time denying both parties' subsequent motions for summary judgment on the issues left by Judge Goettel's Ruling: whether Electric Boat's termination was for convenience or for default, and if for default whether Electric Boat was entitled to damages on its counterclaim. The Court held that it could not "conclude as a matter of law which, if either, of the two parties breached the Contract," i.e., whether the termination had been for Electric Boat's convenience or for the plaintiff's default.[2] (Judge Hall's Ruling at 7.) Judge Hall's

---

[1] It is worth noting that Judge Goettel's ruling that the plaintiff was not entitled to liquidated damages was supported not only by the language of the contract but by well-established Connecticut law imposing multiple restrictions on the recovery of liquidated damages in contract cases. See, e.g., *Hanson Dev. Co. v. East Great Plains Shopping Ctr., Inc.*, 195 Conn. 60, 64-65, 485 A.2d 1296 (1985) (before liquidated damages provision can be recognized under Connecticut law, plaintiff must satisfy three requirements: "(1) the damage which was to be expected as a result of the breach of contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable.") Quite apart from the law of the case, the jury's award of liquidated damages in this case does not satisfy these requirements, not least because, as shown below, the plaintiff failed to prove any actual damages in this case.

[2] Technically, since the contract expressly allowed Electric Boat to terminate for convenience, and accordingly the Court had previously found that Electric Boat's early termination, even if it was for convenience, "did not constitute a breach of contract," the July 12 Ruling was somewhat imprecise. Nonetheless, it is clear from the July 12 Ruling as a whole that the only issue the Court was purporting to resolve was whether the termination had been for Electric Boat's convenience or for the plaintiff's default.

Ruling in no way suggested that it was superseding, modifying or otherwise affecting Judge Goettel's Ruling, which dealt with distinct issues. Indeed, Judge Hall's Ruling expressly endorsed Judge Goettel's Ruling denying the availability of liquidated damages as a matter of law. (*Id.* at 7.)

Following both rulings, then, the law of the case was that (1) the plaintiff was not entitled to an award of liquidated damages under the contract; (2) to the extent the termination was for convenience, the plaintiff's damages were to be calculated in accordance with Section 14 of the Terms and Conditions; (3) the language of the contract "*with respect to the consequences of termination,*" i.e., any damages owing to the plaintiff, was clear and unambiguous and presented a legal issue for the Court; (4) the language of the contract relating to whether the termination had been for Electric Boat's convenience or for the plaintiff's default presented factual issues for a jury.

B.    The Trial

The defendant filed a written motion for directed verdict at the end of plaintiff's case, at which time the Court reserved decision on the motion. The defendant renewed its motion for directed verdict at the close of all the evidence, and the Court again stated that the case would be submitted to the jury subject to post-verdict consideration of the motion for directed verdict.

Over Electric Boat's objection, plaintiff was permitted to argue to the jury that the intent of the six-month termination provision was to protect its investment by ensuring a revenue stream if Electric Boat terminated the contract.[3] This was simply another way of asking the jury to award the same liquidated damages the court had previously determined were improper.

---

[3] Electric Boat filed a motion in limine prior to trial seeking an order preventing plaintiff from presenting such arguments. That motion in limine was denied.

On February 17, 2006, the jury returned a plaintiff's verdict in the amount of $472,368, effectively adopting plaintiff's argument and awarding liquidated damages.

Later, on February 17, 2006, the Court entered an order denying the defendant's motion for directed verdict.

## II.    MOTION FOR JUDGMENT AS A MATTER OF LAW

### A.    ARGUMENT

#### 1.    Standard of Review

Pursuant to Fed. R. Civ. P. 50(b), the defendant hereby renews its motion for judgment as a matter of law.  Judgment as a matter of law should be granted where there is no legally sufficient evidentiary basis for the jury to find in favor of the plaintiff.  *See Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995);  Fed. R. Civ. P. 50(a).  Accordingly, when the evidence is viewed in the light most favorable to the non-moving party, and nonetheless there is only one reasonable conclusion as to the verdict, judgment as a matter of law is appropriate.  *Sir Speedy, Inc. v. L&P Graphics, Inc.,* 957 F.2d 1033, 1038-39 (2d Cir. 1992).[4]

#### 2.    Pursuant to the Law of the Case, the Plaintiff Was Not Entitled to Liquidated Damages Under the Contract Between the Parties.

