UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EXECUTIVE AIRLINES, | : | CIVIL NO.: 3:02 CV 194(WWE) |
| Plaintiff, | : | |
| vs. | : | |
| ELECTRIC BOAT Corp., | : | |
| Defendant | : | March 27, 2006 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S POST TRIAL MOTIONS UNDER RULES 50 AND 59, F.R.C.P.**

**PRELIMINARY STATEMENT**

Defendant's motions for judgment as a matter of law and for a new trial do not satisfy the high standards for such motions and should be denied. Defendant's main argument for judgment as a matter of law is predicated on the decision and order by Judge Goettel which granted partial summary judgment dismissing plaintiff's separate claim for liquidated damages, but denied the motion in all other respects. Defendant said:

> The Court erred by submitting a jury interrogatory requiring the jury to determine whether "paragraph 14 of the Terms and Conditions governs the termination pursuant to paragraph 2(A) of Supplement Number 1". Judge Goettel's ruling, however, establishes as a matter of law that paragraph 14 applied as the sole measure of damages, and it was error for the Court to present this question to the jury. (Defendant's memorandum of law in support at 11).

Plaintiff did not ask the jury for "liquidated damages" and the jury did not return a verdict of "liquidated damages". Plaintiff asked the jury to enforce the promise made by Electric Boat to provide the contractually - mandated six monthly minimum payments, as required by the circumstances of the early termination. As shown below, this Court was not bound by the doctrine

of the law of the case to follow Judge Goettel's non-binding dictum that paragraph 14 of the Terms and Conditions applied to the plaintiff's recovery here; or to conclude that the minimum payments were "liquidated damages". The Court was free to submit the questions to the jury as it did.

Putting aside for the moment Judge Goettel's decision, the trial was substantially error – free and fair to both sides . The plaintiff and the defendant were allowed to put their evidence and their viewpoints to the jury and the jury was properly charged on the law.[1] Obviously, some of the language of the agreement between the parties was ambiguous, because two federal judges had decided that the intent of the parties was not that clear and needed fleshing out by the testimony of the participants at trial.

The plaintiff's view of the agreement remained the same: Executive agreed to provide Electric Boat with transportation by air as specified for one year; Electric Boat agreed to pay at least $73,425 per month, and Executive was to provide a minimum of 15 flights per month; if Executive Airlines conducted less than 15 flights in a month, Electric Boat would nonetheless pay that minimum amount; if Executive Airlines conducted more than 15 flights during a month, Electric Boat would pay Executive Airlines $4895.00 for each additional flight; Electric Boat agreed to give Executive Airlines six months notice if Electric Boat decided for its own reasons to terminate the arrangement.

The promise to give six months notice and the consequences of Electric Boat's failure to do so were the heart of the trial. Mr. Peragine for Executive Airlines testified at length concerning the large costs that were necessary in acquiring aircraft and training pilots to be able to carry out the flight requirements. He negotiated the minimum payments and terminaiton terms to help defray

---

[1] The plaintiff retains and does not mean to waive any objections in the record.

those fixed costs. See, e.g., *Hallmark Ins. Administrators, Inc. v. Colonial Penn Life Ins. Co.* 990 F.2d 984, 989 -990 (7th Cir. 1993) (where "fixed" costs continue to be incurred, a party harmed by another's breach is entitled to collect those lost revenues that would have helped defray fixed costs).

The agreement was equivalent to the purchase of advance non-refundable tickets on a major air carrier. If Electric Boat's employees did not in fact use the transportation, it nonetheless owed the fare, just as if it had booked non-refundable seats on US Airways.

Judge Goettel's decision dismissed the separately pleaded claim for "liquidated damages", but otherwise denied the defendant's motion for summary judgment. Under the "law of the case" doctrine, this Court is not required to accept any part of the earlier decision. This is especially so because it wrongly assumes that the Terms and Conditions document applies to determine the measure of damages.

Mr. Peragine's testimony explained the high start up costs and the intent of the parties in accepting the minimum payment schedule and termination provisions. The jury made its evaluation and accepted plaintiff's position. The decision by the jury is reasonable in the light of the proof at trial as to the intent of the parties. The jury returned a verdict for the plaintiff in special interrogatories finding that, contrary to the position of the defendant at trial, Electric Boat had terminated the contract under paragraph 2(A) of the agreement, that that provision did not refer to the Terms and Conditions document, and that therefore the plaintiff was entitled to recover from the defendant the sum of $472,368.00.

