# EXHIBIT H

LEXSEE 271 F.SUPP. 2D 392

EXECUTIVE AIRLINES, Plaintiff, – against – ELECTRIC BOAT CORPORATION, Defendant.

No. 3:02CV0194 (GLG)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

271 F. Supp. 2d 392; 2003 U.S. Dist. LEXIS 12340

July 17, 2003, Decided

**DISPOSITION:** Defendant's motion for summary judgment granted in part and denied in part.

**COUNSEL:** [**1] For Executive Airlines, Inc, PLAINTIFF: John E Ryan, Ryan & Brennan, Floral Park, NY USA. Stephen R Mahler, Kew Gardens, NY USA.

For General Dynamics Co, Electric Boat Corp, DEFENDANTS: Ernest J Mattei, Day, Berry & Howard, Hartford, CT, USA. William H Erickson, Day, Berry & Howard, Hartford, CT USA.

For Electric Boat Corp, COUNTER-CLAIMANT: Ernest J Mattei, Day, Berry & Howard, Hartford, CT. USA. William H Erickson, Day, Berry & Howard, Hartford, CT USA.

For Executive Airlines, Inc, COUNTER-DEFENDANT: John E Ryan, Ryan & Brennan, Floral Park, NY USA.

For Executive Airlines, Inc, COUNTER-DEFENDANT: John E Ryan, Ryan & Brennan, Floral Park, NY USA. Stephen R Mahler, Kew Gardens, NY USA.

**JUDGES:** GERARD L. GOETTEL, United States District Judge.

**OPINIONBY:** GERARD L. GOETTEL

**OPINION:**

[*394] Plaintiff, Executive Airlines, has brought this action against Defendant, Electric Boat Corporation, seeking liquidated damages for Electric Boat's alleged breach of contract when it prematurely terminated a contract for air charter services following a plane crash involving an Executive Airlines jet. The amended complaint asserts four causes of action, all premised on the alleged breach of contract by [**2] Electric Boat: Count I – breach of contract, Count II – accounts stated, Count III – liquidated damages, and Count IV – actual damages. Electric Boat has counterclaimed for damages it incurred as a result of Executive Airlines' failure to furnish the air charter services that it agreed to provide.

Electric Boat has now moved for summary judgment [Doc. # 34] on the grounds that there is no genuine issue of material fact concerning its right to terminate the contract and there is nothing in the contract that would entitle Executive Airlines to liquidated damages. For the reasons set forth below, the motion for summary judgment will be granted in part and denied in part.

**Background**

In October 1999, Electric Boat issued a request for quotation for air charter service between its facilities in Groton, Connecticut, and Newport News, Virginia. Executive Airlines submitted an offer, and on February 9, 2000, Electric Boat issued Purchase Order No. SNL 022-096 (the February Purchase Order) to Executive Airlines. (Id. at § 15, Admitted by Pl.) Under the February Purchase Order, Executive Airlines was to fulfill all of Electric Boat's requests for air charter service [**3] between Groton and Newport News at a fixed round-trip price of $4,895.00, with a minimum monthly billing of 15 round-trip flights. The term of the contract was for not less than a year. On March 14, 2000, Electric Boat reissued Purchase Order No. SNL 022-096 along with a "Purchase Order Supplement No. 1" which modified in certain respects the February Purchase Order (collectively, the "March Purchase Order"), including the termination provisions. Both the February Purchase Order and March Purchase Order incorporated the "Purchase Order Terms and Conditions" (GDC 410 Rev. 3/87) and Attachment (7/86) (collectively "the Agreement").

On April 10, 2000, Executive Airlines commenced its air charter services for Electric Boat under this Agreement using a BAE Systems Jet Stream 31 aircraft ("the aircraft"). On May 21, 2000, six weeks after its first flight for Electric Boat, Executive Airlines was operating the

Case 3:02-cv-00194-WWE    Document 189-8    Filed 07/19/2006    Page 3 of 6

Page 2
271 F. Supp. 2d 392, *394; 2003 U.S. Dist. LEXIS 12340, **3

aircraft on a charter flight from Atlantic City, New Jersey to Wilkes-Barre/Scranton International Airport when the aircraft crashed, killing all seventeen passengers n1 and the two pilots on board. Electric Boat then suspended further flights with Executive Airlines pending the investigation [**4] into the crash by the Federal Aviation Administrations (the "FAA") and the National Transportation Safety Board (the "NTSB"). By letter dated June 7, 2000, Electric Boat notified Executive Airlines' President that "pursuant to the article entitled 'Termination' of Electric Boat Conditions of Purchase n2 . . . the subject purchase order is hereby terminated in its entirety." The letter noted that the safety of its employees was of "paramount importance" [*395] and because the findings of the FAA and NTSB would likely not be available in the near future, Electric Boat felt that it must "proceed in other directions." (Ltr. Dtd. June 7, 2000 from Stillman to Peragine.)

