# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                                 Page 1

Not Reported in F.Supp.2d, 1999 WL 66539 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

▷
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, N.D. Illinois, Eastern
Division.
Robert PETIT, et al., Plaintiffs,
v.
CITY OF CHICAGO, Defendant.
**No. 90 C 4984.**

Feb. 8, 1999.

MEMORANDUM OPINION AND ORDER
HART, District J.
**\*1** This lawsuit concerns the Chicago, Illinois
Police Department's 1985-1988 sergeant
promotional examination (the "1985-88 examination
") that produced an eligibility list used between
December 1988 and September 1991 in promoting
458 patrol officers to the rank of sergeant. The
plaintiffs in this case are 326 police officers [FN1]
who claim that defendant City of Chicago [FN2]
committed racial or national origin discrimination in
violation of 42 U.S.C. § 1983 by adjusting scores
on the 1985-88 examination based on the race of
the test taker ("racial standardization"). The
adjustments favored African-Americans and
Hispanics. All or most of the individual plaintiffs
are non-Hispanic Whites. The plaintiffs also
complain that defendant discriminated by
promoting Hispanics and women [FN3] out of the
order in which they were ranked based on the
racially standardized test.[FN4] Defendant does not
dispute that it intentionally provided favorable
treatment to African-Americans, Hispanics, and
women. One of its defenses, however, is that such
treatment was justified as a narrowly tailored
remedy for the Police Department's past unlawful
discrimination against African-Americans,
Hispanics, and women. Presently before the court
are both sides' motions in limine seeking the
application of collateral estoppel as to certain
issues. Also pending is plaintiffs' motion to

reconsider a discovery ruling regarding an **expert
witness** of defendant.

> FN1. The claims of plaintiff Lodge 7 of the
> Fraternal Order of Police (the "FOP")
> were previously dismissed for lack of
> standing and mootness. *See Petit v. City of
> Chicago,* 31 F.Supp.2d 604, 1998 WL
> 919716 \*10-11 (N.D.Ill. Sept. 11, 1998) (
> *Petit II* ").

> FN2. Other defendants were previously
> dismissed. *See Petit v. City of Chicago,*
> 766 F.Supp. 607, 614-16 (N.D.Ill.1991) ("
> *Petit I* ").

> FN3. For brevity in writing, race or racial
> will be used generically to refer to the race,
> national origin, and gender issues involved
> in this case.

> FN4. Plaintiffs' claims are limited to being
> pursuant to § 1983. *See Petit II,* 1998 WL
> 919716 at \*1 n. 4; *Petit I,* 766 F.Supp. at
> 613.

For purposes of discovery only, this case was
consolidated with three cases alleging
discrimination in other Chicago Police Department
promotions. While still consolidated, defendant's
motion to **substitute** an **expert witness** was denied.
After completion of the consolidated proceedings,
defendant renewed its motion to **substitute**. On
September 23, 1998, the renewed motion to
**substitute** was granted. Plaintiffs presently seek
reconsideration of that order. In other words, as
matters now stand, the City will be permitted to use
Bernard Siskin as an **expert witness**. Plaintiffs seek
to preclude the use of Siskin as a **witness**.

**Expert** testimony is likely to be important in this
case. Defendant had employed Charles Mann as an
expert and there is no dispute that the City's intent

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                          Page 2

Not Reported in F.Supp.2d, 1999 WL 66539 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

to use Mann was properly and timely disclosed a number of years ago. Defendant's relationship with Mann, however, has deteriorated and defendant now intends to use Siskin as an expert. Siskin's report was provided to plaintiffs no later than September 28, 1998, and possibly much earlier than that.[FN5] Presently, the parties' final pretrial order is scheduled to be submitted on March 18, 1999. Plaintiffs will have Siskin's report for nearly six months, if not longer, by the time the final pretrial order is due. The trial will not take place until sometime after the final pretrial order is submitted. Additionally, plaintiffs were provided a sufficient period of time in which to depose Siskin.[FN6] Plaintiffs' present motion does not make any showing of having suffered prejudice other than to conclusorily assert numerous hours were devoted to analyzing Mann's report and that it will be an " enormous task" to analyze Siskin's report. This is no more than had previously been asserted.

> FN5. It was unclear from the prior presentation whether the report had already been disclosed. The September 23 Order required that the report be disclosed by September 28 if it had not already been disclosed.

