# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EXECUTIVE AIRLINES | : | CIVIL ACTION NO. 3:02cv194 (WWE) |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ELECTRIC BOAT CORPORATION, | : | |
| | : | |
| Defendant. | : | APRIL 24, 2007 |

## DEFENDANT'S PRELIMINARY PROPOSED JURY INSTRUCTIONS

Pursuant to Federal Rule of Civil Procedure 51, Defendant Electric Boat Corporation ("Electric Boat") requests that the Court submit the following instructions to the jury in the above-captioned action. Electric Boat reserves its right to further modify, supplement or amend its preliminary proposed jury instructions based on developments at trial.

**INTRODUCTION**

This case is a trial as to the issue of damages only. For purposes of background, I will describe briefly the previous proceedings in this matter. Executive Airlines' claims against Electric Boat stem from a contract – which I will refer to as the Charter Agreement – that called for the Executive Airlines to provide air charter services to Electric Boat between its facilities located in Groton, Connecticut and Newport News, Virginia. The Charter Agreement contained two termination clauses; the first permitted Electric Boat to terminate the contract due to a default by Executive Airlines upon ten days notice, and the second, Section 2(A) allowed Electric Boat to terminate the contract for any reason at all – or in other words, for convenience – upon six months notice. A previous jury determined that Electric Boat terminated the Charter Agreement for convenience under Section 2(A) on June 7, 2000. However, Electric Boat did not continue to use Executive Airlines' services during the following six-month period. Your sole province here is to determine the amount of lost profits, if any, Executive Airlines is entitled because Electric Boat did not continue to use Executive Airlines' services for a period of six months after giving notice of termination. In rendering your decision, it is important to remember that Electric Boat had the legal right to cancel the Charter Agreement at any time and did nothing improper by terminating Executive Airlines' services.

## **PLAINTIFF'S CORPORATE STATUS**

The plaintiff in this case is Millennium Aviation Services, Inc. d/b/a Executive Airlines. D/B/A is a legal term meaning that the name of the business does not include the legal or official registered name of the corporation that owns it. In this case, the plaintiff, Millennium Aviation Services, Inc. operated its business as "Executive Airlines," which is also how we have referred to the plaintiff throughout the presentation of evidence. Because Millennium Aviation Services, Inc. is the entity that contracted with Electric Boat under the terms of the Charter Agreement, only Millennium Aviation Services, Inc. may seek to enforce the terms of that Agreement in this case. Accordingly, Millennium Aviation Services, Inc. is the only entity entitled to recover lost profits as a result of Electric Boat's decision to terminate the Charter Agreement.

In determining the proper amount of Millennium Aviation Services, Inc. d/b/a Executive Airlines' lost profits, you may not consider or account for the effect that Electric Boat's lawful termination may have had on other entities related to the plaintiff Millennium Aviation Services, Inc. d/b/a Executive Airlines, even if another entity also was doing business as Executive Airlines. Likewise, you may not consider or account for the effect that Electric Boat's lawful termination may have had on Mr. Michael Peragine, the person who owned the plaintiff and several other related companies. Mr. Peragine and his other related companies, even if also doing business as Executive Airlines, were not parties to the Charter Agreement and are not entitled to enforce that Agreement or recover based on Electric Boat's termination of that Agreement.

AUTHORITY/SOURCE

*Tomlinson v. Board of Educ.*, 226 Conn. 704, 718 (1993);
Black's Law Dictionary, 425 (8th ed. 2004);
Restatement of Contracts (Second), § 346, 347 (1981).

## JURY'S DUTY TO BE IMPARTIAL TO ALL PARTIES

In deciding the facts of this case, you must not be swayed or influenced by any sympathy or prejudice for or against any of the parties. You must carefully and impartially consider all the evidence in the case, follow the law given to you by the court and reach a just verdict regardless of the consequences.

In this case, the defendant, Electric Boat, is a large corporation, while the plaintiff, Millennium Aviation Services, Inc., d/b/a Executive Airlines, was a smaller corporation. These facts must not influence your decision in this case. In the eyes of the law, a corporation is a person and is entitled to the same fair trial at your hands as an individual, and considerations of the size of the company or its financial position have no place in this trial. This case is not to be decided on the basis of relative size or wealth. All parties stand equal under the law and are to be dealt with as equals in a court of justice.

As I mentioned before, the Charter Agreement expressly permitted Electric Boat to terminate Executive Airlines' services for convenience. Accordingly, you may not draw any adverse assumptions from the fact that Electric Boat is liable to Executive Airlines in this regard. It is your job here to determine the amount of the Executive Airlines damages in a fair and unbiased manner.

