UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EXECUTIVE AIRLINES | : | CIVIL ACTION NO. |
| | : | 02-CV-194 (WWE) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ELECTRIC BOAT CORPORATION, | : | |
| | : | |
| Defendant. | : | MAY 1, 2007 |

## DEFENDANT'S RESPONSES TO PLAINTIFF'S MOTIONS IN LIMINE

Defendant Electric Boat Corporation ("Electric Boat") hereby respectfully responds to the Plaintiff's Motions in Limine dated April 23, 2007.

## I.    FACTUAL BACKGROUND

This hearing in damages comes before this Court pursuant to the April 6, 2006 order setting aside the verdict as to damages only.[1]  Plaintiff's claims against Electric Boat in the underlying case were predicated on a contract between the parties whereby Plaintiff agreed to provide air charter services to Electric Boat between its facilities located in Groton, Connecticut and Newport News, Virginia.[2]  Plaintiff commenced services for Electric Boat on April 10, 2000, using BAE Systems Jet Stream 3101s, including registration number N16EJ (the "Aircraft").  On

---

[1] (*See* Order on Renewed Mot. for J. as a Matter of Law or, in the Alternative, Mot. for a New Trial (Eginton, J.) dated Apr. 6, 2006 ("Order on Mot. for J."))(attached as Ex. A).

[2] The contract between the parties consisted of a March 14, 2000 purchase order number SNL022-096, along with a "Purchase Order Supp. No. 1" (collectively the "Charter Agreement") (attached as Ex. B).

May 21, 2000, just six weeks after its first flight for Electric Boat, Plaintiff was operating the Aircraft on a charter flight for another customer when the Aircraft crashed, killing all nineteen passengers and crew on board.  Electric Boat immediately suspended service with the Plaintiff, and by letter dated June 7, 2000, terminated the Charter Agreement.

Plaintiff brought suit against Electric Boat claiming that Electric Boat had improperly terminated the Charter Agreement, and seeking liquidated damages in the amount of $494,395.00.  (*See* Second Am. Compl. first count, ¶ 20; second count, ¶¶ 22-23.)  On February 17, 2006, after a four-day jury trial, the jury determined that Electric Boat terminated Plaintiff's charter services pursuant to Section 2(A) of Supplement No. 1 to the March Purchase Order, which permitted Electric Boat to terminate the Charter Agreement for any reason, or no reason at all, "without penalty upon six (6) months written notice to [Plaintiff]."  (*See* Special Verdict Interrogs., dated Feb. 17, 2006, Interrog. 1)(attached as Ex. C).  The jury returned a verdict in favor of Plaintiff in the amount of $472,368.00.  (*Id.*, Interrog. 4.)

Notably, the jury was not asked to determine whether Electric Boat breached the Charter Agreement, and made no finding on that issue. (*See generally id.*)  Because the Charter Agreement provided Electric Boat with a general right to terminate for convenience, *i.e.*, for any reason or no reason at all, without penalty upon six months written notice to Plaintiff, this Court has repeatedly determined that Electric Boat did not breach the Agreement by invoking its right of early termination.  (*See* Tr. of Continued Jury Trial ("Trial Tr.") Feb. 16, 2006 at 221:9-17 (attached as Ex. D)); *see also Exec. Airlines v. Elec. Boat Corp.*, 271 F. Supp. 2d 392, 397 (D. Conn. 2003).

Following the verdict, Electric Boat moved for judgment as a matter of law or a new trial, asserting, in part, that Plaintiff was not entitled to an award of liquidated damages under the

Charter Agreement based on the July 17, 2003 Order (Goettel, J.) granting Electric Boat partial summary judgment barred Plaintiff's claims for liquidated damages and that the actual damage award was against the weight of the evidence. The Court (Eginton, J.) agreed on both fronts, and ordered a new trial as to the damage issue only. (*See* Order on Mot. for J.) The Court set the case to be retried on August 14, 2006. (*See* 02-CV-194 (WWE), Docket Entry No. 175, Pretrial Order dated Apr. 6, 2006.)

Plaintiff originally disclosed two expert witnesses in this matter: Diane Steiner ("Steiner") and William deDecker ("deDecker"). Ms. Steiner was expected to testify as to the amount of Plaintiff's economic losses stemming from Electric Boat's termination of the Charter Agreement, while Mr. deDecker was expected to offer testimony on generic aircraft operating costs. In truly cyclical fashion, Ms. Steiner's opinion relied, in part, on the operating cost information generated by Mr. deDecker and Mr. deDecker's operating cost report relied, in part, on fuel and labor cost information provided to him by Ms. Steiner.

