# EXHIBIT N

LEXSEE 2000 CONN. SUPER. LEXIS 2697

Sally Maloney v. PCRE, LLC et al.

CV980168891

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF
STAMFORD - NORWALK, AT STAMFORD

2000 Conn. Super. LEXIS 2697

October 2, 2000, Decided
October 2, 2000, Filed

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** Plaintiff entitled to recover $ 79,077 from defendants at this time and judgment entered in that amount against both defendants. Plaintiff entitled to court costs as taxed by office of the chief clerk.

**JUDGES:** William B. Lewis, Judge Trial Referee.

**OPINION BY:** William B. Lewis

**OPINION:** MEMORANDUM OF DECISION

The plaintiff, Sally Maloney, is a licensed real estate agent or salesperson. In November 1998, the plaintiff brought suit in two counts claiming breach of contract against two entities, PCRE, L.L.C. d/b/a the Prudential Connecticut Realty (PCRE), and Real Estate Connecticut, Inc. d/b/a the Prudential Connecticut Realty (Prudential), both of which are licensed real estate brokers.

In the first count of her amended complaint dated March 8, 1999, the plaintiff alleges that on January 12, 1994, she entered into a written agreement with Prudential which entitled her to 80% of the commissions received by Prudential as the listing broker on the sale of condominium units at the Waterford, located on Sound Shore Drive in Greenwich. The [*2] plaintiff further alleges that she assisted in the sale of twenty-one units and was owed $ 556,206, of which she had received $ 310,629, leaving a balance of $ 245,770. In the second count of the complaint, the plaintiff alleges that in December 1997, at or about the time that the plaintiff terminated her affiliation with Prudential, the defendant Prudential sold its business to the defendant PCRE, which became liable to pay to the plaintiff the commissions based on her contract with its predecessor, Prudential.

In their answer to the complaint, the defendants agreed that the plaintiff, on January 12, 1994, entered into an "Independent Contractor's Agreement" with Prudential, but they deny that the plaintiff was entitled to 80% of the commission split, and they deny any liability to the plaintiff. The defendants also filed five special defenses. The first claims an accord and satisfaction because the parties entered into a new agreement and everything that was due the plaintiff had been paid. In the second special defense, the defendants claim that the plaintiff has "unclean hands" because she directed the developer and owner of the project, BSB Greenwich Mortgage Limited Partnership [*3] (BSB), to pay the commissions due the defendants to a third party. The third such defense involves an alleged breach of the duty of good faith and fair dealing. The defendants in their fourth special defense claim that the plaintiff as their agent breached the fiduciary duties she owed to the defendants. In the fifth special defense, the defendants contend that they are entitled to a set-off as authorized by *General Statutes § 52-139*.

The starting point for the resolution of this case, which was tried to the court, is the January 12, 1994 contract between the plaintiff and Prudential. This agreement provided in pertinent part that the plaintiff,

Case 3:02-cv-00194-WWE    Document 222-16    Filed 05/01/2007    Page 3 of 10

Page 2
2000 Conn. Super. LEXIS 2697, *3

referred to in this agreement as "Independent Contractor," was granted a non-exclusive license to use the name of "The Prudential Connecticut Realty" in her capacity as a real estate sales person. The agreement further provided that the plaintiff's compensation as an agent for Prudential "shall be commissions earned on property sold or listed," and that no commission shall be earned "until such time as the title of the property sold passes from the seller to the buyer, the purchase price has been paid and commissions are received" by Prudential, [*4] described therein as the "Broker." The agreement does not mention any specific split of commissions between the independent contractor and the broker, except to indicate that the commissions received by the broker "shall be promptly divided between Broker and Independent Contractor in the proportion to which each is entitled."

