UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EXECUTIVE AIRLINES | : | CIVIL ACTION NO. |
| | : | 02-CV-194 (WWE) |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| ELECTRIC BOAT CORPORATION, | : | |
| | : | |
| Defendant. | : | MAY 4, 2007 |
| | : | |

**DEFENDANT'S OBJECTION TO PLAINTIFF'S PROPOSED REQUEST TO CHARGE**

Defendant Electric Boat Corporation ("Electric Boat") hereby submits this Objection to Plaintiff's Jury Instruction on Compensatory Damages.[1]

**I.   FACTUAL BACKGROUND**

This hearing in damages comes before this Court pursuant to the April 6, 2006 order setting aside the verdict as to damages only.[2] Plaintiff's claims against Electric Boat in the underlying case were predicated on a contract between the parties whereby Plaintiff agreed to provide air charter services to Electric Boat between its facilities located in Groton, Connecticut and Newport News, Virginia.[3] Plaintiff commenced services for Electric Boat on April 10, 2000, using BAE Systems Jet Stream 3101 aircraft, including aircraft registration number N16EJ (the "Aircraft"). On May 21, 2000, just six weeks after its first flight for Electric Boat, Plaintiff was

---

[1] Defendant reserves the right to object to other portions of Plaintiff's proposed jury instructions not addressed by this Objection prior to the jury charge.

[2] (*See* Order on Renewed Mot. for J. as a Matter of Law or, in the Alternative, Mot. for a New Trial (Eginton, J.) dated Apr. 6, 2006 ("Order on Mot. for J.")).

[3] The contract between the parties consisted of a March 14, 2000 purchase order number SNL022-096, along with a "Purchase Order Supp. No. 1" (the "Charter Agreement").

operating the Aircraft on a charter flight for another customer when the Aircraft crashed, killing all nineteen passengers and crew on board.  Electric Boat immediately suspended service with the Plaintiff, and by letter dated June 7, 2000, terminated the Charter Agreement.  Plaintiff brought suit against Electric Boat claiming that Electric Boat had improperly terminated the Charter Agreement.

Following a four-day trial in this matter, the jury returned a verdict in favor of Plaintiff in the amount of $472,368.00.  (*See* Special Verdict Interrogs., dated Feb. 17, 2006, Interrog. 4).  Notably, the jury was not asked to determine whether Electric Boat breached the Charter Agreement, and made no finding on that issue.  The jury determined that Electric Boat terminated Plaintiff's charter services in accordance with Section 2(A) of the Charter Agreement, which permitted Electric Boat to terminate the Agreement for any reason, or no reason at all, "without penalty upon six (6) months written notice to [Plaintiff]."  (*Id.*, Interrog. 1.)  Because the Charter Agreement provided Electric Boat with a general right to terminate for convenience, *i.e.*, for any reason or no reason at all, without penalty upon six months written notice to Plaintiff, this Court has repeatedly determined that Electric Boat did not breach the Agreement by invoking its right of early termination.  (*See* Tr. of Continued Jury Trial ("Trial Tr.") Feb. 16, 2006 at 221:9-17); *see also Exec. Airlines v. Elec. Boat Corp.*, 271 F. Supp. 2d 392, 397 (D. Conn. 2003).

Electric Boat subsequently moved for judgment as a matter of law or a new trial based, in part, on Plaintiff's failure to set forth proper evidence of damages, and the Court (Eginton, J.) ordered a new trial as to the damage issue only.  (*See* Order on Mot. for J.)  Both parties have submitted Proposed Requests to Charge in connection with the second trial in this matter.  The

issue now before the Court concerns whether the Plaintiff's Proposed Jury Charge on Compensatory Damages is a proper recitation of Connecticut law.

## II. ARGUMENT

Relying entirely on *Retepromaca Representaciones Tecnicas Proyectos Y Sistemas, C.A. v. Ensign-Bickford Co.,* 2004 U.S. Dist. LEXIS 5552 (D. Conn. 2004), Plaintiff submitted a proposed jury charge on compensatory damages that reads in part as follows:

> You are required to award net profits on the contract which would have gone forward had Electric Boat not breached the contract. Overhead must always be deducted from gross profits, even if a given sale has a marginal cost of zero because overhead is properly allocated on an average basis to each sale. However, I charge you that under Connecticut law, overheard expenditures are recoverable as an element of damages. Thus, even if profit was reduced by overhead this would be offset by overhead being recoverable as damages.

Electric Boat objects to Plaintiff's proposed instruction on the recovery of overhead expenses because it misstates the law and is not applicable to the facts of this case. As a legal matter, the Plaintiff's proposed instruction suffers from a fundamental deficiency in that Plaintiff purports to require the jury to compensate it for overhead expenses and fails to account for the well-established concept of avoidability: after a period of time, all fixed costs, including overhead costs, become variable and can be avoided.[4] Overhead expenses that a plaintiff can reasonably avoid are not properly recovered as lost profit damages.

### A. The Authority Cited By Plaintiff Does Not Address Avoidability

Plaintiff's reliance on *Retepromaca* is misplaced. *Retepromaca* is a breach of contract case involving a claim for lost commissions made by an exclusive sales representative against a

---

[4] Many courts tend to use the terms "fixed costs" and "overhead" interchangeably. *Comment Note: Overhead Expense as Recoverable Element of Damages*, 3 ALR 3d. 689.

product manufacturer.  A jury awarded the plaintiff lost profit damages of approximately $250,000 and the defendant moved for judgment as a matter of law, arguing that plaintiff failed to establish the amount of its actual damages.  The defendant contended that plaintiff was required to show lost sales and the commissions the plaintiff would have earned on those sales, as well as the incremental costs associated with those sales in order to establish a proper claim for lost profits.  The defendant claimed that the plaintiff failed to present evidence of incremental costs.  The Court determined that the jury could have found, given the evidence presented at trial, that no incremental costs would have been incurred by the plaintiff had plaintiff been required to perform under the contract at issue.  For this reason, the plaintiff's damage award was not properly reduced by any items of overhead or other variable expenses.  In a footnote, the court recognized that overhead costs are generally recoverable as damages in Connecticut, and therefore, are not properly reduced from a damage award of lost profits.  This statement was simply dicta under the facts of that case.

