UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EXECUTIVE AIRLINES | : CIVIL ACTION NO. |
| | : 02-CV-194 (WWE) |
| Plaintiff, | : |
| VS. | : |
| | : |
| ELECTRIC BOAT CORPORATION, | : |
| | : |
| Defendant. | : MAY 9, 2007 |
| | : |

## DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Fed. R. Civ. Pro. 50(a), defendant Electric Boat Corporation ("Electric Boat") hereby respectfully moves this Court for judgment as a matter of law in the above-captioned action.

## FACTUAL BACKGROUND

This hearing in damages comes before this Court pursuant to the April 6, 2006 order granting Electric Boat a retrial as to damages in the above-captioned action.[1] Plaintiff's claims against Electric Boat in the underlying case were predicated on a contract between the parties whereby Plaintiff agreed to provide air charter services to Electric Boat between its facilities located in Groton, Connecticut and Newport News, Virginia.[2] Plaintiff commenced services for Electric Boat on April 10, 2000, using a BAE Systems Jet Stream 3101, registration number N16EJ (the "Aircraft"). On May 21, 2000, just six weeks after its first flight for Electric Boat, Plaintiff was operating the Aircraft on a charter flight for another customer when the Aircraft

---

[1] (*See* Order on Renewed Mot. for J. as a Matter of Law or, in the Alternative, Mot. for a New Trial (Eginton, J.) dated Apr. 6, 2006 ("Order on Mot. for J.")).

[2] The contract between the parties consisted of a March 14, 2000 purchase order number SNL022-096, along with a "Purchase Order Supp. No. 1" (collectively the "Charter Agreement").

crashed, killing all passengers and crew on board. Electric Boat immediately suspended service with the Plaintiff, and on June 7, 2000, terminated the Charter Agreement. *See Exec. Airlines v. Elec. Boat Corp.*, 271 F. Supp. 2d 392, at 394-95 (D. Conn. 2003).

Plaintiff brought suit against Electric Boat claiming that Electric Boat had improperly terminated the Charter Agreement, and seeking liquidated damages in the amount of $494,395.00. (*See* Second Am. Compl. first count, ¶ 20; second count, ¶¶ 22-23.) On February 17, 2006, after a four-day jury trial, the jury determined that Electric Boat terminated Executive Airlines' charter services pursuant to Section 2(A) of Supplement No. 1 to the March Purchase Order, which permitted Electric Boat to terminate the Charter Agreement for any reason, or no reason at all, "without penalty upon six (6) months written notice to [Plaintiff]." (*See* Special Verdict Interrogs., dated Feb. 17, 2006, Interrog. 1). The jury returned a verdict in favor of Plaintiff in the amount of $472,368.00. (*Id.*, Interrog. 4.) Following the verdict, Electric Boat moved for judgment as a matter of law or a new trial, claiming, in part, that Plaintiff was not entitled to an award of liquidated damages under the Charter Agreement. Electric Boat contended that the July 17, 2003 Order (Goettel, J.) granting Electric Boat partial summary judgment barred Plaintiff's claims for liquidated damages and that the jury's actual damage award was against the weight of the evidence. The Court (Eginton, J.) agreed on both fronts, and ordered a new trial as to the damage issue only. (*See* Order on Mot. for J.) The Court held that Plaintiff was "entitled only to contract damages, which are generally based on the injured party's expectation interest and should not award him in excess of the sum which compensates him for the loss of his bargain." (*Id.*)

Plaintiff presented its revised damage case to a new jury in May, 2007, seeking to recover lost profits and fixed expenses under the Charter Agreement. The issue now before this Court

concerns the sufficiency of Plaintiff's evidence on damages. In support of its damages case, Plaintiff presented the testimony of its expert witness, Anthony Ciccodicola, as well as the testimony of its president and sole shareholder, Michael Peragine.[3] However, Plaintiff's evidence fails to provide a legally sufficient evidentiary basis from which the jury could determine the amount of Plaintiff lost profits in this case for two reasons. First, Plaintiff's witnesses have not offered any testimony as to the amount of Plaintiff's lost profits in line with well-established contract law and the jury verdict in the underlying trial, which limit Plaintiff's damages to lost profits associated with fifteen flights per month for a period of six months. Second, Plaintiff has not presented evidence from which the jury could determine the amount of Plaintiff's lost profits with reasonable certainty because the testimony given by all of Plaintiff's witnesses rests entirely on assumptions that are speculative and unsupported by the evidence. For these reasons, Plaintiff has not provided the jury with a legally sufficient evidentiary basis to determine the amount of Plaintiff's lost profits in this case and Electric Boat is entitled to judgment as a matter of law.

