UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MILLENNIUM AVIATION SERVICES, INC. d/b/a EXECUTIVE AIRLINES | : CIVIL ACTION NO.<br>: 02-CV-194 (WWE) |
| Plaintiff, | : |
| v. | : |
| ELECTRIC BOAT CORPORATION, | : |
| | : MAY 24, 2007 |
| Defendant. | : |

### DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, A NEW TRIAL

Pursuant to Fed. R. Civ. P. 50(b) and 59, defendant Electric Boat Corporation ("Electric Boat") hereby respectfully renews its motions for judgment as a matter of law or in the alternative, moves this Court for a new trial.

### I.  FACTUAL BACKGROUND

This hearing in damages comes before this Court pursuant to the April 6, 2006 order granting Electric Boat a retrial as to damages in the above-captioned action.  The claims against Electric Boat in the underlying case were predicated on a contract in which Executive Aviation Services d/b/a Executive Airlines agreed to provide air charter services to Electric Boat between its facilities located in Groton, Connecticut and Newport News, Virginia (the "Charter Agreement").  Services commenced under the Agreement on April 17, 2000, flying Electric Boat employees to Newport News on BAE Systems Jet Stream 3101, registration number N16EJ.  On May 21, 2000, just four weeks after the contract commenced, N16EJ crashed while flying a charter flight for another customer, killing all 17 passengers and both crew members on board.  Electric Boat immediately suspended its charter service, and on June 7, 2000, terminated the

Charter Agreement. *See Exec. Airlines v. Elec. Boat Corp.*, 271 F. Supp. 2d 392, at 394-95 (D. Conn. 2003).

Executive Airlines brought suit against Electric Boat claiming that Electric Boat had improperly terminated the Charter Agreement, and seeking liquidated damages in the amount of $494,395.00. (*See* Second Am. Compl. first count, ¶ 20; second count, ¶¶ 22-23.) On February 17, 2006, after a four-day jury trial, the jury determined that Electric Boat terminated Executive Airlines' charter services pursuant to Section 2(A) of Supplement No. 1 to the March Purchase Order, which permitted Electric Boat to terminate the Charter Agreement for any reason, or no reason at all, "without penalty upon six (6) months written notice to Seller." (*See* Special Verdict Interrogs., dated Feb. 17, 2006, Interrog. 1). The jury returned a verdict in favor of Executive Airlines in the amount of $472,368.00. (*Id.*, Interrog. 4.)

The first jury was not asked to determine whether Electric Boat breached the Charter Agreement, and made no finding on that issue. (*See generally id*.) This Court has repeatedly determined that Electric Boat did not breach the Agreement by invoking its right of early termination because the Charter Agreement provided Electric Boat with a general right to terminate for convenience, *i.e.*, for any reason or no reason at all, without penalty upon six months written notice to the plaintiff. (*See* Tr. of Continued Jury Trial ("Trial Tr.") Feb. 16, 2006 at 221:9-17); *see also Exec. Airlines v. Elec. Boat Corp.*, 271 F. Supp. 2d 392, 397 (D. Conn. 2003).

Following the verdict in 2006, Electric Boat moved for judgment as a matter of law or a new trial, asserting several grounds, including that the jury improperly awarded liquidated damages. Electric Boat contended that the July 17, 2003 Order (Goettel, J.) granting Electric Boat partial summary judgment barred any claim for liquidated damages and that the jury's

actual damage award was against the weight of the evidence.  The Court (Eginton, J.) agreed in part, and ordered a new trial as to the damage issue only.  (*See* Order on Mot. for J.)  The Court held that "plaintiff is entitled only to contract damages, which are generally based on the injured party's expectation interest and should not award him in excess of the sum which compensates him for the loss of his bargain." (*Id.*)

