# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

MILLENNIUM AVIATION SERVICES, Inc., d/b/a:
EXECUTIVE AIRLINES,                          :    CIVIL NO.: 3:02 CV 194(WWE)
                                             :
                                             :
             Plaintiff,                      :
                                             :        _____
        vs.                                  :
                                             :
ELECTRIC BOAT Corp.,                         :
                                             :
                                             :
             Defendant                       :    June 29, 2007

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO AMEND CAPTION AND IN OPPOSITION TO DEFENDANT'S POST TRIAL MOTIONS UNDER <u>RULES 50 AND 59, F.R.C.P.</u>**

## <u>PRELIMINARY STATEMENT</u>

In its combined Rule 50 (b) and Rule 59 motion, Electric Boat moves for judgment as a matter of law or for a new trial.  The essence of Electric Boat's motion now is that although "Executive Airlines" has been the party plaintiff in this action for almost six years without comment, in fact Millennium Aviation Services, Inc. d/b/a Executive Airlines ("MAS") is the plaintiff in this action;  but since  the party to the contract was Executive Aviation Services, Inc., d/b/a "Executive Airlines" therefore any damages  proven at trial were not MAS's damages;  and the Court should dismiss as a matter of law.  On the same ground, Electric Boat has also moved to dismiss for lack of subject matter jurisdiction, since the complaint was filed in the name of "Executive Airlines", a trade name.

It has been clear from the beginning of this litigation that the plaintiff was claiming under the contract for air charter service with Electric Boat.  Electric Boat knew that the claims were and under

the federal rules,  has waived any objection to the use of the trade name in the caption.  It could not have been prejudiced in any way, since these facts - who the parties involved were, what was a trade name and what were corporate names, and, most importantly, what claims were being made -  were clear from the initiation of the lawsuit and Electric Boat most vigorously defended against them.

That there is no substance to this issue is clear: if the caption of the case had initially included as plaintiffs "Executive Aviation Services, Ltd., d/b/a Executive Airlines; Millennium Aviation Services, Ltd., d/b/a Executive Airlines", there would be no obstacle to the jurisdiction of this court since both of the corporations are diverse in respect of citizenship from Electric Boat and General Dynamics Corporation.  The caption instead has carried as plaintiff, "Executive Airlines" for more than five years.  Defendant's Answer (Exhibit A) shows that it has known since suit was brought who were the parties.  Electric Boat's "issue" is a formal quibble, which the case law under Rule 17, F.R.Civ.P. says it has waived.  (Please see  Below).

In its pre-verdict,  Rule 50(a) motion, Electric Boat did not complaint about the use of the trade name; rather, it argued only that  the testimony of plaintiff's expert, Mr. Ciccodicola and of its President, Mr. Peragine, was insufficient to allow the verdict to stand, or required a new trial.

Electric Boat has waived the issues it tries to raise in this Rule 50(b) motion, by omitting them in its Rule 50(a) motion, and by its failure to object to the nomenclature of the plaintiff over the years of this litigation.

There is no merit to either motion.  The second trial of this matter was indeed a "hearing in damages", as Electric Boat calls it, ordered by the Court after it determined that the first jury's verdict of $472,368.00, was for "liquidated damages" which had been ruled out of the case on a motion for summary judgment decided by Judge Goettel.

Electric Boat argued to the first jury that Executive Airlines had defaulted.  The jury disagreed, and also decided that a boilerplate provision in another document ("Paragraph 14") did not restrict the damages available to Executive Airlines.  The first trial resulted in a jury determination of liability of Electric Boat to Executive Airlines under a written contract, which the Court did not overrule.

## FACTS

Electric Boat had contracted with Executive Airlines for air transportation for its employees between Groton, Connecticut and Newport News, Virginia, for one year.  The contract was signed by Michael Peragine for Executive Aviation Services, Inc., d/b/a Executive Airlines..  The cost of each round trip flight was specified.  The contract contained a requirement for payment of a minimum of 15 round trip flights per month, whether actually flown or not.  The contract also  contained a provision allowing termination for default, on written notice, after a period for cure; and a provision for termination without default, to be effective six months after written notice.

The testimony by both parties at the first trial was that the six month notice provision was a modification insisted on by Executive Airlines during contract negotiations, to protect its investment in start up costs .

Contract flying began on April 17, 2000, and continued without incident through May 19, 2000.  On Sunday, May 21, 2000, an Executive Airlines aircraft chartered by another client suffered a fatal accident.  On June 7, 2000, Electric Boat wrote to Executive Airlines that it was terminating the contract under the provision for termination by default immediately.

On September 20, 2001, Executive Airlines brought an action in the  Eastern District of New York against Electric Boat and its parent, General Dynamics Corporation ("GDC"), alleging diversity

jurisdiction (Complaint, Exhibit B). Electric Boat moved to dismiss *inter alia* for improper venue, under the forum selection clause in the contract. Electric Boat made no complaint about the use of the trade name, "Executive Airlines" to describe the plaintiff.

The Court on January 24, 2002, ruled that proper venue lay only in Connecticut and transferred the action to the District of Connecticut under 28 USC §1406(a), denying without prejudice GDC's motion to dismiss.

On or about February 21, 2002, Electric Boat and GDC renewed their motion for dismissal. Again, the defendants made no complaint about the use of the trade name, "Executive Airlines" to describe the plaintiff. On April 9, 2002, Judge Goettel entered an order dismissing the claims against General Dynamics Company and otherwise denying the motion.

