4/25/02

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| EXECUTIVE AIRLINES<br><br>Plaintiff,<br><br>V.<br><br>ELECTRIC BOAT CORPORATION,<br><br>Defendant. | CIVIL ACTION NO.<br>02-CV-194 (GLG)<br><br><br><br><br>APRIL 25, 2002 |
|---|---|

**DEFENDANT ELECTRIC BOAT CORPORATION'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM**

Defendant Electric Boat Corporation ("Electric Boat"), for its Answer, Affirmative Defenses, and Counterclaim to the Complaint of Plaintiff Executive Airlines, states as follows:

1. Electric Boat admits that this action involves an agreement between Electric Boat and Executive Airlines whereby Executive Airlines agreed to provide air charter services to Electric Boat between Groton, Connecticut and Newport News, Virginia. Electric Boat denies the remaining allegations in paragraph 1.

2. Electric Boat is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2.

3. Electric Boat denies the allegations in Paragraph 3.

4. Electric Boat admits the allegations in Paragraph 4.

5. This Court dismissed General Dynamics Company ("General Dynamics") from this action. Accordingly, Electric Boat denies that General Dynamics is a defendant in this action. The remaining allegations of paragraph 5 require no response.

6. Electric Boat denies that it is a Connecticut corporation. Electric Boat admits the remaining allegations in Paragraph 6.

7. Electric Boat admits that it is a wholly owned subsidiary of General Dynamics. General Dynamics having been dismissed from this action, Electric Boat denies that General Dynamics is a defendant in this action.

8-9. Electric Boat admits the allegations in Paragraphs 8 and 9.

10. Electric Boat admits that in November, 1999, Executive Airlines submitted a response to Electric Boat's request for quotation. Electric Boat denies the remaining allegations of Paragraph 10.

11. Electric Boat admits the allegation in Paragraph 11.

12. Electric Boat admits that on March 14, 2000, it issued a purchase order regarding the provision of air charter services by Executive Airlines. Electric Boat expressly refers to the purchase order and the documents incorporated therein for its terms. Electric Boat denies the remaining allegations of Paragraph 12.

13. Electric Boat admits the allegations in Paragraph 13.

14. Electric Boat admits that the purchase order provides Electric Boat the right to terminate the agreement and expressly refers to the purchase order and the documents incorporate therein for its terms. Electric Boat denies the remaining allegations of Paragraph 14.

15. Electric Boat admits that on or about June 7, 2000, it notified Executive Air that the purchase order was terminated. Electric Boat denies the remaining allegations in Paragraph 15.

16-18. Electric Boat denies the allegations in Paragraphs 16 through 18.

19. Electric Boat admits that it paid Executive Airlines for the flights it provided pursuant to the purchase order. Electric Boat denies the remaining allegations in Paragraph 19.

First Cause of Action

20. Electric Boat incorporates its responses to Paragraphs 1 through 19 above.

21–22. Electric Boat denies the allegations in Paragraphs 21 and 22.

Second Cause of Action

23. Electric Boat incorporates its responses to Paragraphs 1 through 22 above.

24–29. Electric Boat denies the allegations in Paragraphs 24 and 29.

Third Cause of Action

30. Electric Boat incorporates its responses to Paragraphs 1 through 29 above.

31-34. Electric Boat denies the allegations in Paragraphs 24 and 29.

**AFFIRMATIVE DEFENSES**

FIRST DEFENSE (AS TO THE SECOND AND THIRD CAUSES OF ACTION)

Executive Airlines fails to state a cause of action against Electric Boat upon which relief can be granted.

SECOND DEFENSE (AS TO THE SECOND CAUSE OF ACTION)

The account stated claim is precluded by a valid agreement between the parties.

THIRD DEFENSE (AS TO ALL CAUSES OF ACTION)

Executive Airlines is a foreign corporation which, at all times relevant to this action, has been transacting business in the state of Connecticut without first obtaining a certificate of authority to do so from the Secretary of State for the state of Connecticut. Accordingly, pursuant to Conn. Gen .Stat. § 33-921, Executive Airlines may not maintain this action in this Court.

FOURTH DEFENSE (AS TO ALL CAUSES OF ACTION)

Executive Airlines has failed to comply with all of the provisions of the purchase order and the documents incorporated into the purchase order under which it asserts its claims. Executive Airlines is therefore barred from any recovery against Electric Boat.

