UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MILLENNIUM AVIATION SERVICES, INC. d/b/a EXECUTIVE AIRLINES | : : : | CIVIL ACTION NO. 02-CV-194 (WWE) |
| Plaintiff, | : | |
| v. | : : | |
| ELECTRIC BOAT CORPORATION, | : : | JULY 16, 2007 |
| Defendant. | | |

### REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, A NEW TRIAL

**I.   INTRODUCTION**

Defendant Electric Boat Corporation ("Electric Boat") filed its Renewed Motion for Judgment as a Matter of Law, or in the Alternative, a New Trial dated May 24, 2007 ("Renewed Motion for Judgment") on the grounds that plaintiff Millennium Aviation Services, Inc. d/b/a Executive Airlines ("Millennium Aviation") did not present any evidence to establish that it was entitled to recover as damages stemming from early termination of the Charter Agreement between Electric Boat and Executive Aviation Services, Inc. d/b/a Executive Airlines ("Charter Agreement"), and did not present any legally sufficient evidence of the damages *it* suffered as a result of the early termination of the Charter Agreement. Electric Boat also moved for a new trial on the grounds that the Court failed to charge the jury in accordance with Connecticut law on three issues: (1) damages in this case were limited to a period of six months, (2) damages in this case were limited to losses associated with the minimum number of flights per month set forth in Charter Agreement, and (3) Millennium Aviation was entitled to recover as damages only the losses it suffered stemming from the early termination of the Charter Agreement.

In its opposition to Electric Boat's Renewed Motion for Judgment, Millennium Aviation sets forth four arguments:

- Millennium Aviation is entitled to recover losses suffered by the Executive Airlines trade name as a whole and/or other corporate entities operating under the Executive Airlines trade name as damages in this case;

- Electric Boat waived the right to challenge Millennium Aviation's failure to prove it was entitled to recover damages under the Charter Agreement and failure to establish the amount of damages it suffered in this case;

- The jury verdict was supported by the evidence because "Plaintiff" or "Executive Airlines" proved its damages with reasonable certainty; and

- The jury instructions in this case were proper because Connecticut law does not limit damages in this case to a period of six months or to losses associated with the minimum number of flights per month set forth in the Charter Agreement.

None of Millennium Aviation's arguments have merit. For the reasons set forth below, and those set forth in Electric Boat's Renewed Motion for Judgment, this Court should enter judgment in favor of Electric Boat, or, in the alternative, order a new trial.

## II.  ARGUMENT

### A. Millennium Aviation is Not Entitled To Recover Damages Suffered By the Trade Name or Other Corporate Entities Operating Under the Trade Name.

Millennium Aviation essentially concedes that it only presented evidence at trial of damages suffered by the "Executive Airlines, " a trade name for several different corporations, and that it did not prove it – as opposed to the other corporations using the same trade name – was entitled to damages for the early termination of the Charter Agreement. Instead, Millennium Aviation argues that it is entitled to recover damages on behalf of the trade name, and/or the other corporate entities operating under the trade name, because "Electric Boat was aware throughout litigation of the identity of the plaintiff" (Pl.'s Opp. at 9) and Millennium Aviation

"accounted" for all the expenses associated with the Charter Agreement on behalf of the trade name.

In fact, the true identity of the real party in interest was never clear until the Court ordered the substitution of Millennium Aviation for "Executive Airlines" after the conclusion of the evidence. As indicated in the documents upon which Millennium Aviation relies, Electric Boat originally understood that Executive Airlines was a New York corporation and was a party to the Charter Agreement. (*See* Defs. Answer to Second Amended Complaint, Affirmative Defenses and Counterclaim, dated October 8, 2004.) During discovery, Electric Boat learned that Executive Airlines was actually a trade name associated with several independent corporations owned or operated by Mr. Peragine. Later in discovery, Mr. Peragine testified that the plaintiff in this case was Millennium Aviation. (*See* Dep. of M. Peragine as Corporate Representative of Executive Airlines, dated Dec. 6, 2006)("30(b)(6) Dep.") at 10:6-16). With the understanding that Millennium Aviation was the corporate plaintiff in this case, Electric Boat prepared its pretrial papers and proposed jury instructions referring to the plaintiff as "Millennium Aviation." At trial, however, Mr. Peragine changed course, and testified that the plaintiff in this action was actually the "Executive Airlines family of companies," *not* Millennium Aviation alone. After the close of evidence, the Court determined that the "Executive Airlines family of companies" was not the real party in interest to this lawsuit and properly substituted Millennium Aviation as the named plaintiff.