The law of the case forecloses the jury's award as a matter of law.  As shown below, it appears that the jury reached its award by approximating six months' revenue under the contract – which is precisely what Judge Goettel determined as a matter of law that the plaintiff could not recover: "[W]e hold that Electric Boat's early termination of the [Contract] did not constitute a

---

[4] Electric Boat recognizes that the Court already denied its Motion for Directed Verdict shortly following the jury's verdict in this case.  Nonetheless, the language of Rule 50(b) suggests that Electric Boat is required to renew its Motion for Judgment as A Matter of Law following the rendering of the jury's verdict.

breach of contract and that Executive Airlines is not entitled to an award of six months' income as liquidated damages." *Exec. Airlines*, 271 F. Supp. at 399. Further, any argument by the plaintiff that awarding six months income may somehow be justified as compensatory damages is foreclosed by Judge Goettel's ruling that the plaintiff's damages remedy for a convenience termination is set forth in Section 14 of the Terms and Conditions.[5] Under that provision, the plaintiff may recover only those amounts representing the "reasonable cost of the Seller's actual performance of work" prior to the date of termination, plus a "reasonable profit thereon." Section 14 expressly bars recovery of (i) any costs incurred for work after the termination date, and (ii) any "anticipatory profits." As shown below, the plaintiff presented no competent evidence of its costs or "reasonable profits" prior to the termination date.

Indeed, the only damages claimed by the plaintiff in its Second Amended Complaint or during the course of the trial was a sum based solely on a calculation of the contract minimum of 15 flights per month at the contract rate of $4,895.00 per flight. Plaintiff's president testified that he understood the six month termination fee to be a way of ensuring him liquidated damages.

The jury's verdict was $472,368. Although the verdict is slightly lower than the plaintiff's billings for fifteen trips per month for six months, which comes to $494,395[6], the verdict is clearly based on a calculation approximating the plaintiff's method of multiplying the contract price by the contract minimum of fifteen trips per month for six month. Which is to say, the jury awarded liquidated damages. The difference of approximately $22,000 appears to be a

---

[5] As noted, Judge Hall's Ruling did not disturb Judge Goettel's Ruling in this or any other respect.

[6] The plaintiff billed Electric Boat for 11 unused flights from May 17- June 16 (a total of $53,845) plus 15 flights a month (a total of $73,425 per month) for June 17-December 17. The total billings by plaintiff therefore came to $494,395. The plaintiff submitted no evidence that it had incurred any costs in connection with these unused flights.

deduction of some sort by the jury.[7]  However, there was absolutely no evidence in the record to support the jury's $472,368 number.  Thus, either the jury awarded liquidated damages minus a discretionary deduction of approximately $22,000, or the jury attempted to award actual damages but did so with no competent evidence of actual damages in the record on which to base its calculation.  In other words, these are either liquidated damages or they are the result of sheer speculation on the part of the jury.  Either way, they must be set aside.

Nothing in the record even begins to explain the jury's award other than plaintiff's improper plea for liquidated damages in the amount of six months' income.  Accordingly, the jury's verdict must be set aside.  *See, e.g., Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326 (2d Cir. 1993) (reversing trial court's denial of Rule 50(b) motion for judgment as a matter of law, where evidence of lost profits was speculative).

3.  Plaintiff Failed to Prove Any Actual Damages.

Plaintiff did nothing in the course of the trial to substantiate any measure of damages other than liquidated damages and, in particular, did not even attempt to establish damages under Section 14 of the Terms and Conditions or any "benefit of the bargain" damages that might have approximated those amounts.  As shown above, this Court previously determined that the plaintiff was confined to whatever damages it could prove under Section 14 of the Terms and Conditions, namely, "reasonable costs" incurred on "work actually performed" prior to the termination, plus a "reasonable profit" thereon.[8]  In this case, it was undisputed that plaintiff was

---

[7] As further discussed herein, there was some testimony by Executive Airlines' comptroller that Executive Airlines' profit margin was 5%.  On rebuttal, plaintiff's president testified that the margin was really 30% to 40%.  Neither of these numbers explains the jury's deduction of approximately $22,000.  Nor was there any other evidence that would support the jury's apparent calculations.