Under applicable law, set out below, the jury's decision should be respected and enforced as a reasonable interpretation of the intent of the parties to the agreement.

I

## THE COURT SHOULD DENY THE DEFENDANT'S RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant's motion for judgment as a matter of law faces "a high bar." *Lavin McEleney v. Marist College,* 239 F.3d 476, 479 (2d Cir. 2001). The Court of Appeals has warned that a jury's verdict should rarely be disturbed. *See Rand-Whitney Containerboard Ltd. Partnership v. Town of Montville,* 289 F.Supp.2d 62, 66 -67 (D.Conn. 2003), citing *Peggy Farrior v. Waterford Board of Education,* 277 F.3d 633, 635 (2d Cir. 2002). Granting a motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil deprives a party of a determination of the facts by a jury and therefore should be cautiously and sparingly granted. *Id.*

In reviewing a Rule 50 motion, the court must view the evidence in a light most favorable to the non-movant - here the plaintiff - and grant that party every reasonable inference that the jury might have drawn in its favor. *Id.*, citing *Samuels v. Air Transp. Local 504,* 992 F.2d 12, 14 (2d Cir. 1993). A Rule 50 post verdict motion cannot assert new grounds; the rules limit the grounds for post-verdict judgment as a matter of law to those "specifically raised" in the pre-verdict motion. *Pappas v. New Haven Police Dept.* 278 F.Supp.2d 296, 300 -301 (D.Conn. 2003); *Lambert v. Genesee Hosp.,* 10 F.3d 46, 53-54 (2d Cir.1993).

This Court may enter judgment for Electric Boat as a matter of law only if it finds that: (1) there is such a complete absence of evidence supporting the verdict for Executive Airlines that the jury's findings could only have been the result of sheer surmise and conjecture; or (2) there is such an overwhelming amount of evidence in favor of Electric Boat that reasonable and fair minded jurors could not have arrived at a verdict against Electric Boat. *See Rand-Whitney Containerboard Ltd. Partnership, supra,* 289 F.Supp.2d at 66 -67, *citing Ahern v. County of Nassau,* 118 F.3d 118, 120

4

(2d Cir.1997). In its Rule 50 (b) analysis, the Court may not weigh the credibility of the witnesses or evaluate the weight of the evidence. *See Rand-Whitney Containerboard Ltd. Partnership, supra,* 289 F.Supp.2d at 66 -67, *citing Williams v. County of Westchester,* 171 F.3d 98, 101 (2d Cir.1999).

Electric Boat clearly cannot meet these requirements and so its motion for judgment as a matter of law should be denied.

## II
## THE REASONING IN JUDGE GOETTEL'S DECISION ON SUMMARY JUDGMENT IS NOT BINDING ON THIS COURT AS THE LAW OF THE CASE

The defendant believes that the Court was foreclosed as a matter of law from submitting to the jury the question whether "paragraph 14 of the Terms and Conditions governs the termination pursuant to paragraph 2(A) of Supplement Number 1", because Judge Goettel had decided it does, in his decision which partly granted and partly denied defendant's motion for summary judgment. (Defendant's memorandum of law in support at 11). This is wrong. The Court had the discretion to submit it to the jury.

Judge Goettel's holding had three parts. First, he found that the early termination was not a breach - a point not in dispute. Second, he found that Executive Airlines was not entitled to an award of "liquidated damages", and he dismissed the separate cause of action for liquidated damages; third, he made no findings at all concerning the proper measure of damages.

> Based on our review of the contract, we find no ambiguity regarding the absence of liquidated damages and grant summary judgment accordingly.... we hold that Electric Boat's early termination of the Agreement did not constitute a breach of contract and that Executive Airlines is not entitled to an award of six months' income as liquidated damages. Accordingly, we grant summary judgment in favor of Defendant, Electric Boat, on Count Three of the Amended Complaint. However, we reach no decision as to whether there was a default by Executive Airlines or to what damages Executive Airlines may be entitled as a result of this early termination. Likewise, Electric Boat's counterclaim remains pending...

5

*Executive Airlines v. Electric Boat Corp.* 271 F.Supp.2d 392, 399 (D.Conn. 2003).