> n1 It appears from the pleadings that this was the same type of aircraft as was to be used for the Electric Boat charter flights, but it is unclear whether this was a charter for Electric Boat or whether these passengers were employees of Electric Boat.
>
> n2 As discussed below, it is unclear to which termination provision this refers.

Electric Boat alleges [**5] that as a result of the crash and ensuing investigation, Executive Airlines has been unable to provide the service that it agreed to provide under the Agreement. Executive Airlines denies this claim and states that at all times subsequent to April 17, 2000, it was willing and able to meet all of its obligations under the Purchase Order Agreement. Nevertheless, since May 17, 2000, Electric Boat has paid for only four flights, which it represents to be the number of round-trip charter flights actually flown for it by Executive Airlines. Executive Airlines maintains that, as a result of Electric Boat's early termination of the Agreement, it is entitled to liquidated damages of $494,395.00. n3 Electric Boat, on the other hand, contends that it terminated the Agreement due to Executive Airlines' default, and that it has been damaged by virtue of the significant travel-related expenses it has incurred in having to use commercial carriers instead of the contracted-for air charter service.

> n3 This figure represents fifteen round-trip flights/month for six months, plus the eleven unpaid flights for May, the month preceding the termination notice, at the rate of $4,895.00 per round-trip.

[**6]

### Summary Judgment Standard

A court may grant summary judgment only if it determines that, based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, there is no genuine issue of material fact to be tried and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)*. The court must also construe the facts in a light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986)*.

"Summary judgment based upon construction of a contract is appropriate only if the meaning of the language is clear, considering all the surrounding circumstances and undisputed evidence of intent, and there is no genuine issue as to the inferences that might reasonably be drawn from the language." *Sharkey v. Ultramar Energy Ltd., 70 F.3d 226, 230 (2d Cir. 1995)*. [**7] "A contract should be interpreted in a way that ascribes meaning, if possible, to all of its terms, and where it is susceptible to more than one reasonable interpretation, its construction is a question of fact for trial, and summary judgment is inappropriate." *Wheelabrator Envtl. Sys., Inc. v. Galante, 136 F. Supp. 2d 21, 36 (D. Conn. 2001)* (quoting *Arledge v. Stratmar Sys., Inc., 948 F.2d 845, 850 (2d Cir. 1991)*). "A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings." *Sanitary Servs. Corp. v. Greenfield Vill. Ass'n, 36 Conn. App. 395, 399, 651 A.2d 269 (1994)* (citing *Barnard v. Barnard, 214 Conn. 99, 110, 570 A.2d 690 (1990)*).

### Discussion

Because our subject matter jurisdiction is invoked pursuant to the parties' diversity of citizenship, see *28 U.S.C. § 1332*, we look to the law of the forum state to determine the substantive law that [*396] should apply to this contract dispute. *Erie R. Co. v. Tompkins, 304 U.S. 64, 78, 82 L. Ed. 1188, 58 S. Ct. 817 (1938)*. [**8] Connecticut courts give effect to an express choice-of-law provision by the parties to a contract, provided it was made in good faith. *Elgar v. Elgar, 238 Conn. 839, 848, 679 A.2d 937 (1996)*. In this case, the contract expressly provided that it would be "governed by and construed in accordance with the laws of the state in which [Electric Boat's] facil-

271 F. Supp. 2d 392, *396; 2003 U.S. Dist. LEXIS 12340, **8

ity issuing this order is located, excluding the choice of law rules." (Terms and Conditions § 24.) Electric Boat issued the purchase orders from its facility in Groton, Connecticut. (Stillman Aff. § 5.) Thus, the substantive law of Connecticut will be applied.