> FN6. Plaintiffs apparently did not depose the prior expert and counsel indicated at a court hearing that plaintiffs may not desire to depose the new expert even if he is permitted to testify. Since the expert must provide a report, deposing the expert is often unnecessary and may be more helpful to the expert than the opposing **party**.

**\*2** Plaintiffs have not shown sufficient prejudice to justify denying the use of Siskin. Unlike the decision made by the judge supervising the consolidated case, the September 23 decision to allow **substitution** and today's denial of reconsideration are made in light of the specific schedule set for this specific case. Plaintiffs will have had a more than adequate opportunity to evaluate Siskin's report and any deposition testimony he may have given. Plaintiffs cite *Erwin*

*v. City of Chicago,* 1998 WL 801821 (N.D.Ill. Nov. 12, 1998), one of the formerly consolidated police promotion cases. Applying Fed.R.Civ.P. 60(b), **substitution** of the expert was denied in *Erwin.* However, Rule 60(b) only applies to judgments and other final orders, not interlocutory discovery rulings. *See Fayetteville Investors v. Commercial Builders, Inc.,* 936 F.2d 1462, 1469-70 (4th Cir.1991); *Wimberly v. General Motors Corp.,* 1997 WL 30960 \*1 (N.D.Ill. Jan. 17, 1997); *Acme Printing Ink Co. v. Menard, Inc.,* 891 F.Supp. 1289, 1294-95 (E.D.Wis.1995); *Fisher v. National R.R. Passenger Corp.,* 152 F.R.D. 145, 148-49 (S.D.Ind.1993); *Ruehman v. Village of Palos Park,* 842 F.Supp. 1043, 1062-63 (N.D.Ill.1993), *aff'd,* 34 F.3d 525 (7th Cir.1994). This court has inherent and discretionary authority to reconsider its discovery rulings and modify them in light of the circumstances of the case. Absent substantial prejudice to plaintiffs, defendant should not be limited to using an expert identified years ago and with whom defendant is now having problems. Plaintiff's reconsideration motion will be denied.

Defendant seeks to estop plaintiffs from disputing that, during the decades prior to 1989, the Chicago Police Department engaged in intentional discrimination against African-Americans and Hispanics who applied for or were hired as police officers. Defendant's basis for applying collateral estoppel are findings supporting the judgment entered in *Majeske v. City of Chicago,* No. 89 C 7262 (N .D. Ill.). The pertinent findings are reported in *Majeske v. City of Chicago,* 29 F.Supp.2d 872, 1998 WL 831889 (N.D.Ill. Nov. 25, 1998). Postjudgment motions for reconsideration and a new trial were denied on December 9, 1998 and *Majeske* is presently on appeal before the Seventh Circuit.

*Majeske* is one of the cases that was consolidated with the present case for discovery. *Majeske* concerns 1990 promotions to detective that were based in large part on a 1989 examination. The *Majeske* plaintiffs, who are White current and former Chicago police officers, are represented by the same attorney who represents plaintiffs in the present case. Nineteen of the plaintiffs in the present case are also plaintiffs in *Majeske.* Two

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d

Not Reported in F.Supp.2d, 1999 WL 66539 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

plaintiffs in the present case who are not *Majeske* plaintiffs testified in the *Majeske* case as witnesses for the plaintiffs.

In *Majeske,* the parties agreed to present 28 pairs of questions to the jury in a special verdict. Each pair of questions asked whether the City had presented evidence to support its side of the question and if the plaintiffs had proved their side of the question by a preponderance of the evidence. The parties agreed the court could make a legal determination based on the findings contained in the special verdict, with it also being agreed that, if necessary, the court could make any additional findings of fact not resolved by the special verdict. Based on the findings made by the jury, the court concluded that there had been past discrimination by the Police Department including discrimination in promoting African-Americans and Hispanics to the detective rank. It was also found that the favorable treatment provided to African-Americans and Hispanics during the 1990 detective promotions was a narrowly tailored remedy for the discrimination against African-Americans and Hispanics that had been shown. Accordingly, the City prevailed in the *Majeske* case.

**\*3** In the present case, the City specifically relies upon the *Majeske* jury's affirmative responses to the following questions:
5. Did the City present evidence to support its claim that, in the decades prior to the 1989 detective examination, black police officers were subject to intentional, unfavorable treatment in assignments (for example, segregated beats, restricted duties, and unfair efficiencies)? [FN7]

> FN7. The "efficiencies" referred to in question 5 are efficiency ratings, which are performance evaluations.