AUTHORITY/SOURCE

3 Kevin O'Malley, *Federal Jury Practice & Instructions*, § 103.12 (5th Ed. 2001 & Supp. 2005).

## **CREDIBILITY**

In fulfilling your duty as finders of fact, you as jurors are the sole judges of the credibility of the witnesses and the weight, if any, their testimony deserves. This is also true as to the veracity and weight of the other evidence including expert testimony and exhibits. There is no magic formula by which one may evaluate testimony. You bring with you to this courtroom all the experience and background of your daily lives. In your everyday affairs you determine for yourselves the reliability or unreliability of statements made to you or documents given to you by others. The same tests that you use in your everyday dealings are the tests which you should apply in your deliberations here. You may consider the demeanor of the witness on the stand and any interest he or she may have in the outcome of the case. You may also consider any bias or prejudice for or against any party; the witness's opportunity to observe; any reason for the witness to remember or forget; the inherent probability of her or her own story; its consistency or lack of consistency; and its corroboration or lack of corroboration with other credible evidence.

You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether a witness is worthy of belief. Consider each witness's intelligence, motive, state of mind, and demeanor while on the stand. Consider also any relation each witness may bear to either side of the case, the manner in which each witness might be affected by the verdict and the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.

The credit that you will give to the testimony offered by the various witnesses is, as I say, something which you must determine. If you find that there has been inaccuracy in one respect upon the part of a witness, remember it in judging the rest of that witness's testimony, and give to it that weight which your own mind leads you to think it ought to have, and which you would attach to it in the ordinary affairs of life where anyone came to you in a matter and you found

that in some particular that person was inaccurate. The testimony of a witness which is discredited in one aspect may well be disbelieved in its entirety by the jury. You may apply the maxim, "false in one, false in all."

A witness may be discredited or "impeached" by contradictory evidence, by a showing that he or she testified falsely concerning a material matter, or by evidence that at some other time the witness has said or done something, or has failed to say or do something, which is inconsistent with the witness's present testimony. If you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you think it deserves.

## AUTHORITY/SOURCE

3 Kevin O'Malley, *Federal Jury Practice & Instructions*, §§ 105.01, 105.04, 105.09 (5th Ed. 2001 & Supp. 2005).

## **EXPERT WITNESSES**

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those whom we will call "expert witnesses." Witnesses who, by education and/or experience, have become expert in some area, science, profession or calling, may state their opinions as to relevant and material matters, in which they profess to be expert, and may also state their reasons for their opinions.

You should consider each expert opinion received in evidence in this case, and give it such weight, if any, as you may think it deserves. If you find that the opinion of an expert is based on facts or assumptions that you do not find proven, you must disregard that opinion. Similarly, if you decide that the opinion of an expert witness is not based upon sufficient education and experience, you may disregard it. If you conclude that the reasons given in support of the opinion are not sound or not believable, you may disregard it. If you feel that the opinion is outweighed by other evidence, you may disregard it, too.

AUTHORITY/SOURCE

2 Devitt and Blackmar, *Federal Jury Practice and Instructions*, § 72.07 (2d ed. 1970);
*Hally v. Hospital of St. Raphael*, 162 Conn. 352, 358 (1972).

-8-

## **ADMISSIONS BY PARTIES**

Out-of-court statements or conduct by parties, which are not consistent with their claims at trial, may be used against them as an admission of the facts stated.  It is for you to determine what weight is to be given to any alleged admission if you find that one has been made.  In that connection, you should consider the circumstances under which any such statements were given as bearing upon the weight you decide to accord to them.

AUTHORITY/SOURCE

Fed. R. Evid. 801(d)(2).

## **OBJECTIONS AND RULINGS**

It is the duty of the attorney on each side of a case to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. You should not show prejudice against an attorney or his client because the attorney has made an objection.

Upon allowing testimony or other evidence to be introduced over the objection of a lawyer – that is, in overruling a lawyer's objection – the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of the credibility of all witnesses and the weight and effect of all evidence.

When the Court has sustained an objection to a question addressed to a witness, the jury must disregard the question entirely, and may draw no inference from the wording of it, or speculate as to what the witness would have said if he had been permitted to answer any question.

AUTHORITY/SOURCES

3 Kevin O'Malley, *Federal Jury Practice & Instructions,* § 101.49 (5th Ed. 2001 & Supp. 2005).

## **BURDEN OF PROOF**

I will now explain to you certain rules that apply in civil cases generally. In a civil action such as this, the party who asserts certain facts must prove those facts by the required weight of the evidence. This obligation is known as the "burden of proof." In this case, Executive Airlines bears the burden to prove the essential elements of its claim for damages by a "preponderance of the evidence."