After Electric Boat took the depositions of Ms. Steiner and Mr. deDecker, Electric Boat moved to preclude their testimony under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) and Federal Rule of Evidence 702. (*See* 02-CV-194 (WWE), Docket Entry No. 189, Def.'s Mot. to Preclude the Testimony of Pl.'s Proposed Expert, dated July 18, 2006). In response, Plaintiff sought to substitute Anthony Ciccodicola ("Ciccodicola") as its expert witness, notwithstanding that the deadline to disclose experts had long passed. Over Electric Boat's strenuous objection, the Court permitted Plaintiff to substitute Mr. Ciccodicola as Plaintiff's expert witness. (*See* 02-CV-194 (WWE), Docket Entry No. 199, Order Granting Mot. for Extension of Time for Trial and to Substitute Expert, dated August 15, 2006.)

Thereafter, counsel for Plaintiff and Electric Boat discussed extensively whether either party would seek to preclude opposing expert testimony under *Daubert* or pursuant to any other *in limine* challenge. (*See* Aff. of James Rotondo, dated April 30, 2007 ("Rotondo Aff.") ¶¶ 6, 7)(attached as Ex. E).  Ultimately, counsel for Plaintiff and Electric Boat agreed that neither party would seek to challenge the admissibility of expert testimony pursuant to *Daubert* or any other *in limine* challenge.  (*Id.* ¶ 7.)  Counsel for Electric Boat communicated this agreement to the Court on March 2, 2007 via e-mail, with no objection from Plaintiff's counsel.  (*Id.*)

On April 23, 2007, Plaintiff submitted four Motions in Limine for consideration by this Court.  The Motions in Limine seek to preclude Electric Boat from introducing certain evidence at trial, including the testimony of Electric Boat's expert witness, contrary to Plaintiff's agreement with Electric Boat.  As set forth more fully below, Plaintiff's Motions in Limine willfully ignore prior rulings of this Court and do not provide any legal authority in support of the relief Plaintiff seeks.  Electric Boat vehemently contests each of Plaintiff's Motions and requests that the Court deny each Motion in its entirety.

## II.  **ARGUMENT**

### A.    Defendant's Response to Plaintiff's Motion in Limine to Preclude Certain Assumptions Made by Dr. George Kosicki

Plaintiff moves in limine to preclude "certain assumptions" made by Dr. Kosicki, which Plaintiff claims are speculative.  (*See* Pl.'s Tr. Mem. at 3.)  Plaintiff's Motion must be denied because there is no legal or factual basis to support it, and the filing of this motion at this time violates an agreement between counsel and communicated to this Court on March 2, 2007.

-4-

Counsel for Plaintiff specifically agreed to refrain from moving to preclude Dr. Kosicki in

exchange for a similar promise from Electric Boat with respect to Mr. Ciccodicola.  (Rotondo

Aff. ¶ 7.)  E-mail exchanges between counsel and the Clerk of Court prior to March 2, 2007

clearly indicate that the Court believed a *Daubert* hearing on the merits was required in the event

that either party sought to preclude expert testimony.  (*See* Rotondo Aff., Ex. 2.)  After counsel

for Electric Boat communicated the agreement between the parties with respect to expert

witnesses to the Court on March 2, 2007, however, the Court did not set any deadlines to submit

*Daubert*-type motions and did not set a date for a hearing on the merits, because counsel for the

parties had indicated that would not be necessary.  Plaintiff's decision to file this Motion in

Limine two weeks before trial evidences a blatant disregard for the Court's clear intention to

address and hold hearings on *Daubert*-type motions well in advance of trial.

In any event, Plaintiff moves to preclude the testimony of Dr. Kosicki as "rank

speculation."  (Pl.'s Tr. Mem. at 2.)  Not surprisingly, Plaintiff fails to cite any case law

supporting its motion and fails to identify the relief it actually seeks with respect to Dr. Kosicki

and/or the portions of Dr. Kosicki's testimony that it seeks to preclude.  Plaintiff merely argues

that "certain testimony" of Dr. Kosicki should be precluded because his opinion is based on one

"speculative" fact: that "Electric Boat would have given notice to Executive Air Lines and

continued its flights with Executive Air Lines, but only to the "minimum" number of flights, 15

per month."  (Pl.'s Tr. Mem. at 3.)  Plaintiff apparently contends that Dr. Kosicki made a

"speculative assumption" that Electric Boat would continue to use Plaintiff's services only

fifteen times per month following the May 21, 2000 crash.  (*Id*.)  The Expert Report of Dr.

Kosicki concluded as follows:

> [T]he first step in computing lost profit damages is simply to ask what revenues
> Executive Airlines could have reasonably expected if EB had been forced to comply with

the terms of the purchase order contract.  Because EB eventually decided to terminate the
contract after the crash, it is clear that EB preferred to make alternative arrangements for
all of its air travel needs.  Consequently, if forced to comply with the terms of the
contract, the only logical economic response by EB would have been to allocated as little
business as possible to Executive Airlines, specifically 15 flights per month.