There is no dispute that BSB agreed to pay a commission of 5% of the sales price of each unit, 2.5% to the selling broker, and 2.5% to the listing broker, Prudential. On several occasions, the plaintiff acted as selling broker in addition to listing broker and that aspect of the commissions is not the subject of this present action. The plaintiff contends that the 1994 "Independent Contractor Agreement" was subsequently modified by the parties verbally to provide a 50%-50% split of the commissions on the listing side. The plaintiff testified that the reason she agreed to take 30% less was based on an agreement by Prudential to spend at least $ 200,000 on advertising and marketing. The project had not been moving well, and the plaintiff believed that an aggressive advertising campaign was required in order to promote sales of the condominium units. The plaintiff's [*5] testimony on this point and all others is found to be credible and logical.

The parties further agree that Prudential did not spend $ 200,000 on advertising and marketing, but something more in the nature of $ 80,000, and did not make any such expenditure at all after the summer or early fall of 1996. The plaintiff claims that because the defendant Prudential breached its agreement to pay $ 200,000 for advertising and marketing, she has the right to revert to the original agreement, and therefore is entitled to 80% of all the commissions on the listing side, rather than a 50%-50% split. The plaintiff claims that the difference between 50% and 80% on seventeen condominium sales is $ 79,077. n1

n1 This amount is based on Exhibit 16 which indicates that a commission was due the plaintiff on an 80%-20% split with the defendants, for the sales of units A-3, A-4, two sales of A-5, A-6, B-7, B-8, B-9, B-11, C-13, C-14, C-15, C-16, C-17, C-18, D-19 and D-21, less $ 310,629 already received by the plaintiff.

The defendants [*6] argue, however, that even if there was a breach of contract on the part of Prudential, which they deny, the plaintiff has not been damaged because all the units in the project were sold. The plaintiff is obliged to prove not only that there was a contract, and that it was breached, but also that she was damaged as a result of this breach. "Contract damages are ordinarily based on the injured party's expectation interest and are intended to give him the benefit of the bargain by awarding a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed. Such damages, moreover, are to be determined as of the time of the occurrence of the breach." (Citations omitted; internal quotation marks omitted.) *Colby v. Burnham, 31 Conn. App. 707, 721, 627 A.2d 457 (1993)*.

The plaintiff did sustain damages because she lost 30% of the commissions she would have earned had she not agreed to cut back her share from 80% to 50%. This agreement, however, was made only on the condition that the defendants spend $ 200,000 on advertising and marketing which they failed to do. "If the condition is not fulfilled, the right [*7] to enforce the contract does not come into existence." (Internal quotation marks omitted.) *Funaro v. Baisley, 57 Conn. App. 636, 640, 749 A.2d 1205, cert. denied, 254 Conn. 902, 755 A.2d 218 (2000)*. The defendants appear to argue that the plaintiff voluntarily agreed to decrease her 80% share of the listing broker's commission, which she had been receiving, without receiving any benefit, an interpretation that may speak well for the plaintiff's benevolence, but defies logic in the real estate business.

The defendants failed to prove their special defenses. There was no accord and satisfaction. The plaintiff agreed to modify her original agreement on condition that the defendants spend $ 200,000 on advertising and marketing which they did not do. The plaintiff does not have "unclean hands" nor did she breach the duties of good faith and fair dealing. There was no evidence to the effect that she retained files belonging to the defendants.

Case 3:02-cv-00194-WWE    Document 222-16    Filed 05/01/2007    Page 4 of 10

Page 3
2000 Conn. Super. LEXIS 2697, *7

She performed her side of the bargain as an agent for the listing broker effectively and honestly, and did not breach any fiduciary duty owed to Prudential or PCRE. The defendants also contend that the plaintiff interfered [*8] with their right to obtain commissions from BSB. What the plaintiff did do was obtain an order of garnishment from this court directing BSB to hold the money due the listing broker until the dispute between them could be resolved.