*Retepromaca* does not, however, provide any authority for Plaintiff's proposed jury charge on compensatory damages, which improperly requires the jury to conclude that overhead expenses are recoverable over the long-term and under all circumstances.  In reality, all fixed overhead expenses turn variable and become avoidable (*i.e.*, not recoverable) over time.  *See, e.g., Verizon Communs., Inc. v. FCC*, 535 U.S. 467, 509 (2002) (recognizing that "[i]n the long run, all of a firm's costs become variable or avoidable.") (internal citations omitted); *Kutner Buick, Inc. v. Am. Motors Corp.*, 868 F.2d 614 (3d Cir. 1989) ("A cost may be fixed for one time period but avoidable over a longer time period.")

---

Overhead is typically considered an ongoing, indirect cost.  *Id.*  While overhead is a type fixed cost, other items of expense may also be treated as fixed costs.

In *Martin Motor Sales, Inc. v. Saab-Scania of Am., Inc.,* 452 F. Supp. 1047, 1053 (S.D.N.Y. 1978), *aff'd*, 595 F.2d 1209 (2d Cir. 1979), the district court dealt with the concept of avoidability in a case similar to the facts of this case and determined that a proper award of lost profits does not include recovery for overhead expenses that are avoidable over time. In *Martin Motor Sales, Inc.*, the plaintiff-automobile dealer brought suit against the defendant-car company claiming the defendant prematurely terminated the plaintiff's franchise agreement and seeking lost profits. The plaintiff sought an award of damages based on "variable net profit theory," claiming that the overhead expenses associated with the terminated franchise should not be taken into account in the lost profit calculation. In other words, the plaintiff sought to recover its overhead expenses as damages. The court accepted the notion that the plaintiff was unable to significantly reduce its overhead expenses immediately following the termination of the franchise.

> The rent was fixed, insurance payments were not flexible, substantial savings could not be obtained through employee layoffs. [The plaintiff] had three other franchises when it was terminated in 1972. Even if a portion of the overhead could have been allocated to [the franchise], this portion simply could not have been saved, practically speaking, when [the defendant] terminated its franchise in 1972.

*Id.* at 1054. The court refused to award plaintiff overhead expenses as damages over the entire term of the franchise agreement, however, because plaintiff could have eventually avoided those expenses.

> [W]hile acknowledging the fact that the overhead was fixed in the short run, this court emphatically rejects the notion that it was fixed in the long run…. Plaintiff had a ten year lease… there was no testimony as to the potential for subletting the extra room made available by the termination of the [defendant's] franchise, or the possibility of subletting the entire premises and moving to smaller quarters. In the absence of any testimony, the court must assume that it was feasible to reduce the overhead by such a move. Quite clearly, all other "fixed" overhead expenses could likewise have been eventually reduced in the longer run.

*Id.* at 1054-55. The court determined that one year was "a reasonable time for plaintiff to have adapted and planned various belt-tightening moves to compensate for the loss of [the franchise]" and limited plaintiff's recovery of its overhead expenses to a period of one year. *Id.* at 1055.

Because all fixed expenses turn variable and avoidable over time, Plaintiff may properly recover its overhead costs associated with the Charter Agreement as damages only until a reasonable point in time, when those overhead costs became avoidable. *Retepromaca* does not dictate otherwise. In fact, as discussed above, *Retepromaca* does not address this issue. For these reasons, Plaintiff's proposed jury instruction on compensatory damages improperly assumes that overhead expenses are recoverable as damages over the long-term and under all circumstances and thus clearly mischaracterizes the law.

      B.     <u>Reference to Breach of Contract</u>

Electric Boat also objects to Plaintiff's repeated references to Electric Boat's "breach of contract." As the Court has noted on many occasions, the proper term here is "early termination." As this Court has consistently recognized, Electric Boat had the legal right to terminate Plaintiff's charter services for convenience under Section 2(A) without penalty upon six months' notice to Plaintiff. (*See* Trial Tr.) Feb. 16, 2006 at 221:9-17); *see also Exec. Airlines v. Elec. Boat Corp.*, 271 F. Supp. 2d 392, 397 (D. Conn. 2003). Electric Boat did not breach the Agreement by invoking its right of early termination and the jury should not be charged as such.

**III.**    <u>**CONCLUSION**</u>

For the foregoing reasons, Electric Boat respectfully requests that if the Court instructs the jury on the issue of overhead expenses, it use the substituted Lost Profit instruction submitted

by Electric Boat in Exhibit A, attached hereto.  Electric Boat further requests that the Court strike any reference to a "breach of contract" when charging the jury.

>                                   DEFENDANT,
>                                   ELECTRIC BOAT CORPORATION
>
>
>                                   By        /s/ Amy T. Maas
>                                         James H. Rotondo (ct05713)
>                                         jhrotondo@daypitney.com
>                                         Amy T. Maas (ct25561)
>                                         atmaas@daypitney.com
>                                         Day Pitney LLP
>                                         CityPlace I
>                                         Hartford, Connecticut 06103-3499
>                                         (860) 275-0100
>                                         (860) 275-0343 fax
>                                         Its Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of May, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court' s CM/ECF System.

>                                        /s/ Amy T. Maas
>                                         Amy T. Maas (ct25561)