**ARGUMENT**

**I.    LEGAL STANDARD**

Fed. R. Civ. Pro. 50(a)(1) sets forth the vehicle by which a party may challenge the sufficiency of evidence prior to submission of the case to the jury:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the

---

[3] Mr. Ciccodicola is the third expert witness Plaintiff has disclosed in this case. Plaintiff moved to substitute Mr. Ciccodicola as an expert shortly after Electric Boat moved to preclude the testimony of Plaintiff's original expert witnesses, Diane Steiner and William deDecker, as unreliable and irrelevant.

court may determine the issue against that party and may grant a motion for judgment as a matter of law.

Fed. R. Civ. P. 50(a)(1). Accordingly, the district court must "inquire whether there is any legally sufficient evidentiary basis for a reasonable jury to find for [non-moving party]." *Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000) (internal quotations and citations omitted). If no such evidentiary basis is found, the district court should grant judgment as a matter of law in favor of the moving party. *See Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006); *Zahra v. Town of Southfold*, 48 F.3d 674, 683 (2d Cir. 1995); Fed. R. Civ. P. 50(a).

## II. PLAINTIFF FAILED TO PRESENT EVIDENCE IN LINE WITH WELL-ESTABLISHED CONTRACT LAW AND THE UNDERLYING JURY VERDICT WHICH LIMIT PLAINTIFF'S DAMAGES TO LOST PROFITS ASSOCIATED WITH FIFTEEN FLIGHTS PER MONTH FOR SIX MONTHS.

Under well-established Connecticut law, an award of damages in contract-based disputes "is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed." *Ambrogio v. Beaver Rd. Assocs.*, 267 Conn. 148, 155 (2003)(citing *West Haven Sound Devel. Corp. v. West Haven*, 201 Conn. 305, 319, 514 A.2d 734 (1986)). Accordingly, in ruling on Electric Boat's Renewed Motion for Judgment, this Court properly held that Plaintiff is "entitled only to contract damages, which are generally based on the injured party's expectation interest and should not award him in excess of the sum which compensates him for the loss of his bargain." (*See* Order on Mot. for J.) In other words, Plaintiff is only entitled to damages in an amount that equals the benefit Plaintiff would have received under the Charter Agreement. In this case, the Charter Agreement limits the amount of damages Plaintiff may recover because the Agreement permitted Electric Boat to terminate charter services for any reason, or no reason at all, upon six months' written notice to Plaintiff and required only that Electric Boat purchase fifteen charter flights from Plaintiff per

month. As set forth more fully below, these provisions limit the benefits to which Plaintiff was entitled under the Charter Agreement, and accordingly, limit the amount of Plaintiff's damages in this case.

### A. Well-Established Principles of Contract Law and the Jury Verdict in the Underlying Trial Limit Plaintiff's Damages to Lost Profits Associated With The Six-Month Notice Period Set Forth in the Charter Agreement.

The Charter Agreement provided Electric Boat with a general right to terminate the Charter Agreement for convenience without penalty upon six months written notice to Plaintiff. Because the Charter Agreement specifically allowed for termination for convenience, *i.e.*, for any reason or no reason at all, Electric Boat did not breach the Agreement by invoking its right of early termination by letter dated June 7, 2000. *Exec. Airlines*, 271 F. Supp. 2d at 397. The jury determined that Electric Boat terminated Plaintiff's services for convenience in accordance with Section 2(A) of the Charter Agreement.