Executive Airlines presented its revised damage case to a second jury on May 8-11, 2007, seeking to recover lost profits and unavoidable fixed expenses related to early termination of the Charter Agreement.  On May 9, 2007, following the close of Executive Airlines' evidence, Electric Boat moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(1) on the grounds that Executive Airlines failed to set forth evidence that provided a legally sufficient evidentiary basis from which the jury could determine the amount of lost profits in this case for two reasons: (1) Executive Airlines did not offer any evidence as to the amount of its lost profits in line with well-established contract law and the jury verdict in the first trial, which limited damages to lost profits to a period of six months and fifteen flights per month during that period; and (2) Executive Airlines did not present evidence from which the jury could determine the amount of lost profits with reasonable certainty because the testimony given by Executive Airline's witnesses rested entirely on speculative assumptions that were unsupported by the evidence.  (*See* 02-CV-194 (WWE), Docket Entry No. 233, Def.'s Mot. for J., dated May 9, 2007.)  The Court denied Electric Boat's motion for judgment.  (*See* 02-CV-194 (WWE), Docket Entry No. 235, Order Denying Without Prejudice Def.'s Mot. for J., dated May 9, 2007.)

On May 10, 2007, following the close of all evidence, Electric Boat renewed its Rule 50 motion and filed a motion to dismiss the case pursuant to Fed. R. Civ. P. 12 on the grounds that Executive Airlines, as a d/b/a, was not a legal entity capable of maintaining the action and

incapable of establishing diversity jurisdiction under 28 U.S.C. § 1332. (*See* 02-CV-194 (WWE), Docket Entry No. 234, Def.'s Mot. to Dismiss, dated May 10, 2007.) The Court denied Electric Boat's motion to dismiss on May 11, 2007 and, recognizing that "Executive Airlines" is not a legal entity and was not the real party in interest to this lawsuit, substituted Millennium Aviation Services, Inc. d/b/a Executive Airlines ("Millennium Aviation") as the named plaintiff.

In response to the Court's decision to substitute Millennium Aviation as the named plaintiff, Electric Boat moved for a second judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a)(2) on the grounds that the newly-named plaintiff was not a party to the Charter Agreement and, as a matter of law, not entitled to recover damages stemming from the early termination of that Agreement. The Court denied Electric Boat's this motion as a matter of law as "overly-technical" and sent the case to the jury. The jury returned a verdict in favor of Millennium Aviation for $ 576,054.00. On these facts, Electric Boat renews its motions for judgment as a matter of law, or, in the alternative, moves the Court for a new trial.[1]

## II.     MOTION FOR JUDGMENT AS A MATTER OF LAW

Pursuant to Federal Rule of Civil Procedure 50(b), Electric Boat renews its motions for judgment as a matter of law. Judgment as a matter of law should be granted where there is no legally sufficient basis for the jury to find in favor of the plaintiff. *See Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995); Fed. R. Civ. P. 50(a). Accordingly, the district court must "inquire whether there is any legally sufficient evidentiary basis for a reasonable jury to

---

[1] Electric Boat incorporates herein each and every exception taken during the February, 2006 trial, as well as the arguments raised in Electric Boat's motion for judgment as a matter of law or a new trial, dated March 6, 2006. Electric Boat reserves the right to address the arguments addressed herein, as well as the arguments raised and preserved in prior proceedings in this case, on appeal.

find for [non-moving party]." *Weisgram v. Marley Co.*, 528 U.S. 440, 453-54 (2000) (internal quotations and citations omitted). If no such evidentiary basis is found, the district court should grant judgment as a matter of law in favor of the moving party. *See Unitherm Food Sys. v. Swift-Eckrich, Inc.*, 546 U.S. 394 (2006); *Zahra*, 48 F.3d at 683; Fed. R. Civ. P. 50(a). In this case, Millennium Aviation did not present any evidence that it was entitled to recover damages stemming from the early termination of the Charter Agreement or any evidence as to the amount of damages it suffered. Accordingly, the jury verdict is against the weight of the evidence and Electric Boat is entitled to judgment as a matter of law.

> A. <u>Millennium Aviation Did Not Present Evidence That It Was Entitled To Recover Damages Under the Charter Agreement</u>

Under Connecticut law, "[i]t is well settled that 'one who [is] neither a party to a contract nor a contemplated beneficiary thereof cannot sue to enforce the promises of the contract . . .' ." *Tomlinson v. Bd. of Educ.*, 226 Conn. 704, 718 (1993) (quoting *Coburn v. Lenox Homes, Inc.*, 173 Conn. 567, 570 (1977); *Knapp v. New Haven Road Const. Co.*, 150 Conn. 321, 324 (1963)); *see also* Restatement (Second) of Contracts, § 346, 347 (1981). The Agreement at issue in this case is a contract between *Executive Aviation Services* d/b/a Executive Airlines and Electric Boat. (*See* Pl.'s Tr. Ex. P008.) Millennium Aviation was not a party to the Charter Agreement and presented *no* evidence that it was an intended beneficiary of the contract. Accordingly, there was no legally sufficient basis for the jury to determine that Millennium Aviation was entitled to recover damages stemming from early termination of the Charter Agreement, and Electric Boat is entitled to judgment as a matter of law.