On or about April 26, 2002, Electric Boat filed and served its Answer, with Affirmative Defenses and Counterclaim (Exhibit A). In its Answer, Electric Boat admitted that "Executive Airlines" was a party to the contract, the plaintiff in the action, and a corporation diverse from Electric Boat. [1] It served a counterclaim under the Court's supplemental jurisdiction, which is only

---

[1]    "[t]his action involved an agreement between Electric Boat and Executive Airlines..." (Para. 1.);

"[i]n November, 1999, Executive Airlines submitted a response to Electric Boat's request for quotation...."(Para.10);

"[i]t issued a purchase order regarding the provision of air charter services by Executive Airlines..." (Para.12);

"[i]t notified Executive Air (sic) that the purchase order was terminated...."(Para. 15);

"[i]t paid Executive Airlines for the flights it provided pursuant to the purchaser order...."(Para. 19);

"Executive Airlines is a foreign corporation which, at all times relevant to this action, has been transacting business in the state of Connecticut...."(THIRD DEFENSE, page 3);

"Executive Airlines agreed...."(Paras. 18-21, page 7);

"Executive Airlines has been unable to provide the service it agreed to...."(Para. 27, page 8);

"On June 7, 2000, Electric Boat notified Executive Airlines that due to such problems

appropriate if the Court has subject matter jurisdiction over the main claim. [2]

On September 11, 2002, Electric Boat, by new counsel, filed an Answer to Executive Airlines' Amended Complaint, with language identical to that of its original Answer. (Docket No. 28). [3]

On June 14, 2004, Executive Airlines filed a Second Amended Complaint with the same allegations as to parties and jurisdiction which it had expressed in its two prior complaints. (Docket No. 80). On October 8, 2004, Electric Boat filed its Answer to Executive Airlines' Second Amended Complaint, with language identical to that of its original Answer. (Docket No. 86).

Since the initial pleadings, Electric Boat has made some 21 motions of one sort or another, and responded to about 12 motions made by Executive Airlines; filed three trial memoranda; and, during the second trial, filed a motion for judgment as a matter of law at the end of plaintiff's case (Docket No. 233), all this before Electric Boat first attempted to make an issue about the identity of the plaintiff.

Executive Airlines presented its revised damage case to a second jury on May 8-11, 2007, proving its lost profits and unavoidable fixed expenses due to early termination of the contract.

_____

associated with the crash and the investigations, Electric Boat terminated the Purchase Order Agreement." (Para. 28, page 8).
"Executive Airlines has breached the Purchase Order Agreement" (Para. 31, page 9).

[2]    "Executive Airlines is, upon information and belief, a New York corporation with a principal place of business at Route 109, Hangar Three, Farmingdale, New York 11735." (Para.2, page 4);
"This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. 1367(a)" . (Para. 3, page 4);

[3]    Plaintiff incorporates as exhibits all documents referred to herein which are filed in the Court's docket.

Executive Airlines presented an expert witness, CPA Anthony Ciccodicola, who testified on the basis of his examination of the books and records of the plaintiff, that Executive Airlines would have realized profits of some $614,000 over the term of the contract, i.e., one year.  The contract at issue began and was terminated within 2000.  Mr. Peragine testified that all revenues from the contract with Electric Boat and all expenses associated with carrying out the contract were accounted by Millennium Aviation Services, Inc., d/b/a Executive Airlines.   Plaintiff's expert corroborated this testimony,  based on his examination of the books  of the company. Mr. Peragine testified that prior to the turn of the century, his other New York corporation, Executive Aviation Services, Inc., did business as Executive Airlines, but that he had formed MAS for the new era and that MAS was doing business as Executive Airlines.  (Defendant admits in its memorandum in support of its motion to dismiss for lack of jurisdiction, that Mr. Peragine so testified. )

Defendant vigorously  cross examined plaintiff's witnesses and summed up on what it perceived as differences between "Executive Airlines" and Executive Aviation Services, Inc.  The Court properly charged the jury, which returned a verdict for plaintiff for $ 576,054.00, after passing a note inquiring if it could award plaintiff the costs of bringing the action and of the expert witness !

Electric Boat has moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(a) without reference to the identity of the plaintiff.   It cannot now raise that issue.

# I
## ELECTRIC BOAT HAS WAIVED ALL GROUNDS FOR A JUDGMENT AS A MATTER OF LAW UNDER RULE 50, FRCIV P

In its pre-verdict,  Rule 50(a) motion, Electric Boat did not take the  position that it takes now, that   Millennium Aviation Services, Inc. d/b/a "Executive Airlines" ("MAS") is the plaintiff in

this action; but since the party to the contract was Executive Aviation Services, Inc., d/b/a "Executive Airlines", any damages proven at trial were not MAS's damages; and the Court should dismiss as a matter of law. Rather, it argued that the testimony of plaintiff's expert, Mr. Ciccodicola and of its President, Mr. Peragine, was insufficient to allow the verdict to stand, or required a new trial.

Electric Boat has waived the issues it tries to raise in this Rule 50(b) motion, by their omission in its Rule 50(a) motion (and by its failure to object to the nomenclature of the plaintiff over the years of this litigation.

Rule 50(a), Fed. R. Civ. P., requires the party making such a motion to specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment. A Rule 50(b) post trial motion is limited to those grounds that were specifically raised in the prior motion; the movant is not permitted to add new grounds after trial. *Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998), citing *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997); *Pappas v. New Haven Police Dept.* 278 F.Supp.2d 296, 300 -301 (D.Conn. 2003). The specificity requirement is obligatory. *Lambert v. Genesee Hospital*, 10 F.3d 46, 53-54 (2d Cir. 1993), *cert. denied*, 511 U.S. 1052 (1994).

## II

## THE COURT CORRECTLY AMENDED THE CAPTION; THE DEFENDANT WAIVED ITS OBJECTION TO THE PROSECUTION OF THIS ACTION BY "EXECUTIVE AIRLINES" BY WAITING UNTIL A SECOND TRIAL WAS NEARLY OVER

The Court properly amended the caption [4]. To grant these motions on the basis that the plaintiff "Executive Airlines" was not the real plaintiff would have wasted years of preparation and severely prejudiced the plaintiff, contrary to rule and case law.

In an effort to thwart the jury verdict, Electric Boat has suffered a memory loss. Electric Boat asks for judgment as a matter of law because the contract was signed by Mr. Peragine as *Executive Aviation Services* d/b/a Executive Airlines", not for MAS. [5] Electric Boat complains that

> [t]he Court substituted Millennium Aviation as the named plaintiff in this case at the last possible moment – after the close of evidence and just prior to closing arguments", causing "a fundamental problem... in that the first jury rendered a verdict in favor of "Executive Airlines" *not* the newly-substituted plaintiff Millennium Aviation. Electric Boat is now bound by a liability finding made by the first jury as to a different Plaintiff." [6]

Similarly, Electric Boat argues that therefore, MAS, d/b/a Executive Airlines, did not present

---

[4]        These arguments were presented in Executive Airlines' Opposition to Electric Boat's Motion to Dismiss for Lack of Subject Matter Jurisdiction but are repeated here in truncated fashion because Electric Boat again criticizes the amendment and bases its motion on the name of the plaintiff.