FIFTH DEFENSE (AS TO ALL CAUSES OF ACTION)

Executive Airlines has failed to mitigate, minimize or avoid any damages it allegedly incurred, and any recovery against Electric Boat must be reduced thereby.

**COUNTERCLAIM**

Counterclaimant Electric Boat Corporation ("Electric Boat") counterclaims against the Counterclaim Defendant Executive Airlines and alleges as follows:

**PARTIES**

1. Electric Boat is a Delaware corporation with a principal place of business at 75 Eastern Point Road, Groton, Connecticut 06340-4989.

2. Executive Airlines is, upon information and belief, a New York corporation with a principal place of business at Route 109, Hangar Three, Farmingdale, New York 11735.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction over this counterclaim pursuant to 28 U.S.C. § 1367(a).

4. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(a)(1).

**GENERAL ALLEGATIONS**

5. In order to perform their job functions, certain Electric Boat employees frequently travel between Groton, Connecticut and Newport News, Virginia.

6. Electric Boat incurs significant expenses as a result of such frequent business travel. Such expenses include commercial airfare for such employees to travel between Groton and Newport News.

7. No commercial carrier provides direct service between Groton and Newport News. Accordingly, such travel requires Electric Boat employees to fly on at least one connecting flight between those two cities. Such connecting flights cause the travel time between these two cities to be significantly greater than it would be if such Electric Boat employees could fly directly between these two cities.

8. In most instances, by using commercial carriers, Electric Boat employees are not able to travel between Groton and Newport News and conduct their required business in one day. Accordingly, Electric Boat is required to provide such employees with overnight hotel accommodations.

9. In order to reduce the expenses it incurred by employing commercial air carriers for its travel needs between Groton and Newport News, Electric Boat contracted with air charter services to provide direct flights for Electric Boat's employees between Groton and Newport News. Use of such air charter services proves economically beneficial to Electric Boat because, in addition to reducing the travel time between these two cities, thus obviating the need in most instances for overnight hotel accommodations, Electric Boat is able to provide transportation for a number of its employees at a fixed cost rather than incurring separate travel costs for each such employee on a commercial carrier.

10. In October, 1999, Electric Boat issued a request for quotation (the "RFQ") for such air charter service between Groton and Newport News.

11. The RFQ stated that the "conditions of purchase forming part of this order are: GDC 410 (REV 3/87) and attachment (7/86) and EB S.C. 17-235 Re: Y2K warranty (in your possession)."

12. GDC 410 (REV. 3/87) is a form entitled "Purchase Order Terms and Conditions" (the "Terms and Conditions.") A true and correct copy of the Terms and Conditions is attached hereto as Exhibit A.

13. On or about November 11, 1999, Executive Airlines submitted its offer to provide such air charter services in response to the RFQ. A true and correct copy of Executive Airline's offer is attached hereto as Exhibit B.

14. Executive Airlines, in its offer, stated that it "certifies that [Executive Airlines] takes no exception to the Contractual Requirements as specified in this Request for Quotation and any Conditions of Purchase applicable to the resulting purchase order." (Executive Airlines offer, continuation sheet, p. 1.)

15. On February 9, 2000, Electric Boat issued a Purchase Order, number SNL022-096, to Executive Airlines (the "February Purchase Order"). A true and correct copy of the February Purchase Order is attached hereto as Exhibit C.

16. On March 14, 2000, Electric Boat reissued Purchase Order number SNL022-096, along with a "purchase order supplement number 1" (collectively, the "March Purchase Order.") the March Purchase Order modified, in certain respects, the February Purchase Order. A true and correct copy of the March Purchase Order is attached hereto as Exhibit D.

17. Both the February Purchase Order and the March Purchase Order incorporated the conditions set forth in the Terms and Conditions. The February Purchase Order, the March

Purchase Order, and the Terms and Conditions are collectively referred to as the "Purchase Order Agreement."

18. Pursuant to the Purchase Order Agreement, Executive Airlines agreed to provide air charter services to Electric Boat between Groton and Newport News.

19. Pursuant to the Purchase Order Agreement, Executive Airlines agreed that "charter aircraft, charter operator and charter pilots must meet all FAA regulations" and that "each assigned aircraft and pilot is subject to Electric Boat (EB) management and chief pilot approval." (February Purchase Order, p. 5; March Purchase Order, p. 2.)