In a belated attempt to yet again obscure the real party in interest, Millennium Aviation merges the numerous corporate entities operating under the Executive Airlines trade name into one, arguing that it is entitled to recover damages on behalf of the trade name because Millennium Aviation "accounted" for all the expenses associated with the Charter Agreement on

-3-

behalf of the trade name. Even if Millennium Aviation acted as an "accountant" for the trade name, it simply does not follow that Millennium Aviation is entitled to recover losses suffered by the other corporate entities operating under the trade name as a result of the early termination of the Charter Agreement.[1] Millennium Aviation may only properly recover losses *it* suffered as a result of the early termination. Because Millennium Aviation failed to set forth any evidence of its losses during trial, Electric Boat is entitled to judgment in its favor as a matter of law.[2]

      B.      <u>Electric Boat Did Not Waive the Right to Challenge Millennium Aviation's Failure to Present Evidence of its Damages.</u>

Millennium Aviation argues that Electric Boat waived the right to challenge Millennium Aviation's failure to prove that it was entitled to recover damages under the Charter Agreement and failure to establish the amount of damages it suffered in this case for two reasons: (1) Electric Boat failed to object to the "nomenclature of the plaintiff over the years of this litigation," and (2) Electric Boat failed to address the issue in its Rule 50(a) Motion for Judgment filed during trial. Neither of these arguments have merit.

First, the "nomenclature" of the plaintiff over the course of this litigation is irrelevant. With the consent of the plaintiff, the Court substituted Millennium Aviation as the plaintiff in

---

[1] Millennium Aviation also argues that Executive Aviation Services, Inc., the party that executed the Charter Agreement, did business as Executive Airlines before Mr. Peragine formed Millennium Aviation to do business as Executive Airlines in the "new era." There is, however, no support in the record for that proposition. The testimony of Mr. Peragine at trial established at most that East Coast Aviation did business as Executive Airlines before Millennium Aviation was formed, and that East Coast Aviation was still operating under that trade name in 2000.

[2] If the Court attempts to cure this deficiency by adding additional "Executive Airlines" companies as plaintiffs in this case, a retrial on the issue of damages would still be required. The general jury verdict awarded damages to Millennium Aviation; therefore, a new jury would have to determine which entities suffered losses and the amounts of those losses.

this case *in place of the trade name*.[3]  Millennium Aviation had an obligation to prove *it* was entitled to recover damages under the Charter Agreement and to prove the amount of losses *it* suffered with reasonable certainty.  Millennium Aviation failed to meet its burden in both respects.

Second, Electric Boat argued in its written Rule 50(a) Motion for Judgment that the then-plaintiff in this case, Executive Airlines, failed to set forth any legally sufficient evidence of its damages.  Electric Boat did not have the opportunity to challenge Millennium Aviation's failure to present evidence of its damages more specifically because Millennium Aviation was not the named plaintiff at the time the motion was filed.  The plaintiff was the nebulous trade name, "Executive Airlines."  The Court did not substitute Millennium Aviation as the named plaintiff until after the close of the evidence, after which, Electric Boat moved for judgment as a matter of law orally on the grounds that Millennium Aviation was not a party to the Charter Agreement and was not entitled to recover damages in this case.

Therefore, Electric Boat properly preserved its right to challenge Millennium Aviation's failures of proof in this case and is entitled to judgment as a matter of law.

C.     The Jury Verdict Was Against the Weight of The Evidence

Millennium Aviation argues that the jury award in favor of Millennium Aviation is supported by the evidence at trial because the evidence established that the "Executive Airlines" suffered losses as a result of the early termination.  This is simply another example of the "bait and switch" that the plaintiff has played with the trade name. "Executive Airlines," using the trade name when it finds it helpful and then the corporate name when that is most advantageous.

---

[3] Despite Millennium Aviation's eight-page argument to the contrary, Electric Boat does not contest the substitution of Millennium Aviation as the real party in interest.