[8] This sum approximates the classic measure of damages in a contract action, i.e., "benefit of the bargain" damages:

fully compensated for the work actually performed.  Indeed, the entire lawsuit was focused on

seeking damages allegedly incurred *after the termination*—damages foreclosed by the plain

language of Section 14.  Accordingly, the plaintiff failed to prove that it was entitled to any

damages under Section 14.

To be sure, the plaintiff's president referred in his testimony to the costs of maintaining

an airplane even if it is not actually flying, but that would not constitute a cost of "actual

performance" of the services the plaintiff was hired to provide; indeed, those costs would be

incurred regardless of whether Electric Boat had hired the plaintiff.  Moreover, even if such costs

were recoverable under Section 14, they would plainly be limited to those incurred prior to the

termination date.  Finally, the plaintiff offered no concrete evidence – or even an estimate – of

such costs.  Evidence of damages must amount to more than just speculation.  *Beverly Hills

Concepts, Inc. v. Schatz & Schatz, Ribicoff and Kotkin*, 247 Conn. 48, 69 (Conn. 1998) ("We are

. . . constrained to accord substantial deference to the fact finder on the issue of damages. In

deciding whether damages properly have been awarded, however, we are guided by the well

established principle that such damages must be proved with reasonable certainty.")(internal

citations and quotation marks omitted); *see also Trademark Research Corp.*, 995 F.2d 326

(reversing trial court's denial of Rule 50(b) motion for judgment as a matter of law, where

---

It is axiomatic that the sum of damages awarded as compensation in a breach of
contract action should place the injured party in the same position as he would
have been in had the contract been performed. . . . The injured party, however, is
entitled to retain nothing in excess of that sum which compensates him for the loss
of his bargain. . . . Guarding against excessive compensation, the law of contract
damages limits the injured party to damages based on his actual loss caused by the
breach.

*Russell v. Russell*, 91 Conn. App. 619, 643-644 (2005) (internal citations and quotation marks
omitted).

-8-

evidence of lost profits was speculative).  The plaintiff offered no financial statements, no invoices or other evidence of costs, and no expert testimony regarding its costs or its profits.

Even if this Court had not previously decided that Paragraph 14 set forth the plaintiff's damages remedy, the law of contract damages would mandate the same result once it was accepted that the plaintiff was not entitled to liquidated damages.  Contract damages aim to put the plaintiff in the same position it would have been in had the contract been performed; but the plaintiff "is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain."  *Russell*, 91 Conn. App. at 643-644 (internal citations and quotation marks omitted).  Because the plaintiff here did not perform any services following the date of termination, it did not incur any costs.  This means, of course, that the jury's award of virtually all the revenues the plaintiff would have earned had the contract not been terminated has placed the plaintiff in a far <u>better</u> position that it would ever have occupied: it has received all of the revenues but incurred none of the costs that would ordinarily be necessary to earn those revenues.  Finally, while "benefit-of-the-bargain" damages would ordinarily entitle the plaintiff to lost profits, the plaintiff failed to show lost profits with reasonable certainty in this case.

Accordingly, because the theory on which the plaintiff actually recovered is impermissible as a matter of law, and because the plaintiff presented no competent evidence – no evidence to a reasonable degree of certainty – to support any permissible damages theory, this Court should enter judgment for Electric Boat as a matter of law.

## IV    <u>MOTION FOR NEW TRIAL</u>

A.    <u>ARGUMENT</u>

1.    <u>Standard of Review</u>

In the alternative, the defendant moves for a new trial. "A motion for a new trial should be granted when, in the opinion of the district court, the jury has reached a seriously erroneous result or ... the verdict is a miscarriage of justice." *Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1047 (2d Cir.1992) (quotation marks and citation omitted). A Court may therefore grant a new trial when the jury's verdict is against the weight of the evidence. *See Schanzer v. United Tech. Corp.*, 120 F. Supp. 2d 200, 208 (D. Conn. 2000) (internal citation omitted).

In ruling on a motion for a new trial, a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner. *Id.* "[A] motion for a new trial pursuant to Fed. R. Civ. P. 59 may be granted by the district court, although there is evidence to support the jury's verdict, so long as the district court determines that, in its independent judgment, the jury has reached a seriously erroneous result or [its] verdict is a miscarriage of justice." *Nimely v. City of New York*, 414 F.3d 381, 392 (2d Cir. 2005) (internal citations and quotation marks omitted).