In opposing the summary judgment motion, Executive Airlines argued that the parties had agreed that Executive Airlines would be paid six minimum monthly payments, to cover its start-up costs for this project, regardless of any decision by Electric Boat to terminate. In making this argument, the term "liquidated damages" was used. Judge Goettel then analyzed that claim under the rules pertaining to "liquidated damages", and found that the claim did not satisfy the requirements under Connecticut law for "liquidated damages".

> Before a liquidated damages provision can be recognized under Connecticut law, three requirements must be satisfied: "(1) the damage which was to be expected as a result of the breach of contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable." ....(citations omitted)

271 F.Supp.2d 392 at 398.

The Court then found that the language in the agreement did not satisfy any of these conditions, concluding,

> Had the parties intended to provide for liquidated damages in the event Electric Boat terminated the contract for its convenience, they could have so specified....."

*Id.*

The plaintiff continues to maintain that the agreement provided for six minimum monthly payments under the relevant circumstances here. These payments are not, technically, "liquidated damages", although initially pleaded as such.

Even though he denied the rest of defendant's motion, Judge Goettel linked the consequences of Electric Boat's failure to provide six months' notice to the Terms and Conditions document (Purchase Order Terms and Conditions" (GDC 410 Rev. 3/87) ). He accepted Electric Boat's argument that the consequences of failing to give such notice were described in paragraph 14 of the

Terms and Conditions boilerplate. However, as the jury agreed, the agreement does not incorporate anything from the Terms and Conditions document into paragraph 2(A), which the plaintiff contended and the jury agreed, was the provision under which Electric Boat terminated the agreement.

Judge Goettel's writing as to Paragraph 14 is clearly non-binding dictum, having no bearing on his decision to grant summary judgment. Furthermore, under the law of the case doctrine, with the benefit of an expanded record produced by trial, this Court is not required to defer to any part of Judge Goettel's decision, and certainly not to the conclusions which flow from the erroneous linking of the agreement to paragraph 14 of the Terms and Conditions. .

The agreement between the parties allowed early termination of the agreement under two conditions. [2]

The jury decided that, contrary to Electric Boat's contentions, Electric Boat had terminated the contract under paragraph 2(A); i.e., there was no default by Executive Airlines. It is clear that paragraph 2(A) does not contain a reference to the Terms and Conditions document - while paragraph 2(B) does - and therefore the Terms and Conditions document is not relevant to the consequences of a paragraph 2(A) termination.

Judge Goettel however failed to note that the Purchase Order Terms and Conditions document was not incorporated into paragraph 2(A); he states that "Both the February Purchase

---

[2] 2. TERMINATION:
(A) BUYER [ELECTRIC BOAT] RESERVES THE RIGHT TO TERMINATE THIS SERVICE WITHOUT PENALTY UPON SIX (6) MONTHS WRITTEN NOTICE TO SELLER [EXECUTIVE AIRLINES].
(B) BUYER RESERVES THE RIGHT TO TERMINATE THIS SERVICE WITHOUT PENALTY UPON TEN (10) DAYS WRITTEN NOTICE TO SELLER DUE TO DEFAULT BY SELLER PER ELECTRIC BOAT TERMS AND CONDITIONS, GDC 410, 03/87.

Order and March Purchase Order incorporated the "Purchase Order Terms and Conditions" (GDC 410 Rev. 3/87)...."

Judge Goettel describes the motion before him by Electric Boat for summary judgment:

"[t]hat there is no genuine issue of material fact concerning [Electric Boat's] right to terminate the contract and there is nothing in the contract that would entitle Executive Airlines to liquidated damages....Although Electric Boat maintains that its termination was pursuant to the default provisions of the Agreement, see Note 3, supra, for purposes of this motion it has asked the Court to assume that its termination was for convenience, ***pursuant to Terms and Conditions ¶ 14.***." (Emphasis added)

Thus the source of the error linking paragraph 2(A) to the Terms and Conditions document was Electric Boat's argument.

The Terms and Conditions document contained boilerplate usually inserted into an Electric Boat contract. But in this case, Executive Airlines bargained for a different agreement - the final language of Paragraph 2(A) - which lacked any reference to the boilerplate. Now that the Court has the benefit of the jury's decision based on the evidence it heard at trial, it is to disregard the prior error.