The "Agreement" between the parties consists of the February Purchase Order, the March Purchase Order, and the Purchase Order Terms and Conditions. Several provisions in the Agreement are relevant to the issue of termination. The March Purchase Order provides:

> 2. TERMINATION: (A) BUYER [ELECTRIC BOAT] RESERVES THE RIGHT TO TERMINATE THIS SERVICE WITHOUT PENALTY UPON SIX (6) MONTHS WRITTEN NOTICE TO SELLER [EXECUTIVE AIRLINES].
> (B) BUYER RESERVES THE RIGHT TO TERMINATE THIS SERVICE WITHOUT PENALTY UPON TEN (10) DAYS WRITTEN NOTICE TO SELLER DUE [**9] TO DEFAULT BY SELLER PER ELECTRIC BOAT TERMS AND CONDITIONS, GDC 410, 03/87.

(March Purchase Order at 6, Purchase Order Supplement No. 1, § 2.) This provision had been changed from the February Purchase Order, which had provided the Buyer with the right to terminate the service without penalty upon seven (7) days written notice to Seller that the service was no longer required.

The Terms and Conditions, which were incorporated into both the February and March Purchase Orders, also addressed termination under circumstances of default, insolvency, and convenience. Relevant to this case are the following provisions relating to termination for convenience (Terms and Conditions § 14): n4

> Buyer may at any time by written notice terminate all or any part of this order for Buyer's convenience. If this order is terminated, in whole or in part, for Buyer's convenience, Seller shall be paid an amount, to be mutually agreed upon which shall be adequate to cover the reasonable cost of Seller's actual performance of work under this order to the effective date of termination, plus a reasonable profit thereon provided that no amount shall be paid to Seller for (i) any anticipatory [**10] profits related to work under this order not yet performed, or (ii) costs incurred due to Seller's failure to terminate work as ordered on the effective date of termination.

> In no event shall the total amount paid under this [*397] provisions [sic] exceed the prices set forth in this order for the work terminated.

n4 The default provision (Terms and Conditions § 12(a)) provided in part:

> (a) Buyer may . . . by written notice of default to Seller, terminate the whole or any part of this order in any one of the following circumstances: (i) if Seller fails to make delivery of goods or to perform this order within the time specified herein or any extension thereof; or (ii) if Seller fails to perform any of the other provisions of this order, or so fails to make progress as to endanger performance of this order in accordance with its terms; and does not cure such failure within a period of ten (10) days . . . after receipt of notice from [Defendant] specifying such failure.

Paragraph 12(f) further provided that the rights and remedies of Electric Boat provided in that paragraph were not exclusive and were in addition to any other rights provided by law or under this order.

[**11]

Additionally, the Terms and Conditions contained a clause entitled "order of Preference," which provided:

> This order and all documents incorporated by reference constitute the entire agreement of the parties as to the subject matter hereof. In the event of any inconsistency among the foregoing, the inconsistency shall be resolved by giving precedence in the following order: (i) the purchase order to which these terms and conditions are attached; (ii) these terms and conditions; (iii) the specifications; (iv) the drawings; and (v) the other documents incorporated by reference.

(Terms and Conditions §3.)

Although Electric Boat maintains that its termination was pursuant to the default provisions of the Agreement, see Note 3, supra, for purposes of this motion it has asked the Court to assume that it termination was for convenience, pursuant to Terms and Conditions §4. Electric Boat argues that both the March Purchase Order and the

Case 3:02-cv-00194-WWE    Document 189-8    Filed 07/19/2006    Page 5 of 6

Page 4

271 F. Supp. 2d 392, *397; 2003 U.S. Dist. LEXIS 12340, **11

Terms and Conditions incorporated therein recognize its right to terminate for convenience. Therefore, it asserts, it cannot be considered in default and Executive Airlines is not entitled to damages – liquidated, actual, or otherwise. [**12]

Executive Airlines, on the other hand, argues that the intent of the parties to a contract is a question of fact for the jury and, based upon the Affidavit of its President Michael S. Peragine, it asserts that the termination provisions of the Purchase Order were modified to provide six-months' charter fees as liquidated damages in the event of termination because of the enormous costs that Executive Airlines would incur in gearing up for this project.