6. Did the City present evidence to support its claim that, in the decades prior to the 1989 detective examination, black and Hispanic police officers were subject to intentional, unfavorable treatment in hiring (for example, in the use of medical and entrance qualifications)?

7. Did the City present evidence to support its claim that, in the decades prior to the 1989 detective examination, supervisors (for example, sergeants, lieutenants, commanders, etc.) in the Police Department acted in ways that were hostile to black and Hispanic police officers?
7.5. Did the City present evidence to support its claim that, in the decades prior to the 1989 detective examination, the Police Department tolerated acts of hostility directed towards black and Hispanic police officers?

*Majeske,* 1998 WL 831889 at \*3-4. As to each of these questions there was a corresponding question as to whether plaintiffs had proved by a preponderance of the evidence the negative of the proposition. The jury answered "No" as to each of these corresponding questions. *Id.* at \*4.

As summarized by the court:
[T]he jury found defendant presented evidence of past discrimination in the hiring and promotion to detective of Chicago police officers.... Based upon the jury's findings and the evidence underlying those findings, the court finds defendant had a strong basis in evidence for concluding past discrimination existed .... Accordingly, it is plaintiffs' burden to establish that defendant's evidence did not constitute strong evidence of discrimination ....
The jury found plaintiffs failed to prove by a preponderance of the evidence any of the facts set forth in the special verdict relevant to the question of whether there was strong evidence of discrimination. Plaintiffs accordingly have not borne their burden of establishing that defendant's evidence did not constitute strong evidence of discrimination.

*Id.* at \*5.

Defendant seeks estoppel on limited issues. It seeks to estop plaintiffs from disputing that the City subjected African-American and Hispanic police officers to (a) unfavorable treatment in assignments; (b) unfavorable treatment in hiring; (c) hostile treatment by the Department; and (d) tolerance of hostile treatment.[FN8] Defendant does not contend that the *Majeske* finding that there was past

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 1999 WL 66539 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

discrimination in promotions to detective would be relevant to the present case. Defendant also concedes that the question of past discrimination in promoting African-Americans and Hispanics to sergeant would still be an open question for trial.

> FN8. The *Majeske* opinion does not clarify whether this refers only to tolerance of hostile treatment by fellow officers or also tolerance of hostile treatment by citizens or others.

**\*4** Favorable treatment to a racial or ethnic group is permitted where there is past discrimination and the remedy is narrowly tailored to the violation, that is the discrimination against the formerly favored group is kept to the minimum amount consistent with effective remediation. *McNamara v. City of Chicago,* 138 F.3d 1219, 1222 (7th Cir.), *cert. denied,* 119 S.Ct. 444 (1998); *Majeske,* 1998 WL 831889 at *2. Defendant has the initial production burden of showing a strong basis in the evidence that past discrimination existed. The burden of persuasion, however, remains with plaintiffs to show either that past discrimination did not occur or that the remedy is not tailored narrowly enough. *Contractors Association of Eastern Pa., Inc. v. City of Philadelphia,* 91 F.3d 586, 597 (3d Cir.1996), *cert. denied,* 117 S.Ct. 953 (1997); *Concrete Works of Colorado, Inc. v. Denver,* 36 F.3d 1513, 1521-22 (10th Cir.1994), *cert. denied,* 514 U.S. 1004 (1995) ; *Majeske,* 1998 WL 831889 at *2-3. A strong basis in the evidence has been described as evidence approaching a prima facie case of a constitutional or statutory violation. *Boston Police Superior Officers Federation v. City of Boston,* 147 F.3d 13, 19 (1st Cir.1998); *Aiken v. City of Memphis,* 37 F.3d 1155, 1163 (6th Cir.1994); *Peightal v. Metropolitan Dade County,* 26 F.3d 1545, 1553 (11th Cir.1994).

Four elements must be satisfied in order to apply collateral estoppel based on a prior federal court judgment.
1) the issue sought to be precluded must be the same as that involved in the prior action, 2) the issue must have been actually litigated, 3) the determination of the issue must have been essential to the final judgment, and 4) the party against whom

estoppel is invoked must be fully represented in the prior action.

*La Preferida, Inc. v. Cerveceria Modelo, S.A. de C.V.,* 914 F.2d 900, 905-06 (7th Cir.1990).