To prove a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true. You must weigh the evidence that Executive Airlines presents in support of its calculation of damages, against the evidence opposed to Executive Airlines' calculation of damages, and determine which evidence is more convincing. It may be helpful to ask yourselves how all the credible evidence would balance if you placed it on an imaginary pair of scales. If all the evidence presented by both sides as to the amount of Executive Airlines' damages causes the scales to strike an even balance, or tilt in favor of Electric Boat, then Executive Airlines has failed to meet its burden of proving its damages by a preponderance of the evidence. Remember, it is not the burden of Electric Boat to disprove the amount of damages that Executive Airlines claims.

In determining whether Executive Airlines' has proven its damages by a preponderance of the evidence, you should consider the testimony of all witnesses and all exhibits received in evidence, regardless of who may have introduced them.

AUTHORITY/SOURCE

3 Kevin O'Malley, *Federal Jury Practice & Instructions*, § 104.01 (5th Ed. 2001 & Supp. 2005).

## **REASONABLE CERTAINTY**

As I mentioned earlier, your sole province here is to determine the amount of damages, if any, Executive Airlines is entitled because Electric Boat terminated the Charter Agreement but did not continue to use Executive Airlines' services for a period of six months. On this issue, Executive Airlines must prove the amount of damages it is owed with reasonable certainty. You may not guess or speculate as to the proper amount of damages to award. In other words, after weighing the evidence, you must be able to arrive with a reasonable degree of certainty at some conclusion as to the amount of money that Executive Airlines lost. Remember that you are not compelled to accept as true the evidence presented by Executive Airlines as to damages, or the testimony of Executive Airlines' expert witness.

AUTHORITY/SOURCES

3 Kevin O'Malley, *Fed. Jury Practice & Instructions* § 106.02 (5th ed. 2001 & Supp.2005);
*Cheryl Terry Enters. v. City of Hartford*, 270 Conn. 619, 639 (2004);
*Beverly Hills Concepts v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 70 (1998);
*Conaway v. Prestia*, 191 Conn. 484, 493-94 (1983);
*Hally v. Hosp. of St. Raphael*, 162 Conn. 352 (1972);
*Braithwaite v. Lee*, 125 Conn. 10 (1938).

## **LOST PROFIT DAMAGES**

In a contract-based action, such as this one, an award of damages is designed to place the plaintiff, so far as it can be done by money, in the same position it would have been in had the contract been fully performed as agreed. Executive Airlines is entitled to nothing in excess of that sum which compensates it for the loss of its bargain with Electric Boat. In this regard, I remind you that the plaintiff here is Millennium Aviation Services, Inc. d/b/a Executive Airlines, You may not compensate Executive Airlines for losses sustained by any entity other than Millennium Aviation Services, Inc. d/b/a Executive Airlines, even if that other entity also was doing business as Executive Airlines.

The Charter Agreement represents the "bargain" between Electric Boat and Executive Airlines in this case. Accordingly, Executive Airlines' damages are the profits Executive Airlines would have made under the Charter Agreement, had the Agreement been performed as the parties agreed. This calculation is sometimes referred to as a calculation of "lost profits." When a lost profit calculation is based on a single contract covering one transaction, as is the case here, lost profits are the net profits from the transaction, meaning the gross pecuniary gains reduced by the cost of obtaining them. More simply, net profits are what remains after a business deducts expenses. In this case, Executive Airlines may only recover damages in an amount equal to the money it would have made under the Charter Agreement, after subtracting the expenses that it would have incurred in performing charter services for Electric Boat.

Keep in mind that the Charter Agreement permitted Electric Boat to terminate the Agreement with six-months' notice, and only required that Electric Boat purchase fifteen flights from Executive Airlines per month. Here, Electric Boat gave written notice to Executive Airlines of its termination by way of letter dated June 7, 2000. Accordingly, Executive Airlines'

damages in this matter are limited to lost profits based on a frequency of 15 flights per month, for a period of six months.  The law limits Executive Airlines' damages in this manner and you may not award damages under any alternative assumption of frequency or duration.

As I stated earlier, Executive Airlines bears the burden to establish its lost profit damages with sufficiently accurate and complete evidence for you to be able to estimate those lost profits with reasonable certainty.  Executive Airlines' lost profit damages may not be based upon evidence that is speculative or conjectural.