(Kosicki Expert Report ¶ 10.)  Plaintiff claims that "[t]here is nothing in the record to support

this speculation."  (Pl.'s Tr. Mem. at 3.)  Plaintiff's argument is belied by the terms of the very

document that gives rise to Plaintiff's claims in this case: the Charter Agreement

        Not surprisingly, the Plaintiff fails to mention that the Charter Agreement even exists in

its first Motion in Limine – and for good reason.  The Charter Agreement "itinerary" called for a

minimum of fifteen roundtrip flights per month, and the overall price per flight was based "on a

minimum monthly billing of fifteen (15) R/Ts per month." (*See* Charter Agreement, Purchase

Order Supp. No. 1 at 2-3.)  The language of the Charter Agreement in this regard is undisputed

and indisputable: Electric Boat was required only to purchase fifteen round trip flights from

Plaintiff per month.  Indeed, Plaintiff has *repeatedly* admitted that the Charter Agreement only

required Electric Boat to purchase fifteen flights per month.  Plaintiff's original expert Ms.

Steiner testified that there was nothing in the Charter Agreement that required Electric Boat to

purchase more than fifteen flights per month from Plaintiff.  (*See* Dep. of D. Steiner, June 15,

2006 ("Steiner Dep.") at 126:6-20)(attached as Ex. F).  Likewise, Plaintiff's current expert, Mr.

Ciccodicola testified that the Charter Agreement only required Electric Boat to purchase a

minimum of fifteen flights per month.  (*See* Dep. of A. Ciccodicola, dated Dec. 14, 2006 and

Feb. 20, 2007 ("Ciccodicola Dep.") at 114:10-115:15)(attached as Ex. G).  Even Plaintiff's

president and sole shareholder, Michael Peragine, acknowledged that Electric Boat was required

only to purchase fifteen flights per month from Plaintiff in order to comply with the terms of the

Charter Agreement.  (*See* Dep. of M. Peragine as Corporate Representative of Executive

Airlines, dated Dec. 6, 2006 ("Peragine 30(b)(6) Dep.") at 32:13-32:24)(attached as Ex. H).

Moreover, Plaintiff implicitly recognized that its claim for damages was limited to losses

associated with fifteen flights per month during the first trial, where Plaintiff presented evidence

to the jury that it was entitled to damages in an amount equaling Plaintiff's lost revenues based

on fifteen flights per month.  Although Plaintiff improperly presented this provision as one part

of a recipe for liquidated damages,  Plaintiff acknowledged that the loss of its bargain with

respect to the Charter Agreement was limited to losses associated with fifteen flights per month.

Dr. Kosicki reviewed the Charter Agreement, as well as the deposition of Ms. Steiner prior to

issuing his Expert Report.  (*See* Kosicki Expert Report at Appendix B, p. 1.)  In short, Plaintiff

remarkably expects that this Court will disregard the terms of the Charter Agreement and the

repeated admissions of Plaintiff in order to find that Dr. Kosicki relied on a "speculative"

assumption.

Moreover,  Plaintiff would have this Court simply assume that Dr. Kosicki had no

economic basis for his opinions, notwithstanding the two comprehensive reports that Dr. Kosicki

submitted, which are attached herewith.  It is not surprising that Plaintiff may have questions

about Dr. Kosicki's opinions, but Plaintiff chose to cancel Dr. Kosicki's deposition and opted not

to question Dr. Kosicki about the economic basis for his assumptions and/or opinion.[3]  Plaintiff's

---

[3] Counsel for Plaintiff unilaterally decided to cancel the deposition of Dr. Kosicki on March 21, 2007.  (Rotondo Aff. ¶ 10.)  Despite Plaintiff's argument to the contrary, there was no agreement between Plaintiff and Electric Boat to waive Dr. Kosicki's deposition in return for Electric Boat agreeing not to file *Daubert* or other *in limine* challenges against Mr. Ciccodicola.  (*Id.*)  The agreement between the parties was, as represented to the Court,  that "neither party will be filing Daubert or other in limine motions seeking to exclude the testimony of experts . . ..".  (*Id.* ¶ 11.)  The extent of the parties' agreement is clear, given the fact that counsel for Plaintiff continued to indicate that Plaintiff would take the deposition of Dr. Kosicki after the parties came to an agreement regarding expert witnesses, and that Plaintiff noticed the deposition of Dr. Kosicki on March 20, 2007, eighteen days after Mr. Rotondo relayed the parties' agreement to the Court. (*Id.* ¶¶ 7-9.)

failure to seek out additional information regarding the economic groundwork related to Dr.

Kosicki's opinions does not establish that no such economic groundwork exists.  In fact, Dr.

Kosicki will testify that economic principles of rational consumer behavior dictate that Electric

Boat would have chosen to use Plaintiff's charter services as little as possible following the May

21, 2000 crash.  (*Id.* ¶¶ 9, 10.)  Kevin Hanrahan, Electric Boat's Chief Pilot, may also testify

about how Electric Boat actually did respond to the May 21, 2000 crash, and how Electric Boat

would have employed Plaintiff's services if Electric Boat had not terminated the Charter

Agreement.  There is simply no basis for Plaintiff's contention that the record lacks support for

Dr. Kosicki's assumption.