On June 14, 2000, the plaintiff moved to amend her complaint to add a claim for punitive damages, attorneys fees and costs, claiming that the defendants violated *General Statutes § 31-72*, which concerns the failure of an employer to pay its employee, and provides for double damages if an employee can so prove. As the defendants point out correctly in their objection to the request by the plaintiff, this motion was filed approximately ten months after the trial ended in August 1999. Granting the plaintiff's motion at this time would be prejudicial to the defendants who tried the case on the theory that the plaintiff was an "independent contractor," as was stated numerous times in the contract she signed with Prudential, and not an employee. Hence, the motion to amend the complaint to add a claim under *General Statutes § 31-72* is denied.

The plaintiff also argues that she should be awarded prejudgment interest as authorized by *General Statutes § 37-3a* [*9] for money wrongfully withheld. This request is denied because the defendants have not withheld the money wrongfully. There was a bona fide dispute concerning the refusal of the defendants to spend $ 200,000 on advertising and marketing and whether that gave rise to any damages. The amount sought was essentially unliquidated in the sense that the exact amount due was unknown and subject to a possible set-off. Moreover, there was no evidence of bad faith or willfulness on the part of the defendants.

Several contracts were signed as a result of the plaintiff's efforts before she terminated her affiliation with Prudential and/or PCRE at the end of December 1997, but had not closed by the time she left. Reference is to units C-15, D-23 and D-24. The "Independent Contractor's Agreement" provides that in this event: "The broker shall be entitled to retain a reasonable portion of the Independent Contractor's commission to defray costs and expenses attributable to the servicing and closing of the sale after termination." As indicated previously, these three units are subject to a garnishment order from this court dated March 1, 1999, in the amount of $ 250,000, and therefore commissions have [*10] not yet been received by the defendants and hence are not yet payable to the plaintiff. There is a dispute about the total amount of commissions due on the sale of these last three units and the claim of a set-off for defraying "costs and expenses," neither of which were the subject of this present action as BSB is not a party to this case. However, it is the decision of this court that whatever the ultimate amount of commission paid to the listing broker, the plaintiff is entitled to 80% thereof for the reasons stated above.

In conclusion, the plaintiff is entitled to recover $ 79,077 from the defendants at this time and judgment enters in that amount against both defendants. The plaintiff is also entitled to court costs as taxed by the office of the chief clerk.

So Ordered.

Dated at Stamford, Connecticut, this 2nd day of October 2000.

William B. Lewis

Judge Trial Referee

LEXSEE 2006 CONN. SUPER. LEXIS 2378

**Mariculture Products, Ltd., Inc. v. Those Certain Underwriters at Lloyd's of London Individually Subscribing to Certificate No. 1395/91**

FSTCV980163762S

**SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF STAMFORD-NORWALK AT STAMFORD**

*2006 Conn. Super. LEXIS 2378*

**August 1, 2006, Decided
August 1, 2006, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**JUDGES:** David R. Tobin, J.

**OPINION BY:** David R. Tobin

**OPINION:**

*MEMORANDUM OF DECISION*

This case comes before the court following a partial reversal and remand from the Appellate Court. The plaintiff's cause of action was an insurance claim based on the loss of hatchery fish in Maine in 1991 as the result of hurricane Bob. The underlying facts and the prior procedural history are set forth in the opinion of the Appellate Court in *Mariculture Products, Ltd. v. Certain Underwriters at Lloyd's, 84 Conn.App. 688, 854 A.2d 1100 (2004)*.

In its second count, the plaintiff claimed that, in addition to damages, it was entitled to interest at the rate of 1 1/2% per month and attorneys fees pursuant to the provisions of *Maine Revised Statutes, Title 24-A § 2436*. n1 On September 20, 2001, immediately prior to trial, the parties stipulated that "the law of the State of Maine governs issues pertaining to the interpretation of the insurance contract that is at issue in this case, including but not limited [*2] to notice of claim, proof of loss, terms and conditions of the contract including exclusions and limitations contained therein, but the parties expressly do not stipulate or agree as to the applicable state law governing consequential damages."

n1 Concerning unfair claims settlement procedures.