"Where a contract is terminable at any time on notice and it is terminated without notice, the damages which the aggrieved party may recover are limited to the notice period." *See* 25 C.J.S., *Damages*, § 74, page 567. This principle is in line with traditional notions of fairness implicit in the law of contract damages: to permit a party to recover damages outside an agreed-upon notice period would permit the party to recover damages in excess of the "loss of the bargain" and place the aggrieved party in a better position that it would have been had the contract been performed. Accordingly, Connecticut courts have consistently limited damages to those incurred during the notice period in situations involving a contract that contains a termination-upon-notice provision. *See, e.g., Nationwide Airlines (Pty) Ltd. v. African Global, Ltd.*, 2007 U.S. Dist. LEXIS 10420, 55-57 (D. Conn. Feb. 14, 2007); *Gent Uniform Rental Corp. v. Jordan*, No. CV 990174469, 2000 Conn. Super. LEXIS 2210 (Conn. Super. Ct. Aug. 18,

2000) (limiting the scope of damages for giving late notice of termination to damages suffered prior to time the late notice of termination was given and damages suffered during the notice period).[4]

In the most recent of these decisions, *Nationwide Airlines (Pty) Ltd. v. African Global, Ltd.*, 2007 U.S. Dist. LEXIS 10420, 55-57 (D. Conn. Feb. 14, 2007), the Connecticut District Court held that damages for related to termination of a contract containing a termination-upon-notice provision are limited to damages incurred during the notice period. The *Nationwide Airlines* case involved a contract between Nationwide Airlines ("Nationwide") and a sales agent, Atkinson Associates ("Atkinson") whereby Atkinson agreed to sell airline tickets on Nationwide's behalf and pay Nationwide certain fees associated with those sales. The agreement permitted Nationwide to terminate the agreement in the event that Atkinson breached the agreement "upon not less than thirty (30) days advance written notice" and so long as the breach remained "uncured at the end of such thirty (30) day period."

In February, 2004, Nationwide sought to terminate the sales relationship after Atkinson failed to pay amounts properly owed to Nationwide under the agreement. Nationwide immediately substituted another sales agent in place of Atkinson, and on March 10, 2004, sent written notice to Atkinson that the agreement had been terminated. The court determined that Atkinson had materially breached the agreement by failing to pay amounts owed to Nationwide, and that Nationwide breached the agreement by failing to give Atkinson thirty days' advance written notice of termination in February. However, relying on the premise that damages for breach of contract are designed to place the injured party in the same position it would have been in had the contract not been breached, the district court found as follows:

---

[4] Copy attached as Ex. A.

-6-

> Whether Nationwide breached the GSA Agreement in this regard is less controversial than what remedy Atkinson Associates should receive as a result of the breach. Nationwide contends that its breach of the notice of termination provision merely entitles Atkinson Associates to lost profits for the period from February 2 to April 10, 2004, when the formal written termination, which was never cured, became effective....On this point, the Court agrees with Nationwide. The GSA Agreement gave Nationwide the right to terminate upon thirty days' advance written notice. Though belated, Nationwide gave the required written notice in late March.... Therefore, for Nationwide's breach of the termination provision of the GSA Agreement, Atkinson Associates is entitled only to recover damages up to and including April 10, 2004, when, according to Nationwide's valid and uncured termination notice, the GSA Agreement terminated.

*Nationwide Airlines (Pty) Ltd.*, 2007 U.S. Dist. LEXIS 10420 (D. Conn. 2007)(internal citations omitted)(citing *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 893 (4th Cir. 1992) (stating that in a suit for breach of contract regarding a provision requiring six months notice of termination, plaintiff's remedy was limited to lost profits for the six months following the breach)). *See also S & S Tobacco & Candy Co. v. Stop & Shop Cos.*, 1997 U.S. App. LEXIS 1622 (2d Cir. 1997).[5]

The terms of the Charter Agreement and the jury verdict in the underlying trial have essentially converted Plaintiff's claim against Electric Boat into a termination-based claim similar to the one at issue in *Nationwide*. Under Section 2(A), Electric Boat had the right to terminate the Charter Agreement for any reason, or no reason at all, upon six months' written