> B. <u>Millennium Aviation Did Not Present Any Evidence of Damages Suffered</u>

It is axiomatic that the plaintiff bears the responsibility to come forth with evidence of its damages, such that the amount of the plaintiff's loss can be measured with reasonable certainty.

*Conaway v. Prestia*, 191 Conn. 484, 493-94 (1983) (a plaintiff seeking damages "bears the burden of proving, with reasonable certainty, those damages sustained as a result of his injury."). Damages in the form of lost profits are no exception: "[a]though we recognize that damages for lost profits may be difficult to prove with exactitude…such damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating their amount with reasonable certainty." *Beverly Hills Concepts v. Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 70 (1998) (internal citations and quotations omitted).  In a contract action, a plaintiff "'may recover only for damages that are directly and proximately caused by a defendant's breach of contract, causation is an element--and a crucial one--of the plaintiff's prima facie case.'" *McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 504 (2006)(quoting *Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 526 (2d Cir. 2004)).

The Court substituted Millennium Aviation as the named plaintiff in this case at the last possible moment – after the close of evidence and just prior to closing arguments.[2]  Prior to that substitution, the plaintiff presented evidence of lost profits only with regard to the Executive Airlines trade name *as a whole*.  The evidence at trial established that several distinct corporate entities were involved with the operation of the "Executive Airlines" charter business, including the newly-substituted plaintiff, Millennium Aviation, as well as East Coast Aviation, Inc. d/b/a Executive Airlines, Executive Aviation Services d/b/a Executive Airlines, Millennium Jetstream Holdings, Inc., Millennium Jetstream Holdings, LLC, Millennium Jetstream Holdings II, LLC, and Montauk Caribbean Airways.  The jury heard evidence that the Charter Agreement, the

---

[2] There is a fundamental problem with this substitution in that the first jury rendered a verdict in favor of "Executive Airlines" *not* the newly-substituted plaintiff Millennium Aviation. Electric Boat is now bound by a liability finding made by the first jury as to a *different plaintiff*.

document giving rise to this lawsuit, was executed by Executive Aviation Services d/b/a Executive Airlines. (*See* Charter Agreement, Pl.'s Tr. Ex. P008.) The jury received evidence that the lease for additional hangar space, an expense claimed as part of the unavoidable fixed cost damages in this case, was executed by *East Coast Aviation* d/b/a Executive Airlines. (*See* Lease Agreement, Pl.'s Tr. Ex. P007.) The jury also heard extensive evidence that Millennium Jetstream Holdings, LLC and Millennium Jetstream Holdings II, LLC purchased and owned the aircraft at issue in this case, for which depreciation and cost of capital were also claimed as unavoidable fixed cost damages. (*See* Aircraft Purchase Agreements, Pl.'s Tr. Exs. P001 and P002.) Recognizing that several elements of the damages claimed in this case were suffered by unnamed corporate entities, the plaintiff's corporate representative, Mr. Peragine, testified that "Executive Airlines" was a "family of companies." The plaintiff's expert testified that all the economic losses claimed in this case "fell down to Executive Airlines." As a result, Mr. Ciccodicola opined as to the losses suffered by the "Executive Airlines" trade name without determining the individual losses suffered by each distinct corporate entity, presumably, because all those losses flowed to Executive Airlines. Accordingly, the only evidence of damages presented related to damages suffered by the Executive Airlines trade name *as a whole*. As this Court recognized, however, Executive Airlines is not a legal entity and not the real party in interest to this lawsuit. The plaintiff in this case is Millennium Aviation and Millennium Aviation bore the burden to establish the damages it suffered, to a reasonable degree of certainty, based on the early termination of the Charter Agreement.