[5]        The Agreement at issue in this case is a contract between *Executive Aviation Services* d/b/a Executive Airlines and Electric Boat. *(See* Pl.'s Tr. Ex. P008.) Millennium Aviation was not a party to the Charter Agreement and presented *no* evidence that it was an intended beneficiary of the contract. Accordingly, there was no legally sufficient basis for the jury to determine that Millennium Aviation was entitled to recover damages stemming from early termination of the Charter Agreement, and Electric Boat is entitled to judgment as a matter of law."
Electric Boat's Renewed Motion for Judgment as a Matter of Law, or In the Alternative, a New Trial, May 24, 2007, Docket Reference 252, at 5.

[6]        Electric Boat's Renewed Motion for Judgment as a Matter of Law, or In the Alternative, a New Trial, May 24, 2007, Docket Reference 252, at 6.

evidence that it was entitled to recover damages under the "Charter Agreement" [7] and Millennium

Aviation did not present any evidence of damages suffered. [8]

However, Electric Boat has been aware throughout the litigation of the identity of the

plaintiff, and waived any objection to the use of the trade name. Its current protests must be tongue

- in - cheek, or worse. Just a few weeks prior to trial, Electric Boat had itself substituted MAS for

Executive Airlines. Electric Boat expressly stated in its initial requested jury instructions dated April

24, 2007, that: "[t]he plaintiff here is Millennium Aviation Services, Inc. d/b/a Executive Airlines."

[9]; "Because Millennium Aviation Services, Inc. is the entity that contracted with Electric Boat under

the terms of the Charter Agreement...." [10]; "Accordingly, Millennium Aviation Services, Inc. is the

only entity entitled to recover lost profits as a result of Electric Boat's decision .... [11]. Electric Boat

refers to the plaintiff throughout that document as Executive Airlines, as it has done since it filed its

Answer in 2002. (Exhibit A).

---

[7]     Electric Boat's Renewed Motion for Judgment as a Matter of Law, or In the Alternative, a New Trial, May 24, 2007, Docket Reference 252, at 5 ("A").

[8]     Electric Boat's Renewed Motion for Judgment as a Matter of Law, or In the Alternative, a New Trial, May 24, 2007, Docket Reference 252, at 5 ("B").

[9]     Electric Boat's Trial Memorandum, April 24, 2007, Docket No. 220-3, at 12.

[10]     **PLAINTIFF'S CORPORATE STATUS**  The plaintiff in this case is Millennium Aviation Services, Inc. d/b/a Executive Airlines. D/B/A is a legal term meaning that the name of the business does not include the legal or official registered name of the corporation that owns it. In this case, the plaintiff, Millennium Aviation Services, Inc. operated its business as "Executive Airlines," which is also how we have referred to the plaintiff throughout the presentation of evidence. Because Millennium Aviation Services, Inc. is the entity that contracted with Electric Boat under the terms of the Charter Agreement, only Millennium Aviation Services, Inc. may seek to enforce the terms of that Agreement in this case.   Electric Boat's Trial Memorandum, April 24, 2007, Docket No. 220-3, at 4.

[11]     Electric Boat's Trial Memorandum, April 24, 2007, Docket No. 220-3, at 4.

Under Rule 17, Fed.R.Civ.P. [12], every action shall be prosecuted in the name of the real party in interest and substitution of the "real party in interest" is to be freely granted:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed **after objection** for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest. (Emphasis added)

Thus, the rule requires that an objection be lodged before a substitution need be made; and the case law is clear that such an objection, as in this case, is waived by inaction.

That "Executive Airlines" was a trade name, or a "doing business as" name, has been known by the defendant since the pleading stage of this case, as is shown above. Courts do not allow defendants to waste judicial resources by waiting in ambush, as defendant did here, until a second trial was almost completed, to raise the issue that Executive Airlines was not a proper plaintiff:

> [c]ourts have discretion to deny real party in interest objections that are not raised in a timely manner. Because a real party defect should be evident at the commencement of the action, the defendant should present the issue in its pleadings or by an early motion.21 A timeliness requirement is also inherent in the portion of Rule 17 that requires that the court and the parties allow time after the objection for the joinder or substitution of the real party in interest.21.1 Therefore, the objection must be raised at a time when joinder is practical and

---

[12]     Rule 17. Parties Plaintiff and Defendant; Capacity

(a) Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

convenient.21.2 **If an objection is not timely made, it will be deemed to have been waived. A determination of waiver is made on a case-by-case basis at the discretion of the court.22 The court's decision is guided by considerations of prejudice resulting from the delay.** 23

4-17 *Moore's Federal Practice* - Civil § 17.12 (emphasis added).  Accord, 6A  Charles Alan Wright et al., *Federal Practice and Procedure*: CIVIL 2d § 1554.

See also, *Rogers v. Samedan Oil Corp.*, 308 F.3d 477, 483-484 (5th Cir. 2002)(on  day before trial, defendant objected that plaintiff had  failed to prove its right as assignee; objection on eve of trial was too late; late notice did not afford plaintiff meaningful opportunity to establish real party in interest status or to substitute real party in interest as plaintiff); *Powles v. Kandrasiewicz*, 886 F. Supp. 1261, 1263 (W.D.N.C. 1995) ("Defendant is also precluded at this late date from raising any objections to Plaintiff's real party in interest status in the proceedings below, having clearly waived those objections by failing to raise them at trial or on appeal.");  *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1431 (3d Cir. 1994) (real party in interest objection waived by failure to raise prior to trial and potential prejudice to plaintiff);  *Whelan v. Abell*, 953 F.2d 663, 672-673, 293 U.S. App. D.C. 267 (D.C. Cir. 1992), *cert. denied sub nom. Toomey v. Whelan*, 506 U.S. (1992) (district court abused discretion by permitting Rule 17(a) defense at trial because real party in interest was prejudiced);  *Gogolin & Stelter v. Karn's Auto Imports*, 886 F.2d 100, 102-103 (5th Cir. 1989), *cert. denied*, 494 U.S. 1031 (1990) (objection to real party in interest defect deemed waived when initially raised only at close of plaintiff's case); *Harris v. Illinois-California Express Co.*, 687 F.2d 1361, 1373-1374 (10th Cir. 1982) (affirming trial court's denial of  defendant's real party in interest challenge made four months after deadline for pretrial motions and two weeks before trial); *Hefley v. Jones*, 687 F.2d 1383, 1388 (10th Cir. 1982) (real party in interest objection raised sixteen

11

days before trial held untimely); *McLouth Steel Corp. v. Mesta Mach. Co*, 116 F. Supp. 689, 691

(E.D. Pa. 1953), aff'd on other grounds, 214 F.2d 608 (3d Cir.), *cert. denied sub nom. Hartford Acc.*

*& Indem. Co. v. Foster*, 348 U.S. 873 (1954) (real party in interest objection raised two years after

case commenced and four days before trial was untimely).