20. Pursuant to the Purchase Order Agreement, Executive Airlines also agreed that Electric Boat had the right to terminate any part of or the entire Purchase Order Agreement if Executive Airlines "fails to perform any of the other provisions of this order, or so fails to make progress as to endanger performance of this order in accordance with its terms, and does not cure such failure within a period of ten (10) days (or longer period as [Electric Boat] may authorize in writing) after receipt of notice from [Electric Boat] specifying such failure." (Terms and Conditions, ¶ 12(a).)

21. In the event of such a default, Executive Airlines agreed that Electric Boat would have the ability to "procure, upon such terms and in such manner as [Electric Boat] may deem appropriate, supplies or services similar to those so terminated, and [Executive Airlines] shall be liable to [Electric Boat] for any excess costs for the same." (Terms and Conditions, ¶ 12(b).)

22. On April 10, 2000, Executive Airlines commenced its flights for Electric Boat using a BAE Systems Jet Stream 31 (the "Aircraft").

23. On at least three separate occasions, Electric Boat employees who used the air charter service provided by Executive Airlines on the Aircraft complained of strange noises

coming from the Aircraft while in flight. While not certain, these employees surmised that such noises were created from a leak in the main door seal of the Aircraft. These complaints were brought to the attention of Executive Airlines.

24. On May 21, 2000, six weeks after its first flight for Electric Boat, Executive Airlines was operating the Aircraft on a charter flight from Atlantic City, New Jersey to Wilkes-Barre/Scranton International Airport when the Aircraft crashed, killing all 17 passengers and the two pilots.

25. As a result of the crash, the National Transportation Safety Board ("NTSB") and the Federal Aviation Administration ("FAA") commenced an investigation to determine the cause of the crash.

26. Electric Boat learned that this investigation would not likely be completed before the end of the term of the Purchase Order Agreement. In fact, as of this date, neither the FAA nor the NTSB has completed such investigation.

27. As a result of the crash and the ensuing, and ongoing, investigation, Executive Airlines has been unable to provide the service it agreed to under the Purchase Order Agreement.

28. On June 7, 2000, Electric Boat notified Executive Airlines that due to such problems associated with the crash and the investigations, Electric Boat terminated the Purchase Order Agreement.

29. As a result of Executive Airlines inability to provide the services it agreed to provide under the Purchase Order Agreement, Electric Boat, for approximately seven months, was forced to use commercial air carriers to provide for its travel needs between Groton and Newport News. As a result, Electric Boat incurred significant travel-related expenses associated

with traveling on such commercial carriers, expense it would not have incurred if Executive Airlines had been able to provide the contracted for charter services.

**COUNT ONE – BREACH OF CONTRACT**

30. Electric Boat incorporates paragraphs 1 through 28 as if set forth fully herein.

31. Executive Airlines has breached the Purchase Order Agreement.

32. Electric Boat has suffered damages as a result of Executive Airlines' breach of the Purchase Order Agreement.

WHEREFORE, Electric Boat requests the following relief:

1. Compensatory damages; and

2. Any and all relief that this Court deems appropriate and just.

DEFENDANT ELECTRIC BOAT CORPORATION

By ______________________________
Ernest J. Mattei (ct04313)
William H. Erickson (ct18117)
Day, Berry & Howard LLP
CityPlace I
Hartford, Connecticut 06103-3499
(860) 275-0100
Its Attorneys

**CERTIFICATION**

THIS IS TO CERTIFY that a copy of the foregoing was mailed this 25th day of April, 2002, postage prepaid, to:

John E. Ryan, Esq.
Ryan & Brennan LLP
131 Tulip Avenue
Floral Park, NY 11001
(Counsel of record for Plaintiff in the Eastern District of New York; no counsel has appeared for Plaintiff in the District of Connecticut)

______________________________
Ernest J. Mattei

XMT REPORT

Nov. 06 2002 06:42PM

| NO. | OTHER FACSIMILE | START TIME | USAGE TIME | MODE | PAGES | RESULT |
|---|---|---|---|---|---|---|
| 01 | 16316940172 | Nov. 06 06:37PM | 05'00 | TX | 10 | OK |

IF YOU HAVE A PROBLEM WITH YOUR FAX, CALL TOLL-FREE 1-800-HELP-FAX (1-800-435-7329).