Millennium Aviation is simply not entitled to recover damages on behalf of the trade name or the other corporations operating under the trade name in this case. Because the jury awarded damages to Millennium Aviation based on its understanding of what Executive Airlines lost rather than what Millennium Aviation lost, the jury verdict is against the weight of the evidence, and must be set aside.

> D. <u>Connecticut Law Limits Millennium Aviation's Damages in This Case to a Period of Six Months.</u>

Millennium Aviation argues that the jury instructions were "adequate to convey to the jury the applicable Connecticut law on damages" because Connecticut law does not limit damages in this case to the agreed-upon notice period of six months. Millennium Aviation does not provide any legal authority in support of its position, and cannot do so because Connecticut does in fact impose such a limitation on damages.

Millennium Aviation attempts to distinguish *Nationwide Airlines (Pty) Ltd. v. African Global, Ltd.*, No. 3:04 CV 00768, 2007 U.S. Dist. LEXIS 10420 (D. Conn. Feb. 14, 2007) because: (1) the *Nationwide* case involved issues of contract formation and agency, and (2) the breaching party in *Nationwide* "cured its breach" whereas Electric Boat did not. Millennium Aviation simply misreads *Nationwide*. The 38-page opinion addresses several issues, including a counterclaim raised by the defendant, Atkinson Associates ("Atkinson"), in which Atkinson claimed that Nationwide improperly terminated a contract between the parties. Atkinson claimed that Nationwide Airlines constructively terminated the agreement by permitting another sales agent to sell tickets in Atkinson's place, then gave belated written notice of the termination. With respect to damages for that breach, the court held:

> Nationwide contends that its breach of the notice of termination provision merely entitles Atkinson Associates to lost profits for the period from February 2 to April 10, 2004, when the formal written termination, which was never cured, became effective….On this point, the Court agrees with Nationwide. <u>The GSA</u>

> <u>Agreement gave Nationwide the right to terminate upon thirty days' advance written notice. Though belated, Nationwide gave the required written notice in late March…. Therefore, for Nationwide's breach of the termination provision of the GSA Agreement, Atkinson Associates is entitled only to recover damages up to and including April 10, 2004, when, according to Nationwide's valid and uncured termination notice, the GSA Agreement terminated.</u>

*Nationwide Airlines (Pty) Ltd.*, 2007 U.S. Dist. LEXIS 10420, at *56-60 (internal citations omitted)(emphasis added).

Millennium Aviation's argument that Nationwide "cured its breach" has no merit for two reasons. First, Nationwide did not "cure its breach" by providing written notice of Atkinson's termination. Nationwide stopped using Atkinson's services, then provided written notice of termination but did not resume using Atkinson's services during the 30-day notice period required under the agreement. Second, Electric Boat was not required to pay six-months' worth of contract revenues in order to cancel the Charter Agreement for convenience. As determined by this Court on several occasions, the Charter Agreement did not contain a provision for liquidated damages.

Thus, *Nationwide* applies with full force to this case: Electric Boat suspended services under the Charter Agreement, then provided written notice of termination but did not resume using charter services during the six-month notice period. Pursuant to *Nationwide*, the proper measure of Millennium Aviation's damages in this case are losses sustained from May 24, 2000, the date that Electric Boat stopped using charter services under the Agreement, through December 7, 2000, the date that Electric Boat's written termination became effective

Millennium Aviation also challenges Electric Boat's citation to *S & S Tobacco & Candy Co. v. Stop & Shop Cos.*, No. 95-9263, 1997 U.S. App. LEXIS 1622 (2d Cir. Jan. 30, 1997) on the grounds that: (1) it is a summary order, and (2) the decision does not deal with "the issue of what was the proper measure of damages" in cases involving the termination of a contract

containing a termination-upon-notice provision. Again, Millennium Aviation is simply wrong on both counts. Electric Boat alerted the Court to the fact that the *S & S Tobacco* opinion was a summary order by a footnote its Rule 50(b) Motion for Judgment. As noted by the Court at trial, summary orders provide insight as to how the Second Circuit may decide a particular issue. Additionally, Millennium Aviation's argument that the *S & S Tobacco* opinion does not deal with damages is belied by the text of the opinion itself:

> *S & S Tobacco* contends that the District Court erred in <u>calculating the amount of damages</u> properly attributable to Stop & Shops' termination of the contract by finding that that the contract required on a six-month notice of cancellation.