A party is also entitled to a new trial if evidence was improperly admitted or excluded and deprived the moving party of a fair trial. *See, e.g., Santa Maria v. Metro-North Commuter R.R.*, 81 F.3d 265, 273 (2d Cir. 1996).

2.     The Jury's Verdict is "Seriously Erroneous".

As shown above, the law of this case barred the jury from awarding liquidated damages in this case. Although the jury was instructed that it could not award liquidated damages, the Court's instruction did not clearly explain that the plaintiff was not entitled to payment for 15 flights per month, as this Court had previously held: "Executive Airlines is not entitled to an award of six months' income as liquidated damages." *Exec. Airlines*, 271 F. Supp.2d at 399. Moreover, the Court failed to instruct the jury that plaintiff was required to prove its actual

damages pursuant to Section 14 of the Terms and Conditions or even pursuant to the rules governing benefit of the bargain damages.

Prior to the jury charge, the defendant proposed the following liquidated damages instruction:

> You have heard testimony in this case about liquidated damages. The term "liquidated damages" applies when the amount of the damages has been expressly set forth in a contract as the amount of damages to be recovered by either party for a breach of the agreement by the other. However, there are strict requirements for whether liquidated damages are available based on the language of the contract.
>
> I instruct you as a matter of law that the contract between Electric Boat and Executive Airlines did *not* contain a liquidated damages provision. The minimum flights provision in the contract is not a liquidated damages provision.
>
> Therefore, if you find that Electric Boat breached the contract, you as the jury must determine what actual damages the plaintiff has proven by a preponderance of the evidence, and you may only award damages based on the actual damages that have been proven.

The Court did not give this instruction. The Court did provide a charge on liquidated damages, but in a form that was misleading to the jury. The Court failed to charge the jury that "The minimum flights provision in the contract is not a liquidated damages provision." It also refused to charge the jury that it was required to determine "actual" damages.

The Court erred by submitting a jury interrogatory requiring the jury to determine whether "paragraph 14 of the Terms and Conditions governs the termination pursuant to paragraph 2(A) of Supplement Number 1". Judge Goettel's ruling, however, establishes as a matter of law that paragraph 14 applied as the sole measure of damages, and it was error for the Court to present this question to the jury.

The combination of the Court's erroneous jury interrogatories and instructions obviously confused and misled the jury into awarding liquidated damages despite the law of the case. The

defendant is therefore entitled to a new trial, either in whole or solely to determine plaintiff's actual damages.

3.    The Jury's Verdict is Against the Weight of the Evidence.

Even if the Court finds that the jury did *not* award liquidated damages, then the verdict is against the weight of the evidence and in fact is completely baseless. The plaintiff did not present any evidence whatsoever of its actual damages. The jurors did not see any financial statements or any concrete proof of the plaintiff's anticipated profit margin. Thus, if their verdict is not based on liquidated damages, then their verdict is hopelessly unsupported by the evidence. A new trial must therefore be granted either as to all issues or specifically as to plaintiff's actual damages.

4.    The Improper Admission of Parol Evidence Deprived the Defendant of a Fair Trial.

Over the defendant's objection, the Court improperly admitted parol evidence of the parties' intent in entering into this contract. The admission of this evidence in the face of an unambiguous contract, as well as law of the case stating that review of parol evidence would be inappropriate, has severely prejudiced the defendant and deprived it of a fair trial. Here, it was law of the case that the "Agreement is clear with respect to the consequences of termination," i.e., the damages to which the plaintiff would be entitled in the event of a termination for convenience. *Exec. Airlines*, 271 F.Supp.2d at 399. While Judge Hall's Ruling noted that the contract provisions relating to whether the termination was for convenience or for default were "not definitive" and "potentially contradictory," those remarks in no way affected Judge Goettel's Ruling that the separate damages provisions, including the absence of a liquidated

damages provision and the clear provision of a damages remedy in Section 14 of the Terms and Conditions in the event of a termination for convenience, were clear and unambiguous.