### This Court Can Disregard Judge Goettel's Decision on the Application of the Terms and Conditions Document to Paragraph 2(A)

The law of the case doctrine "'[i]s, at best, a discretionary doctrine which does not constitute a limitation on the Court's power but merely expresses the general practice of refusing to reopen what has been decided.'" *United States v. Martinez,* 987 F.2d 920, 923 (2d Cir.1993) (quoting *United States v. Birney,* 686 F.2d 102, 107 (2d Cir.1982)); *see also United States v. 17,380 Square Feet of Land,* 678 F.Supp. 443, 445 (S.D.N.Y.1988) ( "to the extent that the law of the case doctrine exists in federal court, it is a prudential and not a mandatory rule").

Even as to a court's prior findings of fact, the law of the case doctrine does not preclude either

party from offering additional evidence on this issue at trial. *See Trustees of Indiana Univ. v. Aetna Casualty & Sur. Co.,* 920 F.2d 429, 435 (7th Cir.1990) ( "so long as the factual issue has not been brought to judgment, the parties are free in the course of the same proceeding to offer evidence on the issue"); *see also Childress v. Taylor,* 798 F.Supp. 981, 993 (S.D.N.Y.1992) (a court's pretrial rulings are subject to modification at any time prior to final judgment).

Statements made in prior rulings should be interpreted ***only in light of the limited purpose for which they were made, i.e., to determine whether summary judgment was appropriate, and not for the purpose of finding facts or making legal conclusions on a full record disposing of the case on the merits.*** *Young v. Calhoun* L 169020, 6 -8 (S.D.N.Y.,1995)(emphasis added).

A trial judge has the discretion to revisit an issue decided by the same or a prior judge in the same case. *Corporacion de Mercadeo Agricola v. Mellon Bank Intern.* 608 F.2d 43, 48 (2d Cir., 1979). In *Sagendorf-Teal v. County of Rensselaer* 100 F.3d 270, 277 (2d Cir.,1996), a wrongful termination case, the District Court denied summary judgment to two defendants, finding there were genuine issues of material fact. During trial, the court granted the defendants' motion to dismiss after the same showing that the Court had stated would be sufficient to send the case to a jury. On appeal, the plaintiff argued that the trial court violated the law of the case and should be reversed. The Second Circuit disagreed, because the law of the case doctrine is discretionary and allows a court to reconsider its own decisions, especially when new evidence in the form of a trial record, as here, is available:

> Even assuming for the sake of argument that all of the plaintiff's contention are true, the trial court did not err. Application of the "law of the case" doctrine is "discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." (citations omitted). Among the major grounds justifying such a reconsideration is the availability of new evidence. (citations omitted). In this case, the trial that intervened between the District Court's denial of summary judgment to McGreevey and Walker and its subsequent grant of

their motion to dismiss provided new evidence about their lack of involvement. The District Court therefore was not constrained by the "law of the case" doctrine from reconsidering its prior determination.

*Sagendorf-Teal, supra* 100 F.3d at 277.

Accord,. *DiLaura v. Power Authority of State of N.Y.* 982 F.2d 73, 76 -77 (2d Cir.1992)(The major grounds which justify reconsideration of a prior decision include the availability of new evidence or **where it appears that the court's original ruling was erroneous**.)

The only limitation placed upon the exercise of such discretion is that prejudice not ensue to the party seeking the benefit of the doctrine. *Cumis Ins. Soc., Inc. v. Windsor Bank & Trust Co.* 736 F.Supp. 1226, 1228 -1229 (D.Conn. 1990, *citing, First Nat'l Bank v. Am. Foam Rubber Corp.,* 530 F.2d 450, 453 n. 3 (2d Cir.), *cert. denied,* 429 U.S. 858 (1976). Such prejudice does not mean the harm which results from a failure to apply the doctrine but rather a lack of sufficient notice and opportunity to prepare, with the knowledge that one judge is disregarding the ruling of another. *Cumins, supra.*

*Casey v. U.S.* 161 F.Supp.2d 86, 91 -93 (D.Conn. 2001) was a Federal Tort Claims Act case for the wrongful death of a veteran. The government argued that the order of a prior judge barred the court from reopening the issue of equitable tolling. The Court disagreed. Because a more complete record had developed through trial, and because "the form of a summary judgment response often is not conducive to laying out a detailed history of the case or evaluating the credibility of various witnesses", it was appropriate **not** to apply the doctrine of "law of the case, citing, *inter alia, Tischmann v. ITT/Sheraton Corp.,* 1997 WL 195477, 5 (S.D.N.Y.), *aff'd* 145 F.3d 561 (2d Cir.), *cert. denied* 525 U.S. 963 (1998).