We agree with Electric Boat that regardless of the reason that it terminated the Agreement, it had the right to do so, even if only for its own convenience. The Agreement specifically allowed for termination for convenience. Electric Boat did not breach the Agreement by invoking its right of early termination. n5 However, that does not absolve Electric Boat from the consequences associated therewith, which is the more difficult issue in this case.

> n5 As noted above, Electric Boat takes the position that it terminated the Agreement because of Executive Airlines' default. We express no opinion at this time as to whether there was a default by Executive Airlines or whether the termination by Electric Boat was pursuant to the default or convenience provisions.

[**13]

Under § of Purchase Order Supplement No. 1 of the March Purchase Order, Executive Airlines was required to give six-months' notice of its intent to terminate for convenience in order to be able to do so without penalty. Under §4 of the Terms and Conditions, if the Agreement were terminated for convenience, Executive Airlines would be entitled to receive a sum of money "to be mutually agreed upon . . . adequate to cover the reasonable costs of [Executive Airlines'] actual performance of work under this order to the effective date of termination, plus a reasonable profit thereon. . . . ." (Terms and Conditions §4), subject to additional limitations. The Agreement must be read so as to give effect to both of these provisions. Additionally, to the extent that they are inconsistent, they must be read in the order of precedence set forth in the Terms and Conditions § 23. See *Dainty Rubbish Serv., Inc. v. Beacon Hill Ass'n*, 32 Conn. App. 530, 534, 630 A.2d 115 (1993) (holding that the rules of contract construction require giving effect to all of the provisions of a contract, construing it as a whole, and reconciling its clauses); *Wheelabrator*, 136 [*398] F. Supp. 2d at 36 [**14] (holding that "[a] contract should be interpreted in a way that ascribes meaning, if possible, to all of its terms . . . ").

In that regard, we first consider the provision of the Purchase Order that allowed Electric Boat to terminate for convenience "without penalty" by giving six months notice. Undisputably, this it did not do. We next look to the Terms and Conditions § 14, which impose an obligation on Electric Boat to pay "an amount . . . to cover the reasonable cost of [Executive Airlines'] actual performance . . . plus a reasonable profit," subject to certain limitations.

Executive Airlines, however, alleges that it is entitled to liquidated damages of $494,395.00 because of Electric Boat's failure to provide it with the required six-months' notice. It argues that the parties intended the minimum fees for six months to be liquidated damages to cover its start-up costs for this project. Therefore, it argues that summary judgment should not be granted because "under controlling Connecticut law, in the absence of contract language, the question as to what the parties intended in their contractual commitment is one of fact for a jury." (Pl.'s Mem. Point 2.)

Before a liquidated [**15] damages provision can be recognized under Connecticut law, three requirements must be satisfied: "(1) the damage which was to be expected as a result of the breach of contract was uncertain in amount or difficult to prove; (2) there was an intent on the part of the parties to liquidate damages in advance; and (3) the amount stipulated was reasonable." *Hanson Dev. Co. v. East Great Plains Shopping Ctr., Inc.*, 195 Conn. 60, 64-65, 485 A.2d 1296 (1985) (citing *Berger v. Shanahan*, 142 Conn. 726, 732, 118 A.2d 311 (1955)); see also *Norwalk Door Closer Co. v. Eagle Lock & Screw Co.*, 153 Conn. 681, 686, 220 A.2d 263 (1966).

Applying these requirements to the facts of this case, it does not appear that damages would be difficult to calculate. Indeed, 6 14 of the Terms and Conditions describes how damages were to be calculated in the event of a termination for convenience.

Second, there is no express provision in the Agreement addressing liquidated damages, nor anything in the Agreement indicating that the parties intended to fix liquidated damages in the event of a breach. The phrase "liquidated damages" does not appear anywhere in the Agreement. [**16] Additionally, the fact that there is an agreement as to a formula for the calculation of damages in the event of termination by Electric Boat for convenience further defeats Electric Boat's claim that the parties agreed to liquidate damages. Moreover, to read the six months' termination provision as a liquidated damages

Case 3:02-cv-00194-WWE    Document 189-8    Filed 07/19/2006    Page 6 of 6

Page 5

271 F. Supp. 2d 392, *398; 2003 U.S. Dist. LEXIS 12340, **16

provision is to ignore § 14 of the Terms and Conditions, which sets forth the manner in which damages are to be calculated. See *Lipsky v. Commonwealth United Corp., 551 F.2d 887, 896 n. 15 (2d Cir. 1976)* (holding that the existence of a remedy provision elsewhere in the contract was inconsistent with a claim for liquidated damages).