Plaintiffs contend the first two elements are not satisfied because *Majeske* did not find intentional discrimination or discrimination in promotion to sergeant. As to the first contention, plaintiffs point to the court's language on page *5 of *Majeske,* which refers to "discrimination," not expressly to " intentional discrimination." That finding, however, was based on jury findings of evidence to support " intentional, unfavorable treatment." *Id.* at *3-4. More specifically, *Majeske* found that the same " strong basis" standard that would apply to the present case was satisfied. It is clear that *Majeske* found that there was a strong basis in the evidence of intentional discrimination.

It is true that, in *Majeske,* the City had to show past discrimination in promotion to detective, whereas the present case requires a showing of past discrimination in promotion to sergeant. Past intentional discrimination in the hiring and treatment of patrol officers, however, is part of the evidence in the present case that there was past discrimination in the promotion of African-Americans and Hispanics to the rank of sergeant. In *Majeske,* it was found that there was strong evidence of discrimination in hiring and treatment of patrol officers and that there was discrimination in promotions to detective. Estoppel is only sought as to the former. The City will still have to present evidence linking discriminatory treatment of patrol officers to discrimination in promotions. Plaintiffs, however, will be precluded from denying the patrol officer discrimination proven in *Majeske.*

**\*5** Plaintiffs conclusorily assert that the third and fourth estoppel elements are not satisfied. Since these assertions are not supported by any legal argument, they are waived. *See Griffin v. City of Milwaukee,* 74 F.3d 824, 828 (7th Cir.1996); *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir.1990), *cert. denied,* 506 U.S. 985 (1992); *Gold v. Wolpert,* 876 F.2d 1327, 1333

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                           Page 5

Not Reported in F.Supp.2d, 1999 WL 66539 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

(7th Cir.1989). Even if not waived, these contentions lack merit. *Majeske* being on appeal does not preclude it from being a final judgment that can be accorded a collateral estoppel effect. *See Amcast Industrial Corp. v. Detrex Corp.,* 45 F.3d 155, 160 (7th Cir.), *cert. denied,* 515 U.S. 1103 (1995) (*dictum* ); *Prymer v. Ogden,* 29 F.3d 1208, 1213 n. 2 (7th Cir.), *cert. denied,* 513 U.S. 1057 (1994) (*dictum* noting that "it is clear that the [Seventh Circuit] has adhered to the general rule in American jurisprudence that a final judgment of a court of first instance can be given collateral estoppel effect even while an appeal is pending"); *Williams v. Commissioner of Internal Revenue,* 1 F.3d 502, 504 (7th Cir.1993) (*dictum* ); Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4433 at 308-10 (1981).[FN9] Although not all the plaintiffs were parties to *Majeske,* 19 of the present plaintiffs were plaintiffs in *Majeske,* the same attorney represents the plaintiffs in both cases, and the prior history of consolidated discovery means that the available evidence regarding past discrimination is the same for both cases. Under these circumstances, it is appropriate to treat the plaintiffs in the present case as being in privity with the *Majeske* plaintiffs. *See Petit I,* 766 F.Supp. at 610-13. *See also Monfils v. Taylor,* 165 F.3d 511, 1998 WL 890371 *10-11 (7th Cir. Dec. 23, 1998); *Tice v. American Airlines, Inc.,* 162 F.3d 966, 971-73 (7th Cir.1998).

> FN9. The parties do not discuss whether prudential reasons exist for granting a stay of this case during the *Majeske* appeal.

At trial, plaintiffs will be precluded from disputing that, during the decades prior to 1989, (a) African-American patrol officers were subject to intentional, unfavorable treatment in assignments; (b) African-Americans and Hispanics were subjected to intentional, unfavorable treatment in hiring for patrol officer positions; (c) supervisory police officials acted in ways that were hostile to African-American and Hispanic patrol officers; and (d) the Chicago Police Department tolerated acts of hostility directed toward African-American and Hispanic patrol officers. The *Majeske* case contains no specific findings as to the extent of these types of discrimination. To the extent genuine disputes exist and it would be relevant, plaintiffs are not precluded from presenting evidence that the extent or frequency of discrimination was less than that claimed by the City. However, during preparation of the final pretrial order, the parties are to act in good faith in attempting to reach stipulations as to the pre-June 1989 discrimination. Additionally, to the extent relevant, plaintiffs are not precluded from presenting evidence to support any contention that the aforementioned conduct did not exist from June 1989 through September 1991.