## AUTHORITY/SOURCES

*Petereit v. S.B. Thomas, Inc.*, 63 F.3d 1169, 1186-1187 (2d Cir. 1995);
*Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 893 (4th Cir. 1992);
*Nationwide Airlines (Pty) Ltd. v. African Global, Ltd.*, 2007 U.S. Dist. LEXIS 10420, 55- 57 (D. Conn. Feb. 14, 2007);
*McKeown Distributors, Inc. v. Gyp-Crete Corp.*, 618 F. Supp. 632, 634 (D. Conn. 1985)
*Cheryl Terry Enterprises Ltd. v. Hartford*, 270 Conn. 619, 641 (2004);
*Beverly Hills Concepts v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 70 (1998);
*Argentinis v. Gould*, 219 Conn. 151, 157-58 (1991);
*Gargano v. Heyman*, 203 Conn. 616, 621 (1987);
*Neiditz v. Morton S. Fine & Assocs., Inc.*, 199 Conn. 683, 688-89 (1986);
*Benevenuti Oil Co. v. Foss Consultants, Inc.*, No. CV010485270S, 2006 Conn. Super. LEXIS 238 (Conn. Super Ct. Jan. 25, 2006);
*Gent Uniform Rental Corp. v. Jordan*, No. CV 990174469, 2000 Conn. Super. LEXIS 2210 (Conn. Super. Ct. Aug. 18, 2000);
*J. Iapaluccio, Inc. v. City of Torrington*, No. 31 81 4, 1996 Conn. Super. LEXIS 3166 (Conn. Super. Ct. Dec. 2, 1996).
25 C.J.S., *Damages*, § 74  (2d ed. 1988).
22 Am. Jur. 2d *Damages* §46 (2d ed. 1988).

## **MITIGATION/AVOIDABLE DAMAGES**

In determining the amount of damages that will reasonably and fairly compensate Executive Airlines in this case, you must also consider whether Executive Airlines attempted to mitigate the losses it seeks to recover. Under Connecticut law, the doctrine of mitigation requires the nonbreaching party to a contract to make reasonable efforts to minimize or avoid damages arising from a breach. When the plaintiff fails to make reasonable efforts to lessen or avoid damages, it is not entitled to recover the losses that it could have lessened or avoided with reasonable effort.

In this case, Executive Airlines had affirmative obligation to put forth reasonable effort to lessen or avoid the damages it sustained when Electric Boat terminated the Charter Agreement without proper notice. Earlier, I spoke with you about the burden of persuasion, and I indicated to you that Executive Airlines has the burden of persuasion with respect to the elements of its damages claim. On this issue of mitigation, however, Electric Boat bears the burden of proof to establish, by a preponderance of the evidence, that:

(1) Executive Airlines failed to take reasonable action to lessen the damages claimed in this case;

(2) the damages that Executive Airlines seeks to recover were enhanced by such failure; and

(3) the damages that Executive Airlines could avoided can be measured with reasonable certainty.

In this context, reasonable certainty means that, after weighing the evidence, you are able to arrive with a reasonable degree of certainty at some conclusion as to the amount of money that Executive Airlines could have avoiding losing in this matter. If you find that Executive Airlines failed in any way to avoid some or all of the damages it seeks to recover, you must reduce the

damage that you award Executive Airlines, if any, by the amount of loss that Executive Airlines could have avoided with reasonable effort.

## AUTHORITY/SOURCES

*Preston v. Keith*, 217 Conn. 12, 22 (1991);
*West Haven Sound Dev. Corp. v. City of West Haven*, 201 Conn. 305, 332 (1986);
*Cary Oil Co. v. MG Ref. & Mktg.*, Inc., 90 F. Supp. 2d 401 (S.D.N.Y. 2000).

## **CONCLUSION**

You may now retire to the jury room. Elect one of your members as foreperson. The foreperson is in no way more important in your deliberations. His or her function is to pass any requests for clarification of these instructions or something of that nature on to me, and to announce your verdict. If you do have such requests, please give them to the Marshal, in writing, and he or she will bring them to me. Be careful to give us no indication of the status of your deliberations when you make such requests; we are not permitted to know anything about how fast or slow you are proceeding, or whether you are divided in your positions, or any other information about what is taking place in the jury room.

As you proceed to your deliberations in the jury room, determine the facts on the basis of the evidence as you have heard it, and apply the law as I have outlined it to you. Render your verdicts fairly, uprightly, and without a scintilla of prejudice.

Although all jurors must agree before a verdict can be rendered, it is nevertheless the duty of each of you to discuss and consider the evidence and the opinions of the other jurors. If, in the course of your deliberations, you become convinced that the views you held are erroneous, do not hesitate to reexamine those views and change your opinion. Ultimately, however, you must decide the case for yourself. Do not surrender your beliefs as to the proper weight of the evidence solely because of the opinions of other jurors or for the mere purpose of returning a verdict.