       Plaintiff's argument that "the defendant should not be heard to defend on the basis of a

theory the Court has not allowed to the plaintiff" appears to be based on a fundamental

misunderstanding of the damages to which Plaintiff is actually entitled in this case.  (Pl.'s Tr.

Mem. at 4.)  As this Court recognized, Plaintiff is "entitled only to contract damages, which are

generally based on the injured party's expectation interest and should not award him in excess of

the sum which compensates him for the loss of his bargain." (*See* Order on Mot. for J..)  *See also*

*Ambrogio v. Beaver Rd. Assocs.*, 267 Conn. 148, 155 (2003)(quoting *West Haven Sound Dev.*

*Corp. v. West Haven*, 201 Conn. 305, 319, 514 A.2d 734 (1986))(an award of contract-based

damages "'is designed to place the injured party, so far as can be done by money, in the same

position as that which he would have been in had the contract been performed.'").  During the

first trial, Plaintiff presented a liquidated damages theory that it was entitled to an amount equal

to the revenue stream generated under the Charter Agreement by flying fifteen round trip flights

a month for six months, notwithstanding the fact that Judge Goettel's earlier ruling precluded

such a theory.  The "loss of Plaintiff's bargain" in this case is not the revenue stream the Plaintiff

would have generated under the Charter Agreement, but rather the profits Plaintiff lost under the Agreement.  The terms of the Charter Agreement are therefore obviously applicable to the calculation of Plaintiff's lost profits in this case.  The fact that the Plaintiff was not permitted to pursue a liquidated damages theory based on a misreading of the Charter Agreement by a previous ruling by Judge Goettel completely misses the point.  The Charter Agreement constitutes the "bargain" between the parties in this case and cannot be ignored in determining the proper amount of Plaintiff's lost profits in this case.

Finally, Plaintiff's motion to preclude the testimony of Dr. Kosicki must be denied because the very filing of this motion breaches an agreement by counsel that the parties would not file "<u>Daubert</u> or other in limine motions seeking to exclude the testimony of experts."  As set forth above, counsel for the parties conferred at the request of the Court regarding *Daubert* motions because the Court had indicated that it wanted to schedule a hearing on any such motions in light of the fact that Electric Boat had filed such a motion directed to Ms. Steiner and Mr. deDecker.  After agreeing not to file such a motion on March 2, 2007, Plaintiff then proceeded to file this motion in complete disregard of its own earlier agreement.

For all these reasons, Dr. Kosicki's "assumption" that Electric Boat would use Plaintiff's charter services only fifteen times per month after the May 21, 2000 crash is hardly speculative.  In fact, it is the only conclusion that can be drawn here.  Plaintiff has identified no legal authority that would permit the Court to preclude Dr. Kosicki's testimony under these circumstances.  Accordingly, Electric Boat respectfully requests that the Court deny Plaintiff's Motion in Limine to Preclude Certain Assumptions Made by Dr. George Kosicki and award Electric Boat reasonable fees and costs related to responding to the Motion.

B.     Defendant's Response to Plaintiff's Motion in Limine to Preclude Electric Boat
       From Introducing or Arguing on the Report or Deposition of Diane Steiner.

Plaintiff seeks to preclude Electric Boat from referring to the expert opinion issued in this matter by its first expert witness, Ms. Diane Steiner. (Pl.'s Tr. Mem. at 4.) Without setting forth any legal authority for its position, Plaintiff asserts that Ms. Steiner's opinion is irrelevant to the issues in this case.[4] (*Id.*)

Plaintiff fails to acknowledge, however, that its current expert witnesses, Mr. Ciccodicola and Mr. deDecker, both reviewed and relied on information gathered by Ms. Steiner in rendering their expert opinions. Mr. Ciccodicola reviewed Ms. Steiner's expert report in rendering his opinion in this matter, and testified that his initial methodology was the same as that employed by Ms. Steiner. (Ciccodicola Dep. at 269:18-22; 269:23-270:6.) Ms. Steiner also prepared Plaintiff's federal and state tax returns for the year 2000, which Mr. Ciccodicola considered in his opinion. (Ciccodicola Dep. at 276:11-277:11.) Likewise, Mr. deDecker reviewed Ms. Steiner's expert report, and testified that spoke with Ms. Steiner at least once and relied on fuel cost and labor cost information provided to him by Ms. Steiner in rendering his final operating cost report in this matter.[5] (Dep. of William deDecker, dated June 13, 2006 ("deDecker Dep.") at 42:5-43:3)(attached as Ex. I). The cover page to Mr. deDecker's expert report, which Plaintiff has listed as an exhibit, contains the language "An Aircraft Cost Report Prepared Exclusively For: Diane S. Steiner, CPA." (*See* Conklin and deDecker Aircraft Cost Report, dated May 26,

_____

[4] Again, the Plaintiff is unclear about the relief it actually seeks with respect to Ms. Steiner. Plaintiff's Motion in Limine could be read to seek to preclude Electric Boat from even mentioning Ms. Steiner's name.