The case was tried to a jury in the fall of 2001. During a lengthy charge conference, the parties entered into a stipulation reserving the issue of the amount of any interest and attorneys fees to the court, but submitting to the jury the question of whether the defendants had violated the Maine statute. On November 6, 2001, the jury answered interrogatories finding that: 1) the defendants had breached the insurance contract by failing to pay the plaintiff for the loss of the fish; 2) the defendants breached their duty of good faith and fair dealing in their investigation, adjustment and/or settling of the plaintiff's claim; and the defendant's written statement disputing the plaintiff's claim which, while timely, did [*3] not include sufficient detail to permit the plaintiff to understand and respond to the plaintiff's position. The jury awarded the plaintiff $ 445,000 in damages.

After hearing the parties, the trial court, Tierney, J., awarded interest in the amount of $ 768,515 (representing simple interest at the rate of 1 1/2% per month from April 2, 1992 to November 6, 2001) and attorneys fees in the amount of $ 487,194. Thereafter judgment entered on June 4, 2002.

The Appellate Court upheld the jury verdict, but found that the provisions of the Maine unfair claims settlement procedures statute were inapplicable because the insurance policy had not been delivered or issued for delivery in the state of Maine. The court remanded the case with direction to render judgment in favor of the defendants on the plaintiff's second count and affirmed the judgment in all other respects.

The issue now before the court is whether and to what extent the plaintiff is entitled to prejudgment interest pursuant to *General Statutes § 37-3a(a)* n2 on the damages found by jury on the first count of the complaint. Normally the issue of statutory interest is an issue for the finder of fact. [*4] *Iseli Co. v. Connecticut Light & Power Co., 211 Conn. 133, 143, 558 A.2d 966 (1989)*. In this case, however, the plaintiff claims that by oral stipulation, the parties reserved that issue, among others, to the trial court. On their part the defendants claim that the issues reserved to the court were limited to those relating to interest and attorneys fees under Maine law and that the plaintiff, by failing to submit the issue of Connecticut statutory interest to the jury waived its right to such interest.

> n2 (a) Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable.

The court heard counsel for the parties on April 25, 2006 and requested them to provide the court with a copy of the transcript of the oral stipulation so that [*5] the intent of the parties with respect to that issue could be ascertained and to file supplemental briefs addressing the issue. On June 9, 2006 the plaintiff filed its brief with extracts from transcripts reflecting court proceedings held on October 4, 2001 and October 25, 2001 before the court (Tierney, J.).

Those transcripts show that the issue of interest was addressed by counsel and the court on several occasions during the trial. On October 4, 2001, in the absence of the jury counsel for the plaintiff stated his position that the issues of attorneys fees and interest are not for the jury, but are more appropriately addressed by the court. Counsel for the defendants stated: "[W]e are in complete agreement with the plaintiffs that that is an issue that should be for the court, that the jury should not be dealing with attorneys fees or interest calculation." The court noted that under Connecticut law the issue of interest was for the jury unless the parties stipulated otherwise.

On October 25, 2001, in the absence of the jury the court addressed parties' counsel: "[You have agreed and so stated in open court that the defendant's position is that] if this matter is tried to [*6] the jury, then the issue as to amount or calculation of interest and the amount and calculation of the attorneys fees is also reserved for the court, not for the jury." Defendants' counsel responded: "That is absolutely correct, your honor." Plaintiff's counsel also responded "Yes, that is correct."

Despite these colloquies, the defendant now claims that only the issue of interest under Maine law was reserved to the court and that, by not submitting the issue of Connecticut statutory interest to the jury, the plaintiff waived any claim to such interest. The court disagrees.

A stipulation is essentially a contract between the parties. *Owsiejko v. American Hardware Corp., 137 Conn. 185, 187-88, 75 A.2d 404 (1950), State v. .2 Acres Known as 319 Jackson Street, 39 Conn. App. 40, 663 A.2d 1115 (1995)*. As such, the construction of that contract is controlled by the parties' intent. *Connecticut National Bank v. N.E. Owen II, Inc., 22 Conn.App. 468, 473-74, 578 A.2d 655 (1990), Connecticut Bank & Trust Co., N.A., v. Reckert, 33 Conn.App. 702, 638 A.2d 44 (1994)*. "A contract must be construed to effectuate the intent of [*7] the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction . . . [T]he intent of the parties [to a contract] is to be ascertained by a fair and reasonable construction of the . . . words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . ." (Internal quotation marks omitted.) *Tallmadge Bros., Inc. v. Iroquois Gas Transmission System, L.P., 252 Conn. 479, 498, 746 A.2d 1277 (2000)*.