---

[5] Although *S & S Tobacco & Candy Co. v. Stop & Shop Cos.*, 1997 U.S. App. LEXIS 1622 (2d Cir. 1997) is a summary order and does not constitute precedent for this Court, the case is instructive nonetheless. In *S & S Tobacco & Candy Co. v. Stop & Shop Cos.*, 1997 U.S. App. LEXIS 1622 (2d Cir. 1997), the Second Circuit Court of Appeals upheld the Connecticut district court's decision to limit the plaintiff's damages arising from termination of a supplier contract to a period of six months. In *S & S Tobacco*, the district court determined that the contract at issue contained a provision requiring only six months' notice of cancellation, and, in accordance with Connecticut law, limited the measure of plaintiff's damages to a period of six months. The plaintiff appealed, claiming that the six-month cancellation provision was ambiguous. The Second Circuit upheld the district court's decision, finding that the contract was not ambiguous and was terminable at any time upon six months' notice. The *S & S Tobacco* decision recognizes and reinforces that under Connecticut law, a claim for damages stemming from early termination

notice to Plaintiff, and the jury determined that Electric Boat terminated the Charter Agreement for convenience in accordance with Section 2(A). (*See* Special Verdict Interrogs., Interrog. 1). Under these circumstances, Electric Boat was required to provide upon six months' written notice to Plaintiff, which it provided by letter dated June 7, 2000. However, at the time notice of termination was provided, Electric Boat had already ceased using Plaintiff's services. Accordingly, Plaintiff's only claim for damages is premised on Electric Boat's decision not to continue using or paying for Plaintiff's services for a period of six months following the notice of termination, in accordance with Section 2(A). As set forth above, this claim is limited by well-established Connecticut law to losses sustained during the notice period. For these reasons, as a matter of law, Plaintiff's compensation for Electric Boat's early termination is limited to economic losses suffered from May 20, 2000, the date that Electric Boat stopped using Plaintiff's charter services, through December 7, 2000, the date that Electric Boat's written termination became effective.

### B. Well-Established Principles of Contract Law Also Limit Plaintiff's Damages to Lost Profits Associated With Fifteen Flights Per Month.

Likewise, the "loss of Plaintiff's bargain" is limited by other applicable provisions of the Charter Agreement. The Charter Agreement "itinerary" called for a minimum of 15 roundtrip flights per month, and the overall price per flight was based "on a minimum monthly billing of fifteen (15) R/Ts per month." In interpreting contract items, the Connecticut Supreme Court has repeatedly stated that "the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of

---

of a terminable contract is limited to losses incurred during the agreed-upon notice period provided under the contract.

the contract.'" *Barnard v. Barnard*, 214 Conn. 99, 110, 570 A.2d 690 (1990). "Where there is there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Thompson & Peck, Inc. v. Harbor Marine Contracting Corp.*, 203 Conn. 123, 130, 523 A.2d 1266 (1987). Neither the parties, nor the Court, may add terms to a contract by interpretation. *Conn. Union of Telephone Workers v. Southern New England Telephone Co.*, 148 Conn. 192, 200, 169 A.2d 646 (1961).

The language of the Charter Agreement is definitive: the price Plaintiff provided to Electric Boat was based "on a minimum monthly billing of fifteen (15) R/Ts per month." (*See* Charter Agreement, Purchase Order Supp. No. 1, pp. 2-3.) Plaintiff admitted at trial, both through its expert, Mr. Ciccodicola, and its president, Mr. Michael Peragine, that the Charter Agreement only required Electric Boat to purchase fifteen flights per month. Accordingly, it is simply of no consequence whether Electric Boat previously used Plaintiff's charter services more frequently or whether Plaintiff anticipated Electric Boat would use Plaintiff's charter services more frequently in the future. The loss of Plaintiff's bargain, had the Charter Agreement been performed as agreed, is the amount of economic loss Plaintiff suffered because Electric Boat did not purchase fifteen charter flights per month from Plaintiff. To permit Plaintiff to recover lost profits associated with more than fifteen flights per month would put Plaintiff in a better position than it would have been had the contract been performed as agreed, and run afoul of the traditional notions of fairness. "[I]n the law of Contract, the term damages is used to mean compensation in money as a substitute for and the equivalent of the promised performances." *Spahr v. Frank*, No. CV 91-0286470 S, 1995 Conn. Super. LEXIS 923 (Conn. Super. Ct. Mar. 31, 1995)(citing 5 *Corbin on Contracts* § 990). Here, Electric Boat merely promised to purchase fifteen roundtrip flights per month. For these reasons, as a matter of law, Plaintiff's

compensation for Electric Boat's early termination is limited to economic losses based on a frequency of fifteen flights per month.