Notably, *no* evidence was introduced about any damages suffered by Millennium Aviation in this case. In fact, the only evidence the jury heard about Millennium Aviation was during the cross-examination of Mr. Peragine, where Mr. Peragine testified that Millennium

Aviation was an operating company and did not own the aircraft at issue in this lawsuit. Millennium Aviation made no attempt to establish what portion, if any, of the losses claimed were actually suffered by Millennium Aviation as opposed to the "Executive Airlines" trade name as a whole. Millennium Aviation is not entitled to recover damages suffered by other corporate entities that are not plaintiffs in this lawsuit stemming from the early termination of the Charter Agreement, even if those corporate entities were also operating as part of the "Executive Airlines" trade name. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268-69 (1992) ("a plaintiff who complain[s] of harm flowing merely from the misfortunes visited upon a third person by the defendant's acts [is] generally said to stand at too remote a distance to recover."); *Laborers Local 17 Health & Benefit Fund v. Philip Morris, Inc.*, 191 F.3d 229, 239 (2d Cir. 1999)("where a plaintiff complains of injuries that are wholly derivative of harm to a third party, plaintiff's injuries are generally deemed indirect and as a consequence, too remote, as a matter of law, to support recovery."); *Conn. Pipe Trades Health Fund v. Philip Morris, Inc.*, 153 F. Supp. 2d 101, 105 (D. Conn. 2001).

Millennium Aviation failed to meet its burden of establishing its damages with reasonable certainty as a matter of law because it introduced *no* evidence from which the jury could determine the amount of its lost profits in this case. The jury verdict for Millennium Aviation can only be explained as a result of sheer speculation by the jury, and such an award cannot stand. *See, e.g., Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326 (2d Cir. 1993) (reversing trial court's denial of Rule 50(b) motion for judgment as a matter of law because plaintiff's evidence as to lost profits was speculative). For all these reasons, Electric Boat is entitled to judgment as a matter of law.

**III.     MOTION FOR A NEW TRIAL**

Pursuant to Federal Rule of Civil Procedure 59, Electric Boat also moves this Court for a new trial.  A new trial may be granted in any case tried to a jury "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States."  Fed. R. Civ. P. 59.  An erroneous jury instruction, unless harmless, requires a new trial.  *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994) (citing *Memphis Community Sch. Dist. v. Stachura*, 477 U.S. 299, 312 (1986)).  "A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law."  *Anderson v. Branen*, 17 F.3d 552, 556 (2d Cir. 1994) (citing *Folger Adam Co. v. PMI Indus., Inc.*, 938 F.2d 1529, 1533-34 (2d Cir. 1991); *Norfleet v. Isthmian Lines, Inc.*, 355 F.2d 359, 362-63 (2d Cir. 1966) (holding jury charge must show no tendency to confuse or mislead jury as to applicable principles of law)).

In this case, the Court erred by failing to give three jury instructions mandated by Connecticut law and the Federal Rules of Civil Procedure: (1) that damages in this case were limited to lost profits incurred for a period of six months, (2) that damages in this case were limited to lost profits associated with fifteen flights per month, and (3) that the newly-substituted plaintiff, Millennium Aviation, was not entitled to recover as damages suffered by other corporate entities as a result of the early termination.  These instructions were specifically requested by Electric Boat, and were imperative for the jury to fully comprehend the law governing this case.  Accordingly, the Court's failure to give these instructions constitutes clear error and entitles Electric Boat to a new trial, in the event that the Court does not enter judgment notwithstanding the verdict, as requested above.

A.  Electric Boat Was Prejudiced Because the Court Failed to Instruct the Jury that Damages In This Case Were Limited to Lost Profits Incurred for a Period of Six Months Following the Notice of Termination.