In *Gogolin & Stelter, supra*, the Court concluded that the defendant, as here, "lay behind the

log" until a directed verdict when defendant moved to dismiss because plaintiff had never proved that

it was an assignee of the cause of action, and hence was not the real party in interest. The Court said

that if the defendant "[h]ad any serious doubts about this ....it should have raised the issue earlier in

the trial process. It should not have awaited the time for a directed verdict motion.....The earlier the

defense is raised, the more likely that the high cost of trial preparation for both parties can be avoided

if a real party in interest question is determined adversely to a plaintiff". 886 F.2d at 103.

In *Aini v. Sun Taiyang Co.*, 978 F. Supp. 533, 539 (S.D.N.Y. 1997), defendant suggested that

plaintiff lacked the capacity to sue, that its claim against was not authorized, or that a trustee was

the real party in interest. Since none of these defenses was pleaded, asserted in the pretrial order, or

raised prior to the entry of judgment, the failure to file a reply or otherwise to assert them in a timely

fashion waived them.

In *Whelan, supra*, 293 U.S. App. D.C. at 271, 953 F.2d at 667-68, on the first day of trial,

the defendants moved to bar any testimony concerning the lost value of the plaintiffs' investments in

the corporation because only the corporation itself could recover for the loss; the trial judge agreed,

directed a verdict for the defendants on the Whelans' breach of fiduciary duty claim, and denied a

motion by the plaintiffs to join the corporation as the real party in interest. *Whelan, supra*, 293 U.S.

App. D.C at 275, 953 F.2d at 671.

However, the D.C. Circuit reversed: the district court abused its discretion by considering the real party in interest objection so late in the proceedings; defendants had waived their right to bring the objection by waiting until the first day of trial; and the corporation - the real party in interest - did not have time to ratify the lawsuit and was prejudiced. *Whelan, supra*, 293 U.S. App. D.C. at 276-77, 953 F.2d at 671-73.

### III
### AMENDMENTS OF PLEADINGS ARE ALLOWED EVEN WHERE SUBJECT MATTER JURISDICTION WAS INITIALLY LACKING ARE ALLOWED

Under Rule 15, F.R..Civ.P. [13], amendments of pleadings are allowed even where subject matter jurisdiction was initially lacking. *A fortiori*, the amendment by the Court in this case was appropriate.

In *Squibb II* [14], after two trials on liability and one on damages, the Second Circuit solved a jurisdictional problem caused by the presence of Lloyds of London "Names" in the diversity action, when it granted Squibb's motion to amend its complaint to substitute for the "representative

---

Rule 15. Amended and Supplemental Pleadings (in pertinent part):

(b) Amendments to Conform to the Evidence.  When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.  The court may grant a continuance to enable the objecting party to meet such evidence.   .

[14]    *E.R. Squibb & Sons, Inc. v. Lloyd's & Cos*., 241 F.3d 154, 164, 164 n3 (2d Cir. 2001).

underwriter" (who had died), a new underwriter in an individual capacity; and the Circuit found that

the substitution "related back" to the filing of the original complaint under Rule 15(c)(3) of the

Federal Rules of Civil Procedure. [15]

> [i]t is widely accepted that amendments to cure subject matter jurisdiction relate back. and that once subject matter jurisdiction is "cured" by an amendment, courts regularly have treated the defect as having been eliminated from the outset of the action. In other words, ***where a change in parties, necessary to the existence of jurisdiction, is appropriate and is made (even on or after appeal), appellate courts have acted as if the trial court had jurisdiction from the beginning of the litigation***. This has permitted such courts to affirm decisions of trial courts on the merits, although the requisite change in the parties did not occur until much later in the action. See, e.g., Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 104 L. Ed. 2d 893, 109 S. Ct. 2218 (1989). By thus retroactively validating the pre-amendment substantive decisions of the lower court, appellate courts -- the Supreme Court has told us -- ***avoid the "waste of time and resources [that] would be engendered by remanding to the District Court or by forcing the[] parties to begin anew***." Id. at 838 (emphasis added).

All the requirements for a Rule 15 substitution are met in this case. [16]

---

[15]

Rule 17, F.R.Civ.P., states in pertinent part:
© Relation Back of Amendments.
1. An amendment of a pleading relates back to the date of the original pleading when
(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
(3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.....

[16]    Rule 15(c)(3)'s standards require (1) there is no prejudice as a result of the substitution, (2) the party to be brought in by the curative amendment had notice of the action and knew or should have known that he would be named as the proper party in order to cure the jurisdictional defect,   and (3) the claims remain the same as those that were originally asserted. The party to be substituted under Rule 15© can be either a plaintiff or a defendant and courts have used Rule 15© to relate back amendments substituting either. *Squibb II*, 241 F.3d at164, 164 n3.

See also, *Canedy v. Liberty Mut. Ins. Co.*, 126 F.3d 100, 103 (2d Cir. 1997):

A failure to allege facts establishing jurisdiction need not prove fatal to a complaint. By statute, "defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts," 28 U.S.C. § 1653. Such amendments will be freely permitted where necessary to avoid dismissal on purely technical grounds. Unless the record clearly indicates that the complaint could not be saved by any truthful amendment, see, e.g., *Baer v. United Servs. Auto. Ass'n,* 503 F.2d 393, 397 (2d Cir. 1974), we generally afford an opportunity for amendment.

The Supreme Court has held that district and appellate courts may correct jurisdictional defects, "[p]articularly when requiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 836-837 (U.S. 1989).