*S & S Tobacco & Candy Co.,* 1997 U.S. App. LEXIS 1622, at * 8 (emphasis added). The Second Circuit upheld the district court's interpretation of the termination-upon-notice provision at issue, finding that, as with the Charter Agreement in this case, the contract was terminable upon the giving of six-months' notice at any time. Accordingly, the Second Circuit held that "the District Court properly concluded that six months was the time period to use to measure S & S Tobacco's damages arising from Stop & Shop's unjustified termination of the contract." *Id.* Despite Millennium Aviation's arguments to the contrary, the *S & S Tobacco* decision recognizes that under Connecticut law, a claim for damages stemming from early termination of a terminable contract is limited to losses incurred during the agreed-upon notice period provided under the contract.

For these reasons, Millennium Aviation's attempts to distinguish *Nationwide* and *S & S Tobacco* from the facts of this case fail completely. The Court's refusal to instruct the jury consistent with these authorities constitutes clear error, and accordingly, Electric Boat is entitled to a new trial.[4]

---

[4] Millennium Aviation also argues that "the provision for a six months notice period for termination without default was not an agreed upon measure of damages for this case that the

E. <u>Connecticut Law Limits Millennium Aviation's Damages in This Case and to Losses Associated With the Minimum Number of Flights Required Under the Agreement.</u>

Millennium Aviation argues that the jury instructions were "adequate to convey to the jury the applicable Connecticut law on damages" because Connecticut law does not limit damages to the minimum of fifteen flights per month provided under the Agreement. Again, Millennium Aviation does not provide any legal authority in support of this contention. Instead, Millennium Aviation contends that it was entitled to recover expectation damages in this case, and entitled to recover for the amount of flights it expected Electric Boat to purchase per month.

Millennium Aviation's lost profit damages in this case are limited to the loss of its agreed-upon bargain under the Charter Agreement. *See Ambrogio v. Beaver Rd. Assocs.*, 267 Conn. 148, 155 (2003)(quoting *West Haven Sound Dev. Corp. v. West Haven*, 201 Conn. 305, 319 (1986)). The Charter Agreement required only that Electric Boat purchase a minimum of fifteen flights per month. The loss of Millennium Aviation's bargain, had the Charter Agreement been performed as agreed, is the amount of losses suffered because Electric Boat did not purchase fifteen charter flights per month.

For these reasons, Millennium Aviation's argument that Connecticut law does not limit damages to the minimum of fifteen flights per month provided under the Agreement is without

---

plaintiff could base its recovery on; the Court cannot now agree with the defendant that the six month period is an agreed upon limitation to the advantage of the defendant." (Opp. at 18.) During the first trial, Executive Airlines, the previously-named plaintiff, presented a claim for liquidated damages equal to the revenue stream generated under the Charter Agreement by flying fifteen round trip flights a month for six months, notwithstanding the fact that Judge Goettel's ruling on summary judgment precluded liquidated damages. Executive Airlines' decision to pursue a theory of damages not applicable to this case bears no connection to the fact that Connecticut law limits damages stemming from early termination of a terminable contract to losses incurred during the agreed-upon notice period.

merit. The Court's refusal to instruct the jury in this regard constitutes clear error, and accordingly, Electric Boat is entitled to a new trial.

### III. CONCLUSION

For these reasons, and the reasons set forth in Electric Boat's Renewed Motion for Judgment, Electric Boat respectfully requests that the Court grant Electric Boat judgment as a matter of law or, in the alternative, a new trial.

DEFENDANT,
ELECTRIC BOAT CORPORATION


By      /s/ Amy T. Maas
        James H. Rotondo (ct05713)
        jhrotondo@daypitney.com
        Amy T. Maas (ct25561)
        atmaas@daypitney.com
        Day Pitney LLP
        242 Trumbull Street
        Hartford, Connecticut 06103
        (860) 275-0100
        (860) 275-0343 fax
        Its Attorneys

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 16th day of July, 2007, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                      /s/ Amy T. Maas
                                      Amy T. Maas (ct25561)