As Judge Goettel's Ruling noted, Connecticut law is clear that "where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law . . . ." *Exec. Airlines*, 271 F.Supp.2d at 399 (internal citations and quotations omitted). Indeed, in light of that Ruling, it was improper to allow the jury to determine anything but the amount of damages under Section 14 of the Terms and Conditions in the event it found that Electric Boat had terminated for convenience. More specifically, it was improper to admit extrinsic evidence as to the intent of the six months' provision, the negotiation process, and the like. See *Lee v. BSB Greenwich Mort. LP*, 267 F.3d 172, 178 (2d Cir. 2001) (unexpressed motives or desires of contracting party cannot be offered to prove an intent that varies or contradicts the terms expressed in the writing); *Garza v. Marine Transp. Lines, Inc.*, 861 F.2d 23, 26-27 (2d Cir. 1988) (citation omitted) ("In the absence of ambiguity, the effect of admitting extrinsic evidence would be to allow one party 'to substitute his view of his obligations for those clearly stated,'"); *Heyman Assocs. No. 1 v. Ins. Co. of Pa.*, 231 Conn. 756, 780, 653 A.2d 122 (1995). ("Parol evidence offered solely to vary or contradict the written terms of an integrated contract is, therefore, legally irrelevant.")

Here, the trial court improperly admitted extrinsic evidence that was highly prejudicial to the defendant in that it varied from the plain language of the damages provisions of the contract and deprived the defendant of a fair trial. In particular, over Electric Boat's objection, as set forth in the defendant's motion in limine that was denied prior to trial, plaintiff's president, Michael Peragine, testified that his intent was to build into the contract a revenue stream if Electric Boat terminated the contract, so as to protect the investment he was making in equipping

his company to fly for Electric Boat. The admission of that extrinsic evidence – and the jury's apparent use of it in awarding damages in this case – should have been barred by the law of the case set forth in Judge Goettel's Ruling, namely, that the damages provisions of the contract were clear and unambiguous and foreclosed any award of six months' income under the contract. In essence, the admission of Mr. Peragine's testimony permitted the jury to substitute its own interpretation of the parties "intent" for what this Court had previously determined was the unambiguous language of the contract.

> 5. The Improper Admission of Certain Deposition Testimony Deprived the Defendant of a Fair Trial.

The Court permitted portions of the deposition of Michael Leeds to be read to the jury. The reading of this deposition was utterly improper, since there was no evidence that Mr. Leeds was unavailable.

Deposition testimony is hearsay unless "the declarant is unavailable as a witness." F.R.E. 804(b). Unavailability means that a witness "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means." F.R.E. 804(a)(5).

Mr. Leeds lives on Long Island. He has entered into a settlement agreement with Executive Airlines which includes a provision requiring him to cooperate with Executive Airlines in providing testimony in this very action.[9] If he was inclined to be uncooperative despite this provision, plaintiff could have subpoenaed him pursuant to Fed. R. Civ. P. 45—he does not live 100 miles away from the Bridgeport courthouse. *See SCM Corp. v. Xerox Corp.*,

---

[9] Defense counsel have a copy of the settlement agreement available for the Court's inspection upon request, but it is not attached hereto, pursuant to a confidentiality agreement.

76 F.R.D. 214 (D. Conn. 1977) (holding that the 100 mile restriction means 100 miles "as the crow flies").

Plaintiff's argument that it had not received the transcript until the week before trial is simply a lame excuse and is irrelevant to admissibility. The deposition was taken in November, 2005, three months before this trial began. Plaintiff received notice of the deposition and never challenged its adequacy. Indeed, plaintiff's counsel was planning to attend the deposition and decided the night before not to attend. If he was having trouble locating the court reporter to obtain a copy, he could have contacted defense counsel and asked. There is no valid reason why the plaintiff could not have obtained the transcript earlier or why its failure to do so should excuse it from having Mr. Leeds come to the trial.

Without a live witness to cross-examine, the deposition testimony was confusing to the jury and appeared to buttress Mr. Peragine's claims about the intent of the contract when in reality Leeds had no genuine recollection of the meeting he attended. The jury also did not learn of the highly disputed lawsuit he brought against Michael Peragine about ownership of Executive Airlines' aircraft, of Peragine's conduct towards him, or of the existence of a settlement agreement that requires him to cooperate with the plaintiff in this case. The admission of the deposition testimony without the opportunity to cross-examine Leeds was highly prejudicial to the defendant and deprived it of a fair trial.