In *Leddy v. Standard Drywall, Inc.* 875 F.2d 383, 386 -387 (2d Cir. 1989), after a jury

verdict, the defendant claimed the district court had effectively removed claims for a certain period from the case in a pretrial ruling and that those claims should not have been submitted to the jury. The Second Circuit disagreed, noting that Rule 54(b) explicitly provides that

> any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ⋯ *is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.*" Fed.R.Civ.P. 54(b) 875 F.2d 383 ; see also, *Schering Corp. v. Schering Aktiengesellschaft*, 667 F.Supp. 175, 185 (D.N.J.1987).

*Leddy v. Standard Drywall, Inc.*, *supra*, 875 F.2d at 386-387.

In the light of the record at trial, and of the decisions of the jury, this Court is not required to adopt Judge Goettel's assumption that the jury could only award damages under the standards set out in Paragraph 14 of the Terms and Conditions. The law of the case doctrine does not so bind the Court.

## III
## THE COURT SHOULD DENY THE DEFENDANT'S RULE 59 MOTION FOR A NEW TRIAL

Defendant's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, should not be granted unless, in the opinion of the district court, the jury has reached a seriously erroneous result, or the verdict is a miscarriage of justice. *See Rand-Whitney Containerboard Ltd. Partnership, supra,* 289 F.Supp.2d at 66 -67*, citing Song v. Ives Labor., Inc.,* 957 F.2d 1041, 1047 (2d Cir.1992). A new trial should be granted only if the jury's verdict is egregious. *See Rand-Whitney Containerboard Ltd. Partnership, supra,* 289 F.Supp.2d at 66 -67*, citing DLC Management Corp. v. Town of Hyde Park,* 163 F.3d 124, 133-34 (2d Cir.1998).

Certainly, it cannot be reasonably said that the jury's verdict is seriously erroneous or a miscarriage of justice. Therefore, the motion for judgment as a matter of law should be denied.

## IV

11

# THE COURT'S DECISIONS ON EVIDENCE ARE NOT A BASIS FOR GRANTING EITHER MOTION

The defendant also complains about the Court's decisions not to admit certain evidence.

The Court rightfully adhered to the position that this trial was not about the causes of the accident; it had distinct and separate issues, including the question, was the termination done because of a default by Executive.

The loss of N16EJ was found to be the result an operational error by the crew and no finding was ever made of a systemic problem with Executive Airlines or with its Jetstream-type aircraft. The passengers on N16EJ were not Electric Boat employees. The Court consistently rebuffed the defendant's attempts to introduce highly- charged, irrelevant information from the accident litigation into this contract case, but the defendant persists. Purported operational errors in other flights discovered years later could not reasonably be construed as a "default" allowing Electric Boat to terminate the agreement in 2000.

The Court's decisions on admissibility of evidence complained of by the defendant in this motion were all reasonable and well within its discretion A trial court's decisions on the admissibility of evidence are reviewed only for abuse of discretion and are reversible only if they also affect a party's substantial rights. *General Electric Co. v. Joiner,* 522 U.S. 136, 138-39, 141-43, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997); *Schering Corp. v. Pfizer Inc.* 189 F.3d 218, 224 (2d Cir. 1999); *Phoenix Assocs. III v. Stone,* 60 F.3d 95, 100 (2d Cir.1995). None of the issues raised by the defendant even approach this standard.

## The Leeds Deposition Was Correctly Admitted

The plaintiff offered the deposition testimony of Michael Leeds which, as defendant states in its memorandum, corroborated the testimony of Mr. Peragine as to the intent of the parties in

negotiating the six month termination notice provision. Mr. Leeds was present during the negotiations.

Mr. Leeds refused to appear voluntarily at trial. The Court inquired of counsel why Mr. Leeds was not under subpoena for live testimony. The Court accepted that plaintiff had not served Mr. Leeds with a timely trial subpoena because the deposition testimony had just been given to trial counsel a few days before.

Mr. Leeds and Mr. Peragine subsequently engaged in litigation against each other. Mr. Leeds' deposition was taken without the participation of the plaintiff. The Court therefore saw Mr. Leeds' testimony as objective and reliable and of great aid to the jury to learn what the intent of the parties was during the negotiations. The Court allowed plaintiff to read it to the jury, as is done in federal trials every day. The decision to allow the testimony was well within the discretion of the Court.