Third, as to whether six-months' fees would be reasonable liquidated damages is an issue we cannot address. However, one thing is certain. Had the parties intended to provide for liquidated damages in the event Electric Boat terminated the contract for its convenience, they could have so specified.

Executive Airlines implores the Court to look beyond the four corners of the Agreement to consider the parties' intent, which, it claims, was to provide for six months of income as liquidated damages. Were the terms of the Agreement [**17] [*399] ambiguous, we would do so, but they are not. "A contract is interpreted by the intent of the parties expressed in the language of the agreement." *Topf v. Warnaco, Inc., 942 F. Supp. 762, 767 (D. Conn. 1996)* (emphasis added). If the language of the contract is ambiguous, the Court must defer to a jury to determine the intent of the parties. Id.; see also *Gaudio v. Griffin Health Servs. Corp., 249 Conn. 523, 533, 733 A.2d 197 (1999)*; *Bead Chain Mfg. Co. v. Saxton Prods., Inc., 183 Conn. 266, 274-75, 439 A.2d 314 (1981)*. However, "where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law" for the Court to decide. *Thompson & Peck, Inc. v. Harbor Marine Contracting Corp., 203 Conn. 123, 131, 523 A.2d 1266 (1987)*. When the terms of an agreement are clear, "there is no room for construction" of the language. *Levine v. Massey, 232 Conn. 272, 277-78, 654 A.2d 737 (1995)*; see also *HLO Land Ownership Assocs. Ltd. P'ship v. Hartford, 248 Conn. 350, 356-57, 727 A.2d 1260 (1999)*. Ambiguity must arise [**18] from the language of the contract, not from the subjective interpretations of the parties. Here, we find that the Agreement is clear with respect to the consequences of termination.

Moreover, the Agreement contains an integration clause, which evidences the parties' intent to create a fully integrated contract. See *Tallmadge Bros., Inc. v. Iroquois Gas Transmission Sys., L.P., 252 Conn. 479, 502-505, 746 A.2d 1277 (2000)*; *Benvenuti Oil Co. v. Foss Consultants, Inc., 64 Conn. App. 723, 781 A.2d 435 (2001)*.

Mr. Peragine, President of Executive Airlines, states that during the contract negotiations, he was assured by Electric Boat that the six months' termination clause was a liquidated damages provision, regardless of the title given. "Not being a lawyer, and a neophyte at government contracts of this type, and relying on their sophisticated legal staff for guidance as to the appropriate wording of governmental purchase orders," he accepted their reasoning "with full confidence that the provision was a liquidated damage provision." (Peragine Aff. at 4.)

It is well settled, however, that a "party may not assert as a defense to an action on a contract [**19] that it did not understand what it was signing." *John M. Glover Agency v. RDB Bldg. LLC, 60 Conn. App. 640, 645, 760 A.2d 980 (2000)*. Moreover, "the court may not relieve a party competent to contract from an improvident agreement." *Parks v. Baldwin Piano & Organ Co., 262 F. Supp. 515, 520 (D. Conn.), aff'd, 386 F.2d 828 (2d Cir. 1967)*.

Based on our review of the contract, we find no ambiguity regarding the absence of liquidated damages and grant summary judgment accordingly.

## Conclusion

For the aforementioned reasons, Defendant's Motion for Summary Judgment [**Doc. # 34**] is granted to the extent that we hold that Electric Boat's early termination of the Agreement did not constitute a breach of contract and that Executive Airlines is not entitled to an award of six months' income as liquidated damages. Accordingly, we grant summary judgment in favor of Defendant, Electric Boat, on Count Three of the Amended Complaint. However, we reach no decision as to whether there was a default by Executive Airlines or to what damages Executive Airlines may be entitled as a result of this early termination. Likewise, Electric [**20] Boat's counterclaim remains pending. These are matters on which the parties have not submitted any proof and which cannot be resolved on summary judgment. To that extent the Motion for Summary [*400] Judgment is denied. This case will be placed on the September Trial Calendar.

SO ORDERED.

Date: July 17, 2003

Waterbury, Connecticut.

/s/

GERARD L. GOETTEL,

United States District Judge