**\*6** Plaintiffs also move in limine for application of collateral estoppel based on other discrimination cases involving hiring, promotions, and demotions by the Chicago Police Department. Without much elaboration, plaintiffs cite six holdings or findings from five different published opinions, three of the opinions being rulings at various stages of a single case. The cases cited are: (1) *United States v. City of Chicago,* 385 F.Supp. 543 (N.D.Ill.1974) ( " *Chicago I* ") (preliminary injunction ruling); (2) *United States v. City of Chicago,* 411 F.Supp. 218 (N.D.Ill.1976) ("*Chicago II* "), *aff'd in part, rev'd in part & remanded,* by (3) *United States v. City of Chicago,* 549 F.2d 415 (7th Cir.1977) ("*Chicago III* " ), *cert. denied,* 436 U.S. 932 (1978); (4) *Cygnar v. City of Chicago,* 865 F.2d 827, 832 (7th Cir.1989) ; and (5) *Auriemma v. Rice,* 910 F.2d 1449 (7th Cir.1990) (*en banc* ) ("*Auriemma I* "), *cert. denied,* 501 U.S. 1204 (1991).

In *Chicago III,* the Seventh Circuit upheld district court findings made in *Chicago II* that a December 1971 patrol officer hiring examination and August 1973 sergeant promotional examination had disparate impacts on minorities and were not job-related. *Chicago III,* 549 F.2d at 427-34. It was also held that there was no evidence of intentional discrimination and therefore findings of a constitutional violation were reversed.[FN10] *Id.* at 435. Citing the latter holding, plaintiffs assert that defendant should be estopped from contending there was intentional discrimination in the past. That holding, however, is not a basis for applying collateral estoppel because it was not essential to the judgment in the *Chicago* cases. The injunctive relief and backpay relief ultimately awarded in the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                        Page 6

Not Reported in F.Supp.2d, 1999 WL 66539 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

*Chicago* cases was not affected by the race discrimination violations being limited to Title VII violations and not constitutional violations. Estoppel will not be applied based on the cited holding in *Chicago III.*

> FN10. Between the issuance of the district court's findings in *Chicago II* and the Seventh Circuit's decision in *Chicago III,* the Supreme Court decided *Washington v. Davis,* 426 U.S. 229 (1976), making it clear that intentional discrimination was required for there to be a constitutional violation. *See Chicago III,* 549 F.2d at 435.

Plaintiffs also cite *Chicago II* as holding that there was no discrimination in performance evaluations, *Chicago II,* 411 F.Supp. at 238-39, and no discrimination in assignments, *id.* at 241. The first finding pertains only to a six-month period from January through June of 1973. It was found that the one-point difference between the average ratings of Whites and African-Americans was too slight to support any related relief. *Id .* at 238-39. As to assignments, it was found that some abuses existed in the assignment of minority officers to particular areas, but the "overall disparity" as to where minorities were assigned was not high enough "to give rise to a finding of discrimination." *Id.* at 241.

Both sides ignore that the City prevailed on these two issues and therefore judicial estoppel, not collateral estoppel, would be the appropriate doctrine to invoke. *Czajkowski v. City of Chicago, Ill .,* 810 F.Supp. 1428, 1435 (N.D.Ill.1992). Not only do plaintiffs fail to make any argument regarding judicial estoppel, they fail to respond to the collateral estoppel arguments the City makes specifically regarding these two issues. The burden is on the party invoking estoppel to show that all its elements are satisfied. *Kulavic v. Chicago & Illinois Midland Ry. Co.,* 1 F.3d 507, 517 (7th Cir.1993); *La Preferida,* 914 F.2d at 906; *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 18 F.Supp.2d 297, 301 (S.D.N.Y.1998). Plaintiffs have not satisfied their burden. Estoppel will not be applied as to these two issues.

*7 Citing *Chicago I* and *Chicago II,* plaintiffs state that: "Before 1975, the City did not allow women to become patrol officers." The City contends that the requirements for collateral estoppel are not satisfied, but represents that it will stipulate to this fact and that such discrimination was intentional. The City will be estopped from contending that women were permitted to be patrol officers prior to 1975.

Citing *Cygnar,* 865 F.2d at 832, plaintiffs contend: " In 1984, the year after Harold Washington became mayor, the City reduced the number of white police officers in the Office of Municipal Investigations [OMI] unit from 28 to 15, and transferred in 13 blacks, and the court determined that this conduct was racially discriminatory against whites." The City's only response is that this would not estop the City from demonstrating that it intentionally discriminated against African-Americans and Hispanics in the 1950's, 1960's, and 1970's. Since the City does not make any argument as to why it should not be estopped from denying the facts about what happened in OMI in 1984, the City will be so estopped. However, no opinion is expressed regarding whether such evidence will be relevant or admissible at trial.