[5] Mr. deDecker is in the business of publishing and preparing general operating cost reports on a variety of different aircraft. In this case, he modified the general operating costs related to labor and fuel based on data provided by Ms. Steiner. (deDecker Dep. at 42:5-43:3.)

2006 ("deDecker Report") at i)(attached as Ex. J). The well-established definition of relevant evidence is any evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Ms. Steiner's influence and involvement with the opinions ultimately rendered by Plaintiff's disclosed experts is clearly relevant to the accuracy and reliability of those opinions.

Plaintiff's argument that Ms. Steiner's opinion is irrelevant because Mr. Ciccodicola reviewed Ms. Steiner's expert report after he "arrived at his conclusions" also misses the mark. (*See* Pl.'s Tr. Mem. at 4). Whether Mr. Ciccodicola reviewed Ms. Steiner's opinion before or after he developed his own "conclusions" makes no difference to the relevancy of Ms. Steiner's opinion. Electric Boat is entitled to cross-examine Mr. Ciccodicola on the basis for his opinion, as well as any method he may have employed to check the accuracy of or confirm his calculations after-the-fact.

Dr. Kosicki initially prepared his expert opinion on behalf of Electric Boat in response to the opinion offered by Ms. Steiner. (*See generally* Kosicki Expert Report.) To preclude Electric Boat from mentioning Ms. Steiner's opinion would be tantamount to precluding Dr. Kosicki from testifying about certain issues because Plaintiff made the tactical decision to substitute Mr. Ciccodicola for Ms. Steiner. There is no legal authority that would permit preclusion under these circumstances, particularly when Plaintiff has failed to establish any evidence that Plaintiff would suffer prejudice as a result of referencing Ms. Steiner or her opinion.

For these reasons, Electric Boat cannot be precluded from making reference in appropriate circumstances to the fact that Ms. Steiner was Plaintiff's first expert, and that other experts who are testifying relied in part either on information that she provided or on her report.

Those are fair topics of cross-examination.   Electric Boat respectfully requests that the Court deny Plaintiff's Motion to Preclude Electric Boat From Introducing or Arguing on the Report or Deposition of Diane Steiner.

      C.      <u>Response to Plaintiff's Motion in Limine to Preclude Electric Boat and Its Witnesses From Introducing or Arguing About the Crash of N16EJ.</u>

The Plaintiff moves in limine to preclude Electric Boat from introducing evidence about the May 21, 2000 crash of aircraft N16EJ.  Again, Plaintiff fails to set forth any legal authority for its position and summarily states that the crash "has no relevance to the issue of damages." (Pl.'s Tr. Mem. at 4.)

In making this motion, however, Plaintiff fails to acknowledge that the crash of N16EJ bears on several matters that are hotly-contested at this hearing in damages.  First, Electric Boat is entitled to introduce into evidence the May 24, 2000 letter from Ron Kiely to Michael Peragine, which suspended Plaintiff's charter services, and the June 7, 2000 letter from Dorothy Stillman to Michael Peragine terminating the Charter Agreement.  (*See* Def.'s Proposed Tr. Exs. 502 and 505)(attached as Exs. K and L, respectively).  Both letters reference the crash of N16EJ, but remain relevant to establishing the proper period of time for which Plaintiff's lost profit damages should be calculated.  As set forth above, the Charter Agreement expressly provides that Executive Boat had the right to terminate the agreement for any reason or no reason at all upon six months notice.  Those documents relate to the date of notice of termination.

Second, Electric Boat made the conscious decision to terminate the Charter Agreement. Dr. Kosicki discusses the effect that the crash had on Electric Boat in rendering an opinion on the proper period of time for which Plaintiff's lost profit damages should be calculated, as well as

the amount of business Plaintiff could have expected from Electric Boat post-crash.  Dr. Kosicki opines that a rational consumer would have used Plaintiff's services as little as possible without breaching the Charter Agreement following the crash of N16EJ.  (*See* Kosicki Expert Report.)

Third, the fact that N16EJ crashed on May 21, 2000 bears on the amount of Plaintiff's expenses during the period of time for which Plaintiff is seeking lost profits.  Following the crash, Plaintiff had one fewer aircraft in operation, thereby changing the amount and allocation of Plaintiff's fixed and overhead expenses.  Moreover, Plaintiff's expert witness based his estimate of Plaintiff's expenses on records spanning from January to October of 2000, both before and after the crash, and made certain assumptions about the allocation of Plaintiff's costs without accounting for how those costs may have changed post-crash.  (*See* Ciccodicola Dep. at 122:9-15; 149:8-150:17.)  In this regard, the fact that the crash occurred is integral to assessing the reliability and accuracy of Plaintiff's expert opinion.  The amount of Plaintiff's expenses is a key component of Plaintiff's lost profit damages in this case, and Electric Boat should be permitted to submit evidence as to those how those expenses were impacted by the crash and whether Plaintiff's expert properly accounted for that impact in rendering his expert opinion.