Nothing in the language of the stipulation entered

Case 3:02-cv-00194-WWE     Document 222-16     Filed 05/01/2007     Page 7 of 10

Page 3
2006 Conn. Super. LEXIS 2378, *7

into by the parties in open court suggests an intent to limit the issues reserved to the court to those arising under Maine statutory law. In fact the court, in discussing the attorneys fees aspect of the stipulation clearly stated its understanding that "If either the case law either [*8] in Maine or Connecticut says that is a jury issue as to the amount of attorneys fees but you stip that it goes to a court, it goes to the court." There is nothing in the transcripts submitted by counsel to suggest that either party could have reasonably believed that the issue of interest reserved to the court was limited to interest under Maine law. Accordingly, the court finds that the parties have reserved the issue for the court to resolve and that the plaintiff has not waived or otherwise abandoned its claim for interest.

"A trial court must make two determinations when awarding compensatory interest under § 37-3a: (1) whether the party against whom interest is sought has wrongfully detained money due the other party; and (2) the date upon which the wrongful detention began in order to determine the time from which interest should be calculated." *Metcalfe v. Talarski*, 213 Conn. 145, 160, 567 A.2d 1148 (1989); *West Haven Sound Development Corp. v. West Haven, supra*, 207 Conn. 308, 321, 541 A.2d 858. In this case the answers to the special jury interrogatories dated November 2, 2001 make it clear that the defendants wrongfully withheld payment for the losses incurred [*9] by plaintiff from April 2, 1992 n3 until the date of judgment, June 4, 2002. The court finds that interest at the rate of ten per cent per annum authorized by General Statutes § 37-3a is both reasonable and appropriate. Interest at that rate from April 2, 1992 to June 4, 2002 amounts to $ 452,924.66. A supplemental judgment may enter in accordance with this memorandum of decision. Postjudgment interest at the rate of ten per cent per annum will run from the date of judgment until payment.

n3 Thirty days following the submission of plaintiff's claim on March 2, 1991.

David R. Tobin, J.

LEXSEE 2000 CONN. SUPER. LEXIS 1679

**Lillian Mack v. Bernard LaValley**

CV 9455707S

SUPERIOR COURT OF CONNECTICUT, JUDICIAL DISTRICT OF TOLLAND, AT ROCKVILLE

*2000 Conn. Super. LEXIS 1679*

**June 28, 2000, Decided**
**June 28, 2000, Filed**

**NOTICE:** [*1] THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

**DISPOSITION:** The plaintiff's motion for post judgment interest under this controlling statute, 31-3b, Public Act 81-315, is denied.

**JUDGES:** L. Paul Sullivan, J.

**OPINION BY:** L. Paul Sullivan

**OPINION:** MEMORANDUM OF DECISION ON MOTION FOR PAYMENT OF POST-JUDGMENT INTEREST

The plaintiff, Lillian Mack, was awarded judgment by jury trial in the amount of $ 78,400 on March 2, 1998, from which the defendant appealed. The defendant appealed the judgment. The Appellate Court denied the defendant's appeal by its decision of October 5, 1999, thereby affirming the judgment. *Mack v. Lavalley, 55 Conn. App. 150, 165, 738 A.2d 718 (1999)*. The defendant's petition for certification to the Supreme Court was denied on December 1, 1999. The face value of the judgment was paid on February 4, 2000, without prejudice of course to the plaintiff's right to seek post-judgment interest from date of judgment to date of payment.