### C. Plaintiff Implicitly Recognized These Legal Limitations On Its Damages During the Underlying Trial

Even Plaintiff has implicitly recognized these legal limitations to its claim for damages. During the underlying trial, Plaintiff presented evidence to the jury that it was entitled to damages in an amount equaling Plaintiff's lost revenues for fifteen flights per month, for a period of six months. Although Plaintiff improperly presented those provisions as a recipe for liquidated damages, Plaintiff implicitly recognized that, as a matter of law, the loss of its bargain with respect to the Charter Agreement was limited by the terms of the Agreement to a term of fifteen flights per month for a period of six months. Despite Plaintiff's obvious attempt to ignore the agreed-upon terms of the Charter Agreement, the jury verdict and well-established principles of contract law in Connecticut mandate that Plaintiff's damages stemming from Electric Boat's termination of the Charter Agreement pursuant to Section 2(A) are limited to the lost profits associated with 15 flights per month for a period of six months, as a matter of law.

### D. Plaintiff's Witnesses Did Not Provide Evidence of Plaintiff's Lost Profits Associated With Fifteen Flights Per Month for a Period of Six Months.

Mr. Ciccodicola was the only witness Plaintiff provided to testify as to the amount of Plaintiff's lost profits in this case.[6] However, Mr. Ciccodicola's expert report and testimony reflect an estimate of Plaintiff's economic losses for the remaining duration of the Charter Agreement, *i.e.*, from May 20, 2000 through April 17, 2001, based on a frequency of 30 flights per month *because he was instructed to assume those parameters by Plaintiff's counsel*. Mr.

---

[6] Mr. Peragine testified about some of the aspects of Plaintiff's business, but did not offer an opinion or testimony as to the amount of Plaintiff's lost profits in this case.

Ciccodicola offered no opinion as to Plaintiff's damages associated with fifteen flights per month for a period of six months. Accordingly, Mr. Ciccodcola's testimony is simply not relevant or helpful to the jury in determining Plaintiff's damages in this matter. Because Plaintiff relies exclusively on the testimony of Mr. Ciccodicola in this regard, Plaintiff has not provided a sufficient evidentiary basis from which the jury could possibly determine the amount of Plaintiff's lost profits in this case and Electric Boat is entitled to judgment as a matter of law.

### III. PLAINTIFF FAILED TO PRESENT EVIDENCE FROM WHICH THE JURY COULD DETERMINE THE AMOUNT OF PLAINTIFF'S ECONOMIC LOSSES WITH REASONABLE CERTAINTY

It is axiomatic that the plaintiff bears the responsibility to come forth with evidence of its damages, such that the amount of the plaintiff's loss can be measured with reasonable certainty. *Conaway v. Prestia*, 191 Conn. 484, 493-94, 464 A.2d 847 (1983)(a plaintiff seeking damages "bears the burden of proving, with reasonable certainty, those damages sustained as a result of his injury."). Damages in the form of lost profits are no exception: "[a]though we recognize that damages for lost profits may be difficult to prove with exactitude…such damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount with reasonable certainty." *Beverly Hills Concepts v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 70 (1998)(internal citations and quotations omitted). The requirement of reasonable certainty is particularly applicable in cases where a loss of future profits is claimed because "such loss is capable of proof more closely approximating mathematical precision." *Benvenuti Oil Co. v. Foss Consultants, Inc.*, 2006 Conn. Super. LEXIS 238, 39-44 (Conn. Super. Ct. 2006). Thus, a plaintiff must provide "objective data from which the loss can be determined with a reasonable degree of exactness." *Id.* (internal quotations and citations omitted). "[M]ere

guessing is not permissible, there must be a rational standard on which to base a damage award, a reasonable basis must be provided for the court to reach an estimate of damages, these estimates have to be based on "objective data" and "complete evidence"." *Id.* (citing, *inter alia*, *Beverly Hills Concepts Inc.*, 247 Conn. 48 (1998)). Accordingly, an award of lost profits cannot be based on speculation or conjecture, and the plaintiff bears the burden to present sufficiently accurate and complete evidence for the trier of fact to be able to estimate those lost profits with reasonable certainty. *Beverly Hills Concepts*, 247 Conn. at 70 (internal citations and quotations omitted).[7]

Plaintiff presented the testimony of Mr. Ciccodicola and Mr. Peragine in support of its lost profit calculation. As set forth more fully below, the testimony of Plaintiff's witnesses does not set forth evidence from which the jury could establish the amount of Plaintiff's lost profits with reasonable certainty because the testimony is based on flawed assumptions and speculative data unsupported by the record.