"Where a contract is terminable at any time on notice and it is terminated without notice, the damages which the aggrieved party may recover are limited to the notice period." *See* 25 C.J.S. *Damages* § 74, at p. 567. This principle is in line with traditional notions of fairness implicit in the law of contract damages: to permit a party to recover damages outside an agreed-upon notice period would permit the party to recover damages in excess of the "loss of the bargain" and place the aggrieved party in a better position that it would have been had the contract been performed. Accordingly, in situations involving the breach of a termination-upon-notice provision, Connecticut courts limit damages to those incurred during the notice period. *See, e.g., Nationwide Airlines (Pty) Ltd. v. African Global, Ltd.*, No. 3:04 CV 00768, 2007 U.S. Dist. LEXIS 10420, at *55-57 (D. Conn. Feb. 14, 2007); *Gent Uniform Rental Corp. v. Jordan*, No. CV 990174469, 2000 Conn. Super. LEXIS 2210 (Conn. Super. Ct. Aug. 18, 2000) (limiting the scope of damages for giving late notice of termination to damages suffered prior to time the late notice of termination was given and damages suffered during the notice period); *see also S & S Tobacco & Candy Co. v. Stop & Shop Cos.*, No. 95-9263, 1997 U.S. App. LEXIS 1622 (2d Cir. Jan. 30, 1997).[3]

In the most recent of these decisions, *Nationwide Airlines (Pty) Ltd. v. African Global, Ltd.*, the court held that damages for related to termination of a contract containing a termination-upon-notice provision are limited to damages incurred during the notice period. The *Nationwide Airlines* case involved a contract between Nationwide Airlines ("Nationwide") and a sales agent,

---

[3] Each of these cases were previously provided to the Court as exhibits to Electric Boat's May 9, 2007 Rule 50(a) Motion for Judgment. Although *S & S Tobacco* is a summary order and does not constitute precedent for this Court, the case is instructive nonetheless.

Atkinson Associates ("Atkinson"), whereby Atkinson agreed to sell airline tickets on Nationwide's behalf and pay Nationwide certain fees associated with those sales. The agreement permitted Nationwide to terminate the agreement in the event that Atkinson breached the agreement "upon not less than thirty (30) days advance written notice" and so long as the breach remained "uncured at the end of such thirty (30) day period."

In February, 2004, Nationwide sought to terminate the sales relationship after Atkinson failed to pay amounts properly owed to Nationwide under the agreement. Nationwide immediately substituted another sales agent in place of Atkinson, and on March 10, 2004, sent written notice to Atkinson that the agreement had been terminated. The court determined that Atkinson had materially breached the agreement by failing to pay amounts owed to Nationwide, and that Nationwide breached the agreement by failing to give Atkinson thirty days' advance written notice of termination in February. Relying on the fundamental premise that damages for breach of contract are designed to place the injured party in the same position it would have been in had the contract not been breached, the district court held as follows:

> Whether Nationwide breached the GSA Agreement in this regard is less controversial than what remedy Atkinson Associates should receive as a result of the breach. Nationwide contends that its breach of the notice of termination provision merely entitles Atkinson Associates to lost profits for the period from February 2 to April 10, 2004, when the formal written termination, which was never cured, became effective….On this point, the Court agrees with Nationwide. The GSA Agreement gave Nationwide the right to terminate upon thirty days' advance written notice. Though belated, Nationwide gave the required written notice in late March…. Therefore, for Nationwide's breach of the termination provision of the GSA Agreement, Atkinson Associates is entitled only to recover damages up to and including April 10, 2004, when, according to Nationwide's valid and uncured termination notice, the GSA Agreement terminated.

*Nationwide Airlines (Pty) Ltd.*, 2007 U.S. Dist. LEXIS 10420, at *56-60 (internal citations omitted) (citing *Trimed, Inc. v. Sherwood Med. Co.*, 977 F.2d 885, 893 (4th Cir. 1992) (stating that in a suit for breach of contract regarding a provision requiring six months notice of

termination, plaintiff's remedy was limited to lost profits for the six months following the breach)).

Similarly, in *S & S Tobacco & Candy Co. v. Stop & Shop Cos.*, the Second Circuit Court of Appeals upheld the Connecticut district court's decision to limit the plaintiff's damages arising from termination of a supplier contract to a period of six months. In *S & S Tobacco*, the contract at issue contained a provision requiring only six months' notice of cancellation, and, in accordance with Connecticut law, the Second Circuit upheld the district court's decision to limit the measure of plaintiff's damages to a period of six months.[4] The *S & S Tobacco* decision reinforces the notion that under Connecticut law, a claim for damages stemming from early termination of a terminable contract is limited to losses incurred during the agreed-upon notice period provided under the contract.