## IV
## THE COURT SHOULD DENY THE DEFENDANT'S RULE 50  MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant's motions for judgment as a matter of law (and for a new trial) do not satisfy the high standards for such motions and should be denied.    The trial was  substantially error – free and fair to both sides .  The plaintiff and the defendant were allowed to put their evidence and their viewpoints to the jury and the jury was properly charged on the law. [17]

Certainly, it cannot be reasonably said that the jury's verdict is seriously erroneous or a miscarriage of justice. Therefore, the motion for judgment as a matter of law should be denied.

The Court is required to deny this  Rule 50 motion, unless, viewed in the light most favorable to Executive Airlines,

the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached..

---

[17]     The plaintiff  retains and does not mean to waive any objections  in the record.

*Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995).

Defendant's motion for judgment as a matter of law faces "a high bar." *Lavin McEleney v. Marist College,* 239 F.3d 476, 479 (2d Cir. 2001).   The Court of Appeals has warned that  a jury's verdict should rarely be disturbed.  *See Rand-Whitney Containerboard Ltd. Partnership v. Town of Montville*, 289 F.Supp.2d 62 , 66 -67 (D.Conn. 2003), citing  *Peggy Farrior v. Waterford Board of Education,* 277 F.3d 633, 635 (2d Cir. 2002).   Granting a  motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of Civil deprives a  party of a determination of the facts by a jury and therefore should be cautiously and sparingly granted.   *Id.*

This Court may enter judgment for Electric Boat as a matter of law only if it finds that: (1) there is such a complete absence of evidence supporting the verdict for Executive Airlines that the jury's findings could only have been the result of sheer surmise and conjecture; or (2) there is such an overwhelming amount of evidence in favor of Electric Boat that reasonable and fair minded jurors could not have arrived at  a verdict against Electric Boat.  *See Rand-Whitney Containerboard Ltd. Partnership, supra,*  289 F.Supp.2d at 66 -67*, citing  Ahern v. County of Nassau,* 118 F.3d 118, 120 (2d Cir.1997).

Electric Boat clearly cannot meet these requirements and so its motion for judgment as a matter of law should be denied.

**V**

**THE COURT SHOULD DENY THE DEFENDANT'S RULE 59 MOTION FOR A NEW TRIAL**

Defendant's motion for a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, should not be granted.    For a district court to order a new trial under Rule 59(a), it must conclude that "'the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice,'" *i.e.*, it must view the jury's verdict as "against the weight of the evidence." *Manley v. AmBase Corp.*, 337 F.3d 237, 245 (2d Cir. 2003).   *Song v. Ives Labor., Inc.,DLC Management Corp. v. Town of Hyde Park, 163* F.3d 124, 133-34 (2d Cir. 1998).

The Seventh Amendment to the United States Constitution says that "no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law." *Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, Ltd.*, 369 U.S. 355, 360 (U.S. 1962). The Seventh Amendment  fashions "the federal policy favoring jury decisions of disputed fact questions." *Id.*  Except under certain limited circumstances,  the jury's findings of fact cannot be reviewed by this Court in light of the Seventh Amendment's prohibition. *Schermerhorn v. Local 100*, TWU, 91 F.3d 316, 323 (2d Cir. 1996).

In *Cheryl Terry Enters. v. City of Hartford*, 270 Conn. 619, 624 (2004), the Supreme Court of Connecticut noted that the amount of a damage award is peculiarly within the province of the jury; that litigants have a constitutional right to have juries decide issues of fact as to which there is room for a reasonable  difference of opinion among fair-minded persons; and that this fundamental right to a jury trial is an immovable limitation on the  discretion of the court to set aside a verdict.

Electric Boat's basis for its Rule 59 motion is that the jury charges and verdict should have

17

been limited to Executive Airlines' lost profits [18], and lost profits limited to a frequency of 15 flights per month for six months. [19]

But Executive Airlines' allowable damages were not limited to lost profits, or just lost profits for 15 flights for each of six months.  Electric Boat offers no Connecticut case which supports its proposition that Executive Airlines' lost profits were limited to six months, rather than to the remaining term of the contract, about 11 months. [20].

The term of the contract was for 12 months, with about 11 months remaining after termination.  The evidence showed that the six month period was to protect the plaintiff.  In ordering a new trial, this Court agreed with Judge Goettel's ruling that the provision for a six months period for termination without default was not an agreed upon measure of damages for this case that the plaintiff could base its recovery on; the Court cannot now agree with the defendant that the six month period is an agreed upon limitation to the advantage of the defendant.

---

[18]      Electric Boat's Trial Memorandum, April 24, 2007, Docket No. 220-3, at 13

[19]      Electric Boat's Trial Memorandum, April 24, 2007, Docket No. 220-3, at 4 and 13-14.

[20]      Electric Boat mentions  in passing a Maryland law case, *Trimed, Inc. v. Sherwood Medical Co.*, 977 F.2d 885 (4th Cir. 1992).  But in *Trimed, supra*, where the defendant failed, as did Electric Boat here, to follow the contract's provision for six months written notice prior to terminating, the plaintiff proved its damages by presenting an expert who compared the profits it would have received over 11 years had there been proper notice, with the profits it would receive after the early termination and  the Court of Appeals approved the plaintiff's evidence and the verdict. The Court of Appeals  found that, the difference in lost profits over eleven years caused by the  early termination was in fact the appropriate measure of damages

**Plaintiff Proved its Damages to a Reasonable Degree of Certainty and the Verdict Was Well Within the Supporting Evidence**

Mr. Peragine for Executive Airlines testified at length concerning the variable expenses associated with carrying out the contract flights and about the large costs that were necessary in acquiring aircraft and training pilots to be able to carry out the contract requirements. Electric Boat's position that the combined testimony of Mr. Peragine, with his decades - long experience in the air charter business, and of Mr. Ciccodicola, a CPA with 20 years of experience in evaluating commercial damages, was insufficient to allow the jury to determine the damages or for the verdict to stand. Rather, plaintiff's proof was more than sufficient to sustain the jury's verdict.