The defendant is therefore entitled to a new trial, either without the admission of this deposition testimony or with Mr. Leeds attending in person.

6.      The Improper Preclusion of Certain Expert and Factual Testimony About the Plaintiff's Default Deprived the Defendant of a Fair Trial.

The defendant was also prejudiced by the Court's preclusion in full of its expert witness, as well as by the preclusion of the deposition of Stacy Suazo. Both of these witnesses would

have provided evidence in support of Electric Boat's claim that Executive Airlines breached the contract by failing to maintain FAA-compliant aircraft and pilots.

The defendant's expert witness, Aaron Goodwin Olmsted, was disclosed to testify about his opinion that Executive Airlines failed to comply with FAA regulations. His opinion, as set forth in his June 11, 2004 report, marked as Court Exhibit 6, was that Executive Airlines failed to comply with FAA regulations throughout the time that it was flying for Electric Boat. In particular, he found that the aircraft and crew involved in the May 21, 2000 accident at Bear Creek were not in compliance with FAA regulations due to the failure to ensure sufficient onboard fuel and reserves. The purchase order, marked as Plaintiff's Exhibit 4, specifically required that "Charter aircraft, charter operator and charter pilots must meet all FAA regulations." Thus, Olmsted's testimony was direct evidence of the plaintiff's default.

The Court's complete preclusion of this testimony was highly prejudicial to the defendant, because it deprived the defendant of the opportunity to demonstrate to the jury that the plaintiff was in default. As a result, the jury in fact found that Electric Boat's termination was not for default but for convenience.

The defendant was also prejudiced for similar reasons by the court's preclusion of the deposition testimony of Stacy Lynn Suazo, the fiancée of the copilot on the accident aircraft. As set forth in the proffer of testimony that has been marked as Court Exhibit 2, Ms. Suazo testified in her deposition that on the morning of May 21, 2000, before the accident aircraft began its first flight of the day, Mr. Can Basat, the first officer on the day of the crash, stated, "This airplane is a piece of *****. You can't even tell how much fuel you have on board." (Court Exhibit 2, deposition of Stacy Lynn Suazo at 65-66.)

The preclusion of Ms. Suazo's testimony also severely hampered the defendant's ability to explain to the jury that the plaintiff, Executive Airlines, failed to provide FAA-compliant aircraft for Electric Boat's shuttle service. The Court precluded this testimony essentially on the grounds that it was not interested in re-trying the Bear Creek case. However, that view ignores the fact that the accident aircraft and crew were regularly used to transport Electric Boat's employees. Indeed, that plane had been used for Electric Boat's service on the Friday before the accident. The noncompliance of the aircraft—including the problems that the copilot had in reading the fuel gauges—was highly relevant to Electric Boat's claim that Executive Airlines defaulted.

Because of the preclusion of the testimony of Stacy Suazo and of its expert, Aaron Goodwin Olmsted, the defendant was deprived of a fair trial on its claim that Executive Airlines was in default. As a result, the jury found that the termination was not for default but for convenience. The defendant therefore requests a new trial permitting it to present this crucial testimony.

6.     The Court's Improper Limitation on the Defendant's Use of the Report of the National Transportation Safety Board Deprived the Defendant of a Fair Trial.

The defendant was further prejudiced by the Court's constant last-minute position changes as to whether the report of the National Transportation Safety Board (the "NTSB") would be admitted, as well as by the Court's ultimate decision to permit only the probable cause finding of the report. In addition, the Court's instruction to the jury to consider the report only as an impeachment document, and its limitations on defendant's use of the report, severely prejudiced the defense and deprived it of a fair trial.

During a pretrial conference held on January 31, 2006, the Court denied the plaintiff's oral motion to exclude the report summarizing the findings of the NTSB as to the Bear Creek

accident of May 21, 2000.  At jury selection on February 7, 2006, the plaintiff renewed its request to exclude this evidence, and the Court again denied the motion, stating that the NTSB report would be admitted.

On February 13, 2006, the day before the trial was to begin, the parties received an e-mail from the Court clerk stating that "Judge Eginton has reconsidered his initial ruling on the admission of the NTSB report and will exclude it."  The Court denied both a motion for continuance and a motion for reconsideration regarding this last-minute ruling.  In preparing for the trial, the defendant had relied on the Court's prior rulings that the NTSB report would be admitted, and the Court's last-minute change of heart required significant reconsideration and rearrangement of the defendant's case.