### The Suazo Deposition Testimony Was Properly Excluded

The defendant also complains about the exclusion of double hearsay testimony by the fiancee of the copilot. Ms. Suazo - who had no aeronautical competence - stated in a deposition during the accident litigation after the loss of N16EJ that the copilot had made a negative remark concerning the specific fuel gauges on N16EJ. The copilot and the fiancee nonetheless occupied the aircraft and flew together from Republic Field to Atlantic City. The statement came up long after Electric Boat terminated the contract; it is clearly prejudicial and has no bearing whatsoever on the issues in this trial.

### The Olmsted "Expert" Testimony Was Properly Excluded

A putative expert, Aaron Olmsted, reviewed the voluminous discovery from the accident

13

litigation and was offered by the defendant to state that Executive Airlines had defaulted because its pilots made certain errors during certain flights, including the accident flight of N16EJ. His opinion totally depended on information disclosed or suspected years after the termination by Electric Boat, and thus could not have played any part in Electric Boat's decision to terminate.

The Court ruled that Olmsted could testify only if he had an opinion that the Jetstream aircraft had a flaw which could have endangered Electric Boat employees; otherwise, his testimony would not be relevant to the default issue and would be unfairly prejudicial to the plaintiff.

A trial judge has broad discretion in the matter of the admission or exclusion of expert evidence and must be upheld unless the decision is "manifestly erroneous". *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141 (1997); *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122 (1962); *Schering Corp. v. Pfizer Inc., supra*, 189 F.3d at 224.

In assessing admissibility, the trial court must determine whether the expert testimony is relevant and whether it has a sufficiently "reliable foundation." *Campbell v. Metro. Prop. & Cas. Ins. Co.*, 239 F.3d 179, 184-85 (2d Cir.2001) (citing *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993)); *see also Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999).

The decision to preclude the testimony of Olmsted was clearly sound. In order to be relevant, his opinion would have to support Electric Boat's contention that Executive Airlines had defaulted, that it was not able to continue to fly as it had agreed to. But the witness intended to testify concerning operational issues that he questioned, on certain flights. None of these matters was known to Electric Boat when it terminated the agreement and hence none could have been a reason for the termination. Therefore, his opinion was not relevant to any question in this litigation and would certainly have been unfairly prejudicial to Executive Airlines.

## The N16EJ Accident Brief Was Properly Excluded

Over the plaintiff's objection, the Court admitted the NTSB probable cause finding of the accident to N16EJ, but excluded the voluminous "Accident Brief". Plaintiff maintains that the admission of the probable cause report was an error; but the defendant wants even more, that this jury see the detailed findings of the NTSB about the loss of N16EJ. Again, the results of an investigation which took several years to complete are irrelevant to the issues before this jury: to wit, whether Executive Airlines committed a default in its relationship with Electric Boat that justified Electric Boat in terminating the agreement.

## CONCLUSION

For all these reasons and in the interest of justice, the Court should deny defendants motions in their entirety.

Dated: New York, New York
      March 27, 2006

Respectfully submitted,

Plaintiff Executive Airlines

By: /s/ Daniel F. Hayes

Daniel F. Hayes (phv0207)
**Biedermann, Hoenig & Ruff, P.C.**
805 Third Avenue, 18th Floor
New York, New York 10016
(212) 697-6555 Telephone
(212) 986-3509 Facsimile
dhayes@bhmr.com

TO:
Paul D. Williams
pdwilliams@dbh.com
Michelle I. Turner
miturner@dbh.com
Day, Berry & Howard, LLP
Attorneys for Defendant Electric Boat Corporation
CityPlace I
Hartford, CT 06103-3499
(860) 275-0100 (phone)
(860) 275-0343 (fax)

## CERTIFICATION

This is to certify that a copy of the foregoing and the Memorandum of Law In Opposition to Defendant's Post Trial Motions under Rules 50 and 59, F.R.C.P. was mailed, postage prepaid, on March 27, 2006, to

>Paul D. Williams
>pdwilliams@dbh.com
>Michelle I. Turner
>miturner@dbh.com
>Day, Berry & Howard, LLP
>Attorneys for Defendant Electric Boat Corporation
>CityPlace I
>Hartford, CT 06103-3499
>(860) 275-0100 (phone)
>(860) 275-0343 (fax)

_____
Daniel F. Hayes (phv0207)