Plaintiffs cite *Auriemma I,* 910 F.2d at 1451, for the proposition that: "In 1983, Harold Washington appointed a black [Chicago Police Department] Superintendent, Fred Rice, [who] demoted 25 white officers from exempt positions, demoted no blacks, and promoted 13 blacks to exempt positions." As with the *Cygnar* assertion, defendant responds that this does not estop the City from proving past discrimination. Defendant also asserts, without any support, that the defendants prevailed in the *Auriemma* trial. Plaintiffs respond, without any support, that: "The City had prevailed because the positions at issue were not career service positions, but rather "exempt," or command, positions, subject to the discretion of the superintendent. Further, the City had settled with some of the plaintiffs in that case before trial." Although not cited by either side, *Auriemma v. City of Chicago,* 747 F.Supp. 465 (N.D.Ill.1990) ("*Auriemma II* "), *aff'd,* 957 F.2d 397 (7th Cir.1992) ( "*Auriemma III* "), granted summary judgment in favor of the City on the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 7

Not Reported in F.Supp.2d, 1999 WL 66539 (N.D.Ill.)
**(Cite as: Not Reported in F.Supp.2d)**

ground that any discriminatory conduct of Rice was not pursuant to a municipal policy or custom. *Auriemma II* and *Auriemma III* do not set forth the final resolution of the claims against Rice in his individual capacity. [FN11]

> FN11. It is possible that judgments against Rice could be used to estop the City. *Cf. Monfils,* 1998 WL 890371 at *11.

*Auriemma I,* cited by plaintiffs, recites the demotions and promotions referred to by plaintiffs. However, *Auriemma I* only addressed the question of whether Superintendent Rice was entitled to summary judgment based on qualified immunity, holding that he was not entitled to qualified immunity on the § 1983 race discrimination claims. 910 F.2d at 1454-57. *Auriemma I* does not address the merits of the discrimination claim and it is not a final resolution of the *Auriemma* case. *See Auriemma I,* 910 F.2d at 1457 ("What in fact happened is another matter. The case now goes to a jury so that it can decide whether plaintiffs' allegations are true."). Again, plaintiffs fail to satisfy their burden of showing a final judgment and findings that were essential to the final judgment. No estoppel effect will be accorded to any factual statements contained in *Auriemma I.*

***8** IT IS THEREFORE ORDERED that:

(1) The ruling date of February 11, 1999 is vacated.

(2) Plaintiffs' motion to reconsider the order allowing the City's renewed motion to **substitute expert witness** [218-1] is denied.

(3) Defendant's motion in limine based on collateral estoppel [221-1] is granted in part and denied in part. At trial, plaintiffs will be precluded from disputing that, during the decades prior to 1989, (a) African-American patrol officers were subject to intentional, unfavorable treatment in assignments; (b) African-Americans and Hispanics were subjected to intentional, unfavorable treatment in hiring for patrol officer positions; (c) supervisory police officials acted in ways that were hostile to African-American and Hispanic patrol officers; and

(d) the Chicago Police Department tolerated acts of hostility directed toward African-American and Hispanic patrol officers.

(4) Plaintiff's motion in limine to find the City be bound by previously decided matters through collateral estoppel [228-1] is granted in part and denied in part. At trial, the City will be precluded from: (a) contending that women were permitted to be patrol officers prior to 1975 and (b) denying that, in 1984, the year after Harold Washington became mayor, the City reduced the number of white police officers in the Office of Municipal Investigations unit from 28 to 15, and transferred in 13 African-Americans, and that this conduct was racially discriminatory against whites.

(5) Submission of final pretrial order reset from March 18, 1999 to April 27, 1999 at 11:00 a.m.

N.D.Ill.,1999.
Petit v. City of Chicago
Not Reported in F.Supp.2d, 1999 WL 66539 (N.D.Ill.)

Briefs and Other Related Documents (Back to top)

• 1998 WL 34367178 () Affidavit of Robert T. Joyce (Feb. 27, 1998) Original Image of this Document (PDF)
• 1997 WL 33840527 () (Report or Affidavit) (Sep. 3, 1997) Original Image of this Document (PDF)
• 1:90cv04984 (Docket) (Aug. 27, 1990)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.