For these reasons, the crash of N16EJ is relevant to the contested issues in this case. Electric Boat respectfully requests that the Court deny Plaintiff's Motion in Limine to Preclude Electric Boat and Its Witnesses From Introducing or Arguing About the Crash of N16EJ.

D.    <u>Response to Plaintiff's Motion in Limine Regarding Prejudgment Interest</u>.

Finally, Plaintiff moves in limine requesting the Court submit the issue of prejudgment interest to the jury, or in the alternative, award prejudgment interest "from the date of the breach

to the date of the liability verdict, and post judgment interest since the liability verdict, on

whatever amount the second jury awards the plaintiff." (Pls. Tr. Mem. at 5.)

      1.    <u>Prejudgment Interest</u>

Not surprisingly, Plaintiff fails to acknowledge that this Court *already denied* Plaintiff's

request for prejudgment interest in this matter.[6]  (*See* 02-CV-194 (WWE), Docket Entry No.

172, Order, dated April 3, 2006)(attached as Ex. M).  The Court issued its decision in line with

well-established Connecticut law, which limits the award of prejudgment interest to cases where

money has been wrongfully withheld.  After considering the facts of this case, the Court

determined:

> In this instance, the Court finds no evidence that defendant wrongfully withheld funds
> owed to plaintiff.  The record in this case, including the two rulings on the motions for
> summary judgment, evinces that the parties had a genuine dispute as to whether any
> damages were owed, and if so, the amount of damages owed.  Accordingly, the Court
> cannot find that prejudgment interest is merited.

(*Id.*)  Although Plaintiff blatantly ignores this decision in seeking prejudgment interest a second

time, the Court's factual determination stands: Electric Boat did not wrongfully withhold funds

from Plaintiff.  *See Nussbaum v. Kimberly Timbers, Ltd.*, 271 Conn. 65, 76 (2004) ("when a

matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the

case may treat that decision as the law of the case, if it is of the opinion that the issue was

correctly decided, in the absence of some new or overriding circumstance.")  Thus, this issue has

already been determined by the Court and should not be revisited.

---

[6] Although the issue of statutory interest is a typically an issue for the trier of fact, the
parties may agree to submit the issue of statutory interest to the Court rather than to a jury.  *See
Mariculture Prods., Ltd. v. Those Certain Underwriters at Lloyd's of London*, No.
FSTCV980163762S, 2006 Conn. Super. LEXIS 2378 (Conn. Super. Ct. Aug. 1, 2006).  In this
case, both Plaintiff and Electric Boat agreed to submit the issue of statutory interest to the Court.
(*See* Trial Tr., Feb. 17, 2006 at 2.)  All unreported decisions are attached hereto as Ex. N.

Presumably, Plaintiff contends that the Court set aside the damage award in the underlying case in its entirety, including the denial of prejudgment interest because statutory interest is an element of compensatory damages for funds that are wrongfully withheld.  This argument fails to account for the key *factual* determination made by the Court: Electric Boat did not wrongfully withhold funds from Plaintiff.  This factual finding bears absolutely no relation to the Court's decision to set aside the original jury verdict as an improper award of liquidated damages.  The parties' agreed to reserve the issue of statutory interest to the Court, and the Court made a binding determination that the facts of this case do not warrant an award of prejudgment interest.  The facts of this case have not changed as a result of the Court's decision to set aside the original jury verdict.

Moreover, a decision with respect to "wrongfulness" is outside the province of the second jury.  The April 6, 2006 Order granted a retrial as to damages only.  The second jury will hear no evidence with respect to liability and should not be charged with allocating fault or determining wrongfulness.  To put the issue of prejudgment interest before the second jury or the Court on retrial is tantamount to revisiting the entire liability case on the merits, and would allow Plaintiff another "bite at the apple" simply because Plaintiff is not satisfied with the findings made by the Court as a result of the underlying trial.

Moreover, Plaintiff is simply not entitled to an award of prejudgment interest in this case.  Under Connecticut law, prejudgment interest may be recovered in a civil action as damages "for the detention of money after it becomes payable."  *See* Conn. Gen. Stat. § 37-3a.  The Connecticut Supreme Court has consistently construed the statute to make the allowance of statutory interest "depend upon whether the detention of the money is or is not wrongful under the circumstances."  *See, e.g., O'Hara v. State*, 218 Conn. 628, 643, 590 A.2d 948 (1991)

-15-

(citation and internal quotation marks omitted).  To award statutory interest, "[first], the claim to which the prejudgment interest attaches must be a claim for a liquidated sum of money wrongfully withheld and, second, the trier of fact must find, in its discretion, that equitable considerations warrant the payment of interest."  *Ceci Bros., Inc. v. Five Twenty-One Corp.,* 81 Conn.App. 419, 428, 840 A.2d 578, *appeal denied,* 268 Conn. 922, 846 A.2d 881 (2004). A liquidated sum of money is a sum either specified under the terms of a contract, or a sum to be determined by the terms a contract.  *See id.* (citing *Foley v. Huntington Co.*, 42 Conn. App. 712, 740, 682 A.2d 1026, *appeal denied*, 239 Conn. 931, 683 A.2d 397 (1996)).  Although Plaintiff's lost profits are governed by the terms of the Charter Agreement, this Court ordered a retrial as to damages in this matter on the grounds that the Charter Agreement itself does not set forth a liquidated damage sum, as previously determined by Judge Goettel.  (*See* Order on Mot. for J..)