1

The statute upon which the plaintiff relies to establish her claim for post-judgment interest is *General Statutes 37-3b*, [*2] first enacted in 1981 as part of Public Act 81-315. Section 2 thereof provided as follows:

> Sec. 2. For a cause of action arising on or after the effective date of this act, interest at the rate of ten percent a year, and no more, may be recovered and allowed in any action to recover damages for injury to the person, or to real or personal property, caused by negligence, computed from the date of judgment.

This statute remained in effect until Public Act 97-58, Section 2, which, for the purposes of this motion, changed the wording "may be recovered" to the words "shall be recovered." The statute was effective May 27, 1998 and provided that it affected "a cause of action arising on or after May 27, 1997."

The cause of action in the instant case arose on May 29, 1992, as articulated by the complaint of June 2, 1994. Hence the applicable statute is that of 1981, providing for "may" rather than the later statute which provided for "shall."

A review of the history of the statute is appropriate, although not necessarily enlighting. This statute, 31-3b did not come into existence until 1981, by enactment of Public Act 81-315, Section 2. The proposition of recovering [*3] interest in negligence actions was part of the general subject of recovery of interest "in civil actions" which historically was the only statute which

dealt with the recovery of interest in civil actions "for the detention of money after it becomes payable."

Section 37-3a has preserved the discretionary language "may be recovered," pertaining to other civil actions, despite the fact that the legislature in 1997 changed 37-3b to read in mandatory fashion "shall be recovered" for negligence actions.

The root of these two statutes goes back to at least 1902, first appearing as Section 4600 of the Revision of 1902. There is some indication that the statute may be of more ancient origin, dating back to the early 1700 era.

As indicated the statute 37-3a and its predecessors remained constant through today's date. It was determined early on that interest was not to be awarded on unliquidated demands, such as assault, battery, slander. *Regan v. New York & New England R.R. Co., 60 Conn. 124, 143, 22 A. 503 (1891)*. This proposition is re-affirmed by the case of *New York N.H. & H.R. Co. v. Ansonia L & W. P. Co., 72 Conn. 703, 705, 46 A. 157 (1900)*, which states "There [*4] is no right to interest on a disputed demand . . ." Although the case does state that where it is clear that the obligation and the amount is clearly discernable from the start, (probably applicable only to property damage) there might be a valid claim for interest.

In 1981, by P.A. 81-315 the legislature divided the statute into 37-3a, previously providing for interest in civil actions, and 37-3b, allowing interest in negligence actions from the date of judgment, both statutes provided for a discretionary "may" basis.

A review of the legislative history of the splitting of Section 37-3 into Section 37-3a and Section 37-3b is of no significant assistance. No reason is given for doing this, either on the floor of the respective houses or in the judiciary committee. It appears, from the comments of Mr. Biedier in the committee, that it was part of an initial bill to assess interest from the day of injury, to compel settlements during an era of high interest. As enacted 37-3b allowed interest, discretionary, from the date of judgment. Noteworthy, the legislative history of the 1981 Act does not deal with the prospect of delays caused by appeals.

In 1997, by Public Act 97-58, Section [*5] 2 the legislature changed the wording of 37-3b from the discretionary "may" to the mandatory "shall." Nothing in the legislative history indicates that the legislature was attempting to clarify what the legislature perceived to be an improper interpretation by the judiciary of the word "may" in the 1981 legislation. In testimony before the house committee the Chamber of Commerce stated: "The Chamber is opposed to Raised House Bill No. 6597 because mandating rather than allowing courts to post judgment interest from the date of verdict or judgment, whichever is sooner, penalizes employers that are exercising their right to ask the court to consider certain motions. Raised House Bill No. 6597 would have a chilling effect on employers who lose in court but who still wish to pursue legal avenues statutorily open to them."

Nowhere in the legislative history is it suggested that Public Act 97-58, changing "may" to "shall" was intended to clarify existing law. It is clear that the legislature intended to change from discretionary to mandatory, despite the protest of the chamber that the change would thereafter, have a chilling effect on post judgment remedies.