    A.    <u>Mr. Ciccodicola's Testimony Does Not Provide a Sufficient Basis From Which the Jury Could Determine Plaintiff's Lost Profits With Reasonable Certainty Because His Opinion is Based on Flawed and Speculative Assumptions that Are Not Supported By the Record or the Law of This Case.</u>

An expert opinion that is not supported by sufficient facts to validate it in the eyes of the law, or that contradicts indisputable record facts contributes nothing to a legally sufficient evidentiary basis for purposes of Rule 50(a)(1). *See Beverly Hills Concepts v. Schatz & Schatz*, 247 Conn. 48, 78 (1998)("a [lost profit] damage theory may be based on assumptions so long as the assumptions are reasonable in light of the record evidence."); *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242 (1993). In *Brooke Group, Ltd.*, the plaintiff, a

---

[7] Under Connecticut law, an award of lost profits is based on net profits. *Cheryl Terry Enterprises Ltd. v. Hartford*, 270 Conn. 619, 641 (2004).

generic tobacco company, sought review of the district court's entry of judgment as a matter of law in favor of defendant, a brand tobacco manufacturer, on claims of predatory pricing. The United States Supreme Court undertook a fact-based review of the matter, determining that the district court properly entered judgment as a matter of law on behalf of defendant because the evidence set forth by plaintiff was insufficient as a matter of law to establish plaintiff's claim of predatory price discrimination. In support of its claim of error, plaintiff pointed to the testimony of its expert, who set forth plaintiff's theory of predatory pricing. The Supreme Court determined that the expert opinion in question was not supported by facts in the record, and held "[w]hen an expert opinion is not supported by sufficient facts to validate it in the eyes of the law, or when indisputable record facts contradict or otherwise render the opinion unreasonable, it cannot support a jury's verdict." *Id.* at 242.

    The Connecticut Supreme Court came to a similar conclusion in *Beverly Hills Concepts v. Schatz & Schatz*, 247 Conn. 48, 78 (1998), where the Court overturned a lost profit damage award because the plaintiff presented expert testimony based on speculative assumptions not supported by the evidentiary record. In *Beverly Hills Concepts,* the plaintiff, a corporation that sold exercise equipment, brought an action against the defendant law firm and certain individual attorneys for malpractice in connection with the plaintiff's failed attempt to establish a new business that would franchise fitness clubs. After a bench trial, the trial court found in favor of the plaintiff, and awarded the plaintiff approximately $15.9 million in lost profits. *Id.* at 51. The Connecticut Supreme Court reversed the award, finding that the plaintiff failed to establish its lost profits to a reasonable certainty. Although the plaintiff was in the business of selling fitness equipment, it had not previously sold any fitness franchises. Because there was no record of fitness franchise sales from which to extrapolate anticipated future profits, the plaintiff attempted

to establish lost profits through the expert testimony of a certified public accountant, who made two key assumptions: (1) that a substantial number of the people who had purchased fitness equipment from the plaintiff would also have purchased franchises; and (2) that the plaintiff would sell twenty franchises per year for the first five years and would progressively increase sales until it was selling forty franchises per year by year twelve. The Court determined that the record revealed no reasonable basis to compare the sale of fitness equipment to the sale of fitness franchises, other than the possibility that they might be marketed to the same customer base, and that the assumption that the plaintiff would have sold franchises was contradicted by the record, which indicated that the plaintiff's model franchise failed shortly after it began operation. *Id.* at 71-72. Accordingly, the Court concluded that the plaintiff's evidence was speculative and did not form a reasonable basis from which to estimate damages with a reasonable degree of certainty. *Id.* at 71-72.