Section 2(A) of the Charter Agreement provided Electric Boat with a general right to terminate the Charter Agreement for convenience without penalty upon six months' written notice. The first jury determined that Electric Boat terminated the Agreement for convenience in accordance with Section 2(A).[5] (*See* Special Verdict Interrogs., Interrog. 1.) Therefore, the

---

[4] At trial, this Court attempted to distinguish the *S & S Tobacco* case on the grounds that in *S & S Tobacco*, the plaintiff was drafter of the notice provision at issue. The Court misinterpreted the import of that factual determination, however, because the Second Circuit addressed the drafting issue only with respect to whether the notice provision was ambiguous. The Second Circuit evaluated the ambiguity of that provision, noting that any ambiguity should be resolved against the drafter. The Second Circuit ultimately determined that the provision at issue was *not* ambiguous, and upheld the district court's decision, finding that the contract was terminable at any time upon six months' notice and limiting plaintiff's damages to a period of six months.

[5] That finding was unaffected by this Court's April 6, 2006 Order, which set aside the first jury's verdict and granted a retrial as to damages *only*. The second jury had no province to re-determine the liability decision rendered by the first jury, nor any evidence from which such a determination could have been made.

terms of the Charter Agreement and the first jury verdict essentially converted any breach of contract claim against Electric Boat into a notice-provision based claim: Electric Boat provided notice of termination on June 7, 2000, however, Electric Boat had already ceased using charter services under the Charter Agreement at the time notice of termination was provided. As the Court and plaintiff's counsel repeatedly recognized on the record, the only proper claim for damages in this case is premised on Electric Boat's decision not to continue using or paying for charter services for a period of six months following the notice of termination, in accordance with Section 2(A). The facts of this case are indistinguishable from those addressed in *Nationwide and S & S Tobacco.* In fact, the *Nationwide* case is virtually identical to the circumstances here: the agreement at issue in *Nationwide* permitted the defendant to terminate the contract if the plaintiff was in breach upon thirty days' notice; the plaintiff breached the agreement and the defendant terminated the contract immediately, without providing the requisite thirty days' notice.[6] Here, the Charter Agreement permitted Electric Boat to terminate the Charter Agreement for any reason or no reason at all upon six months' notice; Executive Airlines suffered the crash of N16EJ, and Electric Boat terminated the Charter Agreement immediately, without giving six months' notice. In both cases, the proper measure of damages are the economic losses suffered by the plaintiff during the notice period.[7]

---

[6] The notice provision at issue in *Nationwide* also permitted the plaintiff an opportunity to cure its breach. Although the immediate termination essentially left the plaintiff without its opportunity to cure, the *Nationwide* court placed little emphasis on this fact because the plaintiff never attempted to cure following the notice of termination.

[7] The evidence at trial established that the applicable notice period in this case is from May 24, 2000, the date that Electric Boat stopped using charter services under the Agreement, through December 7, 2000, the date that Electric Boat's written termination became effective.

Consistent with the foregoing authorities, Electric Boat requested the Court issue the following jury instruction:

> In order to calculate Plaintiff's lost profits in this case, therefore, you must engage in a three-step process. First, you must determine the total amount of revenue that Executive Airlines would have generated if the Charter Agreement had been performed as agreed. <u>On this issue, you must bear in mind that the Charter Agreement permitted Electric Boat to terminate the Agreement with six-months notice</u>, and only required that Electric Boat purchase fifteen flights per month from Executive Airlines. <u>The law limits Executive Airlines' damages in this regard and you may not award damages under alternate assumptions of frequency or duration</u>.

(emphasis added). The Court refused to issue this instruction and, as a result, prejudiced Electric Boat because the jury had absolutely no idea that the law limited lost profit damages in this case to a period of six months. The Court's failure to instruct the jury in this regard constitutes clear error and entitles Electric Boat to a new trial.

      B.    <u>The Court Failed to Instruct the Jury that Damages In This Case Were Limited to Lost Profits Associated With Fifteen Flights Per Month.</u>

Under Connecticut law, an award of damages in contract-based disputes "'is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed.'" *Ambrogio v. Beaver Rd. Assocs.*, 267 Conn. 148, 155 (2003)(quoting *West Haven Sound Dev. Corp. v. West Haven*, 201 Conn. 305, 319 (1986)). Accordingly, this Court properly held that the "plaintiff is entitled only to contract damages, which are generally based on the injured party's expectation interest and should not award him in excess of the sum which compensates him for the loss of his bargain." (*See* Order on Mot. for J.) In other words, the proper measure of damages in this case are lost profits associated with the minimum requirements under the Charter Agreement, which represents the agreed-upon bargain between the parties.