In *Cheryl Terry Enters. v. City of Hartford*, 270 Conn. 619, 624 (Conn. 2004), the Court held that the plaintiff had proven its lost profits to a reasonable degree of certainty, although it had presented no experts, statistics, or financial records as to costs, simply the principal's testimony that she had been in the business and prepared bids for thirty years; and that she had calculated certain costs and had added an anticipated profit, although she couldn't produce the exact figures. See also *Capitol City Personnel Services, Inc. v. Franklin*, 52 Conn. App. 783, 787, 727 A.2d 1284 (1999) (plaintiff proved damages with reasonable certainty when principal shareholder estimated profits as 25 percent of adjusted gross receipts, and testified that 25 percent was "accurate" for both industry and this particular plaintiff); *Beverly Hills Concepts v. Schatz & Schatz, Ribicoff & Kotki*n, 247 Conn. 48, 70 (1998)(We are, therefore, constrained to accord substantial deference to the fact finder on the issue of damages. In deciding whether damages properly have been awarded, however, we are guided by the well established principle that such damages must be proved with reasonable certainty.)

The plaintiff proved damages comprised of two categories: lost profits to the term of the

contract in the amount of $614,548.64 and unavoidable "fixed overhead expenses" in the amount of $316,728.18, for a total of $931,276.82.

The jury's verdict of $576,054, is well supported by the plaintiff's evidence. See *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 337 (2d Cir. 1993)(New York law)(sustaining jury award even though certain categories of damages were speculative , since verdict did not exceed the reasonable range of total damages supported by record and was "*clearly* within the maximum limit of a reasonable range." ) .

Electric Boat complains that Executive Airlines' expert did not calculate damages for the notice period of six months. This is not so. Mr. Ciccodicola's calculations were broken down by category and by time period, so that the jury had calculations of lost profits for every month from the last flight until the end of the contract's term. He also specified in detail his calculations of costs and unavoidable "fixed" expenses, start up costs required to fulfill Executive's obligations under the contract. Both sides argued their version of the contract to the jury, and the attorney for Electric Boat emphasized the same argument he makes here, that the contract allowed Electric Boat to terminate without cause on six months notice, and that therefore in Electric Boat's opinion, Executive Airlines' damage request for profits to the end of the contract term were overreaching.

## VI
## EXECUTIVE AIRLINES WAS ENTITLED TO LOST PROFITS, RELIANCE DAMAGES AND EXPECTATION DAMAGES

Plaintiff is entitled to recover direct damages, composed of "the loss in value to him of the other party's performance caused by its failure or deficiency" plus, (2) "any other loss, including incidental or consequential loss, caused by the breach . . . ." *Ambrogio v. Beaver Rd. Assocs.*, 267 Conn. 148, 155, 836 A.2d 1183 (Conn. 2003), quoting 3 Restatement (Second), Contracts § 347 (a)

& (b) (1981).

Clearly, prospective profits are recoverable:

[o]ur case law unequivocally supports awarding lost profits as an element of compensatory damages for general breach of contract claims.....Although there is no unyielding formula by which damages are calculated, "it is our rule that 'unless they are too speculative and remote, prospective profits are allowable as an element of damage whenever their loss arises directly from and as a natural consequence of the breach.'" *West Haven Sound Development Corp. v. West Haven*, supra, 320, quoting *Kay Petroleum Corp. v. Piergrossi*, 137 Conn. 620, 624, 79 A.2d 829 (1951) *Petroleum Corp. v. Piergrossi*, 137 Conn. 620, 624, 79 A.2d 829 (1951).

*Ambrogio, supra*, 267 Conn. at 155.

Plaintiff proved its revenues and expenses for the period before the early termination, during which the contract flights approximated 30 per month, doubling the the minimum of 15. The jury was entitled to extrapolate from that evidence to the full term of the contract. In the absence of evidence to the contrary, a factfinder is entitled to draw the inference that the volume of plaintiff's business would continue to be at least as great as when the parties operated under the contract. *Kay Petroleum Corp. v. Piergrossi*, 137 Conn. 620, 625, 79 A.2d 829 (1951). *Humphrys v. Beach*, 149 Conn. 14, 21, 175 A.2d 363 (1961).

### Executive Airlines Was Entitled to Compensation for Start Up Costs

Just as clearly, Executive Airlines is entitled to recover, in addition to prospective profits, **all the damages** which proximately and reasonably flow from the early termination by Electric Boat, under Connecticut law:

[T]he general rule in breach of contract cases is that the award of damages is designed to place the injured party, so far as can be done by money, in the same position as that which he would have been in had the contract been performed.

*Ambrogio*, *supra*, quoting *West Haven Sound Development Corp. v. West Haven*, 201 Conn. 305, 319, 514 A.2d 734 (1986)(Internal quotation marks omitted.). Accord, *Petereit v. S.B. Thomas, Inc.*,

63 F.3d 1169, 1186 (2d Cir. 1995).  See, also,  *Hallmark Ins. Administrators, Inc. v. Colonial Penn Life Ins. Co.* 990 F.2d 984, 989 -990  (7th Cir. 1993) (where "fixed" costs  continue to be incurred, a party harmed by another's breach is entitled to collect those lost  revenues that would have helped defray fixed costs)

Thus,  overhead expenditures  and "reliance" damages are recoverable as part of a party's expectation interest, *Retepromaca Representaciones Tecnicas Proyectos Y Sistemas, C.A. v. Ensign-Bickford Co.*, 2004 U.S. Dist. LEXIS 5552 (D. Conn. 2004), as are consequential damages, *i.e.*, "any loss that 'may fairly and  reasonably be considered [as] arising naturally, i.e., according to the usual course of things, from such breach of contract itself [21] .  *Ambrogio, supra*,  267 Conn. at 155.  See also*, Thames River supra*, 50 Conn. App. 767, 790-93 (Conn. App. Ct. 1998) (In addition to the testimony of the plaintiffs' expert and the maximum damages model he developed, the jury could reasonably have found that the plaintiffs incurred additional losses for new employees, trucks and building and expended their personal resources to obtain credit).

---

[21]     "Traditionally, consequential damages include.'" *Ambrogio*, *supra*, 267 Conn. at 155 quoting *West Haven Sound Development Corp., supra*, 201 Conn. at 319, quoting *Hadley v. Baxendale*, 9 Ex. 341, 354, 156 Eng. Rep. 145 (1854).