However, during the course of the trial the Court decided that plaintiff had opened the door to the NTSB report.  Plaintiff's counsel had questioned its president about a letter dated December 16, 2000 (Plaintiff's Exhibit 22), in which plaintiff's president claimed that the investigation of the crash had revealed no fault on Executive Airlines' part.  The letter stated that the investigation "indicated that there was [nothing] whatsoever that our organization did or did not do - that in any way could have contributed to the accident."

However, the Court severely hampered the defendant's ability to use the NTSB report. First, it did not permit the entire report to be shown to the jury—only the probable cause finding, with none of the factual findings.  As a result, the jury did not learn of the extensive investigation that was done before the NTSB reached its conclusions.  It also did not learn of the instrument problems and pilot fumbles that led to an aircraft taking off with insufficient fuel to complete its flight.  The Court had determined that the NTSB report was admissible to impeach the claims in Exhibit 22 that none of plaintiff's "policies or procedures" were responsible for the crash.  Yet

the Court's preclusion of the NTSB's factual findings prevented the jury from learning the full extent of the pilot error and instrumentation problems that the NTSB investigated in reaching its final determination.

Moreover, the Court issued a limiting instruction to the jury, stating that the probable cause finding was coming in only to impeach Plaintiff's Exhibit 22. The Court thus effectively precluded the defendant from questioning any witness about anything beyond the bare language of the probable cause determination.

In placing those limitations on the use of the report, however, the Court ignored the relevance of the NTSB report to defendant's claim that Executive Airlines had defaulted on the contract. The NTSB report is relevant because it demonstrates that the plaintiff, Executive Airlines, breached its contract with Electric Boat, which expressly required that "[c]harter aircraft, charter operator and charter pilots must meet all FAA regulations."[10] The NTSB's investigation was also specifically referenced in Electric Boat's termination letter of June 7, 2000.

The report was also highly relevant to the reasonableness of Electric Boat's decision to terminate the contract, because it substantiated Electric Boat's reasonable belief that the crash was caused by misfueling and pilot error.

The Court also precluded the defendant from showing to the jury a supplemental submission made by Executive Airlines to the NTSB, which argued that the crash was caused by an aircraft defect. (Court's Exhibit 3.) This submission was also improperly precluded, despite the fact that it directly impeached the plaintiff's credibility. Because the jury did not learn of this

_____

[10] Again, the accident aircraft was one that had previously been used by Executive Airlines to transport Electric Boat employees. Indeed, it was one of only two Executive Airlines airplanes regularly used to service the Electric Boat contract.

submission, plaintiff was able to take a completely contrary position in court, arguing that the accident was caused by the "mistake of two young men, who paid for it with their lives."

For all of the foregoing reasons, the Court's preclusion of the NTSB report and the plaintiff's supplemental submission to the NTSB were in error and prejudiced the defendant by depriving it of a fair trial.  As a result, the defendant is entitled to a new trial in which it may use the entire NTSB report

### V.     CONCLUSION

For all the foregoing reasons, the defendant respectfully requests that judgment as a matter of law be entered in its favor notwithstanding the verdict.  In the alternative, the defendant moves for a new trial due to the jury's award of damages against the weight of the evidence and the improper admission of certain prejudicial evidence.

DEFENDANT, ELECTRIC BOAT
CORPORATION


By _____

      Paul D. Williams (ct05244)
      pdwilliams@dbh.com
      Michelle I. Turner (ct24012)
      miturner@dbh.com
      Day, Berry & Howard LLP
      CityPlace I
      Hartford, Connecticut 06103-3499
      (860) 275-0100
      Its Attorneys

## **CERTIFICATION**

This is to certify that on this date a copy of the foregoing was sent this date via first-class mail to:

Daniel F. Hayes
Biedermann, Hoenig & Ruff
805 Third Avenue, 18th Floor
New York, NY 10022

Steven E. Arnold
Stanger & Arnold LLP
433 South Main Street
West Hartford, CT 06110

I. Leonard Feigenbaum
1670 Old County Road, Suite 224
Plainview, NY  11803

_____
Michelle I. Turner