Additionally, the "detention" of Plaintiff's lost profits in this matter can hardly be considered wrongful.  *See Prime Management Co., Inc. v. Steinegger*, 904 F.2d 811, 817 (2d Cir. 1990); *Maloney v. PCRE*, No. CV980168891, 2000 Conn. Super. LEXIS 2697 (Conn. Super. Ct. Oct. 2, 2000), *aff'd.* 68 Conn. App. 727 (2002).  In *Maloney*, the Connecticut Superior Court determined that a plaintiff was not entitled to an award of statutory interest, despite the fact that the defendants improperly failed to pay plaintiff a commission, because there was a bona fide dispute between the parties concerning the refusal of the defendants to pay, the amount sought was unliquidated in that the exact amount due was unknown, and there was no evidence of bad faith or willfulness on the part of the defendants.  The Connecticut Appellate Court affirmed this decision, holding:

> [P]laintiff's burden of demonstrating that the retention of money is wrongful requires more than demonstrating that the opposing party detained money when it should not have done so. The fact that an award of such interest is discretionary and subject to equitable

-16-

considerations, rather than automatic, reflects the reality that not all improper detentions of money are wrongful.

*Maloney v. PCRE, LLC*, 68 Conn. App. 727, 756 (2002).  *See also Brandewiede v. Emery Worldwide*, 890 F. Supp. 79, 82-83 (D. Conn. 1994)("In this case, the jury determined that the defendant did not act fraudulently….wrongfully or in bad faith in its dealings with the plaintiff…It was unclear as to what amounts the parties agreed to allow plaintiff for his services. Under the circumstances, the defendant cannot be said to have wrongfully detained plaintiff's funds."), *aff'd mem.*, 66 F.3d 308 (2d Cir. 1995).  Here, this Court has already made the factual determination that the "detention" was not wrongful under the circumstances because there was a good faith dispute about whether any monies were owed.  Plaintiff has not presented any evidence that Electric Boat wrongfully withheld funds in the case, aside from the fact that Electric Boat has not paid Plaintiff for services not rendered under the Charter Agreement. Accordingly, Plaintiff has presented no basis for an award of prejudgment interest.

For these reasons, Plaintiff's request for a prejudgment interest instruction and/or an award of prejudgment interest in this case is precluded by this Court's factual determinations with respect to wrongfulness.  Even if this Court determines that Plaintiff's request is not precluded, Plaintiff is not entitled to an award of prejudgment interest because Electric Boat did not wrongfully withhold money owed to Plaintiff.  Electric Boat respectfully requests that the Court deny Plaintiff's Motion in Limine Regarding Prejudgment Interest.

   2.  Post-judgment Interest[7]

---

[7] Electric Boat reiterates each argument set forth in Section D(1), which are equally applicable to Plaintiff's request for post-judgment interest under Conn. Gen. Stat. § 37-3b.  *See Bower v. D'Onfro*, 45 Conn. App. 543, 550-51, 696 A.2d 1285 (1997) ("The court's determination of regarding the award of [post-judgment] interest should be made in view of the demands of justice rather than through the application of any arbitrary rule . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances . . .").

Plaintiff also requests this Court enter an award of post-judgment interest pursuant to Conn. Gen. Stat. § 37-3b, to run from the date of "the liability verdict, on whatever amount the second jury awards to the plaintiff." (Pl.'s Tr. Mem. at 5.)  As an initial matter, an award of post-judgment interest properly runs from the date judgment is entered, not the date a verdict is rendered.  *See Mariculture Prods., Ltd. v. Those Certain Underwriters at Lloyd's of London*, No. FSTCV980163762S, 2006 Conn. Super. LEXIS 2378, at * 9 (Conn. Super. Ct. Aug. 1, 2006).  In this case, the jury in the underlying case returned the verdict on February 17, 2006 and the Clerk of Court entered judgment on behalf of Plaintiff on April 5, 2006.  (*See* 02-CV-194 (WWE), Docket Entry Nos. 150, 173.)