The criteria for determination [*6] of post judgment interest is quite clear. "A decision to deny or grant postjudgment interest is a matter lying within the discretion of the trial court." *Bower v. D'Onfro, 45 Conn. App. 543, 550, 696 A.2d 1285 (1997)*. "The court's determination of regarding the award of interest should be made in view of the demands of justice rather than through an application of any arbitrary role . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances . . ." *Bower v. D'Onfro, supra, p. 551*.

The Bower court cites, with approval, the case of *Maluszewski v. Allstate Ins. Co., 34 Conn. App. 27, 38, 640 A.2d 129* (cert. denied) 1991. In that case the money was awarded by arbitrators, but was delayed by the fact of the defendant's appeal to the Supreme Court. Judge Jackaway denied the appeal but further concluded that the defendant "had made its arguments in good faith," and hence he denied interest on the appeal of final judgment, as provided by statute as a matter of right. See *General Statutes 52-263*. It is without doubt that [*7] the appeals process is time consuming and involves substantial expense to both the appellant and the appellee. However, bearing in mind the discretionary nature of the pre-1997

Case 3:02-cv-00194-WWE   Document 222-16   Filed 05/01/2007   Page 10 of 10

Page 3
2000 Conn. Super. LEXIS 1679, *7

Section 37-3b under which this motion is made, the court cannot conclude that the mere taking of an appeal by a defendant is such conduct as to automatically call for the payment of interest. The court further takes into consideration that the filing and prosecution of an appeal frequently results in the reversal of a plaintiff's judgment and the extinguishing of the judgment. Any statute or rule which has the prospect of a chilling effect upon a party's right to appeal must be viewed with extreme caution.

This court determines that the mere taking and prosecuting of the appeal in this case is not in itself sufficient to cause the interest of justice to call for post judgment interest.

The question before the court is whether the taking and prosecution of the appeal was bona fide and in good faith, or conversely was in bad faith, frivolous and/or for the mere purpose of delay.

The Appellate Court decision is reported as *Mack v. Lavalley, 55 Conn. App. 150, 738 A.2d 718,* October [*8] 1999. Thereafter petition for certification was denied. The judgment was paid promptly thereafter on February 4, 2000. The appeal involved a series of issues each of which posed significant questions which had not previously been specifically decided by our appeals courts. First, what is the degree of evidence sufficient to show that a deposed witness is unavailable (*Practice Book Section 13-31*). Second, where the absent witness was noticed as an expert, but his qualifications do not appear in the deposition, are his non-expert physical observations that the threshold was "slippery" and "sloped toward the street" admissible, bearing in mind that any deposition testimony stating an expert opinion that the condition was not reasonably safe would be prohibited by the court. Third, was the defendant prejudiced because this deposition witness had been described to the jury panel as a professional engineer.

As to the premises, factual and legal questions of possession and control and proximate cause were issues which clearly lent themselves to appellate review.

Finally, there being a deduction for comparative negligence, the issue before the court on the collateral source hearing [*9] was how to apply the collateral source payment to the reduced economic damages. Differences of opinion existed between various superior court decisions, applying different formulas to deal with collateral source reduction. Without doubt this was an issue which specifically lent itself to appeals court review, resulting in a specific formula for the guidance of all litigants and the trial courts.

*Conclusion*

This court concludes that the taking and prosecution of the appeal was unquestionably bona fide and in good faith. The defendant diligently prosecuted the appeal. The court determines that it is not in the interest of justice that postjudgment interest be awarded, concluding that the detention of the money was not wrongful. The mere fact that the taking of an appeal causes a stay of the judgment to be effectuated under *Practice Book Section 61-11(a)* of course does not lead to a conclusion that the taking of an appeal is for the sole purpose of causing unwarranted delay.

For the reasons set forth herein the plaintiff's motion for post judgment interest under this controlling [*10] statute, 31-3b, Public Act 81-315, is denied.

L. Paul Sullivan, J.