> In order to recover lost profits…the plaintiff must present sufficiently accurate and complete evidence for the trier of fact to be able to estimate those profits with reasonable certainty. The trial court in this case, although cognizant of this standard, nevertheless assessed damages based upon assumptions that were not supported by the record. The trial court's determination that the plaintiff would have earned approximately $ 15.9 million in profits over the course of twelve years had it not been for the defendants' conduct, therefore, constituted an abuse of discretion.

*Id.* at 70. Although *Beverly Hills Concepts* dealt with a new business that had no past profit information, the principles are no less applicable to business that have previously been in operation. *See Cheryl Terry Enterprises Ltd. v. Hartford*, 270 Conn. 619, 641 (2004); *Outdoor Dev. Corp. v. Mihalov*, 59 Conn. App. 175, 178-181 (2000).

Mr. Ciccodicola's testimony does not establish the amount of Plaintiff's lost profits with reasonable certainty because Mr. Ciccodicola's opinion is based on flawed assumptions and assumptions that are not supported by the record or the law of this case, which infect the entirety

of Mr. Ciccodicola's opinion and render his testimony as to the amount of Plaintiff's lost profits unreliable and speculative. Like the expert witness in *Beverly Hills Concepts*, Mr. Ciccodicola's opinion relies on several assumptions that are speculative and/or have no basis in the evidentiary record. First, Mr. Ciccodicola incorrectly assumes that Plaintiff is entitled to recover lost profits associated with thirty flights per month, for the remaining duration of the Charter Agreement (approximately eleven months). As set forth in Section II *supra*, well-established Connecticut case law and the jury verdict in the underlying trial limit Plaintiff's damages in this case to lost profits associated with fifteen flights per month for a period of six months. Mr. Ciccodicola has no opinion as to the amount of Plaintiff's lost profits within these parameters; indeed, he conducted no calculations of Plaintiff's lost profits based on fifteen flights per month for six months, and he admitted under oath that he could not determine whether his economic analysis would change in order to properly calculate Plaintiff's lost profit damages within these parameters. Mr. Ciccodicola's incorrect assumptions as to the frequency of flights and duration of the damage period applicable to Plaintiff's lost profits renders his damages analysis irrelevant and, more importantly, speculative as to the amount of Plaintiff's *actual* damages – those lost profits associated with fifteen flights per month for a period of six months.

Second, Mr. Ciccodicola assumes that the fixed and variable cost information from which he projected Plaintiff's lost profits remained the same after Plaintiff suffered the May 19, 2000 crash, which killed 19 people. Both at his deposition, and at trial, Mr. Ciccodicola testified that he based his calculation of Plaintiff's variable and fixed costs on records spanning from January 2000 through October 2000. Mr. Ciccodicola also testified that records spanning from November 2000 – April 2001 were available, but he did not review or rely on them. Essentially, then, Mr. Ciccodicola assumed an average monthly projection based on partial information,

despite the fact that the actual information was available. Moreover, Mr. Ciccodicola made those assumptions about the allocation of Plaintiff's costs without accounting for how those costs may have changed after the May 21, 2000 crash.

Third, Mr. Ciccodicola incorrectly assumes that Plaintiff suffered a loss of capital in connection with the purchase/use of N16EN and N404GJ and that Plaintiff was entitled to claim depreciation on those aircraft. However, the evidence presented at trial clearly establishes that those aircrafts were owned by other entities, Millennium Jetstream Holdings, LLC and Millennium Jetstream Holdings II, LLC (the "Millennium LLCs"), and that Plaintiff paid no rental costs or other compensation to those entities for use of those aircraft in Plaintiff's charter business. Essentially then, Mr. Ciccodicola wrongly assumes that Plaintiff is entitled to recover losses associated with use of capital, and that Plaintiff is entitled to account for aircraft depreciation in his damages analysis, notwithstanding that any losses related to use of capital or costs related to depreciation are properly charged to the Millennium LLCs.

Finally, Mr. Ciccodicola uses speculative numbers in that he assumes the numbers he uses are correct, notwithstanding interrogatories and testimony from Plaintiff's president to the contrary. For these reasons, Mr. Ciccodicola's testimony does not provide a legally sufficient basis from which the jury could determine the amount of Plaintiff's lost profits with reasonable certainty.