The Charter Agreement "itinerary" called only for a minimum of fifteen roundtrip flights per month, and the overall price per flight was based "on a minimum monthly billing of fifteen (15) R/Ts per month." In interpreting contract items, the Connecticut Supreme Court has repeatedly stated that "the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract.'" *Barnard v. Barnard*, 214 Conn. 99, 110 (1990). "Where there is definitive contract language, the determination of what the parties intended by their contractual commitments is a question of law." *Thompson & Peck, Inc. v. Harbor Marine Contracting Corp.*, 203 Conn. 123, 130 (1987). Neither the parties, nor the Court, may add terms to a contract by interpretation. *Conn. Union of Tel. Workers v. Southern New England Tel. Co.*, 148 Conn. 192, 200 (1961).

The language of the Charter Agreement is definitive: the per-flight price provided to Electric Boat was based "on a minimum monthly billing of fifteen (15) R/Ts per month." (*See* Pl.'s Tr. Ex. P008 at Purchase Order Supp. No. 1, pp. 2-3.) The plaintiff's expert, Mr. Ciccodicola and the plaintiff's corporate representative, Mr. Peragine, both admitted at trial that Charter Agreement only required Electric Boat to purchase fifteen flights per month and that Mr. Peragine actually insisted that Electric Boat insert the fifteen-flight minimum into the Charter Agreement. Accordingly, it is simply of no consequence whether Electric Boat previously used charter services under the Agreement more frequently or whether Electric Boat was expected to use charter services under the Agreement more frequently in the future. The loss of the bargain, had the Charter Agreement been performed as agreed, is the amount of lost profits suffered because Electric Boat did not purchase fifteen charter flights per month. To permit a recovery of

lost profits beyond fifteen flights per month would place the recovering party in a better position than it would have been had the contract been performed as agreed, and run afoul of the traditional notions of fairness. "[I]n the law of Contract, the term damages is used to mean compensation in money as a substitute for and the equivalent of the promised performances." *Spahr v. Frank*, No. CV 91-0286470 S, 1995 Conn. Super. LEXIS 923, at *13 (Conn. Super. Ct. Mar. 29, 1995) (citing 5 *Corbin on Contracts* § 990). Accordingly, the damages in this case are limited to lost profits associated with a frequency of fifteen flights per month.

>Electric Boat requested the Court issue the following jury instruction:

>In order to calculate Plaintiff's lost profits in this case, therefore, you must engage in a three-step process. First, you must determine the total amount of revenue that Executive Airlines would have generated if the Charter Agreement had been performed as agreed. <u>On this issue, you must bear in mind that the Charter Agreement</u> permitted Electric Boat to terminate the Agreement with six-months notice, and <u>only required that Electric Boat purchase fifteen flights per month from Executive Airlines. The law limits Executive Airlines' damages in this regard and you may not award damages under alternate assumptions of frequency or duration</u>.

(emphasis added). The Court refused to issue this instruction and, as a result, prejudiced Electric Boat because the jury was not instructed that the law limited damages in this case to losses associated with fifteen flights per month. The Court's failure to instruct the jury in this regard constitutes clear error and entitles Electric Boat to a new trial.

>C.  <u>Electric Boat Was Prejudiced Because the Court Failed to Instruct the Jury that the Newly-Substituted Plaintiff Was Not Entitled to Recover Damages Suffered By Other Entities</u>

Prior to the substitution of Millennium Aviation as plaintiff in this case, the jury heard evidence from Mr. Ciccodicola and Mr. Peragine that "Executive Airlines" was a "family of companies" and that all the economic losses claimed in this case "fell down to Executive Airlines." As set forth more fully in Section II, the evidence at trial established that several distinct corporate entities were involved with the operation of the "Executive Airlines" charter