**VII**

**ELECTRIC BOAT'S CASE LAW DOES NOT SUPPORT ITS ARGUMENTS**

Electric Boat claims that an unpublished opinion, *S & S Tobacco & Candy Co. v.*

*Stop & Shop Companies*, 1997 U.S. App. LEXIS 1622, 107 F.3d 4, 1997 U.S. App. LEXIS 7085

(2d Cir. 1997), supports its claim that for contracts with a six month termination provision, damages

for only six months are to be awarded under Connecticut law.   Citation to this case is forbidden

under the Rules of the Second Circuit but since Electric Boat has broken this rule (for the second time

in post - trial briefing), plaintiff has no choice but to deal with this case.  Respectfully, any reliance

by the Court on this summary order would be improper since  the  rules of the Second Circuit forbid

its use as precedent.  [22]

---

[22]      The Amended Rules allow the citation **only** of summary orders filed after January
1, 2007, and continue to state that all summary orders do not have precedential effect.  U.S.Ct. of
App. 2nd Cir. § 0.23, 28 U.S.C.A. in pertinent part, states:
**Summary Order**
**(a) Use of Summary Orders**
The demands of contemporary case loads require the court to be conscious of the need to utilize
judicial time effectively. Accordingly, in those cases in which decision is unanimous and each
judge of the panel believes that no jurisprudential purpose would be served by an opinion (i.e., a
ruling having precedential effect), the ruling may be by summary order instead of by opinion.
**(b) Precedential Effect of Summary Orders**
Rulings by summary order do not have precedential effect.
**© Citation of Summary Orders**
(1) Citation to summary orders filed after January 1, 2007, is permitted.
(A) In a brief or other paper in which a litigant cites a summary order, in each paragraph in which
a citation appears, at least one citation must either be to the Federal Appendix or be accompanied
by the notation: "(summary order)."
(B) Unless the summary order is available in an electronic database which is publicly accessible
without payment of fee (such as the database available at http://www.ca2.uscourts.gov/), the
party citing the summary order must file and serve a copy of that summary order together with the
paper in which the summary order is cited. If no copy is served by reason of the availability of the
order on such a database, the citation must include reference to that database and the docket
number of the case in which the order was entered.
(2) Citation to summary orders filed prior to January 1, 2007, is not permitted in this or any other

However, the case simply does not stand for, or even deal with, the issue that Electric Boat attributes to it. Electric Boat states that

> "in accordance with Connecticut law, the Second Circuit upheld the district court's decision to limit the measure of plaintiff's damages to a period of six months. The S&S decision reinforces that under Connecticut law, a claim for damages stemming from early termination of a terminable contract is limited to losses incurred during the agreed upon notice period provided under the contract."

These statements are completely misleading, since the case never deals with the extent of damages, only with a dispute over whether the contract was in fact terminable with six months notice [23]; the issue of what was the proper measure of damages is not dealt with in this opinion, because it apparently was not raised on appeal: it is not one of the five appellate issues in the case, which are clearly set out.

Neither is the *Nationwide* case, relied on by Electric Boat, any support for the defendant's argument. [24]. In *Nationwide*, the plaintiff sued on several theories, primarily to recover funds held by its general sales agent. Their Agreement had a provision for termination after notice of breach with 30 days to cure. The defendants counterclaimed for breach, asserting that plaintiff terminated without notice and opportunity to cure.

---

court, except in a subsequent stage of a case in which the summary order has been entered, in a related case, or in any case for purposes of estoppel or res judicata.

[23]      "S & S Tobacco contends that the District Court erred in calculating the amount of damages properly attributable to Stop & Shop's termination of the contract by finding that the contract required only a six-month notice of cancellation. The Term Provision describes the contract as an "annual contract renewable each year with a six month (6) notice of cancellation of either party." *S & S Tobacco*, *supra*, at 7.

[24]      *Nationwide Airlines Ltd. v. African Global, Ltd.. ,* 2007 U.S. Dist. LEXIS 10420 (D.Conn. 2007), amended, *Nationwide Airlines Ltd. v. African Global, Ltd.*, 2007 U.S. Dist. LEXIS 29584 (D. Conn.. 2007)

In *Nationwide*, there was a question of the correct parties, but this was a much different question from the one which Electric Boat tries to raise here to defeat the second jury verdict against it.  The Agreement recited that it was between Nationwide and "AFRICAN GLOBAL, Ltd., a North American corporation,  having its principal place of business" at the home of one Atkinson, in Connecticut.  Atkinson had signed as "President" of "African Global", but in fact, African Global Ltd **never existed** as a North American corporation and was merely a trade name used by Atkinson and Atkinson Associates, Inc., his solely-owned corporation.  **The agent  never informed the principal that the purported corporation, African Global, Ltd., never existed**:

> Nationwide was never aware of any corporation called Atkinson Associates and had no way of learning of the existence of such a corporation. Thus, at best, Mr. Atkinson was contracting on behalf of an undisclosed principal, Atkinson Associates.

*Nationwide*, *supra*, at 30.

 In *Nationwide*, the confusion caused by non-disclosure over the actual signer of the agreement was relevant to the question of liability where an agent acts for an undisclosed principal.  That has nothing to do with this case

*Nationwide* does not in any way support defendant's position that plaintiff should not have the judgment which the jury chose to give it.  There is no parallel in our case.  The contract with Electric Boat was executed in the name of Executive Aviation Services, Ltd.,  a corporation whose existence has never been challenged, which its sole owner testified operated under the trade name "Executive Airlines", as did Millennium Aviation Services, Ltd., a new corporation, later.

On the defendant's counterclaim, the *Nationwide* court refused to award "indefinite" lost profits as claimed, because **the plaintiff had cured its own breach** by following the notice provision, although belatedly.  In our case, Electric Boat never corrected its conduct by providing six months

of contract revenue before terminating its agreement with Executive:

> The GSA Agreement gave Nationwide the right to terminate upon thirty days' advance written notice. Though belated, Nationwide gave the required written notice in late March. See joint Ex. 18. **Therefore, this case is unlike those cited by Defendants, in which no notice of termination was ever provided.**....

*Nationwide*, *supra*, at 57.