Plaintiff's request suffers from a more fundamental deficiency: a proper award of post-judgment interest does not begin to accrue from the date judgment entered in the underlying trial. *See Hadelman v. Deluca*, No. CV970060279S, 2006 Conn. Super. LEXIS 1145 (Conn. Super. Ct. April 19, 2006).  In *Hadelman*, the plaintiffs initiated an arbitration action against defendants, claiming violation of the Connecticut Unfair Trade Practices Act.  The plaintiffs obtained a favorable award and moved the trial court to confirm that award.  The plaintiffs subsequently filed a motion to confirm the arbitration award, which was granted by the trial court and affirmed on appeal by the Appellate Court and the Connecticut Supreme Court.  Thereafter, the plaintiffs sought an award of post-judgment interest pursuant to Conn. Gen. Stat. § 37-3b running from the date of the original arbitration award, arguing that post-judgment interest was appropriate because plaintiffs waited for four years, while the case was on appeal, to obtain money that was rightfully awarded to them at the original arbitration.  The court disagreed, finding that the defendants' appeal was "made in good faith and raised legal issues that were substantial and in flux."  *Id.* at * 12.  The court recognized that the defendants were ultimately unsuccessful on

-18-

appeal, but declined to award post-judgment interest from the date of the arbitration award in order to avoid "discourag[ing] parties from raising good faith challenges to arbitration awards in an area uncharted by controlling precedent." *Id.* at * 12-13. (internal citations and quotations omitted). These principles are equally applicable to cases where a verdict has been set aside or appealed, particularly in the circumstances present in this case, where Electric Boat established that the jury verdict on damages was not supported by the evidence presented at trial.

The United States Supreme Court has addressed this very issue in the context of cases involving an award of post-judgment interest under 28 U.S.C. § 1961, the federal equivalent of Conn. Gen. Stat. § 37-3b. In *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990), the United States Supreme Court determined that "the purpose of an award of post-judgment interest is to compensate the successful plaintiff for being deprived of compensation for the loss from the time between the ascertainment of the damage and the payment by the defendant." *Id.* (internal quotation marks and citation omitted.)

> Where the judgment on damages was not supported by the evidence, the damages have not been "ascertained" in any meaningful way. It would be counterintuitive, to say the least, to believe that Congress intended post-judgment interest to be calculated from such a judgment.

*Id.* at 836 (citing *FDIC v. Rocket Oil Co.*, 865 F. 2d 1158 (10th Cir. 1989) ("post-judgment interest may not be calculated from judgment that was completely reversed")). In *Kaiser*, the Supreme Court set the date for the commencement of post-judgment interest immediately after the later judgment rather than after the initial judgment, because the district court found that the first judgment was not supported by sufficient evidence on the issue of damages. *Id.*; *see also Indu Craft v. Bank of Baroda*, 87 F.3d 614, 620 (2d Cir. 1996); *Andrulonis v. United States*, 26 F.3d 1224 (2d Cir. 1994) ("post-judgment interest is to commence from a judgment that is ascertained in a meaningful way" and is "supported by the evidence.").

Connecticut courts have applied the principles set forth in *Kaiser* to claims for post-judgment interest under Conn. Gen. Stat. § 37-3b.  *See Mack v. Lavalley*, No. CV 9455707S, 2000 Conn. Super. LEXIS 1679 (Conn. Super. Ct. June 28, 2000).  In *Mack*, the plaintiff sought an award of post-judgment interest under Conn. Gen. Stat. § 37-3b on a damage award obtained by a jury verdict, from date of the original judgment to the date of payment, after the defendant appealed the verdict and essentially stayed payment for approximately three years.  The court evaluated "whether the taking and prosecution of the appeal was bona fide and in good faith, or conversely was in bad faith, frivolous and/or for the mere purpose of delay" and determined that each issue raised on appeal "posed significant questions which had not previously been specifically decided by our appeals courts" and that certain factual and legal questions involved in the case constituted "issues which clearly lent themselves to appellate review."  *Id.* at *7-8. For these reasons, the court denied the plaintiff's motion for post-judgment interest in its entirety.

These authorities instruct that Plaintiff is not entitled to an award of post-judgment interest at all, and certainly not entitled to an award of post-judgment interest from the date that judgment entered on the underlying jury verdict.  Electric Boat respectfully requests the Court deny Plaintiff's request for post-judgment interest.

III.    **CONCLUSION**

For all the foregoing reasons, Electric Boat respectfully requests that the Court deny Plaintiff's Motions in Limine in their entirety.  Electric Boat also respectfully requests that the Court award Electric Boat reasonable fees and costs related to responding to Plaintiff's Motion in

-20-

Limine to Preclude Certain Assumption Made By Dr. Kosicki, which was untimely filed and

contrary to an express agreement between the parties.


DEFENDANT,
ELECTRIC BOAT CORPORATION


By_____/s/ Amy T. Maas_____
        James H. Rotondo (ct05713)
        jhrotondo@daypitney.com
        Amy T. Maas (ct25561)
        atmaas@daypitney.com
        Day Pitney LLP
        CityPlace I
        Hartford, Connecticut 06103-3499
        (860) 275-0100
        (860) 275-0343 fax
        Its Attorneys

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 1st day of May, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court' s CM/ECF System.

/s/ Amy T. Maas _____

Amy T. Maas (ct25561)