B. <u>Mr. Peragine's Testimony Does Not Provide a Sufficient Basis From Which the Jury Could Determine Plaintiff's Lost Profits With Reasonable Certainty Because He Had No Involvement or Understanding of the Financial Aspects of Plaintiff's Business.</u>

In this case, Mr. Peragine's testimony was limited to a recitation of the Charter Agreement and a spattering of testimony about the expenses Plaintiff allegedly incurred in

"ramping up" for Electric Boat's business. Mr. Peragine did not testify as to the variable expenses incurred by Plaintiff on a per-flight basis, the total of fixed costs associated with performing under the Charter Agreement or any calculation of lost profits. On its face, Mr. Peragine's testimony does not provide a sufficient evidentiary basis from which the jury could determine Plaintiff's lost profit damages with any reasonable certainty.

Moreover, a proper award of lost profit damages may be based on the testimony of a corporation's owner or executive only when that witness is intimately familiar and significantly involved with the financial aspects of the business. For example, in *Cheryl Terry Enterprises Ltd. v. Hartford*, 270 Conn. 619, 641 (2004), the Connecticut Supreme Court upheld the lost profit claim after noting the meticulous way in which the plaintiff calculated her costs in the busing contracts she had previously bid on in the past. The Court found that the jury could rely on this testimony to determine future costs which could then be subtracted from the contract price to determine net profits. Here, Mr. Peragine had very little involvement with the financial aspects of Plaintiff's business. Mr. Peragine relied exclusively on Plaintiff's controller, James Ahlfeld, to document Plaintiff's costs and expenses and maintain the "accounting function" of Plaintiff. Moreover, Mr. Peragine has no training in accounting principles and no formal college education. *See Outdoor Dev. Corp. v. Mihalov*, 59 Conn. App. 175 (2000)(overturning a lost profit damage award because the award was based solely on the testimony of the plaintiff's sole owner and shareholder, who had no training in accounting principles and had improperly based his analysis on a calculation that did not conform to generally accepted accounting principles). For these reasons, Mr. Peragine's testimony does not establish a legally sufficient basis from which the jury could determine the amount of Plaintiff's lost profits with reasonable certainty.

## III. **CONCLUSION**

Electric Boat respectfully submits that it is entitled to judgment as a matter of law because Plaintiff failed to set forth legally sufficient evidence from which the jury could determine the amount of Plaintiff's lost profits with reasonable certainty. As the Connecticut Supreme Court recognized in *Beverly Hills Concepts*, this outcome is hardly unfair because it is the direct result of Plaintiff's choice of evidence:

> We recognize that our decision that the plaintiff failed to prove damages means that the defendants, whose malpractice caused the plaintiff's harm, escape virtually unscathed. Injury is the illegal invasion of a legal right; damage is the loss, hurt, or harm which results from the injury; and damages are the recompense or compensation awarded for the damage suffered.... In this case, the defendants argued that [the plaintiff's expert] testimony failed to remove the question of damages from the realm of speculation and, consequently, the plaintiff failed to satisfy its burden of proof on the issue of damages. This is a case in which we reverse the judgment not for lack of mathematical exactitude...but because the plaintiff failed to provide sufficient evidence. This outcome is a direct result of the plaintiff's choice of evidence.

*Beverly Hills Concepts*, 247 Conn. at 78 (internal citations and quotation marks omitted). Here, Plaintiff failed to set forth legally sufficient evidence from which the jury could determine the amount of Plaintiff's lost profits with reasonable certainty. For all the foregoing reasons, Electric Boat respectfully requests that the Court grant judgment in favor of Electric Boat as a matter of law.

DEFENDANT,
ELECTRIC BOAT CORPORATION

By: /s/ Amy T. Maas
James H. Rotondo (ct05713)
jhrotondo@daypitney.com
Amy T. Maas (ct25561)
atmaas@daypitney.com
Day Pitney LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
(860) 275-0343 fax
Its Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May, 2007, a copy served in hand upon counsel for the plaintiff, Daniel Hayes and will be filed electronically and by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Amy T. Maas
Amy T. Maas (ct25561)