-16-

business. Because evidence of the lost profit damages in this case were improperly presented to jury as losses suffered by the Executive Airlines trade name as a whole, Electric Boat requested that the Court instruct the jury that Millennium Aviation was entitled to recover as damages only those losses that Millennium Aviation itself actually suffered, as follows:

> **CORPORATE STATUS**
>
> In determining the proper amount of Millennium Aviation Services, Inc. d/b/a Executive Airlines' lost profits, you may not consider or account for the effect that Electric Boat's lawful termination may have had on other entities related to the plaintiff Millennium Aviation Services, Inc. d/b/a Executive Airlines, even if another entity also was doing business as Executive Airlines. Likewise, you may not consider or account for the effect that Electric Boat's lawful termination may have had on Mr. Michael Peragine, the person who owned the plaintiff and several other related companies.
>
> **LOST PROFIT DAMAGES**
>
> In a contract-based action, such as this one, an award of damages is designed to place the plaintiff, so far as it can be done by money, in the same position it would have been in had the contract been fully performed as agreed. <u>Executive Airlines is entitled to nothing in excess of that sum which compensates it for the loss of its bargain with Electric Boat. In this regard, I remind you that the plaintiff here is Millennium Aviation Services, Inc. d/b/a Executive Airlines, you may not compensate Executive Airlines for losses sustained by any entity other than Millennium Aviation Services, Inc. d/b/a Executive Airlines, even if that other entity also was doing business as Executive Airlines.</u>

(emphasis added). The Court refused to issue these instructions and, as a result, prejudiced Electric Boat because the jury had absolutely no idea that Millennium Aviation was not entitled to recover damages suffered by the "Executive Airlines" trade name as a whole, or those suffered by other corporate entities operating under that trade name. The import of this instruction is clear: until the substitution of Millennium Aviation as plaintiff *after* the close of evidence, the jury heard evidence that all the losses claimed "fell down to Executive Airlines." The plaintiff in this case, however, is *not* Executive Airlines. The jury should have been instructed that Millennium Aviation was not entitled to recover damages suffered by other corporate entities. *See, e.g., Holmes*, 503 U.S. at 268-69; *Laborers Local 17 Health & Benefit Fund*, 191 F.3d at

239; *Conn. Pipe Trades Health Fund*, 153 F. Supp. 2d at 105.  The Court's failure to instruct the jury in this regard constitutes clear error and entitles Electric Boat to a new trial.

        D.       <u>The Jury Verdict Is Against the Weight of the Evidence</u>

A new trial is permitted under Fed. R. Civ. P. 59 in any case where the district court "conclude[s] that the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *Manley v. AmBase Corp.*, 337 F.3d 237, 244-245 (2d Cir. 2003).  In this regard, "Rule 59(a)…has a less stringent standard than Rule 50 in two significant respects: (1) a new trial under Rule 59(a) 'may be granted even if there is substantial evidence supporting the jury's verdict,' and (2) 'a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner.'" *Id.* (quoting *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133-34 (2d Cir. 1998)).  In this case, the jury verdict is seriously erroneous and represents a miscarriage of justice because, as set forth more fully in Section II, Millennium Aviation failed set forth any evidence that it was entitled to recover any damages stemming from the early termination of the Charter Agreement.  Accordingly, the jury verdict in favor of Millennium Aviation is against the clear weight of the evidence and, should the Court decide not to grant Electric Boat judgment notwithstanding the verdict on this issue, Electric Boat is alternatively entitled to a new trial.

## IV.    <u>CONCLUSION</u>

For the all the foregoing reasons, Electric Boat respectfully submits that it is entitled to a judgment as a matter of law notwithstanding the verdict or, in the alternative, a new trial.

DEFENDANT,
ELECTRIC BOAT CORPORATION


By      /s/ Amy T. Maas
    James H. Rotondo (ct05713)
    jhrotondo@daypitney.com
    Amy T. Maas (ct25561)
    atmaas@daypitney.com
    Day Pitney LLP
    CityPlace I
    Hartford, Connecticut 06103-3499
    (860) 275-0100
    (860) 275-0343 fax
    *Its Attorneys*


**CERTIFICATE OF SERVICE**

    I hereby certify that on this 24th day of May, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court' s CM/ECF System.

    /s/ Amy T. Maas
    Amy T. Maas (ct25561)