Electric Boat's early termination and its failure to provide Executive Airlines with an opportunity to cure, as the contract provided, makes our case a "far cry" from *Nationwide*:

> **[T]his case is thus a far cry from those cases relied on by Defendants, where a party is deprived of a contractually required opportunity to cure because of an improper termination**. *See, e.g.*, *Bausch & Lomb Inc., v. Bressler, 977 F.2d 720, 727 (2d Cir. 1992)*; **[\*59]** *Dunkin' Donuts, Inc. v. N.A.S.T., Inc., 428 F. Supp. 2d 761, 772 (N.D. Ill. 2005)*.... *See Enviro Express, Inc. v. AIU Ins. Co., 279 Conn. 194, 901 A.2d 666, 669 (Conn. 2006)*("The contract must be viewed in its entirety, with each provision read in light of the other provisions . . . and every provision must be given effect if it is possible to do so ....Since Connecticut's "case law unequivocally supports awarding lost profits as an element of compensatory damages for general breach of contract claims,"*Ambrogio v. Beaver Pond Rd., 267 Conn. 148, 155, 836 A.2d 1183 (2003)*, ....

*Nationwide*, *supra*, at 58 (Emphasis added).

None of the other cases cited by Electric Boat supports its proposition that the Court's instructions were contrary to Connecticut law and several support plaintiff's arguments herein.

*Weisgram v. Marley Co*., 528 U.S. 440 (2000) held that under Rule 50, a Court of Appeals *may* direct a District Court to enter judgment for a jury-verdict loser as a matter of law.  In *Unitherm Food Sys. v. Swift-Eckrich, Inc*., 546 U.S. 394 (2006), the Court held that a Court of Appeals has no proper basis for review of a challenge to the sufficiency of evidence against a party which has failed to renew a preverdict motion after adverse jury verdict, as specified by Rule 50(b) of Federal Rules of Civil Procedure).

In *Bauer v. Pounds*, 61 Conn. App. 29, 762 A.2d 499, 2000 Conn. App. LEXIS 585, (Conn.

App.Ct. 2000), a personal injury action against a bus company, the trial court granted judgment n.o.v. because the defendant had been sued under its trade name; the Appeals Court reversed, since the parties were aware of the corporate identity of the defendant and the jury had sufficient evidence to decide that the bus was the defendant's.

*Preston v. Keith*, 217 Conn. 12, 584 A.2d 439 (1991) was a negligence action for personal injuries; *Cary Oil Co. v. MG Ref. & Mktg., Inc.*, 90 F. Supp. 2d 401 (S.D.N.Y. 2000) dealt with a statute of limitations issue under New York UCC law; *McKeown Distributors, Inc. v. Gyp-Crete Corp.*, 618 F. Supp. 632, 638, 641 (D. Conn. 1985), was decided under Minnesota law, and the defendant had given the 30 day notice required by the contract; *Gent Uniform Rental Corp. v. Jordan*, 2000 Conn. Super. LEXIS 2210 (Conn. Super. Ct. 2000), affirmed the decision of a court - appointed factfinder to apply a liquidated damages clause, specifically found to be reasonable;

*Argentinis v. Gould*, 219 Conn. 151, 157-58 (1991) dealt with a construction contract and is irrelevant to the issues herein; *Gargano v. Heyman*, 203 Conn. 616, 621 (1987) dealt with a commercial lease and plaintiff's proof was held insufficient; *Neiditz v. Morton S. Fine & Associates, Inc.*, 199 Conn. 683 (Conn. 1986), was an action for negligent preparation of a land survey and did not involve contract damages. *J. Iapaluccio, Inc. v. City of Torrington*, 1996 Conn. Super. LEXIS 3166, 4-5 (Conn. Super. Ct. 1996), dealt with foreseeability of lower subcontract rates, in a construction contract. In *Conway v. Prestia*, 191 Conn. 484, 494; 464 A.2d 847, 852-53; 1983 Conn. LEXIS 611 (1983), the Court stated that damages often are not susceptible of exact pecuniary computation and must be left largely to the sound judgment of the trier. *Barnard v. Barnard*, 214 Conn. 99; 570 A.2d 690; 1990 Conn. LEXIS 60 concerned a Separation Agreement in a divorce action. The Court stated, that in ascertaining intent, "we consider not only the language used in the

27

contract but also the circumstances surrounding the making of the contract, the motives of the parties

and the purposes which they sought to accomplish");.); *Spahr v. Fran*k, No. CV 91-0286470 S, 1995

Conn. Super. LEXIS 923, at *13 (Conn. Super. Ct.

Mar. 29, 1995)(attorney referee fashioned wrong remedy in contract case)

## VIII
## THE COURT'S INSTRUCTIONS PROPERLY STATED THE APPLICABLE LAW

A district judge has broad discretion in framing his jury instructions. If the  instructions

correctly state the law and adequately cover the issues in the case, the charge is sufficient.   A jury

instruction will be deemed adequate if the charge, taken as a whole, is correct and sufficiently covers

the case so that a jury can intelligently determine the questions presented to it. *Schermerhorn v. Local*

*100*, *supra*,  91 F.3d at 322-323.

A litigant is entitled to a jury instruction that correctly reflects the applicable law and

sufficiently covers the essential issues.   A party is not, however, entitled to prescribe the exact

language of that charge.   *Anderson  v.  Branen*, 17 F.3d 552, 559-60 (2d Cir. 1994).

Under these standards, the Court's instructions were more than adequate to convey to the jury

the applicable Connecticut law on damages (Please see above).

## CONCLUSION

For all these reasons and in the interest of justice, the Court should deny defendant's motions in their entirety.

Dated: New York, New York          Respectfully submitted,
      June 29, 2007              Biedermann, Hoenig & Ruff, P.C.

By_____

Daniel F. Hayes (phv0207)
Attorneys for Plaintiff Executive Airlines
570 Lexington Avenue, 16th Floor
New York, New York  10022
(212) 697-6555 Telephone
(212) 986-3509 Facsimile
dhayes@bhmr.com

To:    James H. Rotondo,  Esq. (Ct05713)
       jhrotondo@dbh.com
       Amy T. Maas, Esq. (Ct25561)
       atmaas@dbh.com
       Day Pitney LLP
       Attorneys for Defendant Electric Boat Corporation
       CityPlace I
       Hartford, CT 06103-3499
       (860) 275-0100 (phone)
       (